IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02639-PAB-NYW

JOHN PAULSON, an individual,

Plaintiff,

v.

TWO RIVERS WATER AND FARMING COMPANY, a Colorado corporation; JOHN R. MCKOWEN, an individual; WAYNE HARDING, an individual; and TIMOTHY BEALL, an individual,

Defendants.

---

### JOHN R. McKOWEN'S MOTION TO STAY PROCEEDINGS
### (partially opposed, partially unopposed)

---

Defendant John R. McKowen (McKowen), through counsel at Ogborn Mihm, LLP, submits this Motion to Stay Proceedings and states as follows:

### <u>REQUEST FOR A HEARING</u>

Movant McKowen respectfully requests a hearing regarding the issues set forth in this motion.

### <u>CERTIFICATION OF D.C. COLO. L. CIV. R. 7.1(A) CONFERRAL</u>

On January 22, 2020, Mr. McKowen's counsel conferred, in good faith, with counsel for Plaintiff John Paulson about this motion to stay.   Mr. Paulson opposes this motion. McKowen's counsel also conferred with counsel for Two Rivers and with Defendants Harding and Beall, who do not oppose the requested relief.

## FACTUAL BACKGROUND

1.      This lawsuit against Mr. McKowen and others is based on the sale of securities of GrowCo, Inc. – a company presently under Chapter 11 protection in Case No. 19-10512 in the United States Bankruptcy Court for the District of Colorado.

2.      GrowCo is a Colorado corporation that was organized on or about May 5, 2014 to develop and lease industrial greenhouses.

3.      When formed, GrowCo was a wholly-owned subsidiary of Two Rivers Water & Farming Company ("Two Rivers").  The ownership of GrowCo has changed since its inception, but GrowCo is still a "subsidiary" of Two Rivers for purposes of the D&O insurance policy that covers the claims that are the subject of this lawsuit.

4.      McKowen was the CEO of GrowCo from its inception until his resignation on May 26, 2016.

5.      McKowen was a director of GrowCo from June 5, 2015 until his resignation on May 26, 2016.  McKowen was re-appointed to the GrowCo board of directors on October 23, 2017 and re-appointed as CEO on October 31, 2017.

6.      GrowCo filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on January 24, 2019 (the "Bankruptcy Case"). That filing created an automatic stay of all actions against GrowCo as well as actions to obtain possession of property of the GrowCo estate.  11 U.S.C. §§ 362(a)(1) and 362(a)(3).

7.      Plaintiff John Paulson ("Paulson") is a scheduled unsecured creditor of GrowCo by virtue of his purchase of $257,000 in GrowCo Senior Exchange Notes during the period August 2016 through November 2016 – before the commencement of GrowCo's Bankruptcy

Case.

8.      GrowCo provided Paulson notice of its Chapter 11 soon after its bankruptcy filing.

9.      One of the bases of Paulson's securities fraud claim in this case is that, as a consequence of GrowCo's bankruptcy filing, "his investments in the Offerings became effectively worthless." *See Paulson Complaint*, Dkt. No. 4, at ¶ 58.

10.       On June 10, 2019, Paulson submitted a letter to the Bankruptcy Court, docketed at Docket No. 56 in the Bankruptcy Case, in which he described himself as a creditor and asked the Court "in the strongest terms please keep the process moving for myself and the other investors . . ." **Exhibit A**.

11.      Notwithstanding his awareness of GrowCo's Chapter 11 bankruptcy filing, on August 13, 2019, Paulson filed this action against McKowen and others.  In it, Paulson seeks, *inter alia*, rescission of his contracts with GrowCo. *See Paulson Complaint*, Dkt. No. 4 at p. 21, paragraph (c).

12.      As a practical matter, "[r]escission is an equitable termination of a contract whereby all rights, both past and present, arising under the contract are voided." *Haan v. Traylor*, 79 P.3d 114, 116 (Colo. App. 2003).

13.      In a suit seeking rescission of a contract, all parties to the contract have "an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139-40, 15 L. Ed. 158 (1854).

14.     Paulson acknowledges in his complaint that GrowCo is in bankruptcy.  Paulson explicitly identifies the members of his proposed class as the creditors listed in the GrowCo bankruptcy filing.  *See Paulson Complaint*, Dkt. No. 4 at ¶ 63.

15.     In an apparent attempt to avoid violating the automatic stay, Paulson claims that GrowCo is not a party to this case.  While that is technically true, this action affects or threatens to affect the GrowCo bankruptcy case, the debtor-creditor relationship between GrowCo and Paulson and the other putative class members, the duties and obligations of GrowCo as a Chapter 11 debtor, and property of the GrowCo bankruptcy estate.

16.     Although Paulson identifies GrowCo as a "non-defendant" in the Complaint, "disposition of the action in [GrowCo's] absence may: (A) As a practical matter impair or impede [GrowCo's] ability to protect that interest […].".  Fed. R. Civ. P. 19(a)(2)(A).

17.     Paulson alleges that McKowen and the other defendants committed acts of negligence, violated the Colorado Securities Act, and made negligent misrepresentations and omissions based upon his and other putative class members' purchase of GrowCo securities. Paulson seeks to certify a class of allegedly similarly situated individuals to (i) obtain rescission of the GrowCo contracts and (ii) pursue claims against McKowen and the other defendants.

18.     Paulson's claims against McKowen relate to purported actions taken by McKowen in his capacity as an officer or director of GrowCo.

19.      GrowCo's Bylaws contain the following provision regarding its indemnification obligations:

*Article XIII*
*Indemnification*

*The Board of Directors hereby adopt the provisions of C.R.S. 7-3-101 S (as it may be amended from time to time) relating to Indemnification and in corporate [sic] such provisions by this reference as fully as if set forth herein.*

20.    This indemnification provision refers to the Colorado Corporation Code, which was significantly amended by the Colorado Business Corporation Act adopted in 1994 (C.R.S. § 7-101-101 et seq.).  The Colorado Business Corporation Act has since been amended several times.   By incorporating Colorado's state laws governing a corporation's duties of indemnification *as they may be amended from time to time*, the GrowCo Bylaws indicate that the current indemnification provisions of the Colorado Business Corporations Act are applicable.

21.    The Colorado Business Corporation Act currently provides that a corporation may "indemnify a person made a party to a proceeding because the person is or was a director against liability incurred in the proceeding" in certain circumstances.  Such indemnification may be made in advance of a final disposition of the proceeding if the "director furnishes the corporation a written affirmation of the director's good-faith belief that the director has met the standard of conduct described in section 7-109-102," among other requirements.  *See* C.R.S. §§ 7-109-102 and 7-109-104.  Section 7-109-103 provides that "a corporation shall indemnify a person who was wholly successful, on the merits or otherwise, in the defense of any proceeding to which the person was a party because the person is or was a director, against reasonable expenses incurred by the person in connection with the proceeding."

22.     GrowCo has an obligation to indemnify McKowen and to pay his legal fees and expenses in connection with this action.

5

23.     If this action is allowed to continue, GrowCo may incur significant liability for attorneys' fees and expenses in indemnification obligations to McKowen.  This liability will in turn have a significant effect on GrowCo's bankruptcy case.

24.     Additionally, McKowen is insured under a Directors and Officers policy of insurance issued by Starstone Specialty Insurance Company ("Starstone") to Two Rivers.  The policy provides coverage for both individuals as insured persons and companies as named insureds.

25.     GrowCo is also an insured under the policy.

26.     Starstone has refused to use any funds under the policy to defend or indemnify McKowen because the proceeds of the policy are subject to the automatic stay in GrowCo's bankruptcy.

27.     Thus, this case implicates GrowCo's bankruptcy estate and, likely  property of the estate, the insurance policy.

28.     GrowCo's Bankruptcy Case is nearing a critical juncture in the Chapter 11 process: plan confirmation.  Moving forward with this case during this period implicates GrowCo's interests, as well as the interests of GrowCo's creditors (including the putative class members).

29.     The Bankruptcy Court has scheduled a hearing on the adequacy of GrowCo's disclosure statement (a condition precedent to consideration of the GrowCo Plan of Reorganization) for Wednesday, January 29.  If the Court approves the Disclosure Statement, a hearing on confirmation could be set within 30 days and GrowCo's plan confirmed.  Even if this process is delayed somewhat, the Bankruptcy Court's decision on GrowCo's plan is likely

to be made within 90 days following approval of the disclosure statement.

30.     The deadline for GrowCo's creditors to submit their proofs of claims is February 3, 2020.

31.     Staying all proceedings for 180 days, pending a decision on Plan confirmation, would be in the interest of all the Parties.

## ARGUMENT AND LEGAL AUTHORITIES

### A.     Standards for Granting Motions to Stay

32.     Four factors govern a district court's evaluation of whether to grant a motion to stay:

> (1) the interest of the plaintiff in proceeding expeditiously with discovery and the potential prejudice to the plaintiff of a delay; (2) the burden on the defendant of proceeding with discovery; (3) the convenience to the Court of staying discovery; (4) the interests of nonparties in either staying or proceeding with discovery; and (5) the public interest in either staying or proceeding with discovery.

*Frederick v. Col-Terra Investments XIV*, No. 17-CV-00410-MSK-STV, 2017 WL 1908121, at *1 (D. Colo. May 10, 2017).

### B.     This Case is Related to the GrowCo Bankruptcy Case

33.     At its core, this case is about GrowCo's issuance of securities to Paulson and other putative class members.  For himself and the putative class members, Paulson seeks rescission of their contracts with *GrowCo* and damages for the conduct of GrowCo's "control persons."  Paulson alleges that McKowen is one of the control persons by virtue of his role as an officer and director of GrowCo and its parent company, Two Rivers.

34.     The relief sought by Paulson demonstrates that this case relates to GrowCo's bankruptcy case.  Paulson's complaint specifically requests "rescission and/or rescissory

damages" against McKowen.  Rescission requires the return of the parties to the *status quo ante*.  *Forest View Acres Water Dist. v. Colorado State Bd. of Land Comm'rs*, 968 P.2d 168, 173 (Colo. App. 1998) (noting that "A party seeking to rescind a contract must return the opposite party to the *status quo ante* or the position in which he or she was prior to entering into the contract.").

35.     The relief Paulson requests necessarily implicates GrowCo's bankruptcy case as it seeks to rescind all of the investment contracts between GrowCo and the putative class members.  In other words, the relief sought by Paulson directly impacts GrowCo's contracts with the putative class members.

36.     McKowen removed Paulson's lawsuit – filed in state court – to this Court because this action is "related to" the GrowCo bankruptcy case, thereby giving this Court subject matter jurisdiction under 28 U.S.C. § 1334(b).

**C.     Paulson's interest in proceeding is outweighed by the interest of others**

37.     Given the current posture of this case, a stay of discovery is appropriate pending a vote on the confirmation of GrowCo's Chapter 11 plan of reorganization.

38.     Paulson has expressed two different desires.  Here, he seeks to move forward with discovery to establish the merits of his claim and to obtain class certification.  At the same time, he has expressed a desire to move forward with the GrowCo Chapter 11 proceeding, asking the bankruptcy court "in the strongest terms please keep the process moving for myself and the other investors."

39.     The inconsistency between his request to the bankruptcy court and his desire to move forward in the present matter suggests that his interest in pursuing this case is limited.  If

the bankruptcy court confirms the Plan, Paulson may find that his GrowCo securities are not "effectively worthless" after all.

40.     Moreover, his pursuit of this action works at cross-purposes to his stated desires in the bankruptcy court.  "[C]lass litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters, class litigation would have to be commenced at the earliest possible time to have a chance of being completed in the same time frame as the other matters that must be resolved before distributing the estate." *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005).

41.     As compared to the streamlined process offered by the bankruptcy court, where Paulson has already asked the court "in the strongest terms" to keep the process moving forward swiftly, and which (as discussed below) offers an inexpensive process beneficial to all members of the putative class, class action litigation is time consuming and resource intensive.

42.     To meet his burden and obtain class certification in this matter, Paulson must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

43.     Moving forward to pursue discovery regarding class certification and the alleged securities fraud will require Paulson immediately to begin incurring costs in this action. Moving forward now will also cause others to begin incurring costs that could otherwise be avoided.  This implicates the interests of the putative class members, the interests of GrowCo,

and the interests of Defendants.

**D.    Nonparties—including the putative class members—have a significant interest in staying proceedings**

44.    Several nonparties including GrowCo and the putative class members have a significant interest in staying these proceedings.

> *i.    The relief sought by Paulson directly impacts the interests of GrowCo and the putative class members*

45.    Paulson's complaint requests relief that directly implicates GrowCo's interests.

46.    Paulson's complaint specifically seeks rescission of the putative class members' investment contracts with GrowCo.

47.    Rescission must return the parties to the *status quo ante*. *Forest View Acres Water Dist. v. Colorado State Bd. of Land Comm'rs*, *supra*.

48.    Thus, although GrowCo is not named as a party to this action, Paulson seeks remedies that will have an impact on GrowCo's interests.

49.    The relief sought by Paulson also implicates the interests of GrowCo's investor-creditors.

50.    In addition to rescission, Paulson seeks rescissory damages.

51.    The Colorado Securities Act ("CSA"), §§ 11-51-101, et seq., at section 604(4) provides that putative class members may recover damages equal to "the consideration paid for the security together with interest at the statutory rate form the date of payment, costs, and reasonable attorney fees, less the amount of any income received on the security, upon tender of the security."

52.    This language substantially tracks the language of 15 U.S.C. § 77l(a), and "the

CSA was adopted with reference to federal securities regulations, which it parallels, and the CSA directs coordination with the federal provisions." *People v. Rivera*, 56 P.3d 1155, 1163 (Colo. App. 2002) (citing § 11-51-101(3), Colo. Rev. Stat.).

53.     A precondition for putative class members to recover rescissory damages is their tender of their securities to the defendants in this action. *See*, *Sweeney v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31, 33 (D. Mass. 1983) (holding plaintiffs must tender security to defendant in order to obtain relief under § 77l).

54.     Logically, this makes sense, because allowing securities fraud plaintiffs to retain their securities while obtaining repayment of the consideration paid would result in a windfall to the plaintiff.

55.     In this case, allowing the putative class to pursue rescissory damages against the defendants, while receiving the benefits under GrowCo's confirmed Chapter 11 Plan, would result in them receiving a significant windfall.

56.     However, the putative class members deserve to have an opportunity to make an informed decision as to whether to participate in this litigation after learning how Plan confirmation will impact the value of their investment contracts.  The putative class members may elect to have their claims treated under GrowCo's bankruptcy plan rather than to pursue this litigation.

57.     Moreover, allowing the putative class members to proceed through the bankruptcy process likely will result in significant benefits to them as creditors of GrowCo.

58.     "[B]ankruptcy significantly changes the balance of factors to be considered in determining whether to allow a class action and that class certification may be 'less desirable in

bankruptcy than in ordinary civil litigation.'  Even class actions that were certified prior to the filing for bankruptcy may, for this reason, be disallowed." *Ephedra Prod. Liab. Litig.*, 329 B.R. at 5 (internal citations omitted).  As explained by one court,

> Bankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp. They need only fill out and return the proof of claim sent with the Bar Date Notice. Furthermore, claims are 'deemed allowed' under § 502(a) in the absence of an objection, in which case discovery and fact-finding are avoided altogether.

*In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D. N.Y. 2007).

59.   The procedural benefits of the Chapter 11 process are actually *more advantageous* to the putative class members than moving forward in this proceeding.  Paulson's decision to proceed with this litigation directly implicates his adequacy as a representative plaintiff, insofar as the decision to assert claims for rescissory damages requires those class members to tender their securities while also subjecting them to a substantial reduction in value when their value is reduced by the fees and litigation costs incurred by Paulson's counsel.

> ii.   *Allowing this action to move forward will burden GrowCo with additional, unnecessary administrative expenses*

60.   GrowCo is not a party to this action.[1]  However, discovery in this action is likely to implicate GrowCo's interests and burden GrowCo during a critical time in its Bankruptcy Case.

61.   Paulson seeks to move forward with discovery in this matter to support his

---

[1]   McKowen believes that GrowCo is an indispensable party to this case, particularly given the rescission relief that Paulson seeks, and that it is incumbent on Paulson to seek appropriate relief in the Bankruptcy Case to proceed with this action.  A stay of this case would provide Paulson time to do that.

request for class certification and his claim for securities fraud.

62.     Much of the pertinent evidence belongs to GrowCo. Should discovery move forward in this case, GrowCo will bear part of the financial burden of participating in discovery. This cost will increase the administrative burden on the GrowCo bankruptcy estate, to the disadvantage of GrowCo's creditors, including the putative class members.

> iii.   *Allowing this action to move forward may deplete assets of the GrowCo bankruptcy estate to the detriment of GrowCo and the putative class members*

63.     Allowing this case to proceed may jeopardize or deplete assets that are presently part of GrowCo's bankruptcy estate.

64.     As discussed above, the deadline for GrowCo's creditors to submit proof of their claims against GrowCo has not yet passed.

65.     GrowCo is an insured under the Starstone policy.

66.     That policy of insurance is an asset of the bankruptcy estate.  *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010).

67.     At present, McKowen does not have sufficient information to know whether the Starstone policy will remain an asset of the bankruptcy estate.

68.     Moreover, confirmation of GrowCo's Chapter 11 Plan may implicate Paulson's adequacy as a class representative.  His pursuit of this action, at this time, may make him adversarial to other putative class members.

69.     The proceeds from the Starstone policy may be available to the defendants in this action, as well as to GrowCo.

70.     Further, although the Starstone policy might otherwise pay for expert witnesses

to testify regarding the class certification factors and to testify regarding the question of damages, the carrier will not pay any portion of the policy to assist in the defense of this action because it views the policy as an asset of the GrowCo bankruptcy.

71.     A stay of proceedings pending further developments in the Bankruptcy Case will eliminate the uncertainty and allow McKowen to seek the necessary order from the bankruptcy court.  Allowing the bankruptcy case to proceed ahead of this action will likely allow resolution of issues relating to damages and, possibly, the availability of insurance.

> iv. *Allowing this action to continue violates the bankruptcy code's automatic stay*

72.     The commencement of a bankruptcy case triggers an automatic stay of litigation upon the filing of a bankruptcy proceeding:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of–
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1).

73.     Although the stay typically applies only to actions against the debtor, courts have recognized "a narrow exception" in which section 362(a)'s stay also applies to prevent the continuation of actions that interfere with the bankruptcy case.

74.     The seminal cases recognizing the exception to the general rule is *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986), in which the Fourth Circuit held that "when there is such identity between the debtor and the third-party defendant that the debtor may be

said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."  The Court explained by stating that "[a]n illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *Id.*

75.    *In Robert W. Thomas and Anne McDonald Thomas Revocable Trust v. Inland Pacific Colorado, LLC,* Civ. Action No. 11-cv-03333-WYD-KLM, 2013 WL 708493 (D. Colo. Feb. 26, 2013), the Honorable Wiley Daniel extended the stay applicable to the defendant-debtor to the other defendants and administratively closed the case subject to reopening for cause.  Judge Daniel cited Tenth Circuit authority recognizing that a stay is appropriate "when it is necessary to further the policies underlying 11 U.S.C. § 362."  Id. at *3, citing *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442, 1450 (10th Cir. 1997), *overruled on other grounds, TW Telecom Holdings, Inc. v. Carolina Internet Ltd.,* 661 F.3d 495 (10th Cir. 2011). Additionally, the "narrow exception" warranting a stay based on the bankruptcy applies "if the bankruptcy proceedings would be adversely impacted if the case is not stayed as to the debtor's codefendants or if the stay would contribute to the debtor's efforts to reorganize."  *Id.* at *3, citing *Matter of Zales Corp.,* 62 F.3d 746, 761 (5th Cir. 1995); *Teachers Ins. And Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 65 (2d Cir. 1986).

76.    *Inland Pacific* involved the plaintiff Trust's allegations that the debtor company's president misrepresented that his company (the debtor in bankruptcy) had "significant assets" from the sale of a hotel to enable the debtor to pay the Trust the amounts

due under a promissory note.    Judge Daniel concluded that continued prosecution of the plaintiff's claims could have an adverse effect on the bankruptcy because of the possibility that a finding against the debtor's president could be binding against the debtor and thereby affect the bankruptcy case. *Id.* at *3.

77.    Similarly, here, Paulson claims that McKowen is liable for representations and omissions in the sale of promissory notes from GrowCo to Paulson and other investors.  Paulson purchased senior exchange notes totaling $257,000; the putative class for which Paulson seeks certification, however, holds securities in excess of $10 million.   As a former officer and director of Two Rivers and GrowCo during the alleged "class period," McKowen is entitled to indemnification of his costs of defense from GrowCo.  Any judgment against McKowen would give rise to a potentially sizeable claim for indemnification against GrowCo.  Given that the D&O policy may be significantly reduced or altogether depleted through payment of defense costs of all allegedly covered insureds (Two Rivers, defendants Harding and Beall, and McKowen), the risk and potential size of harm to GrowCo are real and significant.

78.    To the extent that putative class members wish to see GrowCo successfully reorganize under Chapter 11, and emerge as a going concern, Paulson's pursuit of this action (and the attendant depletion of the policy or expansion of administrative claims against the estate) may make his interests even more adversarial to the interests of those putative class members.

## E.    The public interest favors staying this matter pending further proceedings in the bankruptcy case

79.    Given the degree to which the present litigation implicates the interests of GrowCo and its creditors, it is appropriate for this Court to consider the public policy

undergirding the bankruptcy process.

80.     Indeed, "[t]here is . . . a 'great public policy' in ensuring that bankruptcy cases continue to 'an orderly, efficient resolution to maximize and preserve the estate's assets.'" *In re F.G. Metals, Inc.*, 390 B.R. 467, 478 (Bankr. M.D. Fla. 2008).   The bankruptcy code itself embodies Congress' decision to embrace "a vital public policy of providing businesses an opportunity to 'start anew.'"   *Id.*   The public interest favors allowing GrowCo a fair opportunity to preserve its assets, present its plan, and see it confirmed.

81.     In this, GrowCo's interest aligns with the interests of many putative class members.   "There is a strong public policy which favors rehabilitation of failing concerns to make them viable contributors to society once again, rather than liquidating the companies quickly to turn over a reduced sum to all creditors."   *Cross Elec. Co. v. United States*, 11 B.R. 998, 1000 (W.D. Va. 1980), *rev'd on other grounds,* 664 F.2d 1218 (4th Cir. 1981).

82.     "The essence of Chapter 11, however, is to prevent the unnecessary dismemberment of viable corporations and to provide a maximum distribution to creditors who would be likely to receive nothing in the event of liquidation." *Matter of Aurora Cord & Cable Co., Inc.*, 2 B.R. 342, 346 (Bankr. N.D. Ill. 1980).

83.     Granting the motion to stay would further the strong public policy of giving Chapter 11 debtors an opportunity to successfully reorganize and emerge from bankruptcy as a thriving business.

**F.     McKowen faces significant prejudice if forced to move forward with discovery at this time**

84.     McKowen faces a significant burden if he is forced to move forward with discovery in this action at this time.

85.     As described above, McKowen is insured under a policy of insurance that also provides coverage for defendants Two Rivers and Harding (and perhaps Beall as well).

86.     That policy of insurance is likely an asset of the bankruptcy estate. *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) (noting dispute as to whether liability policy proceeds are an asset of bankruptcy estate and concluding that policies covering both debtor and officers will be property of estate if depletion of the proceeds would have an adverse effect on the estate).

87.     Indeed, Starstone has asserted that the bankruptcy stay prevents it from expending any funds on McKowen's defense.

88.     As this Court observed during the Scheduling Conference, resolution of Paulson's request for class certification will have a significant impact on the scope of discovery in this case.

89.     As noted, there are several imminent deadlines in the GrowCo Bankruptcy Case relating to the confirmation of GrowCo's proposed plan of reorganization.  Confirmation of that plan will likely affect issues related to class certification, which will in turn impact how McKowen chooses to defend this matter.

90.     For example, Plan confirmation will likely have an impact on the question of numerosity.  Investor-creditors will have the opportunity to vote on whether they wish to accept GrowCo's plan and the proposed treatment of their claims.   The current proposed plan (which is a matter of public record in the GrowCo Bankruptcy Case) provides for payment of the principal amount of the Investor-creditors' notes over time.  Putative class members may decide to accept the GrowCo plan's treatment of their claim rather than participate as a member of the

class that Paulson seeks to certify.

91.     Whether Paulson can establish the numerosity requirement for class certification is already in serious doubt – even assuming that every purchaser of GrowCo securities were to be a class member. Paulson participated in only one of the eight offerings of GrowCo securities, in which there were only 23 investors – making joinder "not impractical." Even if all investors in all of the GrowCo securities offerings were counted (approximately 65), the defection of some putative class members means that it is unlikely that joinder will be impractical. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (holding that trial court did not err in concluding that potential class of 84 putative members was not sufficiently numerous to make joinder impracticable).

92.     Staying discovery in this matter for 180 days, pending Plan confirmation (or rejection) will provide for more certainty about the prospects of class certification.  It will also allow McKowen and the other Defendants the opportunity to evaluate their exposure and make an informed decision as to how to approach discovery, whether it will be necessary to seek leave of the bankruptcy court to access the Starstone policy, and to make any such motions that may be required for that purpose.

**G.     Staying discovery will similarly streamline the Court's determination of whether class certification is proper or eliminate the need to address the issue entirely**

93.     Similarly, staying discovery in this action pending Plan confirmation will make the court's determination of whether to certify the class simpler. As discussed herein, GrowCo's proposed reorganization plan is likely to have a significant impact on putative class members' interest in pursuing this litigation.

94.     This, in turn, will bear directly on the questions of whether the proposed class is sufficiently numerous to make joinder impractical and whether Paulson himself is an adequate class representative.

95.     More importantly, plan confirmation may entirely moot the issues in this case, such that this factor weighs entirely against relief.  The bankruptcy court could approve a Chapter 11 Plan, with the endorsement of GrowCo's investor-creditors, which will provide substantial value to them within the next 120 days.  Approval of such a plan may well eliminate the need to move forward with this litigation.

96.     On the other hand, moving forward at this time will be neither economical nor efficient.  If this motion is denied, there will likely be extensive discovery, briefing, and then a hearing on the issue of class certification.  If a class were allowed, class members would be given notice and the option to opt-out under F.R.C.P. 23.

97.     It makes no sense to consume the parties' resources, the court's resources, and GrowCo's resources while an alternative—and more efficient—process is simultaneously moving forward in the Bankruptcy Case.

98.     The interest of judicial economy and the expeditious and economical determination of litigation factor weighs entirely against relief.

99.     Allowing the bankruptcy process to move forward will give all parties more certainty regarding issues of class certification and damages, which should decrease the complexity of the issues, thereby decreasing the economic burden on the parties and the administrative burden on the court.

## CONCLUSION

100.    Granting this motion to stay is in the interests of both the defendants and the putative class members.    Staying discovery in this matter for 180 days, pending plan confirmation in GrowCo's Chapter 11 case, will advance the public interest and streamline the critical issues in this matter.

101.    A stay of 180 days will allow the bankruptcy case to move forward to a point where the defendants can evaluate their potential damages exposure, develop discovery plans regarding numerosity and adequacy, and make an informed decision regarding the impact of any necessary motions to the bankruptcy court to obtain benefits under the Starstone policy.

WHEREFORE, McKowen humbly asks this Court to stay the present case for 180 days.

**DATED** this 23rd day of January, 2020.

Respectfully submitted,

**OGBORN MIHM LLP**

*/s/ Susan H. Jacks*
Susan Hardie Jacks, #32642
James E. Fogg, #47763
Thomas D. Neville, #35011
1700 Lincoln, Suite 2700
Denver, CO 80290
Phone: 303.592.5900
Fax:    303.592.5910
Email:  Susie.Jacks@OMTrial.com
           James.Fogg@OMTrial.com
           Thomas.Neville@OMTrial.com

*Attorneys for Defendant John R. McKowen*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of January, 2020, a true and correct copy of the foregoing has been filed electronically via CM/ECF and served on the following by email and by first class, U.S. mail:

Steven A. Miller, No. 8758
STEVEN A. MILLER, P.C.
162 Larimer St., Suite 2906
Denver, CO 80202
Sampc01@gmail.com

*Local Counsel for Plaintiffs*

Otto Hilbert
otto@ottolaw.com

*Counsel for Two Rivers*

Wayne Harding
22856 E. Weaver Dr.
Aurora CO 80016

Paul J. Scarlato
Christian A. Pfeiffer
GOLDMAN SCARLATO & PENNY, P.C.
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
scarlato@lawgsp.com
pfeiffer@lawgsp.com

J. Barton Goplerud
Brian O. Marty
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Dr., Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

Alan L. Rosca
GOLDMAN SCARLATO & PENNY, PC
23250 Chargin Blvd., Suite 100
Beachwood, OH 44122
rosca@lawgsp.com

*Counsel for Plaintiff and the Putative Class*

*/s/ Jessica Whitesell*
Jessica Whitesell