# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| **JOHN PAULSON,**<br>**Individually and on Behalf of all Others**<br>**Similarly Situated,**<br><br>                **Plaintiff**<br><br>    **v.**<br><br>**TWO RIVERS WATER AND**<br>**FARMING COMPANY, JOHN R.**<br>**MCKOWEN, WAYNE HARDING and**<br>**TIMOTHY BEALL,**<br><br>**Defendants** | **Civil Action No. 19-cv-02639-PAB-NYW** |

___

### REVISED UNOPPOSED MOTION OF PLAINTIFF FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL

Plaintiff and proposed class representative, John Paulson ("Plaintiff"), respectfully submits this memorandum in support of his revised unopposed motion for (i) preliminary approval of the proposed settlement (the "Settlement") of the above-captioned class action (the "Action") on the terms and conditions set forth in the Settlement Agreement dated October 7, 2020 (the "Settlement Agreement") submitted herewith;[1] (ii) certification of the Settlement Class for settlement purposes; (iii) approval of the form and manner of providing notice of the proposed Settlement to the Settlement Class; and (iv) scheduling of a hearing to consider final approval of the Settlement (the "Fairness Hearing").

___

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Paul J. Scarlato in support of this Motion filed herewith ("Decl. ¶__"). All capitalized terms not otherwise defined herein have the meaning set forth in the Settlement Agreement.

## I.     INTRODUCTION

Subject to Court approval, Plaintiff, on behalf of himself and the putative Class (defined below), have agreed to settle all claims asserted or that could have been asserted in the Action against defendants Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding"), and Timothy Beall ("Beall") (collectively, "Defendants")[2] in exchange for $1.5 million in cash (the "Settlement Fund").

The Settlement, if approved, will resolve and release all claims against Defendants and certain related parties. Plaintiff's principal reason for entering into the Settlement is the substantial cash benefit provided for the Class, balanced against the limited resources of the Defendants and the significant risk that a smaller recovery—or indeed, no recovery—might be achieved after additional steps in the litigation that could last for years.

During the course of the litigation, Plaintiff, through proposed Class Counsel and Additional Plaintiff's Counsel, among other things: (a) drafted two detailed complaints; (b) conducted an extensive investigation into the Class' claims through formal and informal discovery of the Defendants and third parties; (c) successfully opposed a motion to stay the Action pending bankruptcy court proceedings regarding GrowCo, Inc. ("GrowCo"), a subsidiary of Two Rivers; (d) fully briefed a motion to dismiss by Mr. McKowen; (e) retained counsel to appear in the bankruptcy court to defend an adversary proceeding filed against Mr. Paulson by GrowCo, which sought to stay this Action, and to oppose GrowCo's request for a temporary restraining order ("TRO") and preliminary injunction; (f) obtained a Clerk's default against Mr. Beall; (g) prepared a mediation statement and memoranda of law in connection with an all-day mediation session before Judge William Meyer (Ret.) of the Judicial Arbiter Group, Inc ("JAG") on July 21, 2020;

---

[2] Plaintiff and Defendants are referred to collectively as the "Parties."

(h) continued settlement negotiations with Defendants with Judge Meyer's assistance over the course of several weeks before reaching an agreement in principle to resolve the Action on August 7, 2020; (i) drafted the Settlement Agreement and supporting documents, and (j) moved to dismiss Two Rivers as a party to the litigation without prejudice due to Two Rivers' failure to obtain substitute counsel after its most recent counsel withdrew from the case.

The Parties reached the Settlement following the mediation conducted by Judge Meyer, at which counsel for all Parties as well as representatives of Defendants' insurance carrier, Starstone Specialty Casualty Insurance Company ("Starstone"), were in attendance. Counsel for the Parties and Starstone also engaged in extensive settlement-related communications before and after the mediation. Plaintiff closely monitored and participated in this Action and recommends the Settlement be approved. Proposed Class Counsel, who have extensive experience in complex litigation and class actions, believe the Settlement is in the best interests of the Class, ("Class" or "Settlement Class") which is defined as follows:

> All persons or entities who currently hold claims based on securities of GrowCo, and who purchased or otherwise acquired the securities through offerings listed below (the "Offerings"), during the time period beginning October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment:

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in Exhibit E to the Settlement Agreement

for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Action and his or her law clerks; and (4) except as provided in the Settlement Agreement, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who validly request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order. See, Decl. Ex. 1 (Settlement Agreement).

Prior to the Fairness Hearing, the Parties will submit a motion for final approval ("Final Approval"), which will ask the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate. At this time, Plaintiff requests only that the Court grant preliminary approval ("Preliminary Approval") of the Settlement so that notice ("Class Notice" or "Notice") of the Settlement may be disseminated to the members of the Class ("Class Members"), the Class may have an opportunity to object or exclude themselves from the Class, and the Fairness Hearing may be scheduled.

Plaintiff respectfully requests the Court enter the proposed order submitted herewith that will: (a) grant Preliminary Approval; (b) approve the form and manner of giving Notice to the Class; (c) preliminarily certify the Class for the purposes of Settlement; (d) appoint Class Counsel, and Additional Plaintiff's Counsel; and (e) schedule the Fairness Hearing at which the Court will consider (i) Final Approval, (ii) approval of the Plan of Allocation for distribution of the Settlement Fund, and (iii) Class Counsel's application for an award of attorneys' fees and expenses ("Attorneys' Fees and Expenses Award"), and for a Service Award to the Plaintiff. Plaintiff requests the Court schedule the Fairness Hearing at the earliest possible date, preferably sixty days after preliminary approval, or as soon thereafter as possible.

## II.     DESCRIPTION OF THE LITIGATION

Plaintiff initiated the Action on August 13, 2019, by filing a class action complaint against Defendants Two Rivers, McKowen, Harding, and Beall arising out of Plaintiff's purchase of securities in GrowCo.[3] Plaintiff's amended complaint (the "Complaint" or "AC"), alleges that Defendants McKowen, Harding and Beall were each officers and control persons of Two Rivers, and sold and promoted the Offerings to Plaintiff and the class while omitting material information about Mr. McKowen's background.

The circumstances that gave rise to the Offerings are as follows. On November 6, 2012, Colorado Amendment 64, a ballot initiative allowing for recreational use of marijuana throughout the State of Colorado, was passed. AC ¶ 16. In or about May of 2014, Two Rivers and McKowen formed GrowCo to capitalize on Colorado's burgeoning marijuana business. AC ¶ 17. In order to support the operations of Two Rivers and GrowCo, Defendants raised money from investors through the Offerings. AC ¶ 28. As part of the Offerings, GrowCo and the Defendants prepared and distributed documents to prospective investors including sales presentations, memoranda of terms, exchange note purchase agreements, investor questionnaires, and other documents (the "Offering Documents") which purported to make material disclosures to investors about GrowCo and the Offerings. AC ¶ 27. Plaintiff alleges that the Offering Documents omitted information about Defendant McKowen that Plaintiff claims should have been disclosed; namely an NASD disciplinary action, fine, and suspension in 1987 (AC ¶¶ 30-37), a 1995 bankruptcy filing, (AC ¶ 38), and a 1992 default judgment in connection with a 1991 administrative complaint filed by the Indiana Securities Division. AC ¶¶ 40-41. Plaintiff also alleges that the funds received from the

---

[3] GrowCo was in bankruptcy and not named as a party to this Action. See, *In re: GrowCo, Inc.,* Case No. 19-10512 (D. Colo. Bankr. Ct.) (the "Bankruptcy Action"). On July 6, 2021, the Bankruptcy Court granted the United States Trustee's motion to dismiss the GrowCo Bankruptcy Action. Bankruptcy Action Doc. 263.

Offerings were immediately commingled with and passed through as capitalization for the operation of Two Rivers, AC ¶¶ 56, 96; that all of the Defendants benefitted financially from the Offerings; and that the proceeds from the Offerings "went to Two Rivers."[4]

The Complaint asserts claims against Defendants under the Colorado Securities Act, 11-51-101 *et. seq.,* and Colorado common law for failure to disclose the allegedly material information about Defendant McKowen's background in the Offering Documents. Plaintiff alleges that the securities became worthless upon GrowCo's bankruptcy filing. AC ¶ 60.

The Defendants dispute many of the allegations and deny liability for the claims. Defendant McKowen moved to dismiss the complaint on the basis, among others, that the information about his past concerned the distant past, was not required to be disclosed, and was not material to investors' decisions to purchase GrowCo securities.

### III.    HISTORY OF THE LITIGATION

This Action was aggressively litigated. Plaintiff filed his initial complaint in Colorado state court. Defendant McKowen removed the case to this Court, (Doc. 1), and filed an Answer. (Doc. 2). The Court held a scheduling conference and set a schedule for the case. (Doc. 37). McKowen then moved to stay the Action pending the outcome of GrowCo's bankruptcy. (Doc. 47). Separately, GrowCo initiated an adversary proceeding against Plaintiff in the bankruptcy court and moved for a TRO and preliminary injunction seeking to stop the Class Action.[5] Plaintiff successfully opposed the motion to stay in this Court, and the adversary proceeding, and request

---

[4] (Doc. 58 ¶ 11). GrowCo asserted in the Bankruptcy Action that an audit of the funds raised through the Offerings concluded that the funds "either could not be accounted for or were transferred to Two Rivers and/or TR Capital without explanation or consideration being received in return." *GrowCo, Inc. v. Two Rivers Water & Farming Company et al.,* Adv. Proc. No. 19-01337.

[5] *In re: GrowCo, Inc. v. John Paulson,* Adv. Proc. No. 19-1275 (D. Colo. Bankr. Ct.) (the "Adversary Proceeding").

for a TRO and injunction. (Adversary Proceeding, Doc. 14). Plaintiff then filed the Complaint alleging additional facts and legal claims. (Doc. 56). McKowen moved to dismiss the Complaint on several bases. (Doc. 73). Plaintiff opposed that motion. (Doc. 85). McKowen's motion to dismiss was fully briefed and pending before the Court when the Parties reached the proposed Settlement.

The Parties engaged in discovery, which included Plaintiff serving requests for production of documents, interrogatories, and requests for admissions on each of the Defendants, and document subpoenas on third parties. Plaintiff reviewed and analyzed documents produced by Defendants McKowen and Beall, and from other sources. Plaintiff obtained a clerk's default against Defendant Beall. (Doc. 86). Mr. Beall moved to set aside the clerk's default and to dismiss the Complaint. (Doc. 94-96).

## IV.     THE SETTLEMENT NEGOTIATIONS

As the litigation efforts were continuing, the Parties agreed to explore settlement and scheduled a mediation session with Judge Meyer. The Parties, along with Starstone, conducted a day-long mediation session and continued negotiations over the following weeks with Judge Meyer's assistance. On August 7, 2020, the Parties reached an agreement.

## V.     THE PROPOSED SETTLEMENT

The proposed Settlement, if approved by the Court, will resolve and release claims of the Settlement Class against all Defendants. The Settlement provides that Defendants' insurer shall pay $1.5 million for the benefit of the Settlement Class. Plaintiff arrived at his decision to settle this Action after his counsel conducted a thorough investigation of the claims and allegations asserted in the Complaint. In addition, the Settlement was the product of extensive arms-length negotiations conducted with Judge Meyer's assistance. In evaluating the Settlement, Plaintiff and

his counsel considered: (a) the substantial benefits to the Members of the Class from the Settlement; (b) the facts developed during Plaintiff's investigation and discovery; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (d) the probability of success on the merits; (e) the availability of sufficient assets to fund a judgment; and (f) the conclusion of Plaintiff's counsel that the terms and conditions of the Settlement are fair, reasonable, adequate and in the best interests of Plaintiff and the Class.

Each Defendant has vigorously denied, and continues to deny, that he or it committed any violation of the securities laws or any other law or engaged in any of the wrongful acts alleged in the Action. Each Defendant expressly maintains that he or it is entering into the Settlement solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation and because of the availability of insurance coverage to fund the Settlement.

The $1.5 million Settlement provides a substantial and immediate benefit to the Class. Although Class Counsel believes it will likely be able to prove Plaintiff's claims, there is a substantial risk that Class members would not be able to recover anything at all if the Action were not settled. Based on Two Rivers' current financial situation, it is unlikely Two Rivers would be able to satisfy a judgment. See, Dec. Ex. 2 and 3. Plaintiff would need to seek recovery from the personal assets of the individual Defendants which recovery is questionable. Defendants have an insurance policy that covers the claims up to $2 million, but the amount is reduced by the costs of defense. The $1.5 million Settlement represents substantially all of the remaining insurance coverage net of defense costs to date. In considering whether to settle, the Plaintiff considered that if he persisted with the litigation, the amount of insurance coverage available to satisfy a judgment would be substantially less than the Settlement because as defense costs increase, available funds for settlement would decrease. Finally, if litigation continued, the Class would still need to

overcome various legal defenses and procedural hurdles in order to survive any dispositive or certification motions or recover at trial.

The Class Notice, substantially in the form attached as Ex. B to the Settlement Agreement, (Decl. Ex. 1), explains the terms of the Settlement, including that the Net Cash Settlement Amount will be distributed to eligible Settlement Class Members who timely submit a valid Claim Form pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants or any persons/entities paying the same.[6] It informs Settlement Class Members of Class Counsel's application for an Attorneys' Fees and Expenses Award and Service Award in connection with the representation of the Class, and the proposed Plan of Allocation for distributing the Net Cash Settlement Amount. The Notice further details: (i) the procedures for objecting to the Settlement, the Plan of Allocation, Class Counsel's application for an Attorneys' Fees and Expenses Award, and Service Award; (ii) the procedure for requesting exclusion from the Class, and (iii) the date, time, and location of the Fairness Hearing.

## VI.    PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL AND SUBSEQUENT EVENTS

On October 9, 2020, Plaintiff filed an unopposed motion for preliminary approval of the Settlement. Doc. 131. On January 5, 2021, while Plaintiff's motion remained pending, Defendant Two Rivers' third lawyer in this action moved to withdraw as counsel. Docs. 132 and 133. That motion was unopposed.

On January 25, 2021, the Court issued an Order granting the motion to withdraw, and requiring Two Rivers to, on or before February 15, 2021, show cause why the Court should not

---

[6] Plaintiff has attached as Exhibit 6 to the Scarlato Declaration, a proposed revised Class Notice. The revised Class Notice, substantially in the form of Exhibit B to the Settlement Agreement, has been updated to explain the circumstances under which Two Rivers was dismissed as a party to the Action. Plaintiff requests that the Court approve form of Notice as updated.

recommend sanctions against Two Rivers for its failure to participate in this matter in the absence of legal representation. Doc. 137. Two Rivers failed to meet the Court's deadline.

On February 24, 2021, the Court Ordered that "[a]s a corporation, Two Rivers must appear in this case through counsel," and that "the Court will not rule on the motion for preliminary approval until counsel enters an appearance on behalf of Two Rivers." Doc. 139.

On March 10, 2021, the Court entered a Minute Order indicating that it would "deny without prejudice the motion for preliminary approval unless counsel for Two Rivers enters an appearance on or before March 16, 2021." Doc. 145. In response, on March 15, 2021, Plaintiff moved for status conference and requested that the Court hold its ruling denying preliminary approval of the Settlement in abeyance until after any such status conference is held. Doc. 146.

On April 6, 2021, Plaintiff moved to dismiss Two Rivers as a party to this litigation without prejudice to allow the Settlement approval process, which was stalled due to Two Rivers' refusal to obtain new counsel, to move forward. Doc. 149.

On June 29, 2021, the Court entered an Order granting Plaintiff's motion and dismissing Two Rivers as a party. Doc. 153. On July 7, 2021, the Court entered a Minute Order directing that Plaintiff may filed a revised motion for preliminary approval and a motion to withdraw Doc. 131 on or before July 16, 2021. Doc. 154. Plaintiff filed the instant motion in response thereto.

## VII.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts. *See, American Home Assurance Co. v. Cessna Aircraft Co.,* 551 F. 2d 804, 808 (10th Cir. 1977) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."); *see also Big O Tires, Inc. v. Bigfoot 4x4, Inc.,* 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law favors

and encourages settlements[;] [t]he settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation."). The "presumption in favor of voluntary settlement agreements" is especially strong in class actions. *O'Dowd v. Anthem, Inc.,* 2019 U.S. Dist. LEXIS 153610 at *35, 2019 WL 4279123 (D. Colo. Sept. 9, 2019), quoting *Tuten v. United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014).

Judicial approval for the compromise of class claims under Fed. R. Civ. P. 23(e) consists of a two-step process: preliminary approval and a subsequent fairness hearing. In this first stage, the Court preliminarily approves the settlement agreement, certifies a settlement class, and authorizes that notice be given to the class so that interested members may object to the fairness of the settlement or opt out of the class. Fed. R. Civ. P. 23(e). In the second stage, after notice is provided to the Settlement Class, the Court holds a fairness hearing at which it will address any timely objections to either class treatment of the litigation or the fairness and adequacy of the settlement.

"The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and proceed with a fairness hearing." *McKeon v. Integrity Pizza LLC,* 2020 U.S. Dist. LEXIS 140513 at *4 (D. Colo., Aug. 6, 2020), quoting *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). "Preliminary approval of a class action settlement. . . is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.,* 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (Brimmer, J.) quoting *Davis v. J.P. Morgan Chase & Co*., 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011). A settlement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs.,* 308 F.R.D. 664, 666 (D. Colo. 2015). The proposed Settlement easily meets this standard.

## A.    The Settlement Is the Product of Serious and Informed Arm's-Length Negotiations Among the Parties

The Settlement is the product of fair, honest, and vigorous negotiations among the Parties, under the supervision of an experienced mediator and with the guidance and input of experienced and informed counsel. Settlement negotiations were supervised by Judge Meyer, a former Denver District Court Judge. Courts in this Circuit and elsewhere recognize that the involvement of an experienced mediator strongly supports the fairness of a proposed settlement. *See, In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *16-17 (D. Colo. Sept. 28, 2006). The Parties each submitted comprehensive mediation statements to Judge Meyer who reviewed the statements, as well as other briefs, motions, and orders, submitted to, or issued by the Court, and the court in the Bankruptcy Action and Adversary Proceeding. The Parties participated in an all-day, formal mediation session. In the following weeks, the Parties, with Judge Meyer, continued to discuss settlement. As a result, the Parties reached the proposed Settlement.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of their cases before agreeing to the Settlement. Prior to filing the Complaint, Plaintiff, through his counsel, conducted an extensive investigation into the facts that included: a review of SEC, NASD and FINRA filings, filings of state securities regulators, and news articles, and filings in the GrowCo Bankruptcy Action. Defendants and third parties produced numerous documents to Plaintiff in response to Plaintiff's discovery requests and subpoenas. Plaintiff obtained a significant number of documents from third parties through informal discovery. Class

Counsel, who have extensive experience in prosecuting class actions across the country, concluded that the Settlement is in the best interests of the Settlement Class. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." (internal quotations omitted)).

The fact that the Settlement is the product of an arm's-length negotiation overseen by an experienced mediator, has been approved by the Plaintiff, with guidance and input from experienced and informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. It is, therefore, presumptively fair, reasonable and adequate.

**B.     The Settlement Has No Obvious Deficiencies and Falls Within the Range of Possible Approval**

The Settlement represents a beneficial outcome for the Settlement Class, and nothing in the Settlement's terms or the manner in which they were negotiated raises any obvious deficiencies that would impede preliminary approval. The Settlement provides for Defendants to pay $1.5 million in cash, which represents substantially all of Defendants' available insurance. The Settlement "falls within the range of possible approval," meaning the range of possible litigation outcomes, when its benefits are weighed against the risks that the Settlement Class could recover far less (or even nothing) if litigation were to continue. See. MANUAL FOR COMPLEX LITIGATION, § 21.632**.**

Two Rivers' financial condition weighs in favor of approval of the Settlement. *See, e.g., Wornicki v. Brokerpriceopinion.com, Inc.,* 2017 U.S. Dist. LEXIS 121535 at *8-9 (D. Colo. Aug. 2, 2017) (Brimmer, J.); See also, *Charter Commc'ns, Inc. Sec. Litig.,* No. MDL 1506, 3:02-CV-1186 CAS, 2005 WL 4045741 at *8 (E.D. Mo., June 30, 2005) (approving settlement and noting even if plaintiffs prevailed on their claims and overcame liability challenges, there were

considerable risks regarding its ability to collect any sizeable judgment from defendant); *In re Northfield Labs, Inc. Sec. Litig.,* No. 06 C 1493, 2012 WL 2458445 at *3 (N.D. Ill. June 26, 2012) (granting final approval to settlement and noting the "plaintiff class is unlikely ever to get more" where defendant was in bankruptcy and the settlement proceeds came from an insurance policy, which if the case continued, may reach its limit due to defense costs); *In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2009 WL 512081 at *15 (E.D. La. Mar. 2, 2009) (bankruptcy and the fact that defendant's insurance policies were being depleted by litigation expenses and attorneys' fees, weighed in favor of approval of settlement).

As stated above, GrowCo was not named as a party to the Action because it was in bankruptcy. AC ¶ 11. Two Rivers' ability to satisfy a judgment is highly questionable. According to its most recent report filed with the SEC on Form 10-Q for the quarter ending September 30, 2019, Two Rivers had current assets of $401,000 compared to current liabilities of $22,453,000, and generated total revenues of $145,000 for the first nine months of 2019 and incurred $372,000 of operating expenses. Decl. Ex. 2. Moreover, the Form 10-Q included a statement that due to its working capital deficit of over $21 million, there is "substantial doubt about the Company's ability to continue as a going concern." See, Decl. Ex. 2: In addition, a July 15, 2020 "Letter to Shareholders" by Two Rivers' CEO, attached to a Form 8-K filed with the SEC on July 17, 2020, detailed a number of legal, accounting and operational issues not properly disclosed to the company prior to his acceptance of the interim CEO/CFO position that hampered the company financially, including an undisclosed judgment for $225,000 that "financially blindsided" the company, undisclosed transactions involving warrants and convertible loans, and a financing agreement that resulted in almost $300,000 in fees paid by the company. See, Decl. Ex. 3. Two Rivers has not filed any further reports with the SEC since the July 2020 filing. To the extent

Two Rivers has assets, Plaintiff understands that those assets are encumbered by security interests. Based on the above, Two Rivers' ability to pay a judgment or fund a settlement is, at best, highly uncertain.

Plaintiff also recognizes the substantial risks to proving Defendants' liability. The Complaint alleges, among other things, that Defendants misled investors by failing to disclose facts relating to McKowen's prior regulatory actions and his bankruptcy. McKowen moved to dismiss Plaintiff's claims arguing that Plaintiff failed to plead the claims with particularity and that Plaintiff had not alleged facts supporting McKowen's duty to disclose. (Doc. 73). That motion was fully briefed and *sub judice* when the Settlement was reached. Defendant Beall moved to dismiss the Amended Complaint arguing, among other things, that Plaintiff failed to plead facts showing Beall was involved in the alleged wrongful conduct, or that Beall had a duty to disclose. (Doc. 96). Further, while Plaintiff strongly believes that the Action is appropriate for class certification, there is no guarantee Plaintiff would prevail on such a motion, and Defendants certainly would challenge the appropriateness of certifying a class.

In sum, the Parties strongly disagree on several key factual and legal issues central to the Action, and there is no guarantee Plaintiff would prevail on the motions to dismiss, a motion to certify the class, motions for summary judgment, or at trial. The Settlement enables the Settlement Class to recover a substantial sum without incurring the risk that Defendants would prevail on these issues. The Settlement is an excellent result for the Settlement Class, particularly in view of these significant litigation risks and ability-to-pay concerns. Plaintiff and Class Counsel respectfully submit that preliminary approval is appropriate.

## VIII.   THE LITIGATION SHOULD BE CERTIFIED AS A CLASS ACTION FOR SETTLEMENT PURPOSES

In granting Preliminary Approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class is identified above.

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.   The Settlement Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a).

Courts in the Tenth Circuit have certified classes ranging in size from tens to hundreds of thousands. *Beltran v. InterExchange, Inc.*, 2018 U.S. Dist. LEXIS 23940, *12 (D. Colo. Feb. 2, 2018); *Rex v. Owens*, 585 F.2d 432, 435 (10th Cir. 1978) ("Class actions have been deemed viable . . . where as few as 17 to 20 persons are identified as the class"); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504-05 (D. Kan. 2014) ("[C]lasses as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action" (internal quotations omitted)). The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable. *Robidoux v. Celani,* 987 F. 2d 931, 935 (2nd Cir. 1993), citing 1 Herbert B. Newberg, *Newberg of Class Actions: A Manual for Group Litigation at Federal and State Levels,* §. 3.05 at 141-42 (2d ed. 1985).

Here, Class Counsel has obtained a list of known GrowCo investors in the Offerings that comprise the Class from GrowCo's bankruptcy counsel. That list includes the names of over 80 investors in the Offerings, which number easily satisfies numerosity.

### 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement asks only that significant common issues of law or fact exist. *Queen Uno Ltd. Pshp. V. Coeur D'Alene Mones Corp.,* 183 F.R.D. 687, 691 (D. Colo. 1998) (Brimmer, J.). This Action raises numerous common questions of law and fact. Plaintiff's claims concern common alleged omissions from the GrowCo Offering Documents about Defendant McKowen's background, and whether the omissions in the GrowCo Offering Documents were material to GrowCo investors. Courts in this District have found that similar questions of law and fact easily meet the commonality requirements. *See, e.g., In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 444 (D. Colo. 2015).

### 3.    Plaintiff's Claims Are Typical of The Settlement Class

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Crocs*, 306 F.R.D. at 686 (internal quotations omitted). "[P]rovided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010). Here, Plaintiff and the Class Members are all investors in GrowCo securities. The failure to disclose the allegedly material information described above was common to all of the Offerings. Thus, the claims of Plaintiff and Class Members are based on the same alleged material omissions. See, AC ¶¶ 30-

42. Plaintiff's claims and the claims of Class Members are based on the same legal theories and would be proven by the same evidence, thus typicality is satisfied.

### 4. Plaintiff Will Fairly and Adequately Protect the Interests of The Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two inquiries are relevant to determining whether adequacy is satisfied: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Crocs*, 306 F.R.D. at 688, quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

There is no conflict of interest between Plaintiff and the proposed Settlement Class. Plaintiff and the Class Members suffered losses in connection with their investments in GrowCo securities during the Class Period. Thus, Plaintiff and Class Members share the same interest in maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Moreover, Plaintiff and Class Counsel have, and will continue to, vigorously protect the interests of the Class. Plaintiff and Class Counsel devoted significant time and resources to initiating, prosecuting, and negotiating an exceptional resolution to this Action. Class Counsel has extensive experience and expertise in prosecuting complex securities litigation and class action proceedings throughout the United States. See, firm resumes of Goldman, Scarlato & Penny, P.C. and Schindler, Anderson, Goplerud & Weese, P.C., Dec. Ex. 4 and 5.

**B.      The Settlement Class Satisfies the Requirement of Rule 23(b)**

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.      Common Legal and Factual Questions Predominate**

As the Supreme Court has noted, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Crocs*, 306 F.R.D. at 689; *Crocs*, 306 F.R.D. at 689; *In re United Telecomms., Inc. Sec. Litig.*, 1992 WL 309884, at *3 (D. Kan. Sept. 15, 1992) ("Where plaintiffs allege a common nucleus of misrepresentations, material omissions, and market manipulation, the common questions predominate over any differences between individual class members with respect to damages, causation, and reliance."). Indeed, as the above analysis of Plaintiff's allegations under Rule 23(a)(2)'s commonality standard demonstrates, there are numerous questions of law and fact common to Plaintiff and the proposed Settlement Class, including whether Defendants omitted material information about McKowen's background in connection with the Offerings that was required to be disclosed, and whether, and to what extent, Settlement Class Members suffered damages proximately caused by such alleged omissions.

**2.      A Class Action is Superior to Other Methods of Adjudication**

Settlement of this Action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues" and "because individual recovery for these claims is likely too small to provide an incentive for individual class members to adjudicate individual claims." *Crocs*, 306 F.R.D. at 689-90.  In securities cases, the class action device is usually the

superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigation. *See, e.g.*, *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule," securities cases "easily satisfy the superiority requirement. . ." (internal quotations omitted)). That rationale applies equally here.

## IX.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Class Counsel will notify Settlement Class members of the pendency of the action and the proposed Settlement by causing the Notice and Claim Form to be direct mailed to all Settlement Class Members, all of whom can be identified through GrowCo's records. The proposed Notice advises Settlement Class Members of: (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Class Counsel's motion for Attorneys' Fees and Expenses Award. The proposed Notice also provides specifics on the date, time and place of the Fairness Hearing and sets forth the procedures, as well as deadlines, for seeking exclusion from the Settlement Class, for objecting, and for submitting a Claim Form.

The form and manner of providing Notice to the Settlement Class satisfy the requirements of due process and Rule 23. The Notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)). Moreover, Class Counsel has a physical address for all Class Members. Direct mail in this situation constitutes the best notice practicable.

## X.    PROPOSED SCHEDULE AND REQUEST FOR FAIRNESS HEARING

In connection with preliminary approval of the Settlement, Plaintiff requests the Court schedule a Fairness Hearing sixty days after Preliminary Approval, or as soon as is convenient for the Court. A prompt Fairness Hearing will give certainty to Settlement Class Members. The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Settlement Class ("Notice Date") | Not later than fourteen (14) days after the date of entry of the Court's Preliminary Approval Order. |
| Deadline for Class Members to exclude themselves from the Class | Not later than 30 calendar days after the Notice Date. |
| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request | Not later than 21 calendar days prior to the Fairness Hearing. |
| Receipt deadline for objections and requests for exclusion from the Settlement Class | Not later than fourteen (14) calendar days prior to the Fairness Hearing. |
| Filing of reply papers in support of final approval of the Settlement, the Plan of Allocation, and Class Counsel's fee and expense request | Not later than seven (7) calendar days prior to the Fairness Hearing. |
| Deadline for submitting Claim Forms | Postmarked sixty (60) calendar days after the Notice Date (Class Counsel may, at its discretion, accept for processing late Claims). |

## XI.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement; certify the Settlement Class and appoint Plaintiff as class representative and Class Counsel as class counsel, for purposes of the Settlement; approve the form and manner of providing Notice of the Settlement to the Settlement Class; and enter the accompanying proposed Preliminary Approval Order.

Respectfully submitted this 16th day of July 2021.

/s/ Steve A. Miller
Steve A. Miller, No. 8758
STEVE A. MILLER, P.C.
162 Larimer St., Suite 2906
Denver, CO 80202
Telephone: (303) 892-9933
Fax: (303) 892-8925
Email: Sampc01@gmail.com

*Local Counsel for Plaintiff*

Paul J. Scarlato *(pro hac vice)*
GOLDMAN SCARLATO & PENNY, PC
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Telephone: (484) 342-0700
E-mail: scarlato@lawgsp.com

Alan L. Rosca, Esq *(pro hac vice)*
GOLDMAN SCARLATO & PENNY, PC
23250 Chagrin Blvd. Suite 100
Beachwood, OH 44122
Telephone: (484) 342-0700
E-mail: rosca@lawgsp.com

J. Barton Goplerud (*pro hac vice forthcoming*)
Brian O. Marty (*pro hac vice forthcoming*)
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Dr., Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com

*Counsel for Plaintiff and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 16th day of July, 2021, a true and correct copy of the foregoing has been filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

<u>/s/ Steve A. Miller</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02639-PAB-NYW

JOHN PAULSON, an individual,

Plaintiff,

v.

TWO RIVERS WATER AND FARMING COMPANY, a Colorado corporation; JOHN R.
MCKOWEN, an individual; WAYNE HARDING, an individual; and TIMOTHY BEALL, an
individual,

Defendants.

---

**DECLARATION OF PAUL J. SCARLATO IN SUPPORT OF
PLAINTIFF'S REVISED UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS,
AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

---

Paul J. Scarlato, pursuant to 28 U.S.C. § 746, declares as follows under penalty of perjury:

1.      I am a shareholder in the law firm Goldman Scarlato & Penny, P.C., one of the

proposed Class Counsel in the above-captioned action ("Action"). I submit this Declaration and

the Exhibits hereto in support of Plaintiff's Revised Unopposed Motion for Preliminary Approval

of Settlement, Certification of Class, and Appointment of Class.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement

and accompanying Exhibits entered into between the Parties to the Action.

3.      Attached hereto as Exhibit 2 is a true and correct copy of the Quarterly Report of

Two Rivers Water & Farming Company ("Two Rivers") on Form 10-Q for the quarter ending

September 30, 2019, filed with the Securities and Exchange Commission ("SEC") on November

25, 2019.

4.      Attached hereto as Exhibit 3 is a true and correct copy of a "Letter to Shareholders" from Two Rivers' CEO attached as Exhibit 20.1 to the Form 8-K Current Report filed with the SEC by Two Rivers on July 17, 2020.

5.      Attached hereto as Exhibit 4 is the firm resume of Goldman Scarlato & Penny, P.C. one of the proposed Class Counsel in the Action.

6.      Attached hereto as Exhibit 5 is the firm resume of Shindler, Anderson, Goplerud & Weese, P.C., one of the proposed Class Counsel in the Action.

7.      Attached hereto as Exhibit 6 is a revised proposed Class Notice that reflects the fact that Two Rivers was dismissed as a party to the Action.

Dated: July 16, 2021

/s/ *Paul J. Scarlato*
Paul J. Scarlato *(pro hac vice)*
GOLDMAN SCARLATO & PENNY, PC
161 Washington Street , Suite 1025
Conshohocken, PA 19428
Telephone: (484) 342-0700
E-mail: scarlato@lawgsp.com

*Counsel for Plaintiff and the Putative Class*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| JOHN PAULSON,<br>**Individually and on Behalf of all Others**<br>**Similarly Situated,**<br><br>Plaintiff<br><br>v.<br><br>**TWO RIVERS WATER AND**<br>**FARMING COMPANY, JOHN R.**<br>**MCKOWEN, WAYNE HARDING and**<br>**TIMOTHY BEALL,**<br><br>**Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 19-cv-02639-PAB-NYW |

## SETTLEMENT AGREEMENT

This Settlement Agreement is made pursuant to Rule 23 of the Federal Rules of Civil Procedure in the above-titled litigation (the "Class Action," or "Action"). Subject to the approval of the United States District Court for the District of Colorado (the "Court"), this Settlement Agreement is entered into among Plaintiff John Paulson ("Paulson" or "Plaintiff"), on behalf of himself and each of the Class Members (as defined below), and Defendants Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall") (Two Rivers, McKowen, Harding and Beall are referred to collectively as "Defendants"). Plaintiff and Defendants are referred to here as the "Settling Parties" or "Parties" and each individually as a "Party." The Parties intend this Settlement Agreement to resolve, discharge, and settle the Released Claims finally and forever according to the terms and conditions set forth below.

## I.      RECITALS

WHEREAS, the Parties state the following:

### A.      The Class Action Litigation

The Class Action was initiated on August 13, 2019, with the filing of a class action complaint captioned *John Paulson, individually and on behalf of all others similarly situated v. Two Rivers Water and Farming Company, John R. McKowen, Wayne Harding, and Timothy Beall*, Case No. 2019CV33099, in the District Court for the City and County of Denver, Colorado. The complaint asserted claims for violations of the Colorado Securities Act, C.R.S. §§ 11-51-101 *et seq.,* common law negligence, and negligent misrepresentations and omissions against Defendants arising out of the sales of securities of GrowCo, Inc. ("GrowCo") to Plaintiff and members of the proposed Class and the use of the sales proceeds. GrowCo was not named in the Class Action and has filed for Chapter 11 bankruptcy, *In Re GrowCo, Inc.,* Case No.  19-10512-JGR (D. Colo. Bankr.) (the "GrowCo Bankruptcy Action").

On September 16, 2019 Defendant McKowen removed the Class Action to this Court. (ECF 1).

On February 5, 2020, Plaintiff filed an amended complaint (the "Amended Complaint"). (ECF 57).  Defendants McKowen and Beall moved for dismissal of the Amended Complaint. (ECF 73, 96).

Defendants dispute Plaintiff's allegations and deny all liability in the Class Action.

While the case was pending before this Court, the Parties filed and opposed various motions and engaged in discovery.

### B. Settlement Negotiations

In June 2020, the Parties agreed to explore a possible settlement of the Action. The Parties scheduled a mediation session with the Honorable William Meyer (Ret.) of the Judicial Arbiter Group, Inc. for July 21, 2020. On June 16, 2020, the Parties filed a Joint Motion to Stay Proceedings and Extend Certain Deadlines pending the results of the mediation (ECF 98), which request was granted by the Court. (ECF 100–103).

On July 21, 2020, the Parties and their insurer participated in a one-day mediation session before Judge Meyer. Although substantial progress was made, the Class Action did not settle on that date. The Parties sought, and the Court granted, additional extensions of case deadlines in order for the Parties to continue discussing settlement. (ECF 104-113). Settlement discussions continued with Judge Meyer's assistance. On August 7, 2020, the Parties reached an agreement in principle to settle the Class Action and executed a Confidential Settlement Term Sheet.

On August 7, 2020, the Parties filed a joint Status Report with the Court and a joint Motion to Stay Proceedings so the Parties could finalize the settlement. (ECF 114-115). On August 11, 2020, the Court entered an Order staying all proceedings except those related to approval of the class action settlement until further order of the Court, and also ordered the Parties to file a motion for preliminary approval of the settlement or otherwise inform the Court of the status of settlement by September 11, 2020, (ECF 119), which date was continued until October 6, 2020.

### C. Materiality of Recitals

Each of the foregoing Recitals represents an integral and material component of this Settlement Agreement and is incorporated by reference into this Agreement.

### II. TERMS OF THE SETTLEMENT

IT IS HEREBY STIPULATED AND AGREED, by and among the Representative

3

Plaintiff, individually and on behalf of the Class Members, by and through his counsel and by and through each Defendant and their respective counsel, that this Class Action and all matters that have been, could have been, and/or could be raised between the Plaintiff on the one hand and the Defendants on the other hand in the Class Action are hereby settled and compromised. This Action will be dismissed on the merits and with prejudice as to Defendants, and the Released Claims will be released as to Defendants and all other Releasees based upon the terms and conditions set out in this Settlement Agreement (including the Release), subject to the Court's approval, and such approval becoming Final.

### A.   Definitions

1.      As used in this Settlement Agreement, the following capitalized terms have the following meanings:

a.      "Alleged Losses" means the principal amount paid for the GrowCo securities.

b.      "Approval Date" means the date on which the Court enters the Final Order Approving Settlement.

c.      "Attorneys' Fees, Expenses and Service Award Application" means the application for fees, expenses, and Service Award to be made by Class Counsel pursuant to paragraphs 12, *et seq*. below.

d.      "Attorneys' Fees and Expenses Award" means the fees and expenses awarded by the Court to Class Counsel and Additional Plaintiff's Counsel.

e.      "Authorized Claim" means a claim for recovery of Alleged Losses from an Authorized Claimant that has been found to be timely and valid under the terms of this Settlement Agreement.

4

f.  "Authorized Claimant" means a Class Member (or the representative of such Class Member, including, without limitation, agents, administrators, executors, heirs, predecessors, successor, affiliates or assigns) whose claim for recovery of Alleged Losses has been found to be timely and valid under the terms of this Settlement Agreement.

g.  "Claim" or "Claims" means any and all tort-based claims, contract-based claims, or claims in equity that were or could have been asserted in the Class Action between the Plaintiffs and Class Members on the one hand and the Defendants on the other. The Parties agree, however, that the Class Members shall retain their GrowCo securities and are not releasing the limited claim for payment of their securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

h.  "Claim Form" means the form that Class Members must submit to the Claims Administrator in order to receive relief for their Alleged Losses pursuant to Section D of this Settlement Agreement, which will, subject to Court approval, be substantially in the form set out in Exhibit C.

i.  "Class Members" or "Settlement Class" or "Settlement Class Members" means all persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses as defined above. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers

5

or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and

his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons

or entities released in the Settlement. Also excluded from the Settlement Class are the persons

and/or entities who request exclusion from the Settlement Class within the time period set by the

Court in the Preliminary Approval Order.

j.      "Class Counsel" means the following attorneys and law firms: Paul Scarlato

and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of

Shindler, Anderson, Goplerud & Weese, P.C. "Additional Plaintiff's Counsel" means Steve

Miller of Steve A. Miller, P.C.

k.      "Class Notice" or "Notice" means the notice described in Section D of this

Settlement Agreement that will be disseminated to Settlement Class Members to inform them of

the proposed Settlement, which notice shall, subject to Court approval, be substantially in the

form set out in Exhibit B to this Settlement Agreement.

l.      "Complete Bar Order" means the order described in Section I of this

Settlement Agreement.

m.      "Effective Date" means the first date by which all of the events and

conditions specified hereafter occur: (i) execution of this Settlement Agreement and such other

documents as may be required to obtain final Court approval of this Settlement Agreement in a

form satisfactory to the Settling Parties, (ii) the Settlement Administration Account has been

established as provided below, (iii) Defendants have not exercised their option to terminate the

Settlement Agreement pursuant to Section M hereof, (iv) the Court has approved the Class Notice,

substantially in the form of Exhibit B hereto, (v) the Court has entered the Final Order Approving

6

Settlement that, *inter alia*, dismisses with prejudice the Class Action and (vi) the Final Order Approving Settlement has become Final, as defined in Section A, paragraph "o" hereof.

n.      "Fairness Hearing" means the hearing at or after which the Court will make a decision (i) whether to approve the Settlement as fair, reasonable and adequate; (ii) whether to certify the Settlement Class; and (iii) whether to grant the Attorneys' Fees, Expenses and Service Award Application.

o.      "Final" means, when used in connection with any court order, that the order will be final: (1) if no appeal is taken, or the date on which the time to appeal from the order (including any potential extension of time) has expired; or (2) if any appeal is taken from the order, the date on which all such appeals—including any petitions for rehearing *en banc*, petitions for certiorari or any other form of review and any related appeals or petitions, including as to any appeal bond—have been finally disposed of, such that the time to appeal therefrom (including any potential extensions of time) has expired, in a manner resulting in an affirmance of the relevant order.

p.      "Net Cash Settlement Amount" means the balance remaining in the Settlement Administration Account (including any interest that has accrued) after the payments described in Section H, paragraph 15 below are made from the Settlement Administration Account.

q.      "Notice and Administrative Expenses" means all expenses associated with administration and implementation of this Settlement, including the Claims Administrator's fees and expenses; provided, however, that Notice and Administrative Expenses shall not include the Attorneys' Fees and Expenses.

7

r.    "Objection Date" means the date by which objections to the Settlement proposed in this Settlement Agreement must be filed with the Court and served on counsel as set out in the Preliminary Approval Order.

s.    "Offerings" means the GrowCo securities offerings identified in the GrowCo Bankruptcy Action as follows:

| Name | Type | Approximate Amount Raised | Date Range |
|------|------|---------------------------|------------|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

t.    "Order Approving Settlement" means the order to be entered by the Court approving the Settlement and this Settlement Agreement as contemplated in Section K herein, which order shall be substantially in the form set out in Exhibit D to this Settlement Agreement.

u.    "Plan of Allocation" means the terms and procedures for allocating the Net Cash Settlement Amount among, and distributing the Net Cash Settlement Amount to, Authorized Claimants, which shall be subject to Court approval.

v.    "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

w.    "Preliminary Approval Hearing" means the hearing at or after which the Court preliminarily approves the proposed Settlement.

8

x.      "Preliminary Approval Order" means the order to be entered by the Court concerning notice, administration, and the Fairness Hearing as contemplated in Section J of this Settlement Agreement.

y.      "Settlement Agreement" means this Settlement Agreement and its Exhibits attached hereto, including any subsequent written amendments agreed to by all Settling Parties.

z.       "Recognized Claim" shall have the meaning attributed to it in the Plan of Allocation.

aa.      "Recognized Alleged Loss" is the Alleged Loss amount of a claim under the Plan of Allocation and is the number used to calculate an Authorized Claimant's Recognized Claim.

bb.      "Release" means the release set forth in Section I of this Settlement Agreement.

cc.      "Released Claims" means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term "Released Claims" does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

dd.      "Releasee" means each and every one of, and "Releasees" means all of, (i) Defendants and their attorneys in the Class Action, (ii) the past and present officers, directors, managers, attorneys, insurers, and/or employees of Two Rivers and GrowCo, as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors, and

9

(iii) non-Defendants GrowCo, GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GCP Super Units, LLC, McGrow LLC, and TR Capital Partners, LLC.

      ee.    "Releasor" means each and every one of, and "Releasors" means all of (i) the Representative Plaintiff, (ii) all other Class Members, (iii) their respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which any Releasor has or had a controlling interest or that has or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiff or any other Class Member and (iv) their respective past and present officers, directors, employees, officials, members, partners, and attorneys.

      ff.    "Service Award" means an application filed by Plaintiff for compensation for the Plaintiff's efforts devoted to this Class Action and reimbursement of Plaintiff's expenses.

      gg.    "Settlement" means the settlement terms, conditions and other provisions that are memorialized in this Settlement Agreement.

      hh.    "Claims Administrator" or the "Settlement Administration Agent" means Strategic Claims Services, 600 North Jackson Street, Suite 205, Media, PA 19063.

      ii.    "Settlement Administration Account" means the escrow account to be established by Class Counsel at Huntington Bank, which shall be an interest-bearing account into which the Settlement Payment will be paid pursuant to Section C of this Settlement Agreement.

      jj.    "Settlement Administration Account Agent" means Strategic Claims Services; the escrow agent for the Settlement Administration Account.

      kk.    "Settling Parties" means all Parties to this Settlement Agreement.

      ll.    "Settlement Payment" means $1,500,000.

mm.    "Termination Date" means that date on which any of the Settling Parties provides notice that he, she or it is exercising a right to terminate this Settlement Agreement under Section M of this Settlement Agreement.

**B.    Class Certification**

2.     For purposes of this Settlement only, and subject to approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, the Settling Parties stipulate to the certification of the Settlement Class, as defined herein; the appointment of John Paulson as Class Representative; and the appointment of Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C., as Class Counsel, and Steve Miller of Steve A. Miller, P.C. as Additional Plaintiff's Counsel.

**C.    Settlement Consideration**

3.     Prior to or upon entry of the Preliminary Approval Order, Class Counsel shall cause to be established the Settlement Administration Account at a financial institution selected by Class Counsel. In consideration of the settlement of claims asserted in this Class Action, and subject to the terms and conditions of the Settlement Agreement, Defendants shall cause their Insurer, Starstone Specialty Insurance Company (the "Insurer"), to deposit the Settlement Payment into the Settlement Administration Account by wire transfer within thirty days (30) days following the date of entry of the Preliminary Approval Order and receipt by Defendants of the name, address and wire payment information for both the payee and recipient of the Settlement Payment and a properly completed Form W-9 for the payee of the Settlement Payment, which Class Counsel agrees to provide upon execution of the Settlement Agreement.

**D.    Notice to Class Members**

11

4.      Subject to the requirements of the Preliminary Approval Order, Class Counsel shall cause the Class Notice and the Claim Form, substantially in the forms annexed hereto as Exhibits B and C, respectively, to be sent by first class mail, postage prepaid, and via email, within seven (7) days after the entry of the Preliminary Approval Order, to all Settlement Class Members at the address and email addresses set forth in the records of GrowCo. Plaintiff's Counsel shall use reasonable efforts to obtain from counsel in the GrowCo Bankruptcy Action to provide to the Claims Administrator, no later than five (5) business days after entry of the Preliminary Approval Order, a list of potential Settlement Class Members (consisting of names, addresses, and email addresses), in electronic form. Class Counsel shall, at least fourteen (14) days before the Fairness Hearing, file with the Court proof of mailing of the Class Notice and Claim Form. The date upon which Notice is first sent out shall be the "Notice Date."

**E.      Notice and Administrative Expenses**

5.      Notice and Administrative Expenses shall be paid out of the Settlement Fund.

**F.      Procedures for Objections to the Settlement and Exclusions from the Class**

6.      Any Class Member who wishes to object to the fairness, reasonableness or adequacy of this Settlement Agreement, to any term(s) of this Agreement or to the proposed Attorneys' Fees and Expenses Award or Service Award may do so no later than fourteen (14) days before the Fairness Hearing, and subject to the requirements set out in the Preliminary Approval Order. Class Members who fail to file and serve timely written objections in the manner specified in the Preliminary Approval Order shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement Agreement.

7.      Attorneys representing Class Members who object to this Settlement Agreement must file notice(s) of appearance.

8.      Potential Class Members who wish to exclude themselves from the Class must submit a written statement requesting exclusion from the Class no later than twenty-one (21) days after the Notice Date (the "Opt-Out Deadline"). Such written request for exclusion must contain the name, address, and telephone number of the person requesting exclusion, must be returned by mail to the Claims Administrator at a specified address, must be postmarked on or before the Exclusion Deadline, and must otherwise be submitted in accordance with the Class Notice. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any individual who opts out of the Class will not be entitled to any recovery under the Settlement Agreement and will not be bound by the Settlement Agreement or have any right to object, appeal or comment thereon. Class Members who do not submit a valid and timely request for exclusion on or before the Exclusion Deadline shall be bound by all terms of the Settlement Agreement if the Settlement is approved by the Court. Within five (5) days after the Opt-Out Deadline, the Claims Administrator shall provide Defendants with a list of the Class Members who have requested exclusion from the Class.

**G.      Attorneys' Fees, Expenses and Service Awards**

9.      Class Counsel shall file and serve the Attorneys' Fees, Expenses and Service Award Application not later than twenty-one (21) days prior to the Fairness Hearing.

10.     Any Attorneys' Fees, Expenses and Service Award will be subject to approval by the Court.

11.     The Attorneys' Fees, Expenses and Service Award shall be paid from the Settlement Administration Account established pursuant to Section A, paragraph "ii" above within seven (7) days from the date on which the Court enters a Final order approving such award.

**H.     Claims Administrator**

12.     The Claims Administrator shall be selected by Class Counsel and approved by the Court.

13.     The Claims Administrator shall administer the process of receiving, reviewing and approving or denying claims under Class Counsel's supervision and subject to the jurisdiction of the Court.

14.     The Claims Administrator shall receive Claims and determine first, whether the Claim is an Authorized Claim, in whole or in part; and second, each Authorized Claimant's pro rata share of the Net Cash Settlement Amount based upon each Authorized Claimant's Recognized Alleged Loss amount.

15.     The Settlement Fund shall be applied as follows:

(1) to pay Class Counsel's Attorneys' Fees and Expenses, and the Service Award and expenses of Plaintiff (the "Attorneys' Fees, Expenses and Service Award"), if and to the extent allowed by the Court;

(2) to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Settlement Class Members, soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Claim Forms, and paying escrow fees and costs, if any;

(3) to pay any taxes and tax expenses; and

(4) to distribute the balance of the Settlement Fund to Authorized Claimants as allowed by the Settlement Agreement, the Plan of Allocation, or order of the Court.

16.     The Plan of Allocation is not a necessary term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that any particular Plan of Allocation be approved.

17.     Each Authorized Claimant shall be allocated a pro rata share of the Net Cash Settlement Amount based on his, her or its Recognized Alleged Loss compared to the total Recognized Alleged Losses of all Authorized Claimants. Defendants shall not be entitled to any of the Settlement consideration once the Effective Date has occurred.

18.     Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Cash Settlement Amount, but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Final Order Approving Settlement to be entered in the Class Action and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims.

19.     Class Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Cash Settlement Amount by the Claims Administrator. Defendants shall have no liability, obligation, involvement, or responsibility for the administration of the Settlement or disbursement of the Net Cash Settlement Amount. Class Counsel shall have the right, but not the obligation, to waive what they deem to be non-substantive or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

20.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.      Each Class Member shall be required to submit a Claim Form setting forth the Class Member's Alleged Losses, substantially in the form attached hereto as Exhibit C, supported by such documents as are designated therein, or as the Claims Administrator or Class Counsel, in their discretion, may deem acceptable.

b.      All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, which the Parties will request to be sixty (60) days after mailing, unless such deadline is extended by Order of the Court. Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Cash Settlement Amount or payment pursuant to this Settlement Agreement (unless, by Order of the Court, late-filed Claim Forms are accepted), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the Settlement including the terms of the Final Order Approving Settlement and the Releases provided for herein, and will be barred and enjoined from bringing any action against the Releasees concerning the Released Claims. A Claim Form shall be deemed to be submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in as per the instructions thereon.

c.      Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Class Counsel, who shall determine in accordance with this Settlement Agreement, the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph "f" below;

d.      Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, email or by telephone to give the Claimant the chance to remedy any

16

curable deficiencies in the Claim Form submitted. The Claims Administrator, under the supervision of Class Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim they propose to reject in whole or in part, setting forth the reasons therefore, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below.

e.     If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty-one (21) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Class Counsel shall thereafter present the request to the Court.

f.     The administrative determinations of the Claims Administrator in accepting and rejecting Claims shall be presented for approval by the Court.

21.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of the Class Action or Settlement in connection with the processing of Claim Forms.

22.     Class Counsel will apply to the Court for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses

17

associated with the administration of the Settlement from the Settlement Administration Account; and (c) if the Effective Date has occurred, directing payment of the Net Cash Settlement Amount to the Authorized Claimants.

23.    The Net Cash Settlement Amount shall be distributed to Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Class Notice and approved by the Court. Any such Plan of Allocation is not a part of this Settlement Agreement. No funds from the Net Cash Settlement Amount shall be distributed to Authorized Claimants until the Effective Date. If there is any balance remaining in the Net Cash Settlement Amount after six (6) months from the date of distribution of the Net Cash Settlement Amount, Class Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any remaining balance shall be donated to one or more secular §501(c)(3) organization(s) selected by Class Counsel, not related or controlled by any Party or their counsel.

24.    Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members who are Authorized Claimants.

25.    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

26.    The Claims Administrator is to be charged with, among other things, distribution of the Class Notice, setting up and running a toll-free center to respond to calls, receipt and handling of requests for information, receipt of requests for exclusion and distribution of settlement relief to Class Members in the Settlement.

I.      **Releases and Waivers**

27.     Pursuant to the Order Approving Settlement, without further action by anyone, and whether or not a Claim Form has been executed and/or delivered by or on behalf of any such Settlement Class Member, on and after the Effective Date, Representative Plaintiff and all other Settlement Class Members, on behalf of themselves and their other Releasors, for good and sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and of the Order Approving Settlement shall have, fully, finally, and forever released, relinquished, settled, and discharged:

a.      all Released Claims;

b.      all Claims, damages, and liabilities against each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to (i) the prosecution, defense, or settlement of the Class Action, (ii) the Settlement Agreement, (iii) the Settlement terms and their implementation, (iv) the provision of notice in connection with the proposed Settlement, and/or (v) the resolution of any Claim Forms filed in connection with the Settlement; and

c.      all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's counsel, the settlement of the Class Action, or the administration of the Settlement, except as otherwise specified in the Settlement Agreement.

28.     The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties

agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation including in the GrowCo Bankruptcy Action.

29.     Nothing in the Final Order Approving Settlement shall bar any action or Claim by the Settling Parties or their counsel to enforce the terms of the Settlement Agreement or the Order Approving Settlement.

30.     The Releasors and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claims against any Releasee.

31.     Each of the releases, waivers, and covenants not to sue contained in this Section was separately bargained for and is an essential element of the Settlement Agreement.

**J.      Preliminary Approval Hearing and Preliminary Approval Order**

Within five (5) business days or sooner following the execution of this Settlement Agreement but no later than October 6, 2020, Representative Plaintiff shall file a motion for Preliminary Approval of the Settlement requesting, among other things, that the Court preliminarily approve the Settlement as fair, reasonable and adequate, approve the form and manner of providing Notice to the Class, set a deadline for Class Members to object to the Settlement, set a deadline for Class Members to opt-out of the Class (the "Opt-Out Deadline"), set a deadline for submission of papers in support of the Final Order Approving Settlement, and set a

deadline for filing the request for Attorneys' Fees, Expenses and Service Award, which motion Defendants shall not oppose as long as the request is reasonable and consistent with the Settlement Agreement.

### K.    Fairness Hearing, Final Order Approving Settlement

32.    The Settling Parties shall request that the Court schedule a Fairness Hearing within sixty (60) days after the entry of the Preliminary Approval Order, unless otherwise ordered by the Court, at which to consider whether (i) to approve this Agreement as fair, reasonable and adequate and in the best interest of the Settlement Class; (ii) to finally certify the Settlement Class; and (iii) to approve Class Counsels' request for an Attorneys' Fees and Expenses Award and Service Award.

### L.    No Admissions

33.    This Settlement Agreement, whether or not consummated, and any proceedings taken pursuant to it:

a.    shall not be offered or received against the Parties as evidence of, or construed as or deemed to be evidence of, any presumption, concession or admission by Party with respect to the truth of any fact alleged in the Amended Complaint or the validity of any claim that had been or could have been asserted against the Defendants in the Class Action, or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

b.    shall not be construed by any Party as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

c.    shall not be construed as or received in evidence as an admission, concession or presumption that class certification is appropriate in this Class Action.

21

**M.**     **Modification or Termination of This Settlement Agreement**

34.     This Settlement Agreement may not be altered, amended or modified, nor may any of its provisions be waived, except in writing signed by all Settling Parties.

35.     Any Settling Party shall have the right to terminate the Settlement if the Court does not approve the Settlement Agreement. If the Court modifies the Settlement Agreement in any way that a Settling Party in good faith determines is material, any Settling Party shall have the right to terminate the Settlement only after first conferring with the other Settling Parties in good faith in an effort to resolve the concern.

36.     Representative Plaintiff may not terminate the Settlement based on any Attorneys' Fees, Expenses and Services Awards.

37.     Each Defendant in the Class Action shall have the option (but not the obligation) to terminate the Settlement if valid exclusion requests with Alleged Losses totaling more than $750,000 are received from eligible Class Members. However, that if any Defendant is declaring the Settlement null and void, (a) he or it shall inform the other Defendants and Starstone in writing within ten (10) f days after the expiration of the Opt-Out Deadline; (b) the Defendants and Starstone shall meet and confer in person or telephonically in an attempt to come to an agreement; (c) if there is no agreement, the Defendants and Starstone will mediate before Judge Meyer; and (d) if there is no agreement after mediation, any Defendant may declare the Settlement null and void within ten (10) days after mediation by sending notification of such termination to all Parties via their counsel.

38.     Unless otherwise ordered by the Court, in the event the Settlement Agreement shall terminate, or be canceled, or shall not become effective for any reason, within five (5) business days after written notification of such event is sent by Defendants' counsel, the Settlement

22

Payment (including accrued interest), less reasonable notice and administration expenses which have either been incurred or disbursed pursuant to Section H hereof, shall be refunded to Starstone pursuant to written instructions from Defendants' counsel. Representative Plaintiff has the right to terminate the Settlement if Defendants fail to timely and completely fund the Settlement in accordance with this Settlement Agreement.

### N.   Additional Provisions

37.     As part of this Settlement, Plaintiff agrees to file a notice (a) withdrawing his Notice of Intent to Oppose Defendant Beall's motion to set aside clerk's default (ECF 95), (b) withdrawing his Response to Defendant Beall's Motion to Set Aside Clerk's Default (ECF 97), and (c) unconditionally and without qualification consenting to Defendant Beall's Motion to Set Aside Clerk's Default (ECF 94), and (d) stating that for the reasons set forth in Defendant Beall's Motion to Set Aside Clerk's Default, good cause exists under Fed. R. Civ. P. 55(c) to vacate the Clerk's default. Plaintiff agrees to use his best efforts to seek to vacate the Clerk's default against Defendant Beall. Plaintiff will file the notice contemporaneously with the motion for Final Approval of the Settlement. While the Parties understand only the Court can vacate a default, it is the Parties' intention and desire that the Court will vacate the default as part of the Settlement.

### Miscellaneous Provisions

39.     The Parties and their counsel agree to use their best efforts to obtain Court approval of this Settlement Agreement.

40.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. In the event of any difference between the terms of the Settlement Agreement and any of the exhibits, the terms of the Settlement Agreement shall control.

41.     The Parties to this Settlement Agreement intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Representative Plaintiff, any other Class Members and their attorneys against the Releasees with respect to the Released Claims. The Parties hereto shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Class Action. The Parties agree that the amount paid by the Insurance Carrier and the other terms of the Settlement were negotiated at arm's-length and in good faith, including during a mediation conducted by a professional mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

42.     The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and litigation expenses to Class Counsel and enforcing the terms of this Settlement Agreement.

43.     The waiver by one Party of any provision or breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other provision or any other prior or subsequent breach of this Settlement Agreement.

44.     This Settlement Agreement and its exhibits constitute the entire agreement among the Parties hereto concerning the Settlement of the Class Action, and no representations, warranties or inducements have been made by any Party hereto concerning this Settlement Agreement and its exhibits other than those contained and memorialized in such documents.

45.     This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

DocuSign Envelope ID: D26B8206-1082-467F-B655-A25C4855C0D2

46.     The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47.     This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48.     All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this 7th day of October, 2020.

_____
John Paulson

_____
Wayne Harding

_____
John McKowen

Two Rivers Water and Farming Company

_____
Timothy Beall

By_____

Its_____

25

DocuSign Envelope ID: EAFC5179-41FE-4602-BAB9-63739CE99748

46.     The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47.     This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48.     All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this ___day of October, 2020.


_____
John Paulson

                                                Wayne Harding

DocuSigned by:

*John McKowen*                10/6/2020
F1F9A03D5622481...
_____
John McKowen


                                                Two Rivers Water and Farming Company

_____         By_____
Timothy Beall

                                                Its_____

25

46.     The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47.     This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48.     All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this ____day of October, 2020.


_____        *Wayne Harding*_____
John Paulson                                                  Wayne Harding


_____
John McKowen


                                                                Two Rivers Water and Farming Company


_____        By_____
Timothy Beall                                                 Its_____


25

46.     The construction, interpretation, operation, effect and validity of this Settlement Agreement, and all documents necessary to effectuate it, shall be governed by the laws of the State of Colorado, except to the extent that federal law requires that federal law govern.

47.     This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that all Parties have contributed substantially and materially to the preparation of this Settlement Agreement.

48.     All counsel and any other persons executing this Settlement Agreement and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

Dated this ___ day of October, 2020.


_____          _____
John Paulson                             Wayne Harding


_____
John McKowen


_____          Two Rivers Water and Farming Company
Timothy Beall

By_____

Its_____

25

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| **JOHN PAULSON,**<br>**Individually and on Behalf of all Others**<br>**Similarly Situated,**<br><br>**Plaintiff**<br><br>v.<br><br>**TWO RIVERS WATER AND**<br>**FARMING COMPANY, JOHN R.**<br>**MCKOWEN, WAYNE HARDING and**<br>**TIMOTHY BEALL,**<br><br>**Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 19-cv-02639-PAB-NYW** |

## [PROPOSED] ORDER
## (1) PRELIMINARILY CERTIFYING THE CLASS FOR SETTLEMENT PURPOSES;
## (2) GRANTING PRELIMINARY APPROVAL OF SETTLEMENT; AND
## (3) APPROVING CLASS NOTICE

WHEREAS, the above-captioned putative class action (the "Class Action" or the "Action") is pending before the Court;

WHEREAS, Plaintiff and proposed class representative John Paulson ("Plaintiff"), and Defendants, Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall"), through their counsel, have entered into a Settlement Agreement dated October 7, 2020 (the "Settlement Agreement"), which is subject to review and approval under Rule 23 of the Federal Rules of Civil Procedure, and which, together with the exhibits thereto, sets forth the terms and conditions for the proposed settlement of the Action (the "Settlement") and the dismissal of the Action with prejudice;

WHEREAS, the Court has read and considered the Settlement Agreement[1] and exhibits thereto, and the accompanying documents;

WHEREAS, the Counsel for Plaintiff has submitted, and the Court has reviewed, a Motion and accompanying Memorandum of Law supporting preliminary approval of the proposed Settlement; and

WHEREAS, the Parties to the Settlement Agreement have consented to the entry of this Order:

NOW, THEREFORE, THE COURT HEREBY ORDERS, ADJUDGES AND DECREES THAT:

1.      Pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court preliminarily certifies the following Class (the "Class"):

> All persons or entities that currently hold claims based on GrowCo securities and purchased or otherwise acquired the securities through Offerings listed below during the time period beginning October 2014 through December 2017 (the "Class Period") and suffered Alleged Losses. For avoidance of any doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment.

| Name | Type | Approximate Amount Raised | Date Range |
|------|------|--------------------------|------------|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

---

[1] Unless otherwise stated, all capitalized terms used herein have the meanings defined in the Settlement Agreement.

2.      Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in this Order.

3.      The Court preliminarily finds that the prerequisites for maintaining a class action under Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied, in that: (a) the number of Class Members is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to each member of the Class; (c) the claims of Plaintiff are typical of the claims of the members of the Class he seeks to represent; and (d) Plaintiff will fairly and adequately represent the interests of the Class.

4.      The Court further finds that the prerequisites for maintaining a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure have been preliminarily satisfied for the Class, in that Plaintiff has demonstrated that: (a) the questions of law or fact common to the Class members predominate over any questions affecting only individual members; and (b) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

5.      Pursuant to Fed. R. Civ. P. 23, and for purposes of this Settlement only, the Court hereby preliminarily appoints Plaintiff John Paulson as class representative of the Class (the "Representative Plaintiff").

6.      Having considered the factors set forth in Fed. R. Civ. P. 23(g)(1), the Court hereby preliminarily appoints attorneys Paul Scarlato and Alan Rosca of the law firm of Goldman Scarlato & Penny, P.C., and attorneys J. Barton Goplerud and Brian Marty of the law firm of Shindler, Anderson, Goplerud & Weese, P.C. as Class Counsel, and the law firm of Steve A. Miller, P.C. as Additional Plaintiff's Counsel.

7.      The Court preliminarily concludes that the Settlement was negotiated in good faith and is fair, reasonable and adequate, subject to proof to this Court's satisfaction in connection with final approval of the Settlement as set forth in ¶9 below ("Final Approval"). *See* Fed. R. Civ. P. 23(e). Accordingly, the Court hereby preliminarily approves the Settlement.

8.      The Court reserves the authority to approve the Settlement with or without modification and with or without further notice of any kind. The Court further reserves the authority to enter its Final Order approving the Settlement Agreement and dismissing the Claims against Defendants on the merits and with prejudice regardless of whether it has awarded any attorneys' fees and expenses to counsel.

9.      A Fairness Hearing (which, from time to time, and without further notice to the Class other than by filing a notice on the docket in the Class Action in advance of the Fairness Hearing, may be continued or adjourned by order of this Court) will be held by this Court on [60 days from Preliminary Approval], 2020 at ___ _.m. for the following purposes:

(a)     to finally determine whether the Class satisfies the applicable prerequisites for certification under Fed. R. Civ. P. 23(a) and 23(b)(3);

(b)     to finally determine whether the Settlement should be approved by the Court as fair, reasonable and adequate and in the best interests of the Class;

(c)     to determine whether a Final Order should be entered pursuant to the

5

Settlement Agreement, dismissing the Class Action with prejudice against the Defendants and effectuating the releases set forth in the Settlement Agreement and Notice;

(d)     to determine whether the proposed Plan of Allocation of the Settlement Fund set forth in the Notice is fair and reasonable, and should be approved by the Court;

(e)     to consider any request by Class Counsel and Additional Plaintiff's Counsel for an award of attorneys' fees and reimbursement of litigation expenses ("Attorney's Fees and Expense Award"), and an application by Class Counsel on behalf of the Plaintiff for compensation for the Plaintiff's efforts devoted to the Action and reimbursement of Plaintiff's expenses ("Service Award");

(f)     to hear and determine any objections to the Settlement or to any request by Class Counsel and Additional Plaintiff's Counsel for an Attorney's Fees and Expense Award or Service Award; and

(f)     to rule on such other matters as the Court may deem appropriate.

10.     The Court approves the substance and requirements of the Class Notice, in the form annexed as Exhibit B to the Settlement Agreement.

11.     No later than seven (7) days after Preliminary Approval, Class Counsel shall mail, or cause to be mailed, and electronically transmit via email, or cause to be e-mailed, the Class Notice to those Class Members who can be identified through reasonable effort. Notice costs shall be paid or reimbursed from the Settlement Fund, as set forth in ¶5 of the Settlement Agreement.

12.     The Court finds that mailing of the Notice, as described herein, constitutes the best notice practicable under the circumstances and is due and sufficient notice of the matters set forth in the Class Notice to all Class Members, and fully satisfies the requirements of due process and of Rule 23 of the Federal Rules of Civil Procedure.

13.     The Court will consider any objections, and comments in support of or in opposition to the Settlement, the Plan of Allocation, or any request by Class Counsel for an Attorney's Fees and Expense Award and Service Award, only if such comments and any supporting papers are in writing and filed with the Clerk of the Court, United States District Court, Alfred A. Arraj United States Courthouse, Room A105, 901 19th Street, Denver, CO 80294-3589, and copies of all such papers are served, on or before _____, 2020 [fourteen (14) days before the Fairness Hearing], upon each of the following by U.S. Mail and email:

> Paul Scarlato
> GOLDMAN SCARLATO & PENNY, P.C.
> 161 WASHINGTON STREET, SUITE 1025
> CONSHOHOCKEN, PA 19428
> EMAIL: SCARLATO@LAWGSP.COM
>
> Alan Rosca
> GOLDMAN SCARLATO & PENNY, P.C.
> 23250 CHAGRIN BLVD. SUITE 100
> BEACHWOOD, OH 44122
> ROSCA@LAWGSP.COM
>
> J. Barton Goplerud
> Brian Marty
> SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
> 5015 Grand Ridge Drive, Suite 100
> West Des Moines, Iowa 50265
> Telephone: (515) 223-4567
> Facsimile: (515) 2223-8887
> jbgoplerud@sagwlaw.com
> marty@sagwlaw.com

Any replies to any objections or comments shall be filed and served upon any objector or commenter no later than _____, 2020 [ seven (7) days before Final Fairness Hearing].

14.     Attendance at the Fairness Hearing is not necessary. However, persons wishing to be heard orally with respect to the approval of the Settlement, the Plan of Allocation, and/or any

request by Class Counsel and Additional Plaintiff's Counsel for an Attorney's Fees and Expense Award or Service Award, are required to indicate in their written comments or objections their intention to appear at the Fairness Hearing. Persons who intend to object to the Settlement, the Plan of Allocation, and/or any request by Class Counsel for an award of attorneys' fees and reimbursement of litigation expenses, and desire to present evidence at the Fairness Hearing, must include in their written objections the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Fairness Hearing. Class Members do not need to appear at the hearing or take any action to indicate their approval.

15. Any person or entity who fails to object in the time and manner provided above shall be deemed to have waived such objection (including the right to appeal), and absent good cause found by the Court, shall forever be barred from making any such objection in the Class Action or any other action or proceeding or otherwise contesting any aspect of the Settlement, but shall otherwise be bound by the Final Order and Judgment to be entered and the releases to be given.

16. Each Settlement Class Member will be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to *Paulson v. Two Rivers Settlement*, EXCLUSIONS, c/o Strategic Claims Services, 600 N. Jackson St., Ste. 205, P.O. Box 230, Media, PA 19063, Fax (610) 565-7985 pursuant to the procedure set forth in the Class Notice. The request for exclusion must be received no later than _____, 2020 (the "Exclusion Deadline"). Class Members will not be able to exclude themselves from the Settlement Class after the Exclusion Deadline.

17.     All parties are hereby notified that Final Approval would result in the dismissal, with prejudice, of all claims in the Class Action as defined in the Settlement Agreement.

18.     This Order, the Settlement Agreement, and any negotiations, discussions, or proceedings in connection with this Settlement shall not be offered or received against Defendants as evidence of, or deemed to be any admission or confession by Defendants, of the truth of any of the claims, allegations, facts, subjects, or issues that were or could have been set forth or raised in the Class Action.

SO ORDERED this ____ day of _____, 2020.


_____
Philip A. Brimmer
Chief United States District Judge

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| **JOHN PAULSON,** ) | Civil Action No. 19-cv-02639-PAB-NYW |
| **Individually and on Behalf of all Others** ) | |
| **Similarly Situated,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **TWO RIVERS WATER AND** ) | |
| **FARMING COMPANY, JOHN R.** ) | |
| **MCKOWEN, WAYNE HARDING and** ) | |
| **TIMOTHY BEALL,** ) | |
| ) | |
| **Defendants** ) | |

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED CLASS ACTION DETERMINATION, PROPOSED SETTLEMENT OF CLASS ACTION, FAIRNESS HEARING AND RIGHT TO APPEAR

**TO:** **ALL PERSONS OR ENTITIES THAT CURRENTLY HOLD CLAIMS BASED ON SECURITIES OF GROWCO, INC. ("GROWCO"), AND PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES THROUGH THE OFFERINGS LISTED BELOW DURING THE TIME PERIOD BEGINNING OCTOBER 2014 THROUGH DECEMBER 2017 AND SUFFERED ALLEGED LOSSES:**

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS ACTION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS OR ADEQUACY OF THE PROPOSED SETTLEMENT OR PURSUING THE RELEASED CLAIMS AND UNKNOWN CLAIMS (AS DEFINED HEREIN).**

I.      <u>**THE PURPOSE OF THIS NOTICE**</u>

The purpose of this Notice is to inform you of the existence of the above-captioned class action (the "Class Action" or "Action") brought by Plaintiff John Paulson ("Plaintiff") against Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall") (collectively, "Defendants"), and its proposed settlement (the "Settlement").

This Notice also informs you of the Court's preliminary certification of a Class (as defined below in this Section) for purposes of the Settlement, and of your right to participate in a hearing (the "Fairness Hearing") to be held on _____ 2020 at _____ m. before the Honorable Philip Brimmer, Chief Judge of the U.S. District Court for the District of North Colorado, Courtroom A701, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294-3589 to: (a) determine whether the Settlement should be finally approved by the Court as fair, reasonable and adequate and in the best interests of Plaintiff and the Class; (b) determine whether a Final Order should be entered dismissing the Class Action with prejudice against the Defendants and effectuating the releases described below; (c) consider any request by Plaintiff's counsel for an award of attorneys' fees and out-of-pocket expenses, and a Service Award to the Representative Plaintiff; (d) hear and determine any objections to the Settlement or to any request by Plaintiff's counsel for an award of attorneys' fees and reimbursement of out-of-pocket expenses ("Attorneys' Fees and Expenses Award" and service award to the Representative Plaintiff ("Service Award"); and (e) rule on such other matters as the Court may deem appropriate.

The Court has determined that the Class Action shall be preliminarily certified as a class action under Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, on behalf of all persons or entities who currently hold claims based on the GrowCo Securities and who purchased or otherwise acquired the securities through the Offerings identified above during the time period beginning on October 2014 through December 2017 and suffered Alleged Losses. This Notice describes the rights you may have under the Settlement and what steps you may, but are not required to, take in relation to the Settlement. If the Court approves the Settlement, Plaintiff and the Defendants in the Class Action (the "Parties") will ask the Court to enter a Final Order dismissing the Class Action with prejudice on the merits.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE**

MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.

## II.      BACKGROUND OF THE ACTION

The Class Action was initiated by named Plaintiff John Paulson on August 13, 2019, with the filing of a class action complaint against Defendants Two Rivers, McKowen, Harding, and Beall, arising out of Paulson's purchase of securities in GrowCo, a Colorado corporation formed in 2014. GrowCo is currently in bankruptcy and is not a party to this Action. Plaintiff's Amended Complaint alleges that Defendants acted as control persons; sold and promoted GrowCo securities to Plaintiff and the class while omitting information that was material to investors about Defendant McKowen's background; and permitted Two Rivers' use of the proceeds of the sales. It asserts claims against Defendants under the Colorado Securities Act, 11-51-101 *et. seq.,* and Colorado common law arising out of the Defendants' conduct in connection with those sales and use of the proceeds. Defendants deny Plaintiff's allegations of wrongdoing and liability.

## III.     SUMMARY OF SETTLEMENT TERMS

Defendants' insurer will pay $1.5 million in cash (the "Settlement Fund") to resolve the claims of Plaintiff and the Class. The Settlement Class and each member of the Class is limited solely to the Settlement Fund for the satisfaction of all Released Claims against all Released Parties (as provided more fully in the Settlement Agreement).

The Settlement Fund shall be applied as follows: (1) to pay counsel's Attorneys' Fees and Expenses Award, and the Service Award to the Representative Plaintiff to the extent allowed by the Court; (2) to pay the costs and expenses reasonably incurred in connection with providing Notice, locating Settlement Class Members, assisting with the filing of claims, administering and distributing the Net Cash Settlement Amount to Authorized Claimants, processing claim forms, and paying escrow fees and costs, if any; (3) to pay any taxes and tax expense; and (4) to distribute the balance of the Settlement Fund (the "Net Cash Settlement Amount") to Authorized Claimants as allowed by the Plan of Allocation, or order of the Court.

Authorized Claimant means a Class Member whose claim for recovery of losses has been found to be timely and valid under the terms of the Settlement Agreement.

## IV.     PLAN OF ALLOCATION

Under a proposed Plan of Allocation, the Claims Administrator will first calculate each Authorized Claimant's Alleged Loss.

The Alleged Loss shall mean the principal amount each Authorized Claimant paid for the GrowCo securities.

The Claims Administrator will then calculate each Authorized Claimant's recovery under the Settlement by multiplying the Net Cash Settlement Amount by a fraction, (a) the numerator of which is the Class Member's Alleged Loss and (b) the denominator of which is the sum of each and every claiming Class Member's Alleged Loss.

The Plan is not a part of or a condition of approval of the Settlement. Under the Agreement, the Net Settlement Fund may be distributed in accordance with the proposed Plan or such other plan as the Court may approve.

## V.   <u>REASONS FOR THE SETTLEMENT</u>

This Action was aggressively litigated from the onset. Plaintiff filed his initial complaint in Colorado state court setting out detailed facts as to Defendants' alleged wrongdoing. The Action was later removed to this Court by Mr. McKowen. Thereafter, the Court held an initial scheduling conference during which it set a schedule for the Action. Mr. McKowen then moved the Court to stay the Class Action pending the outcome of GrowCo's bankruptcy proceedings, which the Court denied. Separately, GrowCo initiated an adversary proceeding against Mr. Paulson in the bankruptcy court and filed a motion for a temporary restraining order ("TRO") and preliminary injunction asking the bankruptcy court to stop the Class Action. Plaintiff successfully opposed the motion to stay in this Court and was required to appear in the bankruptcy court to oppose the adversary proceeding, and to appear at an evidentiary hearing on GrowCo's request for a TRO and injunction, upon which Paulson prevailed.

Plaintiff subsequently filed an amended complaint (the "Amended Complaint") alleging additional facts and legal claims. Mr. McKowen moved to dismiss the Complaint and Plaintiff opposed that motion. Mr. McKowen's motion to dismiss was fully briefed and pending before the Court when the Parties reached the proposed Settlement.

The Parties engaged in discovery, which included Plaintiff serving requests for production of documents, interrogatories, and requests for admissions on each of the Defendants, and document subpoenas on numerous third parties. Plaintiff reviewed and analyzed numerous documents produced by Defendants McKowen and Beall, and from other sources. Plaintiff also obtained a clerk's default against Defendant Beall. Mr. Beall then moved to set aside the clerk's default against him and moved to dismiss the Amended Complaint.

Plaintiff's counsel have conducted a thorough investigation of the claims and allegations asserted in the Class Action before reaching an agreement in principle on a Settlement. In addition, the Settlement was the product of extensive arms-length negotiations conducted with the assistance of the Judge William Meyer of the Judicial Arbiter Group, Inc. serving as mediator. In evaluating the Settlement, Plaintiff and his counsel have considered: (a) the substantial benefits to the members of the Class from the Settlement; (b) the facts developed during Plaintiff's investigation and discovery; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the Class Action; (d) the probability of success on the merits; (e) the availability of sufficient assets to fund a Settlement; and (f) the conclusion of Plaintiff's counsel that the terms and conditions of the Settlement are fair, reasonable, adequate and in the best interests of Plaintiff and the Class.

Each of the Defendants has denied, and continues to deny, that he or it committed any violation of the securities laws or any other law, or engaged in any of the wrongful acts alleged in the Class Action, and expressly maintains that he or it is entering into the Settlement solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

Plaintiff has stated, and continues to state, that he brought his claims in good faith, that he believes that his claims had substantial merit at all relevant times, and that he is agreeing to the terms of the Settlement only because he believes that the Settlement provides a substantial benefit to the Class and has concluded that the terms of the Settlement are fair, reasonable and adequate and in the best interests of the Class.

The $1.5 million Settlement Fund provides a substantial and immediate benefit to the Class. Although Class Counsel believes it will likely be able to prove merit to the claims asserted in the case, there is a substantial risk that Class Members would not be able to recover anything at all if the case were not settled. GrowCo is currently in bankruptcy and Two Rivers lacks substantial assets. Plaintiff would need to look to the personal assets of the individual Defendants for a recovery if the Settlement was not reached, making a substantial recovery directly from Two Rivers and/or its principals beyond any available insurance coverage questionable at best. To that end, Defendants have a single insurance policy that covers the claims asserted up to $2,000,000, which amount is reduced by the costs of defense. The $1,500,000 Settlement Fund represents substantially all of the remaining insurance coverage net of defense costs to date. In considering whether to settle, the Plaintiff considered the fact that if he persisted with the Action, the amount of insurance coverage available to satisfy a judgment would be substantially less than the Settlement Fund. In other words, as defense costs would continue to mount, each additional dollar spent on defending the Action would represent one less dollar available for a settlement. Finally, if the case were to continue to be litigated, the Class would still need to overcome various legal defenses in order to survive any dispositive motions or recover at trial.

## VI.   RELEASES

Under the terms of the Settlement, Plaintiff and the Class Members ("Releasors") agree to the complete discharge, dismissal with prejudice, settlement and release of the Releasees.

"Releasor" means each and every one of, and "Releasors" means all of (i) the Representative Plaintiff, (ii) all other Class Members, (iii) their respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which any Releasor has or had a controlling interest or that has or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiff or any other Class Member and (iv) their respective past and present officers, directors, employees, officials, members, partners, and attorneys.

The "Releasees" include each and every one of (i) the Defendants and their attorneys in the Class Action; (ii) the following past and present officers, directors, managers, attorneys, and/or employees of Two Rivers and GrowCo for securities purchased at the time or after they were officers or directors: Gus Blass III, Christopher Bragg, Gregg Campbell, Dennis Channer, James Cochran, Wayne Harding, Michael Harnish, John McKowen, Samuel Morris, John Stroh II, Rockey Joe Wells, Bradley Walker and T. Keith Wiggins. GrowCo's officer and directors during the Class Period were: Timothy Beall (however, Mr. Beall contends he was not an officer or director of GrowCo), Kirsty Cameron, Wayne Harding, Chad Kirby, Jan McCaffrey, John R.

McKowen, Joseph McKowen, Laura McKowen, I. Wistar Morris, Jeff Ploen and Aaron VanWingerden; and (iii) non-Defendants GrowCo, GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GCP Super Units, LLC, McGrow LLC, and TR Capital Partners, LLC.

"Released Claims" as defined in the Settlement Agreement means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term "Released Claims" does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

If the Settlement is finally approved, Plaintiff and each Class Member on behalf of themselves and their other Releasors, for good and sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and of the Order Approving Settlement shall have, fully, finally, and forever released, relinquished, settled, and discharged:

       a.     all Released Claims;

       b.     all Claims, damages, and liabilities against each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to (i) the prosecution, defense, or Settlement of the Class Action, (ii) the Settlement Agreement, (iii) the Settlement terms and their implementation, (iv) the provision of Notice in connection with the proposed Settlement, and/or (v) the resolution of any Claim Forms filed in connection with the Settlement; and

       c.     all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's counsel, the settlement of the Class Action, or the administration of the Settlement, except as otherwise specified in the Settlement Agreement.

The Settlement Agreement further provides that:

- The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation

including in the GrowCo Bankruptcy Action.

- The Releasors and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claims against any Releasee.

## VII.    CLASS ACTION DETERMINATION

The Court has ordered that the Class Action shall be preliminarily certified as a class action for purposes of the Settlement only, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class:

All persons or entities who currently hold claims based on Securities of GrowCo, and who purchased or otherwise acquired the securities through Offerings listed below, during the time period beginning October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment:

| Name | Type | Approximate Amount Raised | Date Range |
|------|------|---------------------------|------------|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who validly request exclusion from the Settlement Class within the time period set forth herein.

At the Fairness Hearing, the Court will consider, among other things, whether the Class should be certified permanently.

## VIII.   THE FAIRNESS HEARING

The Court has scheduled the Fairness Hearing to be held _____ at the time identified in Section I above to determine: (a) whether the Court should finally approve the Settlement as fair, reasonable and adequate to the Class; (b) whether to enter an order dismissing the Class Action with prejudice and extinguishing and releasing the Released Claims; (c) whether the Class should be permanently certified pursuant to Rule 23 or the Federal Rules of Civil Procedure; (d) whether the Court should permanently certify Plaintiff as the Class Representative in the Class Action, and attorneys and law firms Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C. as Class Counsel, and Steve Miller of Steve A. Miller, P.C. as Additional Plaintiff's Counsel in the Class Action; (e) if the Court approves the Settlement, whether the Court should grant Plaintiff's application for an Attorneys' Fees and Expenses Award; (f) whether to grant Class Counsel's application for a Service Award for the Plaintiff and reimbursement of the Plaintiff's expenses, and (g) to consider such other matters as may properly come before the Court.

The Court may postpone, reschedule or adjourn the Fairness Hearing without further notice to the Class other than by filing a notice on the docket in the Class Action in advance of the Fairness Hearing, or by making an announcement at the Fairness Hearing or any adjournment thereof. The Court also has reserved the right to approve the Settlement at or after the Fairness Hearing with such modification(s) as may be consented to by the Parties and without further notice to the Class.

## IX.   YOUR RIGHT TO APPEAR AND OBJECT

Any Member of the Class who objects to any aspect of the Settlement, certification of the Class, entry of the Final Order, and/or Plaintiff's counsel's application for payment of attorneys' fees and expenses, and for a Service Award, or who otherwise wishes to be heard, may appear in person by his, her or its attorney at the Fairness Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the order to be entered thereon, and no papers or briefs submitted by any member of the Class or any other person shall be received and considered by the Court, unless, not later than [14 days before Fairness Hearing]. Any such objections, and comments must be in writing and filed with the Clerk of the Court and served on the counsel at the addresses listed below no later than fourteen (14) days before the Final Fairness Hearing. Such objections must include the following: (a) proof that such person or entity currently holds claims based on the GrowCo Securities and purchased or otherwise acquired the securities through any of the Offerings during the Class Period of October 2014 through December 2017 and suffered Alleged Losses; (b) written notice of the person's intention to appear; (c) a detailed statement of the objections and the reasons for desiring to appear and to be heard; and (d) a detailed statement of all of the grounds for such objections, as well as all documents or writings which the person desires the Court to consider.

The foregoing information concerning any objections should be filed not later than [14 days before Fairness Hearing] with:

Clerk of the Court
United States District Court

Alfred A. Arraj United States Courthouse, Room A105,
901 19th Street, Denver, CO 80294-3589

Copies of such objections must be served not later than [14 days before Fairness Hearing] on:

Paul Scarlato
Alan Rosca
GOLDMAN SCARLATO & PENNY, P.C.
161 WASHINGTON STREET, SUITE 1025
CONSHOHOCKEN, PA 19428
EMAIL: ROSCA@LAWGSP.COM
　　　　SCARLATO@LAWGSP.COM

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 2223-8887
E-Mail: jbgoplerud@sagwlaw.com
　　　　marty@sagwlaw.com

Any person or entity who fails to object in the manner provided above shall be deemed to have waived such objection (including the right to appeal), and absent good cause found by the Court shall forever be barred from making any such objection in the Class Action or any other action or proceeding or otherwise contesting any aspect of the Settlement, but shall otherwise be bound by the Final Order to be entered and the releases to be given.

## X. <u>YOUR RIGHT TO EXCLUDE YOURSELF FROM THE CLASS</u>

Each Settlement Class Member will be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to *Paulson v. Two Rivers Settlement*, EXCLUSIONS, c/o Strategic Claims Services, 600 N. Jackson St., Ste. 205, P.O. Box 230, Media, PA 19063, Fax: (610) 565-7985. The request for exclusion must be ***received*** no later than _____, 2020 (the "Exclusion Deadline"). You will not be able to exclude yourself from the Settlement Class after the Exclusion Deadline. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Paulson v. Two Rivers Settlement*, Civil Action No. 19-cv-02639"; (c) identify and state each and every purchase of GrowCo securities in the Offerings during the period from October 2014 through December 2017, as well as the type of security and the investment amount. A Request for Exclusion shall not be

valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any of the Released Claims against any of the Releasees.

If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Cash Settlement Amount with respect to the Settlement Class.

Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiff and Defendants.

## XI.    FINAL ORDER OF THE COURT

If the Settlement is approved by the Court following the Fairness Hearing as fair, reasonable and adequate, the Parties will jointly request that the Court enter a Final Order which will, among other things: (a) certify the Class Action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) determine that the requirements of the Federal Rules of Civil Procedure and due process have been satisfied in connection with the Notice provided to the Class; (c) certify Plaintiff as Class Representative and Class Counsel and Additional Plaintiff's Counsel in the Class Action; (d) approve the Settlement as fair, reasonable and adequate to the Class; (e) vacate the Clerk's default against Defendant Beall; and (f) dismiss the Class Action with prejudice on the merits, as against any and all Defendants, without costs except as herein provided, (g) release Defendants and other Releasees from the Released Claims, and (h) enter a "Complete Bar Order" prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities.

## XII.    THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff intends to petition the Court at the Final Fairness Hearing for an award of attorneys' fees in an amount not to exceed $33^{1/3}\%$ of the Settlement Fund, and for reimbursement of costs and expenses advanced by Plaintiff's counsel not to exceed $10,000, and for a Service Award to the Representative Plaintiff in the amount of $5,000, and for reimbursement of his expenses not to exceed $100. Final resolution by the Court of the fee application shall not be a precondition to the dismissal of the Class Action in connection with any final approval of the Settlement, and the fee application may be considered separately from the terms of the proposed Settlement of the Class Action.

## XIII.    SCOPE OF THIS NOTICE

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Class Action, the Settlement Agreement and all other papers or proceedings herein are only summaries and do not purport to be comprehensive. For the full details of the Class Action, the claims that

have been asserted in the Class Action and the terms and conditions of the Settlement, including a complete copy of the Settlement Agreement and related Orders and proposed forms of Orders, you are referred to the Court file for the Class Action.

## XIV.   GENERAL INQUIRIES

General inquiries about the Settlement should be directed to the attention of Class Counsel as follows:

> Paul Scarlato
> Alan Rosca
> GOLDMAN SCARLATO & PENNY, P.C.
> 161 WASHINGTON STREET, SUITE 1025
> CONSHOHOCKEN, PA 19428
> EMAIL: ROSCA@LAWGSP.COM
>        SCARLATO@LAWGSP.COM

> J. Barton Goplerud
> Brian Marty
> SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
> 5015 Grand Ridge Drive, Suite 100
> West Des Moines, Iowa 50265
> Telephone: (515) 223-4567
> Facsimile: (515) 2223-8887
> E-Mail: jbgoplerud@sagwlaw.com
>        marty@sagwlaw.com

**PLEASE DO NOT CALL OR WRITE THE COURT WITH GENERAL INQUIRIES.**

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | | |
|---|---|---|
| JOHN PAULSON, **Individually and on Behalf of all Others Similarly Situated,**<br><br>Plaintiff<br><br>v.<br><br>**TWO RIVERS WATER AND FARMING COMPANY, JOHN R. MCKOWEN, WAYNE HARDING and TIMOTHY BEALL,**<br><br>Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 19-cv-02639-PAB-NYW |

## PROOF OF CLAIM AND RELEASE

**Deadline for Submission:** _____

IF 1) YOU CURRENTLY HOLD CLAIMS BASED ON SECURITIES OF GROWCO, INC. ("GROWCO"), AND 2) PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES THROUGH THE OFFERINGS LISTED BELOW DURING THE CLASS PERIOD BEGINNING OCTOBER 2014 THROUGH DECEMBER 2017, AND 3) SUFFERED LOSSES, YOU MAY BE A CLASS MEMBER AND YOU MAY BE ENTITLED TO SHARE IN THE SETTLEMENT PROCEEDS. FOR THE AVOIDANCE OF DOUBT, PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES DURING THE CLASS PERIOD AND WHO HAVE ASSIGNED THE SECURITIES TO VITANOVA PARTNERS, LLC ARE NOT EXCLUDED AS CLASS MEMBERS BY VIRTUE OF SUCH ASSIGNMENT:

THE GROWCO OFFERINGS SUBJECT TO THIS SETTLEMENT ARE:

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

YOU MUST COMPLETE AND SUBMIT THIS PROOF OF CLAIM AND RELEASE FORM ("CLAIM FORM") IN ORDER TO BE ELIGIBLE FOR ANY SETTLEMENT BENEFITS.

YOU MUST COMPLETE AND SIGN THIS CLAIM FORM AND MAIL IT BY FIRST CLASS MAIL, POSTMARKED NO LATER THAN _____ TO THE CLAIMS ADMINISTRATOR, AT THE FOLLOWING ADDRESS:

*Paulson v. Two Rivers Settlement*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
Fax: (610) 565-7985
Email: info@strategicclaims.net

FAILURE TO SUBMIT YOUR POSTMARKED CLAIM FORM BY _____ WILL SUBJECT YOUR CLAIM TO REJECTION AND MAY PRECLUDE RECEIPT OF ANY MONEY IN CONNECTION WITH THE SETTLEMENT OF THIS ACTION. DO NOT MAIL OR DELIVER YOUR CLAIM FORM TO THE COURT OR TO ANY OF THE PARTIES OR THEIR COUNSEL AS ANY SUCH CLAIM WILL BE DEEMED NOT TO HAVE BEEN SUBMITTED. SUBMIT YOUR CLAIM FORM ONLY TO THE CLAIMS ADMINISTRATOR.

### CLAIMANT'S STATEMENT

1. I (we) purchased or otherwise acquired securities of GrowCo in one or more of the Offerings listed above during the Class Period and suffered losses. (Do not submit this Claim Form if you did not purchase GrowCo securities in the Offerings and during the designated Class Period described above).

2. By submitting this Claim Form, I (we) state that I (we) believe in good faith that I am (we are) a Class Member as defined above and in the Notice Of Pendency Of Class Action, Proposed Class Action Determination, Proposed Settlement Of Class Action, Fairness Hearing And Right To Appear (the "Notice"), or am (are) acting for such person(s); that I am (we are) not a Defendant in the Class Action or anyone excluded from the Class, as defined in the Notice; that I (we) have read and understand the Notice; that I (we) believe that I am (we are) entitled to receive a share of the Net Cash Settlement Amount, as defined in the Notice; that I (we) elect to participate in the proposed Settlement described in the Notice; and that I (we) have not filed a request for exclusion.  (If you are acting in a representative capacity on behalf of a Class Member [*e.g.*, as an executor, administrator, trustee, or other representative], you must submit evidence of your current authority to act on behalf of that Class Member. Such evidence would include, for example, letters testamentary, letters of administration, or a copy of the trust documents.)

3. I (we) consent to the jurisdiction of the Court with respect to all questions concerning the validity of this Claim Form. I (we) understand and agree that my (our) claim may be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to my (our) status as a Class Member(s) and the validity and amount of my (our) claim. No discovery shall be allowed on the merits of the Litigation or Settlement in connection with processing of the Claim Form.

4.  I (we) have set forth where requested below all relevant information with respect to each purchase or acquisition of GrowCo securities in the Offering(s) during the Class Period. I (we) agree to furnish additional information to the Claims Administrator to support this Claim Form if requested to do so.

5.  I (we) have enclosed photocopies of the documents evidencing each purchase or acquisition, or retention of GrowCo securities listed below in support of my (our) claim.  (IF ANY SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN A COPY OR EQUIVALENT DOCUMENTS BECAUSE THESE DOCUMENTS ARE NECESSARY TO VERIFY AND PROCESS YOUR CLAIM.)

6.  I (we) understand that the information contained in this Claim Form is subject to such verification as the Claims Administrator may request or as the Court may direct, and I (we) agree to cooperate in any such verification. (The information requested herein is designed to provide the minimum amount of information necessary to process most simple claims. The Claims Administrator may request additional information as required to efficiently and reliably calculate your recognized claim. In some cases, the Claims Administrator may condition acceptance of the claim based upon the production of additional information, including.)

7.  Upon the occurrence of the Court's approval of the Settlement, as detailed in the Notice, I (we) agree and acknowledge that my (our) signature(s) hereto shall effect and constitute a full and complete release by me (us) and my (our) respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which I (we) have or had a controlling interest or that have or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or their respective past and present officers, directors, employees, officials, members, partners, and attorneys, ("Releasors"), of all Released Claims as defined as defined in the Settlement Agreement and Notice.

## PART I:      CLAIMANT INFORMATION

| | |
|---|---|
| Beneficial Owner's Name (First, Middle, Last): | |
| | |
| Record Owner's Name (if different from beneficial owner listed above): | |
| Address: | |
| | |

| City: | State: | ZIP: |
|---|---|---|
| Foreign Province: | Foreign Country: | |
| Day Phone: | Evening Phone: | |

| Email: | | |
|---|---|---|
| Social Security Number (for individuals): | OR | Taxpayer Identification Number (for estates, trusts, corporations, etc.): |

Specify one of the following:

_____ IRA  _____ Joint Tenancy  _____ Employee  _____ Individual  _____ Other _____
(please explain)

## PART IIa. SCHEDULE OF TRANSACTIONS IN GROWCO SECURITIES

### Purchases:

B.  Separately list each and every purchase of GrowCo securities during the period from October 2014 through December 2017, and provide the following information (*must be documented):*

| Name of Offering | Type of Security Purchased | Investment Amount | Do You Still Hold The Security? (Y or N) | If You Do Not Still Hold The Security, Describe What You Did With It |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Sales:**

C.  Separately list each and every sale or disposition of GrowCo securities, and provide the following information (*must be documented):*

| Name of Offering | Type of Security Sold | Amount Received | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**If additional space is needed, attach separate, numbered sheets, giving all required information, substantially in the same format, and print your name and Social Security or Taxpayer Identification number at the top of each sheet.**

**YOU MUST READ AND SIGN THE CERTIFICATION BELOW. FAILURE TO SIGN THE CERTIFICATION MAY RESULT IN A DELAY IN PROCESSING OR REJECTION OF YOUR CLAIM**

## PART III:  CERTIFICATION

I (We) certify that I am (we are) NOT subject to backup withholding under the provisions of Section 3406 (a)(1)(c) of the Internal Revenue Code because: (a) I am (We are) exempt from backup withholding, or (b) I (We) have not been notified by the I.R.S. that I am (we are) subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the I.R.S. has notified me (us) that I am (we are) no longer subject to backup withholding.

NOTE: If you have been notified by the I.R.S. that you are subject to backup withholding, please strike out the language that you are not subject to backup withholding in the certification above.

UNDER THE PENALTIES OF PERJURY UNDER THE LAWS OF THE UNITED STATES, I (WE) CERTIFY THAT ALL OF THE INFORMATION I (WE) PROVIDED ON THIS PROOF OF CLAIM AND RELEASE FORM IS TRUE, CORRECT AND COMPLETE.

Signature of Claimant (If this claim is being made on behalf of Joint Claimants, then each must sign):

_____
(Signature)

_____
(Signature)

_____
(Capacity of person(s) signing, e.g., beneficial purchaser(s), executor, administrator, trustee, etc.)

☐  Check here if proof of authority to file is enclosed. (See Item 2 under Claimant's Statement)

Date: _____

**ACCURATE CLAIMS PROCESSING TAKES A
SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1.  Please sign and date the certification above. If this Claim Form is submitted on behalf of joint claimants, then both claimants must sign.
2.  Remember to attach supporting documentation, if available.
3.  DO NOT send original stock certificates.
4.  Keep a copy of everything you submit for your records, including your Claim Form.
5.  If you desire an acknowledgment of receipt of your mailed Claim Form, please send it Certified Mail, Return Receipt Requested.
6.  If you move after submitting this Claim Form, please notify the Claims Administrator of the change in your address

# EXHIBIT D

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| JOHN PAULSON,<br>**Individually and on Behalf of all Others**<br>**Similarly Situated,**<br><br>Plaintiff<br><br>v.<br><br>**TWO RIVERS WATER AND**<br>**FARMING COMPANY, JOHN R.**<br>**MCKOWEN, WAYNE HARDING and**<br>**TIMOTHY BEALL,**<br><br>**Defendants** | Civil Action No. 19-cv-02639-PAB-NYW |

## (PROPOSED) FINAL ORDER

WHEREAS, as of October 7, 2020, Plaintiff John Paulson ("Paulson" or "Plaintiff"), on one hand, and Defendants Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall), on the other hand, entered into a Settlement Agreement (the "Settlement Agreement")[1], in the above-captioned consolidated Class Action, which is subject to review under Rule 23 of the Federal Rules of Civil Procedure and which, together with the exhibits thereto, sets forth the terms and conditions of the proposed Settlement of the claims alleged in the Class Action on the merits and with prejudice.

WHEREAS, pursuant to the Order (1) Preliminarily Certifying the Class for Settlement Purposes; (2) Granting Preliminary Approval of Settlement; and (3) Approving Class Notice, (ECF No. ___), entered _____ ___, 2020 (the "Preliminary Approval Order"), the Court scheduled a hearing on _____2020 (the "Fairness Hearing") for the following purposes:

---

[1] Unless otherwise stated, all capitalized terms used herein have the meanings defined in the Settlement Agreement.

(A)     to finally determine whether the Class satisfies the applicable prerequisites for certification under Fed. R. Civ. P. 23(a) and 23(b)(3);

(B)     to finally determine whether the Settlement should be approved by the Court as fair, reasonable and adequate and in the best interests of the Class;

(C)     to determine whether a Final Order should be entered pursuant to the Settlement Agreement, dismissing the Class Action with prejudice as against the Defendants and effectuating the releases described below;

(D)     to determine whether the proposed Plan of Allocation of the Settlement Fund set forth in the Notice is fair and reasonable, and should be approved by the Court;

(E)     to consider any application by Class Counsel and Additional Plaintiff's Counsel for an Attorneys' Fees and Expenses Award, and for a Service Award to the Representative Plaintiff for efforts devoted to this Class Action and for reimbursement of his expenses;

(F)     to hear and determine any objections to the Settlement or to any request by Class Counsel and Additional Plaintiff's Counsel for an Attorneys' Fees and Expenses Award, and Service Award; and

(G)     to rule on such other matters as the Court may deem appropriate.

WHEREAS, the Court ordered that the Class Notice be mailed by first-class mail, postage prepaid, on or before _____ (the "Notice Date"), to all Class Members who can be identified with reasonable effort by the Class Counsel and Claims Administrator.

WHEREAS, the Class Notice advised Class Members of the date, time, place, and purpose of the Fairness Hearing. The Class Notice further advised that any objection to the Settlement was required to be filed with the Court and served on counsel on or before _____ 2020.

WHEREAS, the Class Notice advised Class Members of the deadline (the "Exclusion Deadline") and procedures for requesting exclusion from the Settlement Class.

WHEREAS, the Court finds that the provisions of the Preliminary Approval Order as to notice were complied with.

WHEREAS, on _____, Plaintiff moved for final approval of the Settlement ("Final Approval"), as directed in the Preliminary Approval Order. The Fairness Hearing was duly held before this Court on _____, 2020 at which time all interested persons were afforded the opportunity to be heard.

WHEREAS, this Court has duly considered Plaintiff's motion, the affidavits, declarations, and memoranda of law submitted in support thereof, the Settlement Agreement, and all of the submissions and arguments presented with respect to the proposed Settlement.

NOW, THEREFORE, after due deliberation, IT IS ORDERED, ADJUDGED AND DECREED that:

1.      This Final Order ("Final Order") incorporates by reference the definitions in the Settlement Agreement and all capitalized terms used in this Final Order that are not otherwise defined herein shall have the same meanings as set forth therein.

2.      This Court has jurisdiction over the subject matter of the Class Action and over all parties to the Class Action, including all members of the Class.

3.      The Court hereby re-affirms its determinations in the Preliminary Approval Order and finally certifies, for the purposes of the Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the following Class:

> All persons or entities that currently hold claims based on the GrowCo securities and purchased or otherwise acquired the securities through Offerings as listed below, during the period of October 2014 through December 2017 (the "Class Period") and suffered Alleged Losses. For avoidance of any doubt, persons or

entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment.

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

4.      Excluded from the Class are: (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers and directors; (3) any Judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

5.      The following persons or entities have validly requested exclusion from the Settlement Class:

6.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby re-affirms its determinations in the Preliminary Approval Order that: (a) Plaintiff John Paulson is certified as Representative Plaintiff for the Class; and (b) the following attorneys and law firms as Class Counsel: Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C.; Barton Goplerud and Brian Marty of Schindler, Anderson, Goplerud &

Weese, P.C.; and the following attorney and law firm as "Additional Plaintiff's Counsel": Steve Miller of Steve A. Miller, P.C.

7.      The Class Notice provided for and given to the Class: (i) was in compliance with the Preliminary Approval Order; (ii) constituted the best notice practicable under the circumstances; (iii) constituted notice that was reasonably calculated to apprise Class Members of the effect of the Settlement, of the proposed Plan of Allocation, of Class Counsel's request(s) for an Attorneys' Fees and Expenses Award, and a Service Award to the Plaintiff, of Class Members' right to object to the Settlement, the Plan of Allocation, and/or Class Counsel's request(s) for an Attorneys' Fees and Expenses Award and a Service Award, of their right to exclude themselves from the Class, and of their right to appear at the Fairness Hearing; (iv) constituted due, adequate, and sufficient notice to all persons entitled to receive notice of the proposed Settlement; and (v) satisfied the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), and all other applicable law and rules.

8.      The Court is unaware of any objections to the Settlement submitted pursuant to Rule 23(e)(5) of the Federal Rules of Civil Procedure.

9.      In light of the benefits to the Class, the complexity, expense and possible duration of further litigation of the Action, the risks of establishing liability and damages, and the costs of continued litigation, the Court hereby fully and finally approves the Settlement as set forth in the Settlement Agreement in all respects, and finds that the Settlement is, in all respects fair, reasonable and adequate, and in the best interests of Representative Plaintiff and Class Members. This Court further finds that the Settlement set forth in the Settlement Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Parties.

The Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

10.     Defendant Beall's Unopposed Motion to Set Aside Default filed May 22, 2020 [ECF No. 94] is granted. The Clerk's default entered against Defendant Beall on May 5, 2020 [ECF No. 90] is HEREBY vacated.

11.     The Class Action is hereby dismissed in its entirety, with prejudice, and without costs to any party, except as otherwise provided in the Settlement Agreement.

12.     Upon the Effective Date, Plaintiff and each and every other Class Member, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims as set forth in paragraph 1, subpart "cc" of the Settlement Agreement, against each and every one of the Releasees, as defined in paragraph 1, subpart "dd" of the Settlement Agreement, and shall forever be BARRED, ENJOINED AND RESTRAINED from commencing, instituting, prosecuting or maintaining any and all such Released Claims against any and all of the Releasees. The term Released Claims does not include any claims for payment of the Class Members' securities, including claims in the event of a GrowCo liquidation.

13.     Each Member of the Class is bound by this Order, including, without limitation, the releases of claims as set forth above.

14.     This Order and the Settlement Agreement, whether or not consummated, and any discussions, negotiations, proceedings or agreements relating to the Settlement Agreement, the Settlement, and any matters arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of the

Parties, or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)      do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by them with respect to the truth of any allegation by Plaintiff and the Class, or the validity of any claim that has been or could have been asserted in the Class Action or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendants;

(b)      do not constitute, and shall not be offered or received against or to the prejudice of Defendants as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by them, or against or to the prejudice of Plaintiff or any other Class Member as evidence of any infirmity in the claims of Plaintiff or other Class Members;

(c)      do not constitute, and shall not be offered or received against or to the prejudice of Defendants, Plaintiff, any other member of the Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity or wrongdoing, or in any way referred to for any other reason against or to the prejudice of any of the Defendants, Plaintiff, other Members of the Class, or their respective counsel, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement;

(d)     do not constitute, and shall not be construed against Defendants, Plaintiff, or any other Class Member, as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; and

(e)     do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiff or any other Class Member that any of their claims are without merit or infirm or that damages recoverable in the Class Action would not have exceeded the Settlement Amount.

15.     The administration of the Settlement, and the decision of all disputed questions of law and fact with respect to the validity of any claim or right of any Class Member to participate in the distribution of the Net Settlement Fund, shall remain under the authority of this Court.

16.     In the event that the Settlement does not become effective in accordance with the terms of the Settlement Agreement, then this Order shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated; and in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

17.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement as circumstances warrant.

18.     The Parties are hereby directed to consummate the Settlement Agreement and to perform its terms.

19.     A separate order shall be entered regarding Class Counsel's application for an Attorneys' Fees and Expenses Award and Service Award as allowed by the Court. Such order shall in no way disturb or affect this Order and shall be considered separate from this Order.

20.     Without affecting the finality of this Order in any way, this Court hereby retains continuing jurisdiction over: (i) implementation of the Settlement Agreement and Settlement; (ii) the allowance, disallowance or adjustment of any Class Member's claim on equitable grounds and any award or distribution of the Net Cash Settlement Amount; (iii) disposition of the Net Cash Settlement Amount; (iv) hearing and determining applications for Attorneys' Fees and Expenses Award; (v) all Parties for the purpose of construing, enforcing and administering the Settlement Agreement, Settlement and this Order; and (vi) other matters related or ancillary to the foregoing. There is no just reason for delay in the entry of this Order and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____ day of _____, 2020

_____
Philip A. Brimmer
Chief United States District Judge

# EXHIBIT E

**List of Two Rivers and GrowCo Officers and Directors
During the Class Period**

1.      Two Rivers represents that its officers and directors during the Class Period were:

   a. Gus Blass III
   b. Christopher Bragg
   c. Gregg Campbell
   d. Dennis Channer
   e. James Cochran
   f. Wayne Harding
   g. Michael Harnish
   h. John McKowen
   i. Samuel Morris
   j. John Stroh II
   k. Rockey Joe Wells
   l. Bradley Walker
   m. T. Keith Wiggins

2.      John R. McKowen represents that GrowCo, Inc.'s officers and directors during the

Class Period were:

   a. Timothy Beall (Mr. Beall contends he was not an officer and director of
      GrowCo., but Mr. Beall is already excluded from the Class because he is a
      Defendant in the Action)
   b. Kirsty Cameron
   c. Wayne Harding
   d. Chad Kirby
   e. Jan McCaffrey
   f. John R. McKowen
   g. Joseph McKowen
   h. Laura McKowen
   i. I. Wistar Morris
   j. Jeff Ploen
   k. Aaron Van Wingerden

# EXHIBIT 2

10-Q 1 form10-q.htm

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# FORM 10-Q

[X]     QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

### For the quarterly period ended September 30, 2019

[ ]     TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

### For the transition period from _____ to _____

### 000-51139
(Commission file number)

# Two Rivers Water & Farming Company
(Exact name of registrant as specified in its charter)

**Colorado**                                        **13-4228144**
(State of Incorporation)                  (I.R.S. Employer Identification No.)

**3025 S. Parker Road, Suite 140, Aurora, CO 80014**
(Address of principal executive offices) (Zip Code)

**(303) 222-1000**
(Registrant's telephone number, including area code)

**Not applicable**
(Former name, former address and former fiscal year, if changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes [X] No [ ]

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes [X] No [ ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer [ ]                    Accelerated filer [ ]
Non-accelerated filer [ ]                      Smaller reporting company [X]
                                               Emerging growth company [X]

If an emerging growth company, indicate by the check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [ ]

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act). Yes [ ] No [X]

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable

date:87,145,235 shares as of November 22, 2019.

## TABLE OF CONTENTS

| ITEM | DESCRIPTION | PAGE |
|------|-------------|------|
| **PART 1 - FINANCIAL INFORMATION** | | |
| ITEM 1. | FINANCIAL STATEMENTS | 3 |
| ITEM 2. | MANAGEMENT'S DISCUSSION AND ANALYSIS AND PLAN OF OPERATION | 26 |
| ITEM 3. | QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK | 31 |
| ITEM 4. | CONTROLS AND PROCEDURES | 31 |
| **PART II. OTHER INFORMATION** | | |
| ITEM 1. | LEGAL PROCEEDINGS | 33 |
| ITEM 1A. | RISK FACTORS | 33 |
| ITEM 2. | UNREGISTERED SALES OF EQUITY SECURITIES AND USE OF PROCEEDS | 34 |
| ITEM 3. | DEFAULTS UPON SENIOR SECURITIES | 34 |
| ITEM 4. | MINE SAFETY DISCLOSURES | 34 |
| ITEM 5. | OTHER INFORMATION | 34 |
| ITEM 6. | EXHIBITS | 35 |

# PART 1 - FINANCIAL INFORMATION

## ITEM 1. FINANCIAL STATEMENTS

**TWO RIVERS WATER & FARMING COMPANY AND SUBSIDIARIES**
Condensed Consolidated Balance Sheets
(In thousands, except for number of shares)
(Unaudited)

|  | September 30, 2019 (Unaudited) | December 31, 2018 (Derived from Audit) |
|---|---|---|
| **ASSETS:** | | |
| **Current Assets:** | | |
| Cash and cash equivalents | $ 401 | $ 6 |
| Accounts receivable, related party | 17 | 0 |
| Deposits and other current assets | 63 | 58 |
| **Total Current Assets** | 481 | 64 |
| **Long Term Assets** | | |
| Property, equipment and software, net | 5 | 20 |
| Land | 3,252 | 3,299 |
| Water assets | 24,891 | 24,891 |
| Supply rights | 480 | - |
| Investment in GCP1 | 2,192 | 2,289 |
| Goodwill | 14,100 | - |
| Other long term assets | 98 | 96 |
| **Total Long Term Assets** | 45,018 | 30,595 |
| **TOTAL ASSETS:** | $ 45,499 | $ 30,695 |
| | | |
| **LIABILITIES & STOCKHOLDERS' EQUITY:** | | |
| **Current Liabilities:** | | |
| Accounts payable | $ 1,305 | $ 1,243 |
| Accrued liabilities | 5,963 | 5,780 |
| Current portion of notes payable, net of discount | 9,329 | 8,099 |
| Preferred dividend payable | 4,988 | 4,970 |
| **Total Current Liabilities** | 21,585 | 20,092 |
| Notes payable, net of current portion | 868 | 1,173 |
| **Total Liabilities** | 22,453 | 21,265 |
| **Commitments & Contingencies (Notes 4,7,9,10)** | | |
| **Stockholders' Equity:** | | |
| Common stock, $0.001 par value, 200,000,000 shares authorized, 83,195,939 shares issued and outstanding at September 30, 2019 and 45,574,458 shares issued and outstanding at December 31, 2018 | 84 | 46 |
| Preferred shares, $0.001 par value, 5,000,000 shares authorized, 64,935 shares issued and outstanding at September 30, 2019 and December 31, 2018. | 252 | 252 |
| Additional paid-in capital | 95,942 | 81,186 |
| Accumulated (deficit) | (95,596) | (94,454) |
| Total Two Rivers Water & Farming Company Stockholders' Equity | 682 | (12,970) |
| Noncontrolling interest in subsidiaries | 22,364 | 22,364 |
| **Total Stockholders' Equity** | 23,046 | 9,394 |
| **TOTAL LIABILITIES & STOCKHOLDERS' EQUITY** | $ 45,499 | $ 30,659 |

The accompanying notes to consolidated financial statements are an integral part of these statements

**TWO RIVERS WATER & FARMING COMPANY AND SUBSIDIARIES**
**Condensed Consolidated Statements of Operations**
**(In thousands, except for number of shares)**
**(Unaudited)**

| | Three Months Ended September 30 | | Nine Months Ended September 30 | |
|---|---|---|---|---|
| | 2019 | 2018 | 2019 | 2018 |
| **Revenue:** | | | | |
| Sales | $ 3 | $ - | $ 3 | $ - |
| Distribution Rights | 100 | - | 100 | - |
| Land leasing | - | - | 34 | - |
| Other | 5 | 5 | 8 | - |
| **Total Revenue** | 108 | 5 | 145 | 22 |
| Direct cost of revenue | - | - | - | - |
| **Gross Margin** | 108 | 5 | 145 | 22 |
| **Operating Expenses** | | | | |
| General and administrative | 312 | 661 | 1,149 | 1,838 |
| Dam demolition expense | (825) | 1,800 | (825) | 1,800 |
| Depreciation and amortization | 16 | 17 | 48 | 75 |
| Total operating expenses | (497) | 2,478 | 372 | 3,713 |
| **Profit (Loss) from Operations** | 605 | (2,473) | (227) | (3,691) |
| **Other Income (Expense)** | | | | |
| Interest expense | (390) | (217) | (918) | (736) |
| Gain (loss) on disposal of assets and intangibles | - | 37 | 85 | 114 |
| Loss on debt settlement | - | - | 33 | - |
| Other income | 1 | 4 | 1 | 15 |
| Gain on de-consolidation of GrowCo | - | - | - | 12,773 |
| Loss on investment in GrowCo Partners 1, LLC | (26) | - | (98) | (617) |
| Total other income (expense) | (415) | (176) | (897) | 11,549 |
| **Net Profit (Loss) from Continuing Operations Before Taxes** | 190 | (2,649) | (1,124) | 7,858 |
| Income tax (provision) benefit | - | - | - | - |
| **Net Profit (Loss) from Continuing Operations After Taxes** | 190 | (2,649) | (1,124) | 7,858 |
| **Net (Loss) from Deconsolidation and Discontinued Operations** | - | - | - | (810) |
| **Net Profit (Loss) before Preferred Dividends and Non-Controlling Interest** | 190 | (2,649) | (1,124) | 7,048 |
| Preferred distributions | (6) | (6) | (18) | (1,002) |
| Net loss attributable to non-controlling interest | - | - | - | - |
| **Net Profit (Loss) Attributable to Common Shareholders** | 184 | (2,655) | (1,142) | 6,046 |
| **Profit (Loss) Per Common Share - Basic:** | 0.00 | (0.08) | (0.02) | 0.18 |
| **Profit (Loss) Per Common Share – Basic and Dilutive:** | 0.00 | (0.08) | (0.02) | 0.16 |
| **Weighted Average Shares Outstanding:** | | | | |
| Basic | 71,006 | 34,256 | 57,057 | 33,529 |
| Dilutive | 85,867 | 34,256 | 57,057 | 37,149 |

The accompanying notes to consolidated financial statements are an integral part of these statements

4

**TWO RIVERS WATER & FARMING COMPANY AND SUBSIDIARIES**
**Condensed Consolidated Statements of Cash Flows**
**(In thousands)**
**(Unaudited)**

| | 2019 | 2018 |
|---|---:|---:|
| **Cash Flows from Operating Activities:** | | |
| Net loss, before NCI | $ (1,142) | $ 6,046 |
| Net loss from discontinued operations | - | 810 |
| Adjustments to reconcile net income (loss) to net cash used in operating activities: | | |
| Depreciation and amortization | 48 | 75 |
| Accretion of debt discount | 313 | 178 |
| Loss (Gain) from debt extinguishment | (33) | - |
| Loss of modification of convertible debt | (8) | - |
| Stock issued for services | 144 | - |
| Stock option and warrant exercise | 290 | 1,220 |
| Gain on deconsolidation | - | (12,773) |
| Loss of investment in GrowCo | 98 | 617 |
| Loss (Gain) from disposal of fixed assets | (85) | (114) |
| Net change in operating assets and liabilities | | |
| Decrease (Increase) in accounts receivable, related party | (4) | 2 |
| Decrease in deposits, prepaid expenses and other assets | (2) | (47) |
| Increase (decrease) in accounts payable | 77 | 93 |
| Increase in distribution payable to preferred shareholders | 18 | 1,002 |
| Increase in accrued liabilities and other | (503) | 2,067 |
| **Net Cash Used in Operating Activities** | (789) | (824) |
| **Cash Flows from Investing Activities:** | | |
| Purchase of property and equipment | (33) | - |
| Sale of property and equipment | 47 | 72 |
| Investment in water assets | - | (102) |
| Acquisition | 9 | - |
| **Net Cash Used in Investing Activities** | 23 | (30) |
| **Cash Flows from Financing Activities:** | | |
| Borrowings on debt – related party | 20 | - |
| Proceeds from debt | 1,235 | 1,426 |
| Payment on notes payable | (94) | (532) |
| **Net Cash Provided by Financing Activities** | 1,161 | 894 |
| **Net Increase in Cash & Cash Equivalents** | 395 | 40 |
| **Beginning Cash & Cash Equivalents** | 6 | 14 |
| **Ending Cash & Cash Equivalents** | 401 | 54 |
| | | |
| Supplemental Disclosure of Cash Flow Information | | |
| Cash paid for interest | $ - | $ 196 |
| Shares issued in exchange for debt | $ 357 | $ - |
| Conversion of debt, preferred shares into Two Rivers common stock | $ 287 | $ 100 |
| Land exchanged for debt | $ 58 | $ - |
| Equipment exchanged for debt | $ 14 | $ - |
| Debt discount from beneficial conversion feature | $ 516 | $ - |
| Cashless exercise of warrants | $ 1 | $ 1 |

The accompanying notes to consolidated financial statements are an integral part of these statements

5

**TWO RIVERS WATER & FARMING COMPANY AND SUBSIDIARIES**
**Condensed Consolidated Statements of Changes in Stockholders' Equity**
**(In thousands)**
**(Unaudited)**

| | Voting Common Stock | | Water Redev. Preferred | | Additional Paid-in Capital | Accumulated (Deficit) | Non-Controlling Interest | Stockholders' Equity |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | | | | |
| Balances December 31, 2017 | 32,750 | $ 34 | 65 | $ 252 | $ 77,267 | $ (97,168) | $ 31,752 | $ 12,137 |
| | | | | | | | | |
| Net Income attributed to Two Rivers common shareholders | - | - | - | - | - | 6,046 | - | 6,046 |
| Prior period adjustment preferred shares | - | - | - | - | (100) | - | - | (100) |
| Stock issued in exchange for debt settlement | 874 | 2 | - | - | 98 | - | - | 100 |
| Shares issued for TR Capital conversions | 15 | - | - | - | - | - | - | - |
| Stock-based compensation | - | - | - | - | 1,190 | - | - | 1,190 |
| Shares issued for services | 1,091 | 0 | - | - | (1) | - | - | (1) |
| RSU issuance | 118 | 0 | - | - | (0) | - | - | - |
| Warrant issuance | - | - | - | - | 30 | - | - | 30 |
| Non-controlling interest | - | - | - | - | - | - | (383) | (383) |
| GrowCo deconsolidation | - | - | - | - | - | - | (8,858) | (8,858) |
| Balances, September 30, 2018 | 34,848 | $ 36 | 65 | $ 252 | $ 78,484 | $ (91,122) | $ 22,511 | $ 10,161 |
| | | | | | | | | |
| Balances December 31, 2018 | 45,575 | $ 46 | 65 | $ 252 | $ 81,186 | $ (94,454) | $ 22,364 | $ 9,394 |
| | | | | | | | | |
| Net Income attributed to Two Rivers common shareholders | - | - | - | - | - | (1,142) | - | (1,142) |
| Stock issued in exchange for debt settlement | 4,220 | 4 | - | - | 283 | - | - | 287 |
| Beneficial conversion feature on convertible debt | - | - | - | - | 516 | - | - | 516 |
| Stock-based compensation | - | - | - | - | 230 | - | - | 230 |
| Shares issued for services | 755 | 1 | - | - | 143 | - | - | 144 |
| Warrant exercise | 1,324 | 2 | - | - | (2) | - | - | - |
| Warrant issuance | - | - | - | - | 60 | - | - | 60 |
| Refundable shares issued for debt | 1,322 | 1 | - | - | 356 | - | - | 357 |
| Shares issued for acquisition | 30,000 | 30 | - | - | 13,170 | - | - | 13,200 |
| Balances September 30, 2019 | 83,196 | $ 84 | 65 | $ 252 | $ 95,942 | $ (95,596) | $ 22,364 | $ 23,046 |

The accompanying notes to consolidated financial statements are an integral part of these statements

6

## NOTE 1 – ORGANIZATION AND BUSINESS

*Unless the context requires otherwise, references in this document to "Two Rivers," or the "Company" is to Two Rivers Water & Farming Company and its subsidiaries.*

### Corporate Evolution

Prior to 2009, the Company was named Navidec Financial Services, Inc. ("Navidec") and had been engaged in mortgage lending and other enterprises unrelated to its current lines of business. Navidec was incorporated in the state of Colorado on December 20, 2002. On July 28, 2009, Navidec formed a wholly-owned Colorado corporation for the purpose of acquiring farm and water assets in the Colorado Huerfano/Cucharas watershed. On November 19, 2009, with shareholder approval, Navidec changed its name to Two Rivers Water Company. On December 11, 2012, with shareholder approval, the Company changed its name to Two Rivers Water & Farming Company.

On January 29, 2014, the board of directors approved a plan to reorganize our subsidiaries in a more integrated manner based on functional operations. We formed a new company, TR Capital Partners, LLC or TR Capital, which issued all of its common units to Two Rivers Water & Farming Capital. TR Capital then initiated the transactions described below under "Placement of Preferred Units". Following the completion of those transactions in September 2014, TR Capital and our other direct and indirect subsidiaries (excluding HCIC Holdings, LLC and Huerfano-Cucharas Irrigation Company) entered into a series of related transactions as the result of which assets and operations of such other subsidiaries transferred to TR Capital. As a result of those transactions, TR Capital owns all of the operations formerly conducted by those subsidiaries.

### Overview

In 2009, we began acquiring and developing irrigated farmland and associated water rights and infrastructure. As of September 30, 2019, we own approximately 7,076 gross acres. Gross acres owned showed a net increase of 811 acres from 6,265 gross acres at December 31, 2018 due the addition of acreage owned by Huerfano Cucharas Irrigation Company that was previously not reported.

We are focused on water assets we have acquired and will acquire in the future. Since 2009, we have acquired strategic water assets and land in the Huerfano and Cucharas river basins in southeastern Colorado, thus the name Two Rivers. Our water asset area spans over 1,900 square miles and drops in elevation from over 14,000 feet down to the confluence of the Arkansas River, just east of Pueblo Colorado at 4,500 feet. We operate in a natural, gravity fed water alluvial. This basin is the last undeveloped basin along the front range of Colorado. We plan to develop this basin to properly manage the water contained therein and serve the community while providing returns to our investors.

Since October 2016, we have refocused on monetizing our assets through asset sales and reinvestment. We plan to sell assets that we have determined will not yield significant future returns to our shareholders and invest strategically in the assets that we believe will. We plan to take net proceeds, if any, from these sales and continue to invest in our water and water infrastructure.

In May 2014, we formed GrowCo, Inc., a wholly owned subsidiary of Two Rivers through the issuance of 20,000,000 shares of common stock. On August 1, 2014, we announced that we were placing 10,000,000 GrowCo shares in a trust to be distributed to Two Rivers' common shareholders. As of June 30, 2018, the Company owned 10,000,000 GrowCo shares out of reported shares outstanding of 34,343,000, or 29.12%. The reported outstanding shares were provided to the Company by GrowCo's management.

The Company requested from GrowCo management financial information to complete the Company's June 30, 2018 financials. On July 17, 2018 the Company was notified by GrowCo's management that GrowCo would not provide the requested financial information. This event triggered the Company's management to re-examine the consolidation and VIE (variable interest entity) rules under US GAAP. Management concluded that as of April 1, 2018 the consolidation of GrowCo and GrowCo's related entities was no longer required under US GAAP.

*Water Redevelopment Company*

We formed Water Redevelopment Company ("Water Redev") in February 2017 for the purpose of separating our water assets from the rest of our business and to facilitate raising additional capital to invest in our water assets. Water Redevelopment Company is a subsidiary of Two Rivers and focuses on development and redevelopment of infrastructure for water management and delivery. Water Redevelopment's primary area of focus is in the Huerfano-Cucharas river basin in southeastern Colorado. Although no final decision has been reached, we are considering various alternatives and proposals for financing and restructuring Water Redev including a spin-off to shareholders, direct funding and partial or full rights sales.

*Vaxa Entities*

On July 31, 2019, Two Rivers completed its acquisition of a 100% interest in Vaxa Global, LLC and its two wholly-owned subsidiaries, Ekstrak Labs, LLC and Gramz Holdings, LLC (together the "Vaxa Entities"), from Easby Land & Cattle Company, LLC, in exchange for 30,000,000 Two Rivers' common shares plus an additional 20,000,000 Two Rivers' common shares subject to an earn-out performance by the Vaxa Entities over a 12 month period. The number of earn-out shares will equal the lesser of:

- The quotient of 10 times the consolidated earnings before income taxes, depreciation and amortization, or EBITDA, of Vaxa for the twelve months ending June 30, 2020, divided by $1.00; and

- 20,000,000.

It is expected that the earn-out shares, if any, would be issued by August 2020.

We intend to expand Vaxa's operations to grow hemp on land that we own, using water that we supply. This will, in turn, provide additional hemp products to Ekstrak and Gramz™.

In September 2019, Vaxa entered into an agreement to purchase over $700,000 in extraction and processing equipment, and all seeds, clone and biological assets, as well as the 2019 hemp crop from Butte Valley farm, from Montverde Partners, LLC ("Montverde"), in exchange for 3,000,000 shares of our common stock which were contributed by Easby Land & Cattle, LLC. Montverde is a joint venture partner of Vaxa in the Butte Valley hemp farming operation near Walsenburg, Colorado. The transaction closed in October 2019.

### Vaxa Global, LLC

Vaxa Global, LLC farms and distributes Canadian originated patented-processed hemp for biomass sale and CBD extraction within the United States to states that are approved to extract CBD. Vaxa hemp is 100% organic, non-GMO, solvent free, THC free and 100% food-grade edible. Vaxa originated from one of the first industrial hemp distributors/farmers/manufactures in Canada into the US.

### Ekstrak Labs, LLC

Ekstrak Labs, LLC is an emerging company in isolate extraction. Eskstrak plans to build state-of-the-art facilities with machinery that is proven to deliver optimal extraction results. Eskstrak is developing joint venture partnerships for brand diversification into various products and creating product lines for affiliated brands through white label wholesale products.

### Gramz Holdings, LLC

Gramz Holdings, LLC is a supplier of Nature's Whole Spectrum™, natural whole plant compounds in consumer products designed to maintain the composition of the plant's natural source and state. Gramz™ was founded to respect the potential medicinal and therapeutic value of hemp's whole plant composition. Gramzs™ products include Gramz Whole Plant Matrix™ Sublingual Drops and Gramz Herbal Topical, with R&D in progress for additional products for both humans and pets.

**NOTE 2 - SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES**

*Principles of Consolidation*

The accompanying condensed consolidated financial statements include the accounts of Two Rivers, Huerfano-Cucharas Irrigation Company, TR Capital and its subsidiaries: Two Rivers Farms, and Two Rivers Water. All significant inter-company balances and transactions have been eliminated in consolidation.

Under guidance in ASC 810-10-05-8 "Consolidation of VIEs" (Variable Interest Entities) the Company's management has determined that GrowCo and its related entities, GCP1, GCP Super Units, GCP2, should no longer be consolidated for financial statement purposes. The Company now reports its ownership position under the equity method of accounting. Prior to June 30, 2018, GrowCo and its related entities were consolidated.

*Basis of Presentation*

The accompanying unaudited condensed consolidated financial statements have been prepared in accordance with generally accepted accounting principles in the United States of America ("U.S. GAAP") for interim financial information and with the instructions to Form 10-Q and Item 210 of Regulation S-X. Accordingly, they do not include all the information and footnotes required by U.S. GAAP for complete financial statements, although the Company believes that the disclosures made are adequate to make the information not misleading. In the opinion of management, all adjustments (consisting of only normal recurring accruals) considered necessary for a fair presentation for the periods presented have been included as required by Regulation S-X, Rule 10-01. Operating results for the three and nine months ended September 30, 2019 are not necessarily indicative of the results that may be expected for the year ended December 31, 2019. It is suggested that these condensed consolidated financial statements be read in conjunction with the Company's consolidated financial statements and footnotes thereto included in the Company's Annual Report on Form 10-K for the year ended December 31, 2018, as filed with the Securities and Exchange Commission on April 15, 2019.

*Deconsolidation of GrowCo, Inc.*

Even though the Company no longer consolidates GrowCo and GrowCo's related entities into the Company's financials, Management has determined that the Company is a guarantor of GrowCo's $4M Secured Notes. The Company did not sign these notes as a guarantor but has provided collateral owned by the Company with a 2018 appraised value of $2,359,000. Since Two Rivers' Management desires to present a conservative representation of its financial information it has determined to set the probability of collection against its collateral at 100% of the recent appraised value. The Company has recorded a contingent liability of $2,359,000 and offset this amount as an increase in the Company's investment in GCP1 (ASC 460-10-55-23c).

Additionally, US GAAP (ASC 810-10-40) provides guidance on "Derecognition" of a previously consolidated entity or entities. Under this guidance, Two Rivers shall account for the deconsolidation of a subsidiary or derecognition of a group of assets specified in ASC 810-10-40-3A by recognizing a gain or loss in net income attributable to the parent, measured as the difference between:

a. The aggregate of all of the following:

1. The fair value of any consideration received. In Two Rivers' case, no consideration was received.

2. The fair value of any retained noncontrolling investment in the former subsidiary or group of assets at the date the subsidiary is deconsolidated, or the group of assets is derecognized. In Two Rivers case, there were no retained noncontrolling investments in GrowCo or its related entities.

3. The carrying amount of any noncontrolling interest in the former subsidiary (including any accumulated other comprehensive income attributable to the noncontrolling interest) at the date the subsidiary is deconsolidated. In Two Rivers case, the total amount of the noncontrolling interest to derecognized is as follows as of April 1, 2018:

| Entity | April 1, 2018 |
|---|---|
| GrowCo | (1,230,000) |
| GrowCo Partners 1, LLC | 3,621,000 |
| GCP Super Units, LLC | 5,016,000 |
| TR Cap 20150630 Distribution, LLC | 497,000 |
| TR Cap 20150930 Distribution, LLC | 460,000 |
| TR Cap 20151231 Distribution, LLC | 495,000 |
| Total | $ 8,859,000 |

b. The carrying amount of the former subsidiary's assets and liabilities or the carrying amount of the group of assets.

With the above guidance, during the year ended December 31, 2018 the Company determined that the effect of the deconsolidation of GrowCo produced a gain of $12,773,000 which is a non cash adjustment. This amount consists of elimination of the noncontrolling interest in GrowCo of $8,859,000 and $3,914,000 from the removal of GrowCo's assets and liabilities. The $3,914,000 represented the amount of GrowCo liabilities over GrowCo's assets.

*Investment in GrowCo Partners 1, LLC (GCP1)*

Due to the deconsolidation of GrowCo and its related entities, which include GCP1, the Company's investment in GCP1 is now accounted for under the equity method.

*Non-controlling Interest*

Below is the detail of non-controlling interest shown on the condensed consolidated balance sheets.

| Entity | September 30, 2019 | Dec 31, 2018 |
|---|---|---|
| TR Capital | $ 20,342,000 | $ 20,342,000 |
| HCIC | 1,379,000 | 1,379,000 |
| F-1 | 29,000 | 29,000 |
| F-2 | 162,000 | 162,000 |
| DFP | 452,000 | 452,000 |
| Total | $ 22,364,000 | $ 22,364,000 |

*Reclassification*

Certain amounts previously reported have been reclassified to conform to current presentation. Certain labels of accounts/classifications have been changed.

*Use of Estimates*

The preparation of financial statements in conformity with generally accepted accounting principles in the United States requires management to make estimates and assumptions. These estimates and assumptions affect the reported amounts of assets and liabilities, disclosure of contingent assets and liabilities at the date of the condensed consolidated financial statements and the reported amounts of revenues and expenses during the reported period. Actual results could differ materially from those estimates.

10

*Cash and Cash Equivalents*

For purposes of reporting cash flows, Two Rivers considers cash and cash equivalents to include highly liquid investments with original maturities of 90 days or less. Those are readily convertible into cash and not subject to significant risk from fluctuations in interest rates. The recorded amounts for cash equivalents approximate fair value due to the short-term nature of these financial instruments.

*Concentration of Credit Risk*

Financial instruments that potentially subject Two Rivers to significant concentrations of credit risk include cash equivalents, marketable investments, advances and accounts receivable. The Company maintains its cash balances in the form of bank demand deposits, money market accounts that management believes to be of high credit quality. Accounts receivable are typically uncollateralized and are derived from transactions with and from customers primarily located in the United States.

*Fair Value of Measurements and Disclosures*

    *Fair Value of Assets and Liabilities Acquired*

Fair value is the price that would be received from the sale of an asset or paid to transfer a liability (i.e., an exit price) in the principal or most advantageous market in an orderly transaction between market participants. In determining fair value, the accounting standards established a three-level hierarchy that distinguishes between (i) market data obtained or developed from independent sources (i.e., observable data inputs) and (ii) a reporting entity's own data and assumptions that market participants would use in pricing an asset or liability (i.e., unobservable data inputs). Financial assets and financial liabilities measured and reported at fair value are classified in one of the following categories, in order of priority of observability and objectivity of pricing inputs:

- *Level 1* – Fair value based on quoted prices in active markets for identical assets or liabilities.

- *Level 2* – Fair value based on significant directly observable data (other than Level 1 quoted prices) or significant indirectly observable data through corroboration with observable market data. Inputs would normally be (i) quoted prices in active markets for similar assets or liabilities, (ii) quoted prices in inactive markets for identical or similar assets or liabilities or (iii) information derived from or corroborated by observable market data.

- *Level 3* – Fair value based on prices or valuation techniques that require significant unobservable data inputs. Inputs would normally be a reporting entity's own data and judgments about assumptions that market participants would use in pricing the asset or liability.

The fair value measurement level for an asset or liability is based on the lowest level of any input that is significant to the fair value measurement. Valuation techniques should maximize the use of observable inputs and minimize the use of unobservable inputs.

    *Recurring Fair Value Measurements*

The carrying value of the Company's financial assets and financial liabilities is their cost, which may differ from fair value. The carrying value of cash held as demand deposits, money market and certificates of deposit, marketable investments, accounts receivable, short-term borrowings, accounts payable and accrued liabilities approximated their fair value. Marketable investments are valued at Level 1 due to readily available market quotes. The fair value of the Company's long-term debt, including the current portion approximated its carrying value. Fair value for long-term debt was estimated based on quoted market prices of the identical debt instruments or values of comparable borrowings.

*Property and Equipment*

Property and equipment are stated at cost less accumulated depreciation. Depreciation is computed principally on the straight-line method over the estimated useful life of each type of asset, which ranges from three to twenty-seven and a half years. Maintenance and repairs are charged to expense as incurred; improvements and betterments are capitalized. Upon retirement or disposition, the related costs and accumulated depreciation are removed from the accounts, and any resulting gains or losses are credited or charged to income.

Below is a summary of premises and equipment:

| Asset Type | Life in Years | September 30, 2019 | December 31, 2018 |
|---|---|---|---|
| Office equipment, furniture | 5 – 7 | $ 12,000 | $ 12,000 |
| Computers | 3 | 46,000 | 46,000 |
| Vehicles | 5 | 9,000 | 25,000 |
| Farm equipment | 7 – 10 | 147,000 | 147,000 |
| Buildings | 27.5 | 10,000 | 10,000 |
| Website | 3 | 7,000 | 7,000 |
| Subtotal | | 231,000 | 247,000 |
| Less: Accumulated depreciation | | (226,000) | (227,000) |
| Net book value | | $ 5,000 | $ 20,000 |

*Land*

Land acquired for farming is recorded at cost. Some of the land acquired has not been farmed for many years, if not decades. Therefore, additional expenditures are required to make the land ready for efficient farming. Expenditures for leveling the land are added to the cost of the land. Irrigation is not capitalized in the cost of Land (*Property and Equipment* above). Land is not depreciated. However, once per year, management will assess the value of land held, and in their opinion, if the land has become impaired, Management will establish an allowance against the land.

The Company's land located in El Paso County, Colorado, is being partially developed into 35 to 40 acre lots to be sold. For the year ended December 31, 2018 the Company recognized a gain of $238,000 from approximately $360,000 in land sales. For the nine months ended September 30, 2019, we sold two lots totaling 78 acres for a gross sales price of $116,000, recognized a gain of approximately $68,000. This transaction provided cash of approximately $47,000, paid in full the first mortgage of the El Paso land note for approximately $58,000, and direct expenses of sale of approximately $11,000. In the three months ended September 30, 2019, there were no land sales.

*Water Rights and Infrastructure*

Subsequent to purchase of water rights and water infrastructure, management periodically evaluates the carrying value of its assets, and if the carrying value is in excess of fair market value, the Company will establish an impairment allowance. No amortization or depreciation is taken on the water rights. See the discussion below concerning Impairments – Water rights and infrastructure.

*Intangibles*

Two Rivers recognizes the estimated fair value of water rights acquired by the Company's purchase of stock in HCIC and Orlando. These intangible assets will not be amortized because they have an indefinite remaining useful life based on many factors and considerations, including, the historical upward valuation of water rights within Colorado.

In conjunction with the acquisition of Vaxa, the Company recognized goodwill of approximately $14,100,000 based on the issuance of 30,000,000 shares at the closing share price ($0.44) on the date of acquisition (July 31, 2019) plus net liabilities acquired (See NOTE 8).

12

*Impairments*

*Property and Equipment*

Once per year we review all property, equipment and software owned by the Company and compare the net book value of such assets with the fair market value of each piece of equipment having a net book value greater than $5,000. If it is determined that the net book value is greater than the fair market value, an impairment will be recorded. If impairment is necessary, a loss on the value of the affected asset will be recorded, and the impairment will not be reversed in future periods.

*Land*

Once per year we review each parcel of land owned by the Company together with improvements to each parcel and compare the carrying cost with the fair market value. If it appears that our carrying value may be greater than the fair market value, an independent appraisal will be ordered. If the appraised value is less than our carrying value, an impairment will be recorded. If impairment is necessary, a loss on the value of our land will be recorded, and the impairment will not be reversed in future periods.

*Water Rights and Infrastructure*

Once per year we assess the value of the water rights held by the Company, comparing our estimated values with recent sales of comparable water rights along with depreciation of the infrastructures. In the event that such assessment indicates that the carrying value is greater than the fair market value of the water rights or the depreciable replacement cost of our infrastructure, an impairment will be recorded. If impairment is necessary, a loss on value of our water rights will be recorded, and the impairment will not be reversed in future periods.

Prior to the year ended December 31, 2017, the Company recognized a $30,000 impairment on the Company's land and water shares.

For the year ended December 31, 2017, the Company examined the depreciable replacement cost of its water infrastructure. This analysis caused the recognition of $6,900,000 impairment to the water infrastructure.

In 2018, the Company obtained two independent appraisals covering its water assets. The appraisals were in excess of the Company's carrying value of it water rights and infrastructure.

For the year ended December 31, 2018 and the nine months ended September 30, 2019, the Company did not recognize any impairments.

*Revenue Recognition*

Effective January 1, 2018, the Company adopted ASC 606 — Revenue from Contracts with Customers. Under ASC 606, the Company recognizes revenue from the commercial sales of products, land, licensing agreements and farming contracts by applying the following steps: (1) identify the contract with a customer; (2) identify the performance obligations in the contract; (3) determine the transaction price; (4) allocate the transaction price to each performance obligation in the contract; and (5) recognize revenue when each performance obligation is satisfied. For the comparative periods, revenue has not been adjusted and continues to be reported under ASC 605 — Revenue Recognition. Under ASC 605, revenue is recognized when the following criteria are met: (1) persuasive evidence of an arrangement exists; (2) the performance of service has been rendered to a customer or delivery has occurred; (3) the amount of fee to be paid by a customer is fixed and determinable; and (4) the collectability of the fee is reasonably assured.

There was no impact on the Company's financial statements as a result of adopting Topic 606 for the three and nine months ended September 30, 2019 and 2018.

*Farming*

For the three and nine months ended September 30, 2019 the Company had approximately $0 in net crop share revenues. For the three and nine months ended September 30, 2018, the Company recognized approximately $0 in net crop share revenues. During 2018, the Company entered into a crop share arrangement for a percentage of a hemp crop produced on 4 acres of farm land at Butte Valley in Huerfano County, Colorado. A net payment of $18,000 for the Company's share was received in the three months ended December 31, 2018

Vaxa generates revenue from hemp farming operations, distribution agreements and CBD consumer product sales. For the nine months ended September 30, 2019, Vaxa generated approximately $103,000 in revenue. Prior to the acquisition, Vaxa entered into a farm lease with the Company to run a pilot hemp farming operation in Butte Valley on property that the Company owned.

*Member Assessments*

Once per year the HCIC board estimates HCIC's expenses, less anticipated water revenues, and establishes an annual assessment per ownership share. One-half of the member assessment is recorded in the second quarter of the calendar year and the other one-half of the member assessment is recorded in the third quarter of the calendar year. Assessments paid by Two Rivers Water Company to HCIC are eliminated in consolidation of the financial statements.

HCIC does not reserve against any unpaid assessments. Assessments due, but unpaid, are secured by the member's ownership of HCIC. The value of this ownership is significantly greater than the annual assessments.

*Stock Based Compensation*

Beginning January 1, 2006, the Company adopted the provisions of ASC 718 and accounts for stock-based compensation in accordance with ASC 718. Under the fair value recognition provisions of this standard, stock-based compensation cost is measured at the grant date based on the fair value of the award and is recognized as expense on a straight-line basis over the requisite service period, which generally is the vesting period. The Company elected the modified-prospective method, under which prior periods are not revised for comparative purposes. The valuation provisions of ASC 718 apply to new grants and to grants that were outstanding as of the effective date and are subsequently modified.

All options granted prior to the adoption of ASC 718 and outstanding during the periods presented were fully vested at the date of adoption.

*Dam Demolition Expense*

During the year ended December 31, 2018 a court date has been set for a hearing of the State of Colorado's legal action to compel the Company to demolish Cucharas #5 reservoir. A contingent liability, with an offsetting expense of $1,800,000 has been recognized. In July 2019, the Company reached a settlement with the State of Colorado, whereby the Company will pay approximately $1,000,000 plus interest to the State of Colorado in exchange for a full settlement of the above legal action. The Company recognized a reduction of this contingent liability from $1,800,000 to approximately $1,000,000, along with additional non-cash gains of approximately $25,000 from the negotiations and resolution of previously recorded accounts payable, on Two Rivers' in these financial statements. In the three months ending September 30, 2019, the Company made payments of approximately $82,000 to the State of Colorado in compliance with the payment terms of the settlement agreement. The balance of the accrued expense for the settlement was approximately $893,000 on September 30, 2019.

*Debt and Equity*

The Company follows beneficial conversion feature guidance in ASC 470-20, which applies to convertible stock as well as convertible debt. A beneficial conversion feature is defined as a nondetachable conversion feature that is in the money at the commitment date. The beneficial conversion feature guidance requires recognition of the conversion option's in-the-money portion, the intrinsic value of the option, in equity, with an offsetting reduction to the carrying amount of the instrument. The resulting discount is amortized as interest over the life of the instrument, if a stated maturity date exists, or to the earliest conversion date, if there is no stated maturity date. If the earliest conversion date is immediately upon issuance, the expense must be recognized at inception. When there is a subsequent change to the conversion ratio based on a future occurrence, the new conversion price may trigger the recognition of an additional beneficial conversion feature on occurrence.

14

On May 21, 2019, the Company entered into a convertible promissory note with an investor of the Company in the amount of $262,500. The note bears 10% interest and is payable in full on May 21, 2020. The Company has recorded a beneficial conversion feature of $258,000, which is recorded as a discount on the note payable and being amortized over the life of the note. As of September 30, 2019 the balance of the beneficial conversion feature is approximately $168,000.

On May 21, 2019, the Company entered into a convertible promissory note with an investor of the Company in the amount of $262,500. The note bears 10% interest and is payable in full on May 21, 2020. The Company has recorded a beneficial conversion feature of approximately $258,000, which is recorded as a discount on the note payable and being amortized over the life of the note. As of September 30, 2019, the balance of the beneficial conversion feature is approximately $168,000.

On September 19, 2019 the Company entered into a convertible promissory note with an investor of the Company in the amount of $575,000. The note bears 12% interest and is payable in full on March 19, 2020. The note is convertible after 180 days so no beneficial conversion feature was recognized. The Company recognized a total original issue discount amount of approximately $413,000 on the note consisting of a fixed amount of $58,000 and $356,000 for shares issued. Approximately 83% of the shares issued by the Company ($297,000 of the note discount) are returnable to the Company if the note is repaid on or before the maturity date.

*Preferred Dividend Payable*

Preferred dividend payable represents dividends payable to holders of preferred units of TR Capital, approximately $4,937,000 as of September 30, 2019 and preferred dividends owed to holders of the Water Redevelopment Company preferred shares of approximately $51,000.

Beginning on July 1, 2018, the Company terminated the accrual of the preferred dividends payable to TR Capital preferred members due to a binding letter of intent executed with an outside strategic partner. Additionally, TR Capital has not declared dividends due the Company's financial condition.

*Income Taxes*

The Company accounts for income taxes under the asset and liability method, which requires the recognition of deferred tax assets and liabilities for the expected future tax consequences of events that have been included in the financial statements. Under this method, the Company has determined the deferred tax assets and liabilities on the basis of the differences between the financial statement and tax basis of assets and liabilities by using enacted tax rates in effect for the year in which the differences are expected to reverse. The effect of a change in tax rates on deferred tax assets and liabilities is recognized in income in the period that includes the enactment date.

The Company recognizes deferred tax assets to the extent that it believes that these assets are more likely than not to be realized. In making such a determination, the Company considers all available positive and negative evidence, including future reversals of existing taxable temporary differences, projected future taxable income, tax-planning strategies, and results of recent operations. If the Company determines that it would be able to realize our deferred tax assets in the future in excess of their net recorded amount, it would make an adjustment to the deferred tax asset valuation allowance, which would reduce the provision for income taxes. The Company records uncertain tax positions in accordance with ASC 740 on the basis of a two-step process in which (1) it determines whether it is more likely than not that the tax positions will be sustained on the basis of the technical merits of the position and (2) for those tax positions that meet the more-likely-than-not recognition threshold, it recognizes the largest amount of tax benefit that is more than 50 percent likely to be realized upon ultimate settlement with the related tax authority.

15

The Company recognizes interest and penalties related to unrecognized tax benefits on the income tax expense line in the accompanying consolidated statement of operations. As of September 30, 2019, no accrued interest or penalties are included on the related tax liability line in the balance sheet.

*Net (Loss) per Share*

Basic net income per share is computed by dividing net income (loss) attributed to Two Rivers available to common shareholders for the period by the weighted average number of common shares outstanding for the period. Diluted net income (loss) per share is computed by dividing the net income for the period by the weighted average number of common and potential common shares outstanding during the period.

The dilutive effect of the outstanding 3,058,500 options, and 17,537,896 warrants at December 31, 2018, have an exercise price in excess of the Company's closing price of $0.17/share as of December 28, 2018; therefore these shares have not been included in the determination of diluted earnings per share since, under ASC 260 they would be anti-dilutive. As of September 30, 2019, the total number of warrants outstanding were 5,948,730, including 4,225,778 issued to Black Mountain which have an exercise price of $0.07878/share.

The common shares used in the computation of basic and diluted net income (loss) per share are reconciled as follows:

|  | Nine Months Ended September 30, | |
|---|---|---|
|  | 2019 | 2018 |
| Weighted average number of shares outstanding – basic | 71,006,000 | 57,057,000 |
| Dilutive effect of convertible debt | 8,912,000 | - |
| Dilutive effect of warrant exercise | 5,949,000 | - |
| Weighted average number of shares outstanding – diluted | 85,867,000 | 57,057,000 |

*Recently Issued Accounting Pronouncements*

In March 2019 - the Financial Accounting Standards Board ("FASB") Update 2019-01—*Leases (Topic 842): Codification Improvements.* The transition and effective date provisions for this Update apply to Issue 1 and Issue 2 in the Update. They do not apply to Issue 3 in the Update because the amendments for that Issue are to the original transition requirements in Topic 842. The amendments in this Update amend Topic 842. That Topic has different effective dates for public business entities and entities other than public business entities. The effective date of those amendments is for fiscal years beginning after December 15, 2019, and interim periods within those fiscal years for any of the following:

   1) A public business entity
   2) A not-for-profit entity that has issued, or is a conduit bond obligor for, securities that are traded, listed, or quoted on an exchange or an over-the-counter market
   3) An employee benefit plan that files financial statements with the U.S. Securities and Exchange Commission (SEC).

For all other entities, the effective date is for fiscal years beginning after December 15, 2019, and interim periods within fiscal years beginning after December 15, 2020. Early application is permitted. An entity should apply the amendments as of the date that it first applied Topic 842, using the same transition methodology in accordance with paragraph 842-10-65-1(c). Management has determined to not adopt this application early. Further, it will have a minimal impact on the Company's financial statements.

In August 2018, FASB issued ASU 2018-13, Fair Value Measurement (Topic 820), "*Disclosure Framework – Changes to the Disclosure Requirements for Fair Value Measurement*". The amendments in this Update modify certain disclosure requirements of fair value measurements and are effective for all entities for fiscal years, and interim periods within those fiscal years, beginning after December 15, 2019. Early adoption is permitted. The Company is currently unable to determine the impact on its financial statements of the adoption of this new accounting pronouncement.

In March 2018, the FASB issued ASU No. 2018-05, Income Taxes (Topic 740) – "*Amendments to SEC Paragraphs Pursuant to SEC Staff Accounting Bulletin No. 118*". The amendment provides guidance on accounting for the impact of the Tax Cuts and Jobs Act (the "Tax Act") and allows entities to complete the accounting under ASC 740 within a one-year measurement period from the Tax Act enactment date. This standard is effective upon issuance. The Tax Act has several significant changes that impact all taxpayers, including a transition tax, which is a one-time tax charge on accumulated, undistributed foreign earnings. The calculation of accumulated foreign earnings requires an analysis of each foreign entity's financial results going back to 1986. The Company does not expect the adoption of this ASU to have a material impact on its consolidated financial statements.

In February 2018, the FASB issued ASU No. 2018-02, "*Reclassification of Certain Tax Effects from Accumulated Other Comprehensive Income*". The guidance permits entities to reclassify tax effects stranded in Accumulated Other Comprehensive Income as a result of tax reform to retained earnings. This new guidance is effective for annual and interim periods in fiscal years beginning after December 15, 2018. Early adoption is permitted in annual and interim periods and can be applied retrospectively or in the period of adoption. The Company is currently in the process of evaluating the impact of adoption on its consolidated financial statements.

In July 2017, the FASB issued Accounting Standards Update ("ASU") "*Income Statement – Reporting Comprehensive Income (Topic 220)*". This ASU deals with the reclassification of certain tax effects from Accumulated Other Comprehensive Income. The Company does not believe that there will be any significant financial impact due to prior taxable losses and our net operating loss carry forward.

In July 2017, FASB issued ASU "*Earnings Per Share (Topic 260); Distinguishing Liabilities from Equity (Topic 480); Derivatives and Hedging (Topic 815)*": (Part I) Accounting for Certain Financial Instruments with Down Round Features, (Part II) Replacement of the Indefinite Deferral for Mandatorily Redeemable Financial Instruments of Certain Nonpublic Entities and Certain Mandatorily Redeemable Noncontrolling Interests with a Scope Exception. Management believes that Topics 260 and 480 pertains to the Company and the impact will be immaterial.

In May 2017, the FASB issued ASU 2017-09, "*Compensation-Stock Compensation (Topic 718): Scope of Modification Accounting*", which clarifies when a change to the terms or conditions of a share-based payment award must be accounted for as a modification. The new guidance requires modification accounting if the fair value, vesting condition or the classification of the award is not the same immediately before and after a change to the terms and conditions of the award. The new guidance is effective for all entities for annual periods, and interim periods within those annual periods, beginning after December 15, 2017, with early adoption permitted. The Company does not expect the adoption of this ASU to have a material impact on its consolidated financial statements.

In January 2017, the FASB issued ASU No. 2017-1, Business Combinations (Topic 805): Clarifying the Definition of a Business. The amendments in this update clarify the definition of a business with the objective of adding guidance to assist entities with evaluating whether transactions should be accounted for as acquisitions (or disposals) of assets or businesses. The definition of a business affects many areas of accounting including acquisitions, disposals, goodwill, and consolidation. The amendments of this ASU are effective for public business entities for annual periods beginning after December 15, 2018, and interim periods within annual periods beginning after December 15, 2019. The amendments in this Update are to be applied prospectively on or after the effective date. Currently, the Company believes that this ASU has no impact on its financial statements and reporting; however, in the future it may have an impact on its financial statements with the adoption of this new accounting pronouncement.

In February 2016, the FASB issued ASU 2016-02, "Leases" Topic 842, which amends the guidance in former ASC Topic 840, *Leases*. The new standard increases transparency and comparability most significantly by requiring the recognition by lessees of right-of-use ("ROU") assets and lease liabilities on the balance sheet for all leases longer than 12 months. Under the standard, disclosures are required to meet the objective of enabling users of financial statements to assess the amount, timing, and uncertainty of cash flows arising from leases. For lessees, leases will be classified as finance or operating, with classification affecting the pattern and classification of expense recognition in the income statement. The Company adopted the new lease guidance effective January 1, 2019. The Company only has one lease in effect; its office lease located in Aurora Colorado. The lease rate is less than $3,000/month and expires on March 31, 2020. The Company is more likely than not to renew this lease and is not obligated to renew the lease. The office lease is insignificant to the financial presentation of the Company; therefore, it is not shown on the Company's financial statements. The Company has adopted the modified retrospective approach therefore the Company has no plans of restating prior periods and that there is no asset or liability currently.

17

Management does not believe that any other recently issued, but not effective, accounting standards if currently adopted would have a material effect on the accompanying consolidated financial statements.

**NOTE 3 – INVESTMENTS AND LONG-LIVED ASSETS**

*Land*

Upon purchasing land, the value is recorded at the purchase price or fair value, whichever is more appropriate. Costs incurred to prepare the land for the intended purpose are also capitalized in the recorded cost of the land. No amortization or depreciation is taken on land. However, the land is reviewed by management at least once per year to ascertain if a further analysis is necessary for any potential impairments.

*Water Rights and Infrastructure*

The Company has acquired both direct flow water rights and water storage rights. It has obtained water rights through the purchase of shares in a mutual ditch company, which it accomplished through its purchase of shares in HCIC, or through the purchase of an entity holding water rights, which it effected through its purchase of a membership interest of Orlando. The Company may also acquire water rights through outright purchase. In all cases, such rights are recognized under decrees of the Colorado water court and administered under the jurisdiction of the Office of the State Engineer.

Upon purchasing water rights, the value is recorded at our purchase price. If a majority interest is acquired in a company holding water assets (potentially with other assets including water delivery infrastructure, right of ways, and land), the Company determines the fair value of the assets. To assist with the valuation, the Company may consider reports from a third-party valuation firm. If the value of the water rights is greater than what the Company paid then a bargain purchase gain is recognized. If the value of the water assets are less than what the Company paid then goodwill is recognized.

Subsequent to purchase, management periodically evaluates the carrying value of its assets, and if the carrying value is in excess of fair market value, the Company will establish an impairment allowance. Currently, there are no impairments on the Company's land and water shares. No amortization or depreciation is taken on the water rights.

*Gain on Disposal of Assets*

During the nine months ended September 30, 2019 and 2018, we sold sub-divided, unimproved lots of land located in El Paso County Colorado and recognized a gain of approximately $68,000 and $80,000, respectively. For the nine months ended September 30, 2019, we recognized approximately $85,000 gain from sale and disposal of equipment.

18

## NOTE 4 – NOTES PAYABLE

Below is a summary of the Company's consolidated long-term debt:

| Note | September 30, 2019 Principal Balance | Accrued Interest | Discount | December 31, 2018 Principal Balance | Interest rate | Security |
|---|---|---|---|---|---|---|
| HCIC seller carry back | $ 6,323,000 | $ 1,050,000 | $ - | $ 6,323,000 | 6% | Shares in the Mutual Ditch Company |
| CWCB | 622,000 | 11,000 | - | 690,000 | 2.5% | Certain Orlando and Farmland assets |
| GrowCo note | 390,000 | 29,000 | - | 390,000 | 6% | None |
| Bridge loan Harding | 7,000 | 1,000 | - | 15,000 | 12% | Added to lien on Ellicott land |
| El Paso Land notes | 271,000 | 76,000 | - | 271,000 | 12% | Second lien on Ellicott land |
| Easby Credit Line (Vaxa), related party | 486,000 | 8,000 | - | - | - | Unsecured |
| Promissory Note (Vaxa) | 250,000 | - | - | - | - | Biomass material |
| Investors Fiduciary, related party | 786,000 | 133,000 | - | 551,000 | 20% | Shares of HCIC |
| Auctus Convertible Note | 262,500 | 9,000 | 168,000 | - | 10% | Unsecured |
| Morningview Convertible Note | 262,500 | 9,000 | 168,000 | - | 10% | Unsecured |
| Labry's Convertible Note | 575,000 | 2,000 | 388,000 | - | 12% | Unsecured |
| WRC convertible notes | 300,000 | 101,000 | - | 500,000 | 12% | Lien on water supply agreement |
| Butte Valley Land notes | 400,000 | 101,000 | - | 200,000 | 18% | Butte Valley Land |
| McFinney Agri-Finance | - | - | - | 60,000 | 6.8% | 2,400 acres of land in Ellicott Colorado |
| Powderhorn/Silverback note | - | - | - | 203,000 | 12% | Third lien on Ellicott land |
| Equipment loans | - | - | - | 57,000 | 5-8% | Equipment |
| Morningview Financial note | - | - | - | 75,000 | 18% | Unsecured |
| Total | 10,935,000 | $ 1,530,000 | $ (724,000) | 9,335,000 | | |
| Less: note discounts | (724,000) | | | (63,000) | | |
| Less: Current portion net of discount | (9,343,000) | | | (8,045,000) | | |
| Long term portion | $ 868,000 | | | $ 1,227,000 | | |

19

**NOTE 5 – SHORT-TERM CONVERTIBLE NOTE PAYABLE**

On September 24, 2019, we entered into an agreement ("Agreement") with an accredited investor ("Note Holder") to provide a net of $457,500 in short term working capital. Two Rivers intends to use these funds for the payment of certain debts, payments on accounts and working capital.

The face value of the convertible debt is $575,000 with a purchase price of $517,500, a 6-month term and an interest rate of 10% per annum. The debt is convertible at a per common stock price at the lower of 70% multiplied by the 10-day trailing market price of Two Rivers' common shares (representing a discount rate of 30%) or $0.30/share. The Convertible note is subject to other terms and conditions.

Two Rivers issued 1,101,532 shares of its common stock (the "Returnable Shares") to the Note Holder, as well as an additional 220,306 shares of Common Stock (the "Commitment Shares"), subject to the terms and conditions of the Agreement and the Note, pursuant to the exemption from registration contained in Section 4(a)(2) of the Securities Act of 1933. If Two Rivers pays the convertible debt prior to 180 days from the date of the convertible note, the Returnable Shares shall be returned by the Note Holder to Two Rivers. If Two Rivers fails to pay the convertible note by that date, the Note Holder may retain the Returnable Shares.

In August 2019, Investors Fiduciary, LLC loaned $75,000 to the Company under the existing credit line to bring the balance to approximately $786,000 as of September 30, 2019. The credit line contains a conversion feature at a rate of $0.14 per share. Investors Fiduciary is controlled by Greg Harrington, CEO of the Company and Gerald Anderton, Sr., Chairman of the Board of the Company is an investor.

On May 24, 2019, we entered into separate securities purchase agreements with two investors pursuant to which we received $480,000 in cash, which we intend to use for the payment of outstanding indebtedness and accounts payable and for working capital. Pursuant to the securities purchase agreements, we issued convertible promissory notes, having a total principal amount of $525,000. Each of the notes has a one-year term and bears interest at the rate of 10% per annum. We sold the notes for an aggregate purchase price of $525,000, less $45,000 for payment for legal fees and original issue discount. Each of the notes is convertible into common stock at a price equal to 60% of the trailing market price of common stock (representing a discount of 40%). The minimum conversion price for each note is $0.20 per share unless and until such time, if any, as we do not make a principal and interest payment when due with respect to the note.

**NOTE 6 – INFORMATION ON BUSINESS SEGMENTS**

We organize our business segments based on the nature of the products and services offered. Currently, we focus on the Farms and Water business with Two Rivers Water & Farming Company as the Parent company. Therefore, we report our segments by these lines of businesses: Farms and Water. Water contains our Water Business (HCIC and Orlando). Our Parent category is not a separate reportable operating segment. Segment allocations may differ from those on the face of the income statement. In 2017, the prior farming operations were discontinued; however, we continue to report with a Farming Business since we are expanding our farming business in 2019.

In the following tables of financial data, the total of the operating results of these business segments is reconciled, as appropriate, to the corresponding consolidated amount. There are some corporate expenses that were not allocated to the business segments, and these expenses are contained in the "Total Operating Expenses" under Parent.

20

Operating results for each of the segments of the Company are as follows (in thousands):

| | Nine Months Ended September 30, 2019 | | | | Nine Months Ended September 30, 2018 | | | |
| | Parent | Vaxa | Water | Total | Parent | Greenhouse | Water | Total |
|---|---|---|---|---|---|---|---|---|
| Revenue | $ 34 | $ 103 | $ 8 | $ 145 | $ 10 | $ - | $ 12 | $ 22 |
| Less: Direct Cost of Revenue | - | - | - | - | - | - | - | - |
| Gross Margin | 34 | 103 | 8 | 145 | 10 | - | 12 | 22 |
| Expenses | | | | | | | | |
| Total Operating Expenses | (611) | (14) | 253 | (372) | (886) | - | (997) | (1,883) |
| Total Other Income (Expense) | (484) | 7 | (420) | (897) | 11,928 | - | (2,209) | 9,719 |
| Net Income (Loss) from Operations Before Income Taxes | (1,061) | 96 | (159) | (1,124) | 11,052 | - | (3,194) | 7,858 |
| Income Taxes (Expense) Credit | - | - | - | - | - | - | - | - |
| Net Income (Loss) from Operations | (1,061) | 96 | (159) | (1,124) | 11,052 | - | (3,194) | 7,858 |
| Net Income (Loss) from Discontinued Operations | - | - | - | - | - | (810) | - | (810) |
| Preferred dividends | - | - | (18) | (18) | (986) | - | (16) | (1,002) |
| Non-controlling interest | - | - | - | - | - | - | - | - |
| Net Income (Loss) | $ (1,061) | $ 96 | $ (177) | $ (1,142) | $ 10,066 | $ - | $ (3,210) | $ 6,046 |
| Segmented Assets | $ 24,856 | $ 24,856 | $ 20,131 | $ 45,500 | $ 10,746 | $ - | $ 20,175 | $ 30,921 |

## NOTE 7 – EQUITY TRANSACTIONS

The Company has authorized 200,000,000 shares of common stock with a par value of $0.001. The total issued common stock as of September 30, 2019, was 83,195,969 common shares.

During the nine months ended September 30, 2019, Two Rivers issued the following common stock:

- 1,179,817 shares issued to Morningview as a $75,000 principal paydown plus interest, which represents the debt being fully paid at June 30, 2019 and which did not produce a loss because the conversion was made under the terms of the convertible debt agreement;
- 3,040,350 shares issued to Powderhorn/Silverback as a $127,665 principal paydown plus interest, which represents the debt being fully paid at June 30, 2019 and which did not produce a loss because the conversion was made under the terms of the convertible debt agreement;
- 555,560 shares issued to an investor relations firm. The shares issued were valued at $0.1283/share with a corresponding expense of approximately $71,000;
- 545,455 shares issued to Silverback for a cashless exercise of warrants;
- 255,231 shares issued to Black Mountain for a cashless exercise of warrants;
- 14,840 shares issued for a conversion from TR Capital;
- 523,395 shares issued to Black Mountain for a cashless exercise of warrants;
- 30,000,000 shares issued to Easby Land & Cattle Company, LLC. The shares were valued at $0.44/share or approximately $13,200,000;
- 185,000 shares issued to a chief financial officer firm. The shares were valued at $0.27/share with a corresponding expense of approximately $50,000;
- 139,985 shares issued for a conversion from TR Capital; and
- 1,321,838 shares issued to Labrys Fund, LP (see Note 5).

During the nine months ended September 30, 2018, Two Rivers issued 374,250 common stock to Black Mountain for a $100,000 principal reduction in its Note Payable.

During the nine months ended September 30, 2019, Two Rivers recognized $289,000 in stock based compensation to its employees and directors.

During the nine months ended September 30, 2018, Two Rivers recognized $373,000 in stock based compensation to its employees and directors.

During the nine months ended September 30, 2019, the Company recorded a total of $516,000 in beneficial conversion features related to Convertible Promissory Notes.

On May 21, 2019, the Company entered into a convertible promissory note with an investor of the Company in the amount of $262,500. The note bears 10% interest and is payable in full on May 21, 2020. The Company has recorded a beneficial conversion feature of approximately $258,000, which is recorded as a discount on the note payable and being amortized over the life of the note. As of September 30, 2019, the balance of the beneficial conversion feature is approximately $168,000.

21

**NOTE 8 – ACQUISITION OF VAXA GLOBAL**

On July 31, 2019, the Company closed on the purchase of all the membership interests in Vaxa Global, LLC ("Vaxa") and its two wholly-owned subsidiaries from the sole member Easby Land & Cattle, LLC ("Easby"). Greg Harrington, the managing member of Easby became the CEO of the Company and a member of the Board of Directors in September 2019. Vaxa is in the business of hemp farming, extraction and manufactured consumer CBD products. The closing occurred pursuant to a Share Exchange Agreement between the Company and Easby on February 22, 2019, as amended.

Pursuant to the Share Exchange Agreement, the Company issued a total of 30,000,000 shares of common stock to Easby at the closing for the Vaxa membership interests. There was no cash consideration paid for the acquisition. The Purchase Price for the acquisition, $13,200,000 was calculated using the closing price Two Rivers common stock on the date of closing, $0.44/share, multiplied by 30,000,000 shares.

In addition to the shares issued at closing, the Company may be required to issue additional shares of common stock pursuant to an earn-out covenant in the share exchange agreement. The number of earn-out shares will equal the lesser of:

      i.)    the quotient of 10 times the consolidated earnings before income taxes, depreciation and amortization, or EBITDA, of Vaxa for the twelve months ending June 30, 2020, divided by $1.00; and

      ii.)   20,000,000.

It is expected that the earn-out shares, if any, would be issued by August 2020. There was no valuation applied to the earnout on the acquisition date due to the historical performance of Vaxa and the Company's expectation of the likelihood of material earnings during the window. The earnout valuation will be reviewed quarterly until its expiration in June 2020.

The acquisition date estimated fair value of the consideration transferred totaled $13,200,000, which consisted of the following:

| | | |
|---|---|---:|
| Cash paid | $ | 0 |
| Common Stock Issued | | 13,200,000 |
| Total Purchase Price | $ | 13,200,000 |
| | | |
| Net Assets Acquired | $ | 511,000 |
| Net Liabilities & Retained Earnings | | (1,411,000) |
| Goodwill | | 14,100,000 |
| Total Purchase Price | $ | 13,200,000 |

The primary asset of Vaxa at the time of acquisition was an exclusive distribution agreement with a Canadian grower and supplier of cannabidiol-rich hemp biomass. The agreement was from its inception in December 2017 runs for a five-year term. The agreement calls for fixed payments of $700,000 for the exclusive supply rights at competitive fixed prices. Vaxa had recognized the value of the agreement as intangible asset and is amortizing the value over the 5 year period. The balance, net of amortization, on the time of acquisition was approximately $480,000.

During the preliminary purchase price allocation period, which may be up to one year from the business combination date, the Company may record adjustments to the assets acquired and liabilities assumed, with the corresponding offset to goodwill. After the preliminary purchase price allocation period, the Company may record adjustments to assets acquired or liabilities assumed subsequent to the purchase price allocation period in its operating results in the period in which the adjustments were determined.

22

<u>Pro forma results</u>

The following table sets forth the audited pro forma results of the Company as if the acquisition was effective on the first day of each period presented. These combined results are not necessarily indicative of the results that may have been achieved had the companies always been combined.

| | Six Months Ending Jun 30, 2019 (unaudited) | | Twelve Months Ending Dec 31, 2018 (unaudited) |
|---|---|---|---|
| Revenue | $ | 70,000 | $ | 66,000 |
| Net Income (Loss) | $ | (1,608,000) | $ | 1,820,000 |
| Basic Net Income (Loss) per share | $ | (0.02) | $ | 0.03 |
| Diluted Net Income (Loss) per share | $ | (0.02) | $ | 0.03 |
| Weighted average shares – basic | | 79,967 | | 65,139 |
| Weighted average shares – diluted | | 79,967 | | 67,408 |

**NOTE 9 – GOING CONCERN**

The consolidated financial statements have been prepared assuming the Company will continue as a going concern. The Company has not generated significant revenues and has a net loss of $1,142,000 during the nine months ended September 30, 2019. Cash consumed from our operations during the nine months ended September 30, 2019 was $789,000. At September 30, 2019, the Company had a working capital deficit of $21,104,000 and an accumulated deficit of approximately $95,596,000. The HCIC seller carry back debt are in technical default.

These factors raise substantial doubt about the Company's ability to continue as a going concern. The accompanying consolidated financial statements do not include any adjustments relating to the recoverability or classification of assets or the amounts and classification of liabilities that may result should the Company be unable to continue as a going concern. The following paragraphs describe management's plans to mitigate.

We are in the process of working with the Vaxa Entities and its funders to continue to fund Two Rivers operations. There is no assurances that this additional funding will occur.

Additionally, we continue to reduce our general and administrative expenses and cash required for our operations.

*Management Plans*

We believe that the actions discussed above are probable of occurring and mitigating the substantial doubt raised by our historical operating results. We believe the actions will satisfy our estimated liquidity needs 12 months from the issuance of these financial statements. However, we cannot predict, with certainty, the outcome of our actions to generate liquidity, including the availability of additional financing, or whether such actions would generate the expected liquidity as currently planned. There is, however, no assurance that the Company will be able to raise any additional capital through any type of offering on terms acceptable to the Company, as existing cash on hand will be insufficient to finance operations over the next twelve months.

**NOTE 10 - COMMITMENTS AND CONTINGENCIES**

*GrowCo $4M Notes Guaranty*

During the period ended December 31, 2015, GrowCo issued $4,000,000 in secured promissory notes to 17 individual investors. The notes have a security interest in the land, water and improvements on the 40 acres where GrowCo Partners 1 has its greenhouse and associated warehouse. The notes pay 22.5% in annual interest, with interest paid monthly, and are due April 1, 2020. GrowCo cannot prepay the notes; however, noteholders have the right to call the notes at the first anniversary, or thereafter, of each note with a 60-day notice to the Company. Due to the past due interest owed to the secured $4M Note holders, these notes are in technical default.

On January 19, 2018, Blue & Green, LLC ("Blue Green") filed a complaint against GrowCo claiming a default on payments by GrowCo to Blue Green under the terms of the $4 million GrowCo $2,115,000 promissory note held by Blue Green. The complaint requested immediate payment of the note, back due interest in excess of $300,000, and attorney fees.

Even though the Company no longer consolidates GrowCo and GrowCo's related entities into the Company's financials (see above Note 2 – Principals of Consolidation), under ASC 460-10-05, Management has determined that the Company is a guarantor of the $4M Secured Notes. The Company did not sign these notes as a guarantor but has provided collateral owned by the Company with a recent appraised value of $2,359,000. Since Two Rivers' Management desires to present a conservative representation of its financial information it has determined to set the probability of collection against its collateral at 100% of the recent appraised value. The Company has recorded a contingent liability of $2,359,000 and offset this amount as an increase in the Company's investment in GCP1 (ASC 460-10-55-23c).

*Operating Leases*

In January 2016, the Company entered into a new lease with the Colorado Center in Denver Colorado for the corporate headquarters. The space is 1,775 square feet and monthly payments of $3,900, with minor escalations and common area maintenance charges. The lease terminated on June 30, 2018. On March 1, 2017, the Company entered into a sub-lease agreement with its related party McGrow for its office facilities. McGrow did not fulfill its sub-lease agreement. In 2018, Two Rivers paid Colorado Center $24,000 as a penalty for early lease termination.

In February 2017, we entered into a new lease with Parker Road Campus, LLC in Aurora, Colorado, for our corporate headquarters. This space is 1,554 square feet and monthly payments of $2,201 which began on April 1, 2017. The lease terminates on March 31, 2020. The amounts due at the base rate are as follows:

| Period | Amount Due |
|---|---|
| July 1 – December 31, 2019 | $ 16,000 |
| 2020 | $ 7,000 |
| 2021 | - |

*Defined Contribution Plan*

Two Rivers does not have a defined contribution plan.

*Employment Agreements*

Since January 1, 2011, the Company has entered into a series of employment agreements with Wayne Harding in various capacities including Chief Financial Officer initially and later as Chief Executive Officer and Chairman. The initial term of the contract was one year, which renews automatically for successive one-year terms unless and until either party delivers notice of termination within 30 days of the expiration of the then current term. The original employment agreement was modified in 2017. On September 10, 2019, Harding resigned his positions as Chief Executive Officer and Member of the Board of Directors effective September 30, 2019. On September 10, 2019, Harding and the Company entered into a Management Services Agreement effective October 1, 2019 with a four month renewable term.

The Board determines annual incentive compensation at the Board's sole discretion. If there is a change of control, Mr. Harding is entitled to an accelerated option vesting.

*Prior Board of Directors Litigation*

On August 8, 2017, a summons was issued in the Arapahoe County District Court on behalf of former board members Dennis Channer, Rockey Wells and John Stroh demanding the Company pay $139,000 in attorneys' fees owed to Ryley Carlock & Applewhite ("RCA") for services rendered to the former board members at their behest while members of the board. The Company has agreed to pay $139,000 to RCA on behalf of Channer, Wells and Stroh. The $139,000 is included in our accounts payable on the balance sheet.

*DFP Litigation*

On October 18, 2017, at the Company filed a lawsuit against former employees of the its DFP farming operation for alleged theft. We are in the process of gathering evidence of the theft and setting a court hearing date. A former employee of DFP has filed a counter claim against the Company, which amount is immaterial. Management believes that claims against former employees are in excess of any counter claims. The counter claim on the lawsuit was settled in November 2019 and the Company will pursue an insurance claim for the theft losses.

## NOTE 11 – RELATED PARTY

During the nine months ended September 30, 2019 Mr. Harding loaned the Company an additional $2,500. During the same period, the Company made repayments of approximately $11,000 leaving an outstanding balance of approximately $7,000 at September 30, 2019.

In August 2019, the Company received $75,000 in Bridge loans from Gerald Anderton which were added to the balance of the Credit Agreement with Investors Fiduciary, LLC. Mr. Anderton is an investor in Investors Fiduciary and currently serves on Two Rivers' Board and as Chairman of the Board. Greg Harrington, Chief Executive Officer of the Company is the controlling shareholder of Investors Fiduciary.

## NOTE 12 – SUBSEQUENT EVENTS

Pursuant to ASC 855, management has evaluated all events and transactions that occurred from September 30, 2019 through the date of issuance of these financial statements. During this period, we had the following significant subsequent events:

- On November 7, 2019, Two Rivers entered into an agreement ("Agreement") with the Note Holder, an accredited investor, to provide a net of $315,000 in short term working capital. Two Rivers intends to use these funds for the payment of certain debts, payments on accounts and working capital.

  The face value of the convertible debt is $394,500 with a purchase price of $354,600, a 6-month term and an interest rate of 12% per annum. The debt is convertible at a price equal to the lower of (1) 70% multiplied by the lowest closing bid price or trading price (whichever is lower) of Two Rivers' common shares during the 10 trading days immediately preceding the conversion date (representing a discount rate of 30%) and (2) $0.30 per share. The convertible note is subject to other terms and conditions.

  Two Rivers issued 1,083,791 shares of its common stock (the "Returnable Shares") to the Note Holder, as well as an additional 200,000 shares of Common Stock (the "Commitment Shares"), subject to the terms and conditions of the Agreement and the Note, pursuant to the exemption from registration contained in Section 4(a)(2) of the Securities Act of 1933. If Two Rivers pays the convertible debt prior to 180 days from the date of the convertible note, the Returnable Shares shall be returned by the Note Holder to Two Rivers. If Two Rivers fails to pay the convertible note by that date, the Note Holder may retain the Returnable Shares.

- On October 18, 2019, Black Mountain completed the cashless exercise of 2,665,505 shares of Common Stock.

- In September 2019, Vaxa entered into an agreement to purchase over $700,000 in extraction and processing equipment, and all seeds, clone and biological assets, as well as the 2019 hemp crop from Butte Valley farm, from Montverde Partners, LLC ("Montverde"), in exchange for 3,000,000 shares of our common stock which were contributed by Easby Land & Cattle, LLC. Montverde is a joint venture partner of Vaxa in the Butte Valley hemp farming operation near Walsenburg, Colorado. The transaction closed in October 2019.

25

## ITEM 2. MANAGEMENT'S DISCUSSION AND ANALYSIS AND PLAN OF OPERATION

*Unless the context requires otherwise, references in this Form 10-Q to "we," "our," "us" and similar terms refer to Two Rivers Water & Farming Company and its subsidiaries.*

### Note about Forward-Looking Statements

*This Form 10-Q contains forward-looking statements, such as statements relating to our financial condition, results of operations, plans, objectives, future performance and business operations. These statements relate to expectations concerning matters that are not historical facts. These forward-looking statements reflect our current views and expectations based largely upon the information currently available to us and are subject to inherent risks and uncertainties. Although we believe our expectations are based on reasonable assumptions, they are not guarantees of future performance and there are a number of important factors that could cause actual results to differ materially from those expressed or implied by such forward-looking statements, including the risks described in Item 1A. Risk Factors in our Annual Report on Form 10-K for the year ended December 31, 2018. By making these forward-looking statements, we do not undertake to update them in any manner except as may be required by our disclosure obligations in filings we make with the Securities and Exchange Commission under the Federal securities laws. Our actual results may differ materially from our forward-looking statements.*

### Overview

Our core business is the development of our water assets.

### Current Rights Holdings

In Colorado it is important to have both surface and storage rights, of which we have both. To date, we have acquired, managed and used our water assets principally for use in irrigation, to increase the value and yield of our farmland.

We own the following surface water rights:

| Structure | Elevation | Priority No. | Appropriation Date | Consumptive Use | Decreed Amount |
|---|---|---|---|---|---|
| Butte Valley Ditch | 5,909 ft | 1 | 5/15/1862 | 360 A.F. | 1.2 cfs |
| Butte Valley Ditch | | 9 | 5/15/1865 | | 1.8 cfs |
| Butte Valley Ditch | | 86 | 5/15/1886 | | 3.0 cfs |
| Butte Valley Ditch | | 111 | 5/15/1886 | | 3.0 cfs |
| Robert Rice Ditch | 5,725 ft | 19 | 3/01/1867 | 131 A.F. | 3.0 cfs |
| Orlando Canal No. 3 | 5,911 ft | | 10/19/1903 | | |
| Huerfano Valley Ditch | 4,894 ft | 120 | 2/2/1888 | 2,891 A.F. | 42.0 cfs |
| Huerfano Valley Ditch | | 342 | 5/1/1905 | | 18.0 cfs |

"Consumptive use" is the term for the portion of a water diversion right that is actually consumed by its beneficial use. Where the beneficial use is agricultural irrigation, consumptive use represents the amount of water consumed by the irrigated crop or evaporated on the farm. After deducting consumptive use from the amount of water diverted and applied to irrigation, the remainder is described as "return flow" to the system. Such return flows are generally subject to appropriation downstream. Only the consumptive use portion of a given water right is subject to transfer (that is, a change in the point of diversion, place of use, or purpose of use). Therefore, water rights are often assigned monetary value based on the consumptive use portion. Although consumptive use varies by crop, rainfall, temperature and other factors, in southeastern Colorado, crops generally consume about two acre-feet of applied water for each acre planted, depending on the crops planted. In order to provide that amount of consumptive use water, an irrigator must generally apply three acre-feet of water (allowing for predictable return flow equal to about one-third of the applied water). We measure our water rights both in terms of the amount of the diversion or storage right, as the case may be, but also in terms of the historic consumptive use.

The following table presents our holdings of storage water rights:

| | Elevation | Priority No. | Appropriation Date | Average Annual Yield (A.F.) | Decreed Amount (A.F.) | Estimate of Current Effective Storage (A.F.) |
|---|---|---|---|---|---|---|
| Huerfano Valley Reservoir | 4,702 ft | 6 | 2/2/1888 | 1,424 | 2,017 | 1,000 |
| Cucharas Valley Reservoir | 5,570 ft | 66 | 3/14/1906 | 3,055 | 31,956 | Current no-fill |
| Cucharas Valley Reservoir | 5,705 ft | 66c[2] | 3/14/1906 | | 34,404 | restriction[1] |
| Orlando Reservoir #2 | 5,911 ft | 349 | 12/14/1905 | 1,800 | 3,110 | 1,500 |

Purchase of Vaxa Entities

On July 31, 2019, we completed our acquisition of Vaxa Global, LLC ("Vaxa") from Easby Land & Cattle Company, LLC pursuant to a share exchange agreement dated February 21, 2019 (the "Purchase Agreement"). Under the terms of the Purchase Agreement, we acquired 100% of the membership interest in Vaxa in exchange for 30,000,000 shares of our common stock and an earn-out arrangement for up to 20,000,000 additional shares of our common stock. The number of earn-out shares will equal the lesser of:

- The quotient of 10 times the consolidated earnings before income taxes, depreciation and amortization, or EBITDA, of Vaxa for the twelve months ending June 30, 2020, divided by $1.00; and
- 20,000,000.

It is expected that the earn-out shares, if any, would be issued by August 2020.

Vaxa owns a 100% membership interest in each of Ekstrak Labs LLC and Gramz Holdings, LLC.

- Vaxa grows hemp plants for cannabidiol, or CBD, extraction;
- Ekstrak extracts CBD hemp; and
- Gramz[TM] produces and sells CBD extract in the form of both isolate and full-spectrum oil, compounds, such as Gramz Herbal Topical and Gramz Whole Plant Matrix Sublingual Drops, which have been developed to capitalize on the medicinal and therapeutic benefits of hemp.

We intend to expand Vaxa's operations to grow hemp on land that we own, using water that we supply. This will, in turn, provide additional hemp products to Ekstrak and Gramz™.

---

[1] See State of Colorado litigation.

[2] This is a conditional right while the engineering and construction of structures are completed to perfect a water right, in this case to physically store the water. The conditional right establishes a seniority date but allows time for completion of the project. Conditional rights are reviewed every six years by the water court to confirm that progress is being made on the effort to perfect the right. When a conditional water right is perfected, which can be done incrementally in the case of storage, the water right becomes absolute. In addition, the Cucharas Valley Reservoir has Conditional rights to 34,404 A.F. of additional storage.

**Results of Operations**

*For the Three Months Ended September 30, 2019, compared to the Three Months Ended September 30, 2018*

During the three months ended September 30, 2019, we recorded revenues of approximately $108,000, compared to approximately $5,000 in the three-month period ended September 30, 2018. The increase of $103,000 was due to Vaxa acquisition.

Operating expenses during the three months ended September 30, 2019 and 2018 were approximately $328,000 and $678,000, respectively, excluding the dam demolition expense. The decrease of $350,000 was primarily due to the Company reducing its general and administrative expenses.

Other income and expenses for the three months ended September 30, 2019 and 2018 were approximately $415,000 and $176,000, respectively. The net increase of $239,000 in expenses was primarily the result of increased interest expense and a lack of gain on asset sales.

During the three months ended September 30, 2019 and 2018, we recognized a profit from continuing operations of $190,000 and a loss from continuing operations of $2,649,000, respectively.

During the three months ended September 30, 2019 and 2018, we recognized preferred distributions of approximately $6,000 and $6,000 for the accrued dividends on the preferred stock of Water Redevelopment.

As the result of the foregoing, the net profit attributed to our common shareholders for the three months ended September 30, 2019 was $184,000, compared to a net loss of $2,655 for the three months ended September 30, 2018.

In December 2018, a contingent liability was established regarding the State of Colorado's legal action to compel the Company to demolish Cucharas #5 reservoir. In that period, the Company recognized an expense of $1,800,000. In July 2019, the Company reached a settlement with the State of Colorado, whereby the Company will pay approximately $1,000,000 plus interest to the State of Colorado in exchange for a full settlement of the above legal action. In the three months ending September 30, 2019, the Company recognized a gain of $825,000 from the reduction of this contingent liability from $1,800,000 to approximately $1,000,000, along with additional non-cash gains of approximately $25,000 from the negotiations and resolution of previously recorded accounts payable, on Two Rivers' in these financial statements.

*For the Nine Months Ended September 30, 2019, compared to the Nine Months Ended September 30, 2018*

During the nine months ended September 30, 2019, we recorded revenues of approximately $145,000, compared to approximately $22,000 in the nine-month period ended September 30, 2018. The increase of $123,000 was due to the Vaxa acquisition.

Operating expenses during the nine months ended September 30, 2019 and 2018 were approximately $1,197,000 and $1,913,000, respectively. The decrease of $716,000 was primarily due to the Company reducing its general and administrative expenses.

Other income and expenses for the nine months ended September 30, 2019 and 2018 were approximately $897,000 in expenses and $11,549,000 in income, respectively. The net increase of $12,446,000 is mostly due to the recognition of the GrowCo deconsolidation.

During the nine months ended September 30, 2019 and 2018, we recognized a loss from continuing operations of $1,124,000 and a profit from continuing operations of $7,858,000, respectively.

During the nine months ended September 30, 2019 and 2018, we recognized preferred distributions of approximately $18,000 and $1,002,000. The reduction is due to the Company ceasing to record an accrual for the TR Capital's preferred distribution as of July 2018.

28

As the result of the foregoing, the net loss attributed to our common shareholders, after recognizing preferred distributions and income attributed to non-controlling interest, for the nine months ended September 30, 2019 was $1,142,000 loss, compared to a profit of $6,046,000 for the nine months ended September 30, 2018.

**Liquidity and Capital Resources**

*Resources*

We have expanded our operations relying on various funding mechanisms, including debt, convertible debt and equity capital. Since inception, we have raised and invested over $96 million to acquire, improve, integrate farm/water assets, launch related businesses, and support operations.

We believe with the anticipated influx of additional capital from strategic partners we will have sufficient capital to meet our anticipated cash needs for at least the next twelve months. In January and February 2019, the Company engaged in discussions with the Vaxa Group that would, among other things, strengthen and expand our business operations and enable the Company to raise additional capital. This acquisition of Vaxa closed on July 31, 2019. It is anticipated that this acquisition has, and will, facilitate the Company's receipt of working capital and provide strategic, vertically integrated hemp-focused businesses.

Our future working capital requirements will depend on many factors, including the expansion of farming and water projects. To the extent our cash, cash equivalents and cash flows from operating activities are insufficient to fund our future activities, we may need to raise additional funds through public or private equity or debt financing. We also may need to raise additional funds in the event we determine in the future to effect one or more acquisitions of businesses, technologies and products. If additional funding is required, we may not be able to effect an equity or debt financing on terms acceptable to us or at all.

We historically have funded our operations primarily from the following sources:

- proceeds of private placements of equity, equity-related and debt securities of Two Rivers Water & Farming Company and subsidiaries;
- cash flow generated from operations; and
- loans and lines of credit.

At the present time we have no available line or letters of credit.

Cash flow from operations has not historically been sufficient to sustain our operations without the above additional sources of capital. As of September 30, 2019, we had cash and cash equivalents of approximately $401,000. Cash flow used in our operating activities totaled approximately $789,000 for the nine months ended September 30, 2019 compared to operating activities using approximately $824,000 for the nine months ended September 30, 2018.

As of September 30, 2019, we had approximately $481,000 in current assets and approximately $21,585,000 in current liabilities. A large portion of the current liabilities ($7,373,000) is from the HCIC seller carryback notes, some of which were due June 30, 2016. As of September 30, 2019, we continue to be in default on the HCIC note payments. As a result, the entire amount of the notes has been classified as current.

Cash provided by investing activities was approximately $23,000 for the nine months ended September 30, 2019 compared to cash used in investing activities of approximately $30,000 for the nine months ended September 30, 2018.

Cash provided by financing activities was approximately $1,161,000 for the nine months ended September 30, 2019 compared to cash provided of approximately $894,000 for the nine months ended September 30, 2018.

Due to our financial condition, we have had to resort to borrowing under short-term convertible notes, which have high financing costs associated with them. On September 24, 2019, we executed a convertible promissory note in the principal amount of $575,000 had a purchase price of $517,500, a 6-month term, and an interest rate of 10% per annum. Net proceeds were approximately $457,500. The debt is convertible at a per common stock price at the lower of 70% multiplied by the 10-day trailing market price of Two Rivers' common shares (representing a discount rate of 30%) or $0.30/share. We issued 1,101,532 shares of our common stock (the "Returnable Shares") to the note holder, as well as an additional 220,306 shares of Common Stock (the "Commitment Shares"), subject to the terms and conditions of the securities purchase agreement and the note, pursuant to the exemption from registration contained in Section 4(a)(2) of the Securities Act of 1933. If Two Rivers pays the convertible debt prior to 180 days from the date of the convertible note, the Returnable Shares shall be returned by the note holder to Two Rivers. If Two Rivers fails to pay the convertible note by that date, the note holder may retain the Returnable Shares.

29

On November 7, 2019, we entered into a similar convertible note arrangement to provide a net of $315,000 in short term working capital. The face value of the convertible debt is $394,500 with a purchase price of $354,600, a 6-month term and an interest rate of 12% per annum. The debt is convertible at a price equal to the lower of (1) 70% multiplied by the lowest closing bid price or trading price (whichever is lower) of Two Rivers' common shares during the 10 trading days immediately preceding the conversion date (representing a discount rate of 30%) and (2) $0.30 per share. We issued 1,083,791 shares of our common stock (the "Returnable Shares") to the note holder, as well as an additional 200,000 shares of Common Stock (the "Commitment Shares"), subject to the terms and conditions of the securities purchase agreement and the note, pursuant to the exemption from registration contained in Section 4(a)(2) of the Securities Act of 1933. If Two Rivers pays the convertible debt prior to 180 days from the date of the convertible note, the Returnable Shares shall be returned by the Note Holder to Two Rivers. If Two Rivers fails to pay the convertible note by that date, the Note Holder may retain the Returnable Shares.

We intend to use these funds for the payment of certain debts, payments on accounts and working capital.

**Going Concern**

The consolidated financial statements have been prepared assuming the Company will continue as a going concern. The Company has not generated significant revenues and has a net loss of $1,142,000 during the nine months ended September 30, 2019. Cash consumed from our operations during the nine months ended September 30, 2019 was $789,000. At September 30, 2019, the Company had a working capital deficit of $21,104,000 and an accumulated deficit of approximately $95,596,000. The HCIC seller carry back debt are in technical default.

These factors raise substantial doubt about the Company's ability to continue as a going concern. The accompanying consolidated financial statements do not include any adjustments relating to the recoverability or classification of assets or the amounts and classification of liabilities that may result should the Company be unable to continue as a going concern. The following paragraphs describe management's plans to mitigate.

We are in the process of working with the Vaxa Entities and its funders to continue to fund Two Rivers operations. There is no assurances that this additional funding will occur.

Additionally, we continue to reduce our general and administrative expenses and cash required for our operations.

*Management Plans*

We believe that the actions discussed above are probable of occurring and mitigating the substantial doubt raised by our historical operating results. We believe the actions will satisfy our estimated liquidity needs 12 months from the issuance of these financial statements. However, we cannot predict, with certainty, the outcome of our actions to generate liquidity, including the availability of additional financing, or whether such actions would generate the expected liquidity as currently planned. There is, however, no assurance that the Company will be able to raise any additional capital through any type of offering on terms acceptable to the Company, as existing cash on hand will be insufficient to finance operations over the next twelve months.

**Critical Accounting Policies**

We have identified the policies below as critical to our business operations and the understanding of our results from operations. The impact and any associated risks related to these policies on our business operations is discussed throughout "Management's Discussion and Analysis of Financial Conditions and Results of Operations" where such policies affect our reported and expected financial results. For a detailed discussion of the application of these and other accounting policies, see Note 2 of the notes to condensed consolidated financial statements included elsewhere in this Form 10-Q. Our preparation of such condensed consolidated financial statements and this Form 10-Q requires management to make estimates and assumptions that affect the reported amount of assets and liabilities, disclosure of contingent assets and liabilities at the date of our financial statements, and the reported amounts of revenue and expenses during the reporting period. There can be no assurance that actual results will not differ from those estimates.

**Revenue Recognition**

We follow specific and detailed guidelines in measuring revenue; however, certain judgments may affect the application of our revenue policy. Revenue results are difficult to predict, and any shortfall in revenue or delay in recognizing revenue could cause our operating results to vary significantly from quarter to quarter and could result in future operating losses.

**Goodwill and Intangible Assets**

We have acquired water shares in Huerfano-Cucharas Irrigation Company, which is considered an intangible asset and shown on our balance sheet as part of "Water assets". Currently, these shares are recorded at purchase price less our pro rata share of the negative net worth in HCIC Holdings, LLC. Management evaluates the carrying value, and if necessary, will establish an impairment of value to reflect current fair market value.

In conjunction with the acquisition of Vaxa, the Company recognized goodwill of approximately $14,100,000 based on the issuance of 30,000,000 shares at the closing share price ($0.44) on the date of acquisition (July 31, 2019) plus net liabilities acquired (See NOTE 8).

**Impairment Policy**

At least once every year, management examines all of our assets for proper valuation and to determine if an impairment is necessary. In terms of real estate owned, this impairment examination also includes the accumulated depreciation. Management examines market valuations and if an additional impairment is necessary for lower of cost or market, then an impairment charge is recorded.

## ITEM 3. QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK

We are exposed to the impact of interest rate changes and change in the market values of our real estate properties and water assets. Because we had no market risk sensitive instruments outstanding as of September 30, 2019, it was determined that there was no material market risk exposure to our consolidated financial position, results of operations, or cash flows as of such date. We do not enter into derivatives or other financial instruments for trading or speculative purposes.

## ITEM 4. CONTROLS AND PROCEDURES

**Management's Evaluation of Disclosures Controls and Procedures**

Our management, comprised of our chief executive officer (CEO) and chief financial officer (CFO), (presently the same person fills both officer roles), evaluated the effectiveness of our disclosure controls and procedures as of September 30, 2019. The term "disclosure controls and procedures," as defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act, means controls and other procedures of a company that are designed to ensure that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms. Based on that evaluation, and taking the matters described below into account, the Company's CEO/CFO has concluded that our disclosure controls and procedures over financial reporting were not effective during reporting period ended September 30, 2019.

**Management's Report on Internal Control Over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over our financial reporting. "Internal control over financial reporting" is defined in Rule 13a-15(f) or 15d-15(f) under the Exchange Act as a process designed by, or under the supervision of, a company's principal executive and principal financial officers and effected by a company's board of directors, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with U.S. generally accepted accounting principles and includes those policies and procedures that:

- pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of a company;

- provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with U.S. generally accepted accounting principles and that receipts and expenditures of a company are being made only in accordance with authorizations of management and directors of a company; and

- provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of a company's assets that could have a material effect on the financial statements.

A material weakness is a control deficiency, or combination of control deficiencies, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

Our internal control system was designed to provide reasonable assurance to our management and board of directors regarding the preparation and fair presentation of published financial statements. All internal control systems, no matter how well designed, have inherent limitations, which may not prevent or detect misstatements. Therefore, even those systems determined to be effective can provide only reasonable assurance with respect to financial statement preparation and presentation. Projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate.

Based upon our evaluation of internal controls, the Company's management determined that the Company's controls over financial reporting were not adequate to ensure complex accounting calculations were performed correctly. As such, the Company's CEO/CFO has concluded that the Company's disclosure controls and procedures contain a material weakness as of the end of the period covered by this Report. Because of the material weaknesses identified, a reasonable possibility exists that a material misstatement in our consolidated financial statements will not be prevented or detected on a timely basis. While our internal controls are established and followed, it is clear by the identified weaknesses that they were not operating as they should be. Management believes that this was the case due to our limited staff along with time constraints and staff turnover. However, our CEO/CFO, who is also our Principal Accounting Officer, believes that the financial statements included in this quarterly report on Form 10-Q present, in all material respects, our financial position, results of operations and cash flows for the periods presented, in conformity with U.S. GAAP.

*Plan for Remediation of Material Weaknesses*

The remediation effort outlined below is intended to address the identified material weaknesses in internal control over financial reporting.

Once significant additional capital is raised, we plan to hire a qualified Chief Financial Officer. A short-term task of the new CFO will be to do a formal assessment of our internal controls.

## PART II. OTHER INFORMATION

## ITEM 1. LEGAL PROCEEDINGS

*State of Colorado litigation*

Two Rivers, the State of Colorado (Office of the State Engineer and the local Division Engineer), and neighboring water rights holders have been involved in litigation concerning water rights and claims by the State concerning an existing dam in Huerfano County, Colorado, and a demand by the State to breach the dam structure. (*Two Rivers Water and Farming Co. vs. Welton Land and Water Co.*, (Pueblo Water Court)). As part of the litigation, Two Rivers has sought to have certain water rights demands by the neighboring water rights holders deemed wasteful. In the quarter ending March 31, 2016, Two Rivers entered into a stipulation agreement with the State, settling the State's claims, whereby Two Rivers agreed to take the existing dam structure down to the sediment level. Two Rivers was able to empty all the water in the Dam, but it was not be able to meet the requirements of the stipulation agreement by March 31, in part due to lack of capital. On April 3, 2018, Two Rivers was notified that the State had filed a motion for the issuance of a contempt of court citation based upon its failure to comply with the consent decree by March 31, 2018.

The State of Colorado also sued Mr. Harding (current CEO and acting CFO), the prior CFO, and the former directors of Two Rivers, former director and CEO John McKowen who had executed the agreement with the State for contempt for their failure to compel Two Rivers to carry out its obligations under the 2016 agreement. The five independent directors of Two Rivers resigned in November 2018. The case against Two Rivers and all the individuals had been scheduled for trial starting October 28, 2019. The Company has accrued $1,800,000 as a liability to cover the cost of deconstruction and penalties and fines.

In July 2019, the Company reached a settlement with the State of Colorado, whereby the Company will pay approximately $922,000 plus interest to the State of Colorado in exchange for a full settlement of the above legal action. The Company anticipates recognizing a reduction of this contingent liability from $1,800,000 to approximately $922,000, along with additional non-cash gains of approximately $50,000 from the negotiations and resolution of previously recorded accounts payable, on Two Rivers' financial reports dated September 30, 2019.

*Lawsuit against former employees*

On October 18, 2017, at the Company filed a lawsuit against former employees of its DFP farming operation for alleged theft. We are in the process of gathering evidence of the theft and setting a court hearing date. A former employee of DFP has filed a counter claim against the Company, which amount is immaterial. Management believes that claims against former employees are in excess of any counter claims. The counter claim on the lawsuit was settled in November 2019 and the Company will pursue an insurance claim for the theft losses.

*Blue & Green litigation*

On January 19, 2018 Blue & Green, LLC ("Blue Green") filed a complaint against GrowCo, Inc. claiming a default on payments by GrowCo to Blue Green under the terms of the GrowCo $2,115,000 promissory note held by Blue Green. The complaint is requesting immediate payment of the note, back due interest in excess of $300,000, and attorney fees. The Blue Green note is also secured by certain water and land property owned by Two Rivers. As a result of Blue Green's action, the Company has recorded a contingent liability of $2,359,000, which represents a current appraisal of the assets pledged by the Company. The Company understands that GrowCo is currently in a bankruptcy proceeding.

## ITEM 1A. RISK FACTORS

The risks described in Item 1A. Risk Factors, in our Annual Report on Form 10-K for the year ended December 31, 2018, could materially and adversely affect our business, financial condition and results of operations. Those risk factors do not identify all risks that we face, and operations could also be affected by factors that are not presently known to us or that we currently consider to be immaterial to our operations.

## ITEM 2. UNREGISTERED SALES OF EQUITY SECURITIES AND USE OF PROCEEDS

During the quarter ended September 30, 2019 we issued and sold the unregistered securities set forth in the table below.

| Date | Persons or Class of Persons | Securities | Consideration |
|---|---|---|---|
| July 12, 2019 | TR Capital Preferred | 14,840 shares of Common Stock | TR Capital Conversion |
| July 17, 2019 | Black Mountain Equities | 523,395 shares of Common Stock | Cashless exercise of warrant for previous financing |
| July 31, 2019 | Easby Land & Cattle Company, LLC | 30,000,000 shares of Common Stock | 100% of Vaxa Global, LLC valued at $13,200,000 |
| August 9, 2019 | TR Capital Preferred | 139,985 shares of Common Stock | TR Capital Conversion |
| August 14, 2019 | Andrew Norstrud | 185,000 shares of Common Stock | Professional services valued at $49,950 |
| September 23, 2019 | Labrys Fund, LP | 1,321,838 shares of Common Stock | Financing costs valued at $355,000 |

We relied upon the exemption from registration contained in Section 4(a)(2) under the Securities Act, as the securities were sold only to investors, sophisticated as to the business of the Company, without the use of general solicitation or advertising. No underwriters or placement agents were used and no commissions were paid in the above stock transactions. A restrictive legend was placed on the certificates evidencing the securities issued in the above transactions.

## ITEM 3. DEFAULTS UPON SENIOR SECURITIES

None.

## ITEM 4. MINE SAFETY DISCLOSURES

Not applicable.

## ITEM 5. OTHER INFORMATION

None.

**ITEM 6. EXHIBITS**

| Regulation<br>S-K Number | Document |
|---|---|
| 2.1 | Share Exchange Agreement dated February 22, 2019, between Two Rivers Water & Farming Company and Easby Land & Cattle Company, LLC (1) |
| 10.1 | Convertible Promissory Note dated September 19, 2019 to Labrys Fund, LP (2) |
| 10.2 | Securities Purchase Agreement dated September 19, 2019 between Two Rivers Water & Farming Company and Labrys Fund, LP (2) |
| 31.1 | Rule 13a-14(a) Certification of Greg Harrington |
| 32.1 | Certification of Greg Harrington Pursuant to 18 U.S.C. Section 1350, as Adopted Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |
| 101 | Financial statements from the Quarterly Report on Form 10-Q of Two Rivers Water & Farming Company for the quarterly period ended September 30, 2019, formatted in XBRL: (i) the Balance Sheets; (ii) the Statements of Operations; (iii) the Statements of Cash Flows; and (iv) the Notes to Financial Statements (5) |

(1) Filed as an exhibit to the Current Report on Form 8-K filed February 26, 2019.

(2) Filed as an exhibit to the Current Report on Form 8-K filed September 26, 2019.

(3) In accordance with Rule 406T of Regulation S-T, the information in these exhibits shall not be deemed to be "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended, or otherwise subject to liability under that section, and shall not be incorporated by reference into any registration statement or other document filed under the Securities Act of 1933, as amended, except as expressly set forth by specific reference in such filing.

35

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**TWO RIVERS WATER & FARMING COMPANY**

Dated: November 25, 2019

By: */s/ Greg Harrington*

Greg Harrington, Chief Executive Officer and
Chief Financial Officer

36

# EXHIBIT 3

8-K 1 form8-k.htm

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 8-K

### CURRENT REPORT

**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

Date of report (date of earliest event reported): **July 1, 2020**

# Two Rivers Water & Farming Company
(Exact name of registrant as specified in its charter)

Commission File No.: **000-51139**

| **Colorado** | **13-4228144** |
|---|---|
| (State or other jurisdiction of incorporation) | (I.R.S. Employer Identification No.) |
| **129 E B Street, Pueblo Colorado** | **81003** |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: **(303) 222-1000**

**3025 S. Parker Road, Suite 140, Aurora, Colorado 80014**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

[ ]  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[ ]  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[ ]  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[ ]  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Securities registered pursuant to Section 12(b) of the Act: **None**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| | | |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 or Rule 12b-2 of the Securities Exchange Act of 1934.

Emerging growth company [X]

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [ ]

**Item 5.02**      **Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

*Appointment of interim Chief Financial Officer*

Effective July 1, 2020, Ms. Heather Kearns, age 42, was appointed to serve as the interim Chief Financial Officer of the registrant. Since 2018, Ms. Kearns has worked with Two Rivers Water & Farming Company assisting with preparation of filings.

Ms. Heather Kearns has over 20 years of experience in accounting and financial reporting with private and public companies of various sizes. She is a Certified Public Accountant in the state of Colorado, and has almost 10 years as a firm owner, offering accounting and consulting services. Ms. Kearns's background includes managing and oversight for financial statements and disclosures, filing S-1 registration and other SEC filings, preparation of financial reports including 10-Q's, 10-K's, and 8-K's, and coordinating annual audits and quarterly reviews. She will provide oversight of the finance and accounting team, coordinate with Compliance, and work with the Company's tax consultants to prepare all tax documentation and returns. Ms. Kearns provides the assistance to strengthen the Company's processes and procedures, and also contributes to the development of a Company's strategy and long-term planning. Ms. Kearns is a graduate of Auburn University in Auburn, Alabama, with a Bachelor of Science in Business Administration, and a Master of Business Administration from Auburn University in Montgomery, Alabama.

Ms. Kearns' contract with Two Rivers Water & Farming Company commenced on July 1, 2020 and is through September 30, 2020, with option of renewal. Compensation consists of a combination of filing, flat rate and success fees.

**Item 7.01**      **Regulation FD Disclosure.**

Management provided an update to its stockholders on July 15, 2020. A copy of the update is included as Exhibit 20.1. This Form 8-K and the information included as exhibits shall not be deemed to be "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, as amended ("Exchange Act"), nor shall it be incorporated by reference into a filing under the Securities Act of 1933, as amended ("Securities Act"), or the Exchange Act, except as expressly set forth by specific reference in such a filing. The furnishing of the information in this report is not intended to, and does not, constitute a determination or admission by the Company that the information in this report is material or complete, or that investors should consider this information before making an investment decision with respect to any security of the Registrant or any of its affiliates.

**Item 9.01**      **Financial Statements and Exhibits.**

| Exhibit No. | Description |
|---|---|
| 20.1 | Letter to stockholders dated July 15, 2020 |

**SIGNATURE**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be filed on its behalf by the undersigned hereunto duly authorized.

TWO RIVERS WATER & FARMING COMPANY

Dated: July 17, 2020

By: */s/ Greg Harrington*

Greg Harrington, CEO/CFO

3

**EXHIBIT INDEX**

| Exhibit No. | Description |
| --- | --- |
| 20.1 | Letter to stockholders dated July 15, 2020 |

4

EX-20.1 2 ex20-1.htm

**Exhibit 20.1**



**Two Rivers Water & Farming Company**
**Letter to Shareholders**
**from**
**Chief Executive Officer, Mr. Greg Harrington**

Dear Two Rivers Shareholders,

As we start into the Q3 2020, I wanted to reach out to our shareholders and keep you apprised of the recent happenings within Two Rivers and our subsidiaries. I'll touch on the state of the Company in regard to how we are navigating through these challenging times during the pandemic, farm and water infrastructure updates, and legal, accounting and operational matters at hand.

First, I want to welcome our new interim Chief Financial Officer, Ms. Heather Kearns, who officially joined our team July 1, 2020. As a CPA, Ms. Kearns has a strong financial knowledge of public company accounting and has been assisting Two Rivers in their accounting filings since 2018. We are very excited to have her on board and confident that she can assist in simplifying our accounting processes and bring us up to date with our required filings. You can learn more about her background by referring to her bio inserted at the bottom of this letter.

Ms. Kearns's history of assisting the previous accounting team of Two Rivers during audits and filings, coupled with her strong financial knowledge of public company accounting, makes her the perfect fit for this position.

**WaterVault Transaction**

The acquisition of Huerfano-Cucharas Irrigation Company ("HCIC") which owns water rights of Cucharas Valley No. 05 Dam and Reservoir from our Company by WaterVault America Inc ("WaterVault"), announced in April, is in the final stages of procuring the financing for the dam. WaterVault is a service-disabled veteran owned, unaffiliated, Colorado Public Benefits Corporation dedicated to creating sustainable economic development in rural communities. We will offer additional pertinent updates as they unfold.

**COVID-19 Update**

As the COVID-19 pandemic continues to evolve, I wanted to share with you how Two Rivers is managing through the pandemic. We continue to adjust to the "new normal" environment that is consistently evolving during this time and our overall situation is both positive and steady. Among the steps that our team has made to stabilize our business are:

    o   Reducing our overhead significantly; each active team member has taken on multiple roles to ensure we maintain a low monthly overhead & our main office relocated to Pueblo, giving us a cost-effective office with easy access to our properties.

(v.4)    Office: 129 E B Street, Pueblo Colorado, 81003
Mailing: 129 E B Street, Pueblo Colorado, 81003 | www.2riverswater.com | Phone: (303) 222-1000

1

- o   Reaching out to vendors and taking advantage of opportunities for payment deferral and incremental benefits offered.
- o   Closely monitoring payables and actively working with our vendors on payment arrangements that are mutually beneficial.
- o   Conducting scenario planning/analysis to drive management decisions and maintain the health of the business.
- o   Maintaining a strong focus on preserving cash and prudent fiscal management.
- o   Uncovering areas of opportunity for our company to generate revenue through sales of non-agricultural / tilled land.
- o   Taking advantage of the extended filing periods offered by the SEC. Due to the nature of the pandemic, including a significant impact of our accounting department included in our companywide furlough, we anticipate our of 10K (2019) and 10Q's (Q1/Q2 2020) to be filed by during September this year.

## **Farming Operations**

With regards to our farming operations, several months ago we engaged a farm management team with over 30 years of hands on agricultural farming experience in various crop rotations, weather patterns, as well as cattle operations. In a short period of time, with minimal resources we have repaired multiple ditch structures, one of which has been damaged due to neglect for years, resulting in a more stabilized water resource for surrounding farmland.

We have also course corrected errors from the former farm & ditch management of the Butte Valley Farms, involving remedying years of accumulated damage as a result of improper tillage rotation of soil and unacceptable level of neglect towards our water management, including ditch cleaning. Additionally, we have filed charges for pursuing the disappearance of farm equipment missing in the excess of $1,000,000. This is an ongoing issue and we will disclose additional updates as it becomes available.

As you can see, these are all issues that require capital to replace, and is an inherited challenge that could have been avoided. We are happy to report that we now have a solid team onsite that continue to do an incredible job prepping the land and attending to the water infrastructure.

## **Dionisio Farms**

There have been some questions as to our level of farming surrounding the Dionisio Farms operations. In 2012 we acquired Dionisio Farms & Product, Inc. ("DFP) and in late 2016, based on three years of operational losses, we decided to sell DFP assets. You can reference our 2017 year end 10K filings for more information on that transaction.

2

**Company Operations, Legal Matters & Legacy Issues**

During our internal audit that I previously spoke of in November, we uncovered a number of legal, accounting and operational issues that were not properly disclosed to us prior to the Vaxa merger and my acceptance of the interim CEO/CFO position.

My hope was that prior to the Vaxa merger, and agreeing to the CEO position, former Leadership/Management, which I'll refer to as 'Leadership', would openly and comprehensively divulge unresolved legal and financial dealings, and would behave in a cooperative manner, disclosing any and all access to information that would allow me to make future decisions regarding our company for the benefit of the shareholders. Regrettably it appears that there was a gap between the information disclosed to us prior to our merger, and the reality at hand.

Amongst those critical issues included a judgement/garnishment of nearly $225,000 in October 2019 with regards to a legal matter involving Welton Land & Water Co., of which former Leadership was aware but neglected to properly inform our current team. This financially blindsided us during one of the most critical points of our company during my time here.

In November I also referred to the share issuance obligation on a series of Promissory Notes starting in May 2017 with Black Mountain Equities where the warrants issued resulted in a severed ratcheting of the number of shares on the warrants. The ratcheting was triggered by a previous transaction and resulted in the warrants which were originally issued for 586,000 shares at $1.00 per share to balloon over 5.0 million shares at $0.0785 per share. This is another example of a serious matter where multiple modifications to the Note were agreed to by former Leadership, and improperly disclosed to us, creating weakness in our stock price likely as a result of the downward pressure imposed by the Black Mountain warrants and the convertible loans issued by Two Rivers prior to me joining the Executive Team, as opposed to any change in the underlying fundamentals of the Company during that period of time.

Former Leadership further exercised bad judgement when signing a financing agreement that was what I would refer to as 'too good to be true' deal between Water Redevelopment, a subsidiary of Two Rivers, and America 2030 & Bentley Rothchild, led by Val Sklarov, a known recidivist securities offender. Leadership had the Company reserve shares, yet America 2030 et al has never funded any money it contractually agreed to, and yet through a loophole provision in the agreement, they sought to take possession of the shares. We successfully blocked the transfer to date, but were contractually obligated to arbitration in St. Kitts, resulting in a number of hurdles for our counsel, including their inability to find out the ruling until after America 2030 was awarded $137,000 in fees, on top of what we estimate to be collectively around $150,000 in legal and administrative fees from our Company's side. It is my belief that proper due diligence from our former Leadership could have avoided this tragic and completely preventable compromising situation.

Accounting and legal delays have also occurred due to the lack of access to information. Any professional in the public market space should agree that a reliable document storage system is pertinent to maintaining up to date records that are remotely accessible and easy to navigate. Instead, former Leadership created a series of different platforms for document storage, including paper files, servers, and multiple cloud-based storage systems, with no consistent organization. This created unpredictable delays in hitting definitive deadlines, especially during this pandemic and work-from-home set-ups.

3

This may not seem like much of an issue, but I assure you it has been more than just some 'messy or missing files', whereas every hour spent searching for simple documents equaled valuable resources of time and money spent that could have been avoided. We have since initiated a streamlined documentation process and started consolidating these platforms into a centralized location. Although it seems at times, we are on a scavenger hunt to find reference materials, luckily our team is resilient and persistent.

**<u>Closing Remarks</u>**

Given my professional background, I can assure you that these issues are resolvable, but not overnight. We have made vast strides in the relatively short time our new team has taken over. Even in light of all these findings, our team remains diligent in our efforts to untangle and resolve the legacy issues we inherited and restore market confidence in what I would like to refer to as a diamond in the rough. Our assets speak for themselves, and we all know diamonds are formed under pressure but never forget they are not formed overnight.

We appreciate your ongoing participation and support in Two Rivers.

*Sincerely Yours,*

*Greg Harrington*
*CEO*

***About Two Rivers***

*Two Rivers Water & Farming Company is a vertically integrated agricultural and water rights company with over a decade of experience focused on building a portfolio of water rights and real estate in Colorado. Two Rivers is focused on expanding their agribusiness along with development and rehabilitation of its water assets. www.2RiversWater.com*

4

*About Heather Kearns*

*Ms. Heather Kearns has over 20 years of experience in accounting and financial reporting with private and public companies of various sizes. She is a Certified Public Accountant in the state of Colorado, and has almost 10 years as a firm owner, offering accounting and consulting services. Ms. Kearns's background includes managing and oversight for financial statements and disclosures, filing S-1 registration and other SEC filings, preparation of financial reports including 10-Q's, 10-K's, and 8-K's, and coordinating annual audits and quarterly reviews. She will provide oversight of the finance and accounting team, coordinate with Compliance, and work with the Company's tax consultants to prepare all tax documentation and returns. Ms. Kearns provides the assistance to strengthen the Company's processes and procedures, and also contributes to the development of a Company's strategy and long-term planning.*

*Ms. Kearns is a graduate of Auburn University in Auburn, Alabama, with a Bachelor of Science in Business Administration, and a Master of Business Administration from Auburn University in Montgomery, Alabama.*

*Forward-Looking Statements*

*This news release contains "forward-looking statements.". Statements that are not purely historical are forward-looking statements and include any statements regarding beliefs, plans, expectations or intentions regarding the future. Actual results could differ from those projected in any forward-looking statements due to numerous factors, including the inherent uncertainties associated with developing and acquiring land and water resources. There can be no assurance Two Rivers will be able to initiate and operate in accordance with its business plans. These forward-looking statements are made as of the date of this news release, and Two Rivers assumes any obligation to update the forward-looking statements or to update the reasons why actual results could differ from those projected in the forward-looking statements.*

**Investor Relations:**
Two Rivers Water & Farming Company
info@2riverswater.com

5

# EXHIBIT 4

**GOLDMAN SCARLATO & PENNY, P.C.**
161 Washington Street, Suite 1025
Conshohocken, PA 19428
(484) 342-0700

GOLDMAN SCARLATO & PENNY, P.C. is a nationwide class action law firm. Our lawyers have dedicated their careers to vindicating the rights of ordinary people and businesses victimized by anticompetitive conduct, securities fraud, identity theft, deceptive consumer practices, or who have suffered harm as a result of defective medical devices and dangerous drugs. Goldman Scarlato & Penny, P.C. prosecutes securities fraud, antitrust, and consumer fraud class actions, investor arbitrations, sexual assault cases, as well as mass actions on behalf of those injured by defective medical devices and dangerous drugs throughout the United States. The Firm's lawyers have recovered hundreds of millions of dollars on behalf of their clients and helped to institute meaningful changes in business practices that seek to ensure robust competition in commercial markets, honest and fair disclosures in financial markets, and truthful advertising in retail markets.

The Firm has played prominent roles in several noteworthy and ground-breaking cases. Recently, the Firm has fought to protect those whose most sensitive and private data was compromised in *In re Anthem, Inc. Data Breach Litigation* ($115 million settlement on behalf of healthcare patients), *In re Intuit Data Litigation.* (member of steering committee; settled) and has served as sole lead counsel in *Athens Orthopedic Clinic, P.A.* (case pending)*, and United Shore Financial Services, LLC* (settled).  The Firm has fought to enforce the nation's antitrust laws and ensure a level competitive playing field in cases such as *In re Air Cargo Antitrust Litigation* (settlements of over $1 billion), *In re Vitamins Antitrust Litigation* (settlements of over $1.7 billion), *In re Brand Name Prescription Drugs Antitrust Litigation* (settlements of approximately

$700 million), and *Logue v. West Penn Multi-Listing Service* ($2.75 million settlement on behalf of consumers), and it successfully challenged businesses that misrepresented their products to consumers in *Mirakay v. Dakota Growers Pasta Co.* (settlement valued at over $23 million). In addition, the Firm has fought to protect investors and enforce the nation's securities laws in cases such as *In re Broadcom Securities Litigation* (settlement of $150 million), and *AOL Time Warner Securities Litigation*, (settlement of over $2.5 billion for investors).

**MARK S. GOLDMAN.**   Since 1986, Mark Goldman has concentrated his practice in many different types of complex litigation, including cases involving violations of the federal securities and antitrust laws and state consumer protection statutes. Mr. Goldman served as co-lead counsel in a number of class actions brought against life insurance companies, challenging the manner in which premiums are charged during the first year of coverage. In the antitrust field, Mr. Goldman litigated several cases that led to recoveries exceeding $1 billion each, for the benefit of the consumers and small businesses he represented, including *In re Air Cargo Antitrust Litigation,* Case No. 06-MD-1775 (E.D.N.Y. 2016), *In re Vitamins Antitrust Litigation,* MDL No. 1285 (D.D.C. 1999), *In re NASDAQ Antitrust Litigation,* Case No. 94-cv-3996 (S.D.N.Y. 1994), and *In re Brand Name Prescription Drugs Antitrust Litigation,* Case No. 94-c-897 (N.D. Ill. 1994). Mr. Goldman represents and has represented numerous victims of identity theft seeking to hold accountable companies that failed to protect the safety of private data maintained on their networks, including *In re Community Health Systems, Inc. Customer Data Security Breach Litigation*, 15-cv-222 (N.D. Ala. 2015), *In re Anthem, Inc. Data Breach Litigation*, Case No. 15-MD-02617-LHK (N.D. Cal. 2015), *In re Intuit Data Litigation*, 15-cv-1778 (N.D. Cal. 2015), and *Collins et al v. Athens Orthopedic Clinic, P.A.,* (Athens-Clark Cty, Ga 2017). In the area of securities litigation, Mr. Goldman played a prominent role in class actions brought under the

antifraud provisions of the Securities Exchange Act of 1934, including *In re Nuskin Enterprises, Inc. Securities Litigation,* Master File No. 2:14-cv-00033 (D. Utah 2014), *In Re: Spectrum Pharmaceuticals, Inc. Securities Litigation*, Case No. 2:13-cv-00433 (D. Nev. 2013), and *In re Omnivision Technologies, Inc. Litigation*, Case No.: 5:11-cv-05235 (N.D. Cal. 2011). Mr. Goldman also prosecuted a number of insider trading cases brought against company insiders who, in violation of Section 16(b) of the Securities Exchange Act of 1934, engaged in short swing trading.

Mr. Goldman earned his undergraduate degree from the Pennsylvania State University in 1981 and his law degree from the University of Kansas School of Law in 1986. He is a member of the Pennsylvania bar.

PAUL J. SCARLATO.   Paul Scarlato has concentrated his practice on the litigation of complex class actions since 1989. He has litigated numerous cases under the securities, consumer, antitrust and common law involving companies in a broad range of industries, and has litigated many cases involving financial and accounting fraud.

In securities fraud cases, Mr. Scarlato was one of three lead attorneys for the class in *Kaufman v. Motorola, Inc.,* a securities fraud class action that settled just weeks before trial, and along with Mr. Weinstein of his predecessor firm, was lead counsel in *Seidman v. American Mobile Systems, Inc.,* (E.D. Pa.), a securities class action that resulted in a settlement for the plaintiff class again on the eve of trail. Mr. Scarlato served as co-lead counsel in *In re: Corel Corporation Securities Litigation* (E.D. Pa.). Mr. Scarlato was one of the lead lawyers in *Leibovic v. United Shore Financial Services; Afzal v. BMW of North America, LLC,* and *Yao Yi Liu  v. Wilmington Trust Company.* He served on the plaintiffs' Executive Committee in *Vikram Bhatia, D.D.S. v. 3M Company*, Case No. 16-cv-01304 (D. Minn.)($32.5 million settlement), and is counsel in *In re Platinum and Palladium Antitrust*

*Litigation,* Case No. 14-cv-09391 (S.D.N.Y), *In re Treasury Securities Auction Antitrust Litigation*, Case No. 15-md-02673 (S.D.N.Y.), and *In re Liquid Aluminum Sulfate Antitrust Litigation*, Case No. 15-7827 (D.N.J.).

Mr. Scarlato graduated from Moravian College in 1983 with a degree in accounting, and received his Juris Doctor degree from the Widener University School of Law in 1986. Mr. Scarlato served as law clerk to the Honorable Nelson Diaz, of the Court of Common Pleas of Philadelphia County, and thereafter as law clerk to the Honorable James T. McDermott, Justice of the Pennsylvania Supreme Court. After his clerkships, and prior to becoming a litigator, Mr. Scarlato was a member of the tax department of a major accounting firm where he provided a broad range of accounting services to large business clients in a variety of industries.

Mr. Scarlato is a member of the bars of the Commonwealth of Pennsylvania and the State of New Jersey, and those of various federal district and circuit courts.

**BRIAN D. PENNY**.   Since joining the Firm in 2002, Mr. Penny has focused his practice on class action litigation principally in the areas of antitrust, consumer protection and securities fraud litigation. He was lead counsel in *Mirakay v. Dakota Growers Pasta Co.* (D.N.J. 2013) (alleging false and misleading advertising of pasta products and resulting in a settlement valued at over $23 million); *Logue v. West Penn Multi-Listing Service* (W.D. Pa. 2010) (alleging price-fixing among brokers and multi-listing service and resulting in $2.75 million settlement); *Allan v. Realcomp II* (E.D. Mich. 2010) (alleging price-fixing among brokers and multi-listing service and resulting in a $3.25 million settlement*); Boland v. Columbia Multi-Listing Service* (D.S.C. 2009) (alleging price-fixing among brokers and multi-listing service and resulting in a $1 million settlement); and *Robertson v. Hilton-Head Multi-Listing Service* (D.S.C. 2009) (alleging price-fixing among brokers and multi-listing service).

Mr. Penny served on the executive committees in *In Re NHL Concussion Litigation* (D. Minn. 2014) (alleging league failed to protect players from known risks of concussions), and *In re: Community Health Systems, Inc., Customer Security Data Breach Litigation* (N.D. Ala. 2015) (alleging damages caused by data breach of health care records). He is on the Third Party Discovery Committee in *In re Disposable Contact Lenses Antitrust Litigation*, 15-md-2626 (M.D. Fla.), and is actively engaged as class counsel in *In re: Clobetasol Cases*, 16-CB-27240 (E.D. Pa. 2017) and *In re Lidocaine-Prilocaine*, 16-LD-27242 (E.D. Pa. 2017) where he leads the EPP discovery team in those cases, *In re Broiler Chicken Antitrust Litigation*, 1:16-cv-08637 (N.D. Ill. 2016); and *Bhatia v. 3M Company*, 16-cv-1304 (D. Minn. 2016); *In re Epipen Marketing, Sales Practices and Antitrust Litigation*, 2:17-md-2785 (D. Kan. 2016).

Mr. Penny has also prosecuted numerous securities fraud class actions over the course of his career. He was a key member of the plaintiffs' teams that prosecuted *In re Broadcom Securities Litigation*, which resulted in a settlement of $150 million for the class, and *AOL Time Warner Securities Litigation*, which resulted in a settlement of over $2.5 billion for investors. Mr. Penny was also one of the lead attorneys representing the classes in a number of securities fraud actions arising out of stock option backdating, including, *In re Monster Worldwide, Inc. Securities Litigation* ($47.5 million settlement), *In re Mercury Interactive Securities Litigation* ($117.5 million settlement), *In re SafeNet, Inc. Securities Litigation* ($25 million settlement), *Ramsey v. MRV Communications et al.* ($10 million settlement), and *In re Semtech Securities Litigation* ($20 million settlement).

Mr. Penny received his Bachelor of Arts degree from Davidson College, Davidson, North Carolina, in 1997 and earned his Juris Doctor degree from Pennsylvania State University in 2000. After graduating from law school, Mr. Penny served as law clerk to the Honorable John T.J. Kelly,

Jr., Senior Judge of the Superior Court of Pennsylvania. He has been named a Super Lawyer or Rising Star each year since 2010.  In 2015, Mr. Penny was one of four finalists for the American Antitrust Institute's Enforcement Award for Outstanding Antitrust Litigation Achievement by a Young Lawyer for his work on *Allen, et al. v. Realcomp Ltd., et al.*

**ALAN L. ROSCA**.  Mr. Rosca focuses his legal practice on complex financial and commercial matters, particularly in the areas of securities litigation, investment fraud, and international investment disputes. He often represents institutional and individual investors in disputes with financial industry members arising out of investment fraud or misconduct. He prosecutes claims on behalf of investors through class actions in state or federal courts, and FINRA arbitrations. He also practices in the areas of wage-and-hour and other labor-related disputes, whistleblower matters, and antitrust cases, with a focus on market manipulation.

Alan has been a lecturer and adjunct professor of Securities Regulation at Cleveland-Marshall College of Law, Cleveland State University since 2012.

Alan has served as co-lead counsel, or is currently involved in a leading role, in class actions on behalf of investors who lost money as a result of alleged investment fraud or Ponzi schemes, as well as in other class action matters arising out of wage-and-hour or business disputes, including *Hanson v. Berthel Fisher & Company Financial Services, Inc., et al*. (N.D. Iowa 2013) (a securities class action on behalf of investors in an allegedly fraudulent real estate investment program that raised approximately $26 million from investors, predicated upon the role played by the program's underwriter); *Carol Prock v. Thompson National Properties, LLC, et al*. (C.D. Cal. 2013) (a securities class action on behalf of investors in an allegedly fraudulent real estate investment program that raised approximately $17 million from the investing public, against the program's sponsors and promoters); *Yao-Yi Liu et al. v. Wilmington Trust Company* (W.D.N.Y.

2014) (a class action lawsuit on behalf of investors of a $145 million fraudulent scheme, alleging that the defendant trustee and custodian bank breached its duties as an escrow agent and aided the perpetrators of the scheme); *Spaude v. Mysyk* (N.D. Ohio 2015) (a securities class action on behalf of investors in a $55 million allegedly fraudulent oil-and-gas investment scheme, against the alleged perpetrators of the scheme and the law firm that assisted the scheme); *Jennifer Roth v. Life Time Fitness, Inc.* (D. Minn. 2015) (a wage-and-hour class action on behalf of fitness instructors seeking unpaid wages for work that was required by defendants); *Aleem v. Pearce & Durick* (D. North Dakota 2015) (a securities class action on behalf of investors in a $65 million fraudulent investment scheme, alleging that the defendants violated their fiduciary duties to the investors and assisted in the scheme's securities violations by serving as escrow agents for the investors' investments and offering materially false opinions to the investors regarding their investments in the scheme); *Strong v. Safe Auto Insurance Group, Inc. et al.* (S.D. Ohio 2016) (a wage-and-hour class action on behalf of employees of defendants seeking unpaid wages for work that was required by defendants); *Hay v. United Development Funding IV et al*. (N.D. Texas 2016) (a securities class action on behalf of investors in a $625 million allegedly Ponzi-like real estate investment scheme, against entities including the scheme, its principals and affiliated entities, as well as the alleged scheme's underwriter and auditor); *Fastrich v. Continental General Insurance Company* (D. Neb. 2016) (a class action on behalf of insurance agents affiliated with defendants, arising out of the alleged non-payment of certain fees and commissions owed to such agents); *Elliot v. Bank of Oklahoma* (D.N.J. 2016) (a class action on behalf of investors in a $198 million allegedly fraudulent investment scheme perpetrated through a series of municipal bond offerings, against the trustee bank for the bond offerings and the underwriters of some of the offerings); *Ezeude v. PayPal Holdings, Inc*. et al. (N.D. Cal. 2017) (a class action lawsuit arising out of a $207 million

allegedly fraudulent Internet investment scheme that victimized over 162,000 investors worldwide, alleging that defendants, who acted as payment processors for the scheme, facilitated and assisted the perpetration of the scheme).

Alan received his Juris Doctor degree summa cum laude from Cleveland-Marshall College of Law in May 2008. While in law school he served as a Managing Editor of the Cleveland State Law Review, received the Dean's (full) scholarship for the entire Juris Doctor program, was on the Dean's List, and won the "Best Oralist" award in the Jessup Moot Court competition, Pacific Region. He passed the Ohio Bar exam in top 1%, with the highest grade in the state to the multi-state (federal law) section.

He is licensed to practice law in the Ohio state and federal courts, and in other federal courts nationwide. He has been selected to the 2017 and 2018 Ohio Super Lawyers Rising Star list. He is a member of the Public Investors Arbitration Bar Association, the Cleveland Metropolitan Bar Association, where he served as the Chair of the Unlicensed Practice of Law Committee, and the Cleveland Diplomatic Corps. He also holds a Master of Business Administration degree from Baldwin-Wallace College, Ohio. He is a speaker on Ponzi schemes, investment fraud, cryptocurrencies, and attorney professionalism.

# EXHIBIT 5



# SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.

### <u>Professional Biography of J. Barton Goplerud</u>

I am a shareholder with Shindler, Anderson, Goplerud & Weese, P.C. ("Shindler Anderson"). I have practiced law since 1990.

I personally have been involved in complex and class action litigation since 2003. Since 2003, my class action experience has been nationwide, as well as Iowa focused. It has included a focus on wage and hour violations under FLSA along with antitrust, securities violations, financial products, product defect, consumer fraud and RICO cases.

I have been involved in wage and hour class action litigation in the U.S. District Court for the Southern District of Iowa where I was appointed Lead Counsel. In ***Jones et al. v. Casey's General Stores, Inc.***, Case No. 4:07-cv-00400 (S.D. IA.) and *Wineland et al v. Casey's General Stores, Inc.* Case No. 4:08-cv-00020 (S.D. IA), my co-lead counsel and I obtained the largest wage and hour settlement in the history of the state of Iowa. We represented 7,800 current and former assistant managers and 76,000 non-management employees who worked for a large publicly traded regional convenience store company. These employees were required to work overtime, but were neither paid for the overtime hours worked, nor paid one-half times their regular hourly rate. My co-counsel and I were able to obtain $12.1 Million for the members of the collective action, as well as injunctive relief. Additionally, I have been Lead Counsel in several other cases, including but not limited to:

- *Etter v. Trinity Structural Towers, Inc.,*
  Dkt. No. 4:11-cv-00249

- *Davis et al v. TPI Iowa LLC, et al*
  Dkt. No. 4:11-cv-00233

Steven H. Shindler   Frederick B. Anderson   J. Barton Goplerud   Ryan E. Weese   Andrew B. Howie   Peter J. Rolwes
Tara L. Hofbauer   Katie L. Gallo   Brian O. Marty   Brandon M. Bohlman   James R. Hinchliff   Kayla L. Sproul   Rachel M. Bosovich
Michael P. Mallaney *Senior Counsel*   Thomas W. Polking *Of Counsel*   Roger J. Hudson, Sr. *(1943-2016)*



SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

- *Garcia et al v. Loffredo Gardens, Inc. et al*
  Dkt. No. 4:11-cv-00118

- *Jefferson et al v. Per Mar Security Services et al*
  Dkt. No. 3:12-cv-00113

- *Winterstein v. Ferrara Candy Company*
  Dkt. No. 4:13-cv-00468

- *Molyneux et al v. Securitas Security Services, USA Inc.*
  Dkt. No. 4:10-cv-00588

In addition, I have been Local Counsel, Co-Counsel or Co-Lead Counsel in other class action matters in the Northern and Southern Districts of Iowa. For example, in **Hanson v. Berthel Fisher and Company Financial Services, Inc,** Case No. No. 1:13-cv-00067 (N.D. IA.), I was appointed Co-Lead Counsel against a securities broker-dealer who fraudulently established a real estate investment program and Ponzi-like scheme. Mr. Goplerud and his co-counsel were able to obtain financial relief and injunctive relief for the nationwide class of investors. Furthermore, I have been involved as Local Counsel, Co-Counsel or Co-Lead Counsel in the many other matters, including but not limited to:

- *Chambers v. North American Company for Life and Health Insurance*
  Dkt. No. 4:11-cv-00579

- *Kramer v. Aegon USA, LLC et al*
  Dkt. No. 1:15-cv-00031

- *Kelly v. Phiten USA, Inc.*
  Dkt. No. 4:11-cv-00067

- *Taylor v. Midland National Life Insurance Company (pending)*
  Dkt. No. 4:16-cv-00140

- *Silva et al v. Aviva PLC et al (pending)*
  Dkt. No. 5:15-cv-02665

- *York et al. v. Wellmark, Inc.(pending)*
  Dkt. No. 4:16-cv-00627

Nationally, I have been involved in class action litigation as Counsel, Co-Counsel or Lead Counsel in several matters. In **Fastrich et al. v. Continental General Insurance Company et al.**, Case No 1:17-cv-00615 (S.D. Ohio), I was appointed Co-Lead Counsel in a class action lawsuit involving a large



SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

insurance company that for decades had defrauded its agents out of a substantial amount of commissions. I represented a class of insurance agents, spanning over fifteen years, and obtained financial relief for these class members.

In *Aleem et al v. Pearce & Durick et al.*, Case No. 1:15-cv-00085 (D.N.D.), I was Co-Lead Counsel representing a class of individuals who had been victims of a Ponzi scheme in the North Dakota shale oil fields. Along with my co-counsel, I obtained substantial financial relief against a law firm that represented the perpetrators of the fraud during the fraud. In obtaining the relief, I obtained the rare non-opt-out class settlement under Fed. R. Civ. P. 23(b)(1)(B).

I have also been involved in a number of other national matters as Counsel, Co-Counsel or Lead Counsel, including but not limited to:

- *Roth v. Lifetime Fitness, Inc. et al.*
  Dkt. No. 0:16-cv-02476 (D. Minnesota)

- *Michael et al. v. The Honest Company, Inc.*
  Dkt. No. 2:15-cv-07059 (C.D. CA)

- *Grodzitsky et al. v. American Honda Motor Co., Inc.*
  Dkt. No. 2:12-cv-01142 (C.D. CA)

- *In re National Collegiate Athletic Student-Athlete Concussion Injury Litigation*
  Dkt. No. 1:13-cv-09116 (N.D. IL)

- *In re Citimortgage Inc Home Affordable Modification Program HAMP Contract Litigation*
  Dkt. No. 2:11-ml-02274 (C.D. CA)

- *Carlin et al. v. Dairy America, Inc.*
  Dkt. No. 1:09-cv-00430 (E.D. CA)

- *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*
  Dkt. No. 4:09-md-02086 (W.D. Missouri Kansas City)

- *In re Certainteed Corporation Roofing Shingles Products Liability Litigation*
  Dkt. No. 2:07-md-01817 (E.D. PA)



**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

Finally, I have been involved in class action litigation as Counsel, Co-Counsel, Lead Counselor, or Special Counsel in the Commonwealth of Puerto Rico in the following matters:

- *Government of Puerto Rico v. AU Optronics Corporation et al.*
  Dkt. No. SJ2018CV04695 (Commonwealth of Puerto Rico Court of First Instance) (As Special Counsel to the Commonwealth of Puerto Rico

- *Government of Puerto Rico v. LG Electronics, Inc. et al.* (As Special Counsel to the Commonwealth of Puerto Rico)

- *Honorable Wanda Vazquez, Attorney General for the Government of Puerto Rico v. The Carpenter Company et al.*
  Filed in the D. Puerto Rico San Juan (As Special Counsel to the Commonwealth of Puerto Rico)

- *Quiles Mejias et al v. Banco Popular de Puerto Rico et al*
  Dkt. No. 3:13-cv-01880 (D. Puerto Rico San Juan)

- *Marrero-Rolon et al v. Autoridad de Energia Electrica et al*
  Dkt. No. 3:15-cv-01167 (D. Puerto Rico San Juan)

- *Rosa-Rivera et al. v. Municipio de San Juan et al.*
  Dkt. No. 3:16-cv-01465 (D. Puerto Rico San Juan)

- *Sanchez-Rosa et al. v. Municipio de San Juan et al.*
  Dkt. No. 3:18-cv-01558 (D. Puerto Rico San Juan)



Des Moines Law Firm Specializing in Family Law, Personal Injury, Bankruptcy, and Business Law

**Page 1**
**Firm Biography**

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS ▾    PRACTICE AREAS ▾    BLOG    CONTACT US

# Des Moines Law Firm Specializing in Family Law, Personal Injury, Bankruptcy, and Business Law

**J**ustice is getting what you deserve. Our law firm offers zealous legal representation unique to each client's needs. We provide our clients with creative, cost effective, result-oriented service generated by the wisdom gained from thousands of cases and years of experience. We represent our clients the way we ourselves would want to be represented — aggressively, fairly and ethically.

The Shindler, Anderson, Goplerud & Weese Law Firm's reputation of integrity and the highest quality of legal work has earned the respect and confidence of our clients and competitors. The Firm has played a central role in thousands of lives: from a client who is wrongfully denied hard-earned wages by his employer, to a woman who is injured in an accident, to a family who is faced with the difficulties of divorce.

Whether your needs include family law areas such as divorce, child custody, child support, alimony, or estate planning, criminal defense, and appeals to the Supreme Court, the Firm is known for its ingenuity, skill, and aggressiveness in representing its clients. Our firm includes top-notch attorneys with more than 150 years of combined legal experience, strong academic credentials and community ties.

Our firm is committed to providing you with professional, trustworthy, compassionate and effective service. We provide each client with competent, aggressive and personalized representation. We understand that the legal process can be overwhelming. It is our goal to make the process as simple and efficient as possible for our clients. We can help.

## AREAS OF PRACTICE



FAMILY LAW



PERSONAL INJURY



BANKRUPTCY



BUSINESS LAW

Page 2
Firm Biography



SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS    PRACTICE AREAS    BLOG    CONTACT US



WORKERS' COMPENSATION



LITIGATION



WILLS, TRUSTS & ESTATES



APPEALS

## IOWA LEGAL UPDATE

### Start-up Business Basics
October 4, 2017



Written by James R. Hinchliff Thinking about starting a business? Thinking about starting a business? Are you going to have employees? Are you going to have other investors? How do you pay business taxes? How do you form an entity? These...

Read more

### Buyer's Paperwork in Real Estate Closings
August 2, 2017



Written by Fred Anderson A buyer of real estate is usually entering into one of the largest financial transactions of their lifetimes and one with a mountain of paperwork. Yet, it's not unusual for a buyer to show up at...

Read more

## REQUEST CONSULTATION

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME        FIRM OVERVIEW        ATTORNEYS ▼        PRACTICE AREAS ▼        BLOG        CONTACT US

## REQUEST CONSULTATION

First Name *

Last Name *

Phone *

Phone number

Email *

Email address

Your Message

Brief description of your legal issue

**Get Help Now**











SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS ▾    PRACTICE AREAS ▾    BLOG    CONTACT US

**Get Help Now**











## OUR ADDRESS

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567
Fax: 515-223-8887

## ABOUT THE FIRM

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong academic credentials and community ties.

Privacy Policy | Legal Disclaimer | Sitemap

## CONNECT WITH US



Map & Directions

We serve clients throughout the state of Iowa.



Disclaimer: The information you obtain at this site is not, nor is it intended to be, legal advice. You should consult an attorney for advice regarding your individual situation. Contacting us does not create an attorney-client relationship.

Copyright © 2017, Shindler, Anderson, Goplerud & Weese P.C., All rights reserved.
Website design and digital marketing by Amplimark



**SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.**

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS    PRACTICE AREAS    BLOG    CONTACT US

## Categories

- Appeals (2)
- Bankruptcy (1)
- Business Law (2)
- Family Law (6)
- Alimony (3)
- Child Custody (6)
- Child Support (2)
- Divorce (7)
- Litigation (3)
- Personal Injury (3)
- Car Accidents (2)
- Real Estate (1)

## Shindler, Anderson, Goplerud & Weese Law Firm Des Moines, Iowa

### Our History

Shindler, Anderson, Goplerud & Weese P.C., was founded in Des Moines, Iowa and has been successfully defending the rights of clients throughout the Midwest for more than 50 years. Our firm has a proven record of results and a reputation for excellence that speaks for itself.



As you read more about us, you'll find the secret to our success is simple hard work. We represent our clients the way we ourselves would want to be represented — aggressively, fairly and ethically.





SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS    PRACTICE AREAS    BLOG    CONTACT US

## Practice Areas

- Family Law
- Personal Injury
- Bankruptcy
- Business and Corporate Law
- Workers' Compensation
- Litigation
- Class Action Lawsuit
- Wills, Trusts and Estate Planning
- Appeals

## Office Address

5015 Grand Ridge Drive
Suite 100
West Des Moines, IA 50265

Phone: 515-223-4567
Fax: 515-223-8887

E-Mail Us

## Our People

Our firm includes top-notch attorneys with more than 150 years of combined legal experience. Our attorneys have strong academic credentials and community ties. Each attorney in our firm is deeply committed to your success. Our attorneys speak frankly and openly with clients. They demonstrate the strictest personal and professional ethics. Above all, they are passionately committed to your needs as a client.

## Our Practice

Our attorneys provide a broad range of legal services to individuals and business clients throughout the Midwest. Whether your needs include family law areas such as divorce, child custody, child support, alimony, or estate planning, and appeals to the Supreme Court, the Firm is known for its ingenuity, skill, and aggressiveness in representing its clients. Our firm includes top-notch attorneys with more than 150 years of combined legal experience, strong academic credentials and community ties. Shindler, Anderson, Goplerud & Weese Law Firm represents clients in following areas:

- Family Law – Divorce, Child Support, Child Custody, Visitation and Alimony
- Personal Injury – Car, Motorcycle and Truck Accidents, Slip and Fall Accidents
- Bankruptcy – Business and Personal Bankruptcies
- Business and Corporate Law – Formation, Contracts, Mergers, Buy-sell Agreements, Employment Law
- Workers' Compensation
- Litigation – Wage and Hour Violations
- Class Action Lawsuit – Fraud, Product Liability, Deceptive Advertising
- Wills, Trusts and Estate Planning – Powers of Attorney, Revocable and Irrevocable Trust
- Appeals

## Our Promise

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME | FIRM OVERVIEW | ATTORNEYS | PRACTICE AREAS | BLOG | CONTACT US

## Our Promise

We utilize state-of-the-art technology and cost-effective methods to provide services in a timely, client-oriented manner. We take time to listen to our clients, return their calls promptly, keep them informed and provide the personalized support and assistance they require. Our attorneys are up front and ethical about their fees, so there are no surprises.

At our very core, we focus on each client's background, needs and goals. Working creatively and diligently, we seek the best possible result for each client we serve.

## Contact Us

Our law office is conveniently located in West Des Moines, Iowa. To schedule a consultation with an attorney at our firm, call 515-223-4567, or contact us by e-mail.

## OUR ADDRESS

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567
Fax: 515-223-8887

## ABOUT THE FIRM

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong academic credentials and community ties.

## CONNECT WITH US



Map & Directions

We serve clients throughout the state of Iowa.



MAKE PAYMENT
VISA MasterCard DISCOVER AMERICAN EXPRESS
LAWPAY

Privacy Policy | Legal Disclaimer | Sitemap

Disclaimer: The information you obtain at this site is not, nor is it intended to be, legal advice. You should consult an attorney for advice regarding your individual situation. Contacting us does not create an attorney-client relationship.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265



SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME          FIRM OVERVIEW          ATTORNEYS ▼          PRACTICE AREAS ▼          BLOG          CONTACT US

Frederick B. Anderson

Shindler, Anderson, Goplerud & Weese P.C.

Professional, Trustworthy, Compassionate and Effective Legal Service

Page 9
Firm Biography



5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS    PRACTICE AREAS    BLOG    CONTACT US

Frederick B. Anderson

Brandon M. Bohlman

Katie L. Gallo

J. Barton Goplerud

Tara L. Hofbauer

Andrew B. Howie

James R. Hinchliff

Peter J. Rolwes

Brian O. Marty

Michael P. Mallaney

Steven H. Shindler

Ryan E. Weese

# Shindler, Anderson, Goplerud & Weese P.C.

## Professional, Trustworthy, Compassionate and Effective Legal Service

Our attorneys are committed to the highest standards of legal service. We understand how difficult this time may be for you. We work diligently to seek creative, effective and cost-conscious solutions to legal challenges. We zealously relentlessly serve you. Our attorneys have more than 150 years of combined legal experience.

Each attorney in our firm is deeply committed to your success. Whether you are going through a divorce, recovering from a personal injury, need to file for bankruptcy or need an attorney for civil litigation or an appeal, we can provide the experienced, compassionate and personalized legal assistance you require.

To learn more about the education, experience and credentials of our attorneys, visit our attorney profiles links on the left. If you want to learn more about our firm, we are pleased to answer your questions.

We are located in West Des Moines, Iowa and serve clients throughout the state of Iowa. To contact a lawyer at our firm or for further assistance, call 515-223-4567, or contact us by e-mail.





SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

515-223-4567

HOME          FIRM OVERVIEW          ATTORNEYS ▾          PRACTICE AREAS ▾          BLOG          CONTACT US

Frederick B. Anderson

Brandon M. Bohlman

Katie L. Gallo

J. Barton Goplerud

Tara L. Hofbauer

Andrew B. Howie

James R. Hinchliff

Peter J. Rolwes

Brian O. Marty

Michael P. Mallaney

Steven H. Shindler

Ryan E. Weese

### J. Barton Goplerud

#### Shareholder

Local: 515-223-4567
Fax: 515-223-8887 | Email: E-mail Me

### Biography

Bart represents clients in class action, personal injury, medical malpractice, product liability, and workers' compensation cases. He is licensed to practice in all Iowa state and federal courts and is a member of the American Bar Association, the Iowa State Bar Association, and the American Association for Justice. Bart earned his bachelor's degree from the University of Iowa in 1982 and his law degree from Drake University in 1990. Bart and his wife Leslie live in Booneville.



Areas of Practice                    Published Works

Page 11
Firm Biography



5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS ▼    PRACTICE AREAS ▼    BLOG    CONTACT US

- Medical Malpractice Law
- Misdiagnosis
- Surgical Mistake
- Personal Injury
- Automobile Accidents
- Slip and Fall
- Products Liability Law
- Workers' Compensation
- Consumer Protection Law
- Litigation
- Wage and Hour Violation
- Class Action/Anti Trust Violation

## Bar Admissions

- Iowa, 1990
- U.S. District Court Northern District of Iowa, 1990
- U.S. District Court Southern District of Iowa, 1990

## Education

- Drake University Law School, Des Moines, Iowa
  - J.D.—1990
  - Honors: Order of the Coif
  - Law Review: Drake Law Review, Editor
- University of Iowa, Iowa City, Iowa
  - B.A.—1982

Status of Sovereign Immunity and Assumption of the Risk", 39 Drake Law Review 759

## Classes/Seminars

- Adjunct Professor, Negotiations, Pre-Trial Advocacy and Mediation, Drake Law School, 1993–Present

## Professional Associations and Memberships

- Iowa State Bar Association, Member
- American Bar Association, Member
- American Association for Justice, Member

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME     FIRM OVERVIEW     ATTORNEYS ▼     PRACTICE AREAS ▼     BLOG     CONTACT US

**▼ Family Law**

Alimony

Child Custody and Visitation

Child Support

Divorce

Modifications

Property Division

**▶ Personal Injury**

**▶ Bankruptcy**

**▶ Business and Corporate Law**

Workers' Compensation

**▶ Litigation**

Class Action Lawsuit

Wills, Trusts and Estate Planning

## Family Law Attorneys Des Moines, Iowa

Our family law attorneys handle divorce, child support and child custody cases of clients in Des Moines and throughout the Midwest. Divorce issues can be emotionally and financially devastating for families. While some matters are resolved amicably and quickly, many divorce and child custody cases are highly contested. When facing this type of adversity, you need a clearheaded, compassionate and experienced attorney to stand up for you. Our attorneys have been helping clients resolve family law disputes for more than 50 years. Our



attorneys have seen virtually every aspect of divorce and family law from all sides, and will bring that experience to your case.

Our Attorneys are dedicated to protecting your family, your assets and your future. We provide attentive, full service representation for all aspects of family law, including the practice areas of:

- Divorce and legal separation
- Child custody and visitation
- Child Support, enforcement of orders for parents who are owed back child support
- Spousal support (alimony)
- Modification of child custody or support orders
- Division of marital property
- Prenuptial and postnuptial agreements

Our family law practice also includes actions for post-decree enforcement and modification. If your circumstances have undergone significant change since your decree was issued, you can request a modification from the court. If you are not receiving proper payments for support or alimony, you may petition the court for and order of enforcement.

## Contact Us

If you are facing divorce or need legal support for a child custody or support issue, call our office for

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS ▼    PRACTICE AREAS ▼    BLOG    CONTACT US

Workers' Compensation

‣ Litigation

Class Action Lawsuit

Wills, Trusts and Estate Planning

Appeals

• Prenuptial and postnuptial agreements

Our family law practice also includes actions for post-decree enforcement and modification. If your circumstances have undergone significant change since your decree was issued, you can request a modification from the court. If you are not receiving proper payments for support or alimony, you may petition the court for and order of enforcement.

## Contact Us

If you are facing divorce or need legal support for a child custody or support issue, call our office for a consultation at 866-916-9127 or 515-223-4567. You can also contact us from this site. We look forward to telling you how our experience can help you reach a more stable future.

### OUR ADDRESS

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567

Toll Free: 866-916-9127
Fax: 515-223-8887

### ABOUT THE FIRM

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong academic credentials and community ties.

### CONNECT WITH US



Map & Directions

We serve clients throughout the state of Iowa.

Privacy Policy | Legal Disclaimer | Sitemap

Disclaimer: The information you obtain at this site is not, nor is it intended to be, legal advice. You should consult an attorney for advice regarding your individual situation. Contacting us does not create an attorney-client relationship.

Copyright © 2016, Shindler, Anderson, Goplerud & Weese P.C., All rights reserved.
Website design and SEO by Amplimark



 SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

515-223-4567

HOME · FIRM OVERVIEW · ATTORNEYS ▼ · PRACTICE AREAS ▼ · BLOG · CONTACT US

▸ Family Law

▾ Personal Injury

  Car Accidents

  Motorcycle Accidents

  Slip and Fall Accidents

  Truck Accidents

▸ Bankruptcy

▸ Business and Corporate Law

  Workers' Compensation

▸ Litigation

  Class Action Lawsuit

  Wills, Trusts and Estate Planning

  Appeals

## Personal Injury

Our firm represents those who were hurt by the accidental or intentional acts of others, including cases involving automobile accidents, defective products, or premises liability, among others. In addition, our firm has extensive experience in the related area of health and health care law, which encompasses areas such as disability, elder law and medical malpractice.



Personal injuries cause physical pain as well as emotional and financial hardship. You may be out of work and have medical bills piling up. Your family life may be under strain. We often take our physical and mental well-being for granted until something goes wrong. In addition to the physical and emotional costs, the economic losses from an accident can be devastating. Whether caused by an automobile accident, a defective product, medical malpractice, or other negligent, careless, reckless or intentional conduct, injuries alter lives forever. By retaining an experienced personal injury attorney, you can spend your time focusing on your health, family, and economic issues, while pursuing a variety of legal means to obtain the highest possible financial recovery.

Our attorneys have years of experience and an excellent track record of representing individuals who have been injured as a result of an unsafe product that was designed, manufactured, sold, or furnished by a person or company. We assist those injured individuals in achieving fair compensation for their injuries. Our attorneys have represented individuals injured by food and agricultural products, machinery and tools, medical products and devices, motor vehicles, and recreational products.

If you have been injured or have lost a loved one as a result of the negligent, careless, or reckless or intentional conduct of another, call our office at 866-916-3127 or 515-223-4567 for a free consultation or contact us through this site.

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME          FIRM OVERVIEW          ATTORNEYS  ▼          PRACTICE AREAS  ▼          BLOG          CONTACT US

- Family Law

- Personal Injury

* Bankruptcy

   Business Bankruptcy

   Consumer Bankruptcy

- Business and Corporate Law

   Workers' Compensation

- Litigation

   Class Action Lawsuit

   Wills, Trusts and Estate Planning

   Appeals

## Bankruptcy Law

If you are struggling with debt, our attorneys can help you get a fresh start and back on the road to financial freedom. Our bankruptcy attorneys are leaders in their field and have years of experience guiding individuals through Chapter 7 and Chapter 13 bankruptcies and businesses through Chapter 11 reorganizations. We know that bankruptcy is often a difficult decision and that events which lead to bankruptcy are often beyond a client's control. We treat you with the respect and dignity which you deserve.



 Business Bankruptcy

Consumer Bankruptcy



5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265



SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME       FIRM OVERVIEW       ATTORNEYS ▼       PRACTICE AREAS ▼       BLOG       CONTACT US

▸ Family Law

▸ Personal Injury

▸ Bankruptcy

* Business and Corporate Law

   Commercial Litigation

   Workers' Compensation

▸ Litigation

   Class Action Lawsuit

   Wills, Trusts and Estate Planning

   Appeals

## Business and Corporate Law Attorneys

The business and corporate law attorneys at the Shindler, Anderson, Goplerud & Weese P.C. Law Firm handle a broad range of business and corporate law matters from business transactions to complex business and commercial litigation. Our attorneys represent a wide variety of businesses, including major corporations, financial institutions, real estate developers, hotels, car dealerships, and numerous small and mid-size businesses in various industries.



Our attorneys have extensive litigation experience in state and federal courts, as well as alternative dispute resolutions such as arbitration, handling virtually any form of business and commercial dispute, including breach of contract, business torts, construction, real estate, employment matters, collections, anti-trust, insurance, and professional malpractice. Business clients are drawn to the firm's reputation for excellence, cutting edge strategies, and outside-the-box thinking. Our attorneys solve real problems effectively and efficiently, helping clients maximize their bottom line.

In addition to our extensive litigation experience, our firm represents individuals, businesses and business owners with any manner of business transactions, including:

- Formation of LLCs, corporations, partnerships and other business entities
- Commercial law
- Contracts
- Mergers and acquisitions
- Buy-sell agreements
- Non-compete, non-solicitation, and non-disclosure agreements
- Employment law



5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON, GOPLERUD & WEESE P.C.

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS    PRACTICE AREAS    BLOG    CONTACT US

• Buy-sell agreements
• Non-compete, non-solicitation, and non-disclosure agreements
• Employment law
• Annual meeting and biennial reporting requirements
• Business bankruptcy and reorganization
• Wind-up and dissolution

Whether you are an individual, small business owner, or a large corporation, our attorneys can provide the quality legal representation you need and the exceptional level of service that you deserve.

## OUR ADDRESS

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567

Toll Free: 866-916-9127
Fax: 515-223-8887

## ABOUT THE FIRM

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong academic credentials and community ties.

## CONNECT WITH US



Map & Directions

We serve clients throughout the state of Iowa.

Privacy Policy | Legal Disclaimer | Sitemap

Disclaimer: The information you obtain at this site is not, nor is it intended to be, legal advice. You should consult an attorney for advice regarding your individual situation. Contacting us does not create an attorney-client relationship.

Copyright © 2016, Shindler, Anderson, Goplerud & Weese P.C., All rights reserved.
Website design and SEO by Amplimark



5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS ▾    PRACTICE AREAS ▾    BLOG    CONTACT US

‣ Family Law

‣ Personal Injury

‣ Bankruptcy

‣ Business and Corporate Law

Workers' Compensation

‣ Litigation

Class Action Lawsuit

Wills, Trusts and Estate Planning

Appeals

## Worker's Compensation

It's no surprise that many people with dangerous jobs get hurt. No matter how many safety precautions we take in life, we are always at risk of getting injured on the job. Incidents occur that are way beyond any single person's control. Iowa's workers' compensations laws are in place to accommodate individuals who have experienced or suffered hearing loss, injuries, or occupational diseases regardless of who is at fault.



There are many legal nuances in Iowa's workers' compensation laws that you may have never considered. Did you know that if you lose your thumb on the job, then you will receive 60 weeks of benefits; whereas, if you lose your first finger, you'll only receive 35 weeks? Each and every body part is assigned a value, and that value differs from limb to limb. Did you know that you are entitled to interest payments if your employer's insurance doesn't pay you after 11 days of receiving a written report and medical verification? If they're unreasonably late in sending your payments then you are, by law, entitled to penalty fees.

These are the issues that make retaining a lawyer necessary. It can be incredibly hard for a family to know what to do after a main member gets injured and the flow of income is disrupted. The legal processes that surround workers comp' issues can complicated and overwhelming. Our attorneys take the time to breakdown the next steps to take, the possible settlements available, and the possible obstacles your family may face. You need an attorney who specifically studied this subject in law school, as well as years of experience with workers' comp trials. They will get you that much closer to financial compensation, medical attention, and peace of mind.

### Contact Us

Call toll free 866-916-9127 or 515-223-4567, or contact us by email for a free, no-obligation consultation about your case.

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME    FIRM OVERVIEW    ATTORNEYS ▼    PRACTICE AREAS ▼    BLOG    CONTACT US

▸ Family Law

▸ Personal Injury

▸ Bankruptcy

▸ Business and Corporate Law

  Workers' Compensation

▾ Litigation

  Wage and Hour Violations

  Class Action Lawsuit

  Wills, Trusts and Estate Planning

  Appeals

## Litigation

Our firm represents and advises clients who are facing litigation in a wide range of practice areas. From litigation avoidance planning to courtroom advocacy and appellate work, a Shindler, Anderson, Goplerud & Weese P.C. litigation attorney is your complete resource.



We have litigated cases from contractual and insurance disputes to personal injury to commercial real estate and employment cases. Whatever your legal dilemma, we have the litigation experience to vigorously represent your interests. Our many combined years of litigation experience give our attorneys insight into what our opponents are planning, and our litigation team uses this knowledge to prepare the best arguments for each client's case.

Litigation can be a time-consuming and exhausting process. Our attorneys work hard to make sure the process proceeds as smoothly as possible. They give straightforward answers to your questions and continually keep you updated on the status of your case. In addition, our attorneys will inform you concerning all of your options and help you make the best decision for your situation. You will make the final decision on all issues related to your litigation.

Everything we do in managing litigation relates to our goal of fairly and competently resolving each case to our client's best advantage. When early settlement is in your best interests, we will develop a cooperative solution to the legal issues you face. When it is in your best interest to take the case to trial, our attorneys will be tenacious in the defense of your rights and interests. Contact us to learn more about how our litigators can help you.

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME          FIRM OVERVIEW          ATTORNEYS ▼          PRACTICE AREAS ▼          BLOG          CONTACT US

▸ Family Law

▸ Personal Injury

▸ Bankruptcy

▸ Business and Corporate Law

Workers' Compensation

▸ Litigation

Class Action Lawsuit

Wills, Trusts and Estate Planning

Appeals

## Consumer Fraud I Class Action Lawsuit

As part of our civil litigation practice, we handle class action claims against businesses that engage in consumer fraud. State and federal laws protect consumers against unscrupulous businesses that engage in deceptive advertising and other forms of consumer fraud.



Examples of consumer fraud include:

- Mortgage fraud
- Credit card fraud
- Auto fraud
- Deceptive advertising
- Mail order fraud
- Defective products
- Telemarketing fraud
- Telephone contract fraud

If you feel you have been the victim of consumer fraud, contact an attorney at our firm to discuss your legal rights. You may have a right to receive financial compensation for the damages you have sustained. Our attorneys aggressively defend the rights of consumers and hold businesses responsible for deceptive practices and the sale of defective products.

Shindler, Anderson, Goplerud & Weese P.C., has been fighting for the rights of people like you since 1972. We are dedicated attorneys who work hard to obtain the best possible results for the people we serve. We are committed to the delivery of quality legal representation, with an emphasis on dedicated advocacy, professionalism and ethical legal service.

## Contact Us

To find out more about our firm and your right to pursue an action for consumer fraud, contact our office today. We are located in West Des Moines, Iowa, and serve clients locally and nationally in



SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.



515-223-4567

HOME       FIRM OVERVIEW       ATTORNEYS ▼       PRACTICE AREAS ▼       BLOG       CONTACT US

responsible for deceptive practices and the sale of defective products:

Shindler, Anderson, Goplerud & Weese P.C., has been fighting for the rights of people like you since 1972. We are dedicated attorneys who work hard to obtain the best possible results for the people we serve. We are committed to the delivery of quality legal representation, with an emphasis on dedicated advocacy, professionalism and ethical legal service.

## Contact Us

To find out more about our firm and your right to pursue an action for consumer fraud, contact our office today. We are located in West Des Moines, Iowa, and serve clients locally and nationally in class action claims. For assistance, call 866-916-9127 or 515-223-4567, or contact us by e-mail.

### OUR ADDRESS

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567

Toll Free: 866-916-9127
Fax: 515-223-8887

### ABOUT THE FIRM

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong academic credentials and community ties.

### CONNECT WITH US



Map & Directions

We serve clients throughout the state of Iowa.

Privacy Policy | Legal Disclaimer | Sitemap

Disclaimer: The information you obtain at this site is not, nor is it intended to be, legal advice. You should consult an attorney for advice regarding your individual situation. Contacting us does not create an attorney-client relationship.

Copyright © 2016, Shindler, Anderson, Goplerud & Weese P.C., All rights reserved.
Website design and SEO by Amplimark

Page 23
Firm Biography

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME     FIRM OVERVIEW     ATTORNEYS ▼     PRACTICE AREAS ▼     BLOG     CONTACT US

▸ Family Law

▸ Personal Injury

▸ Bankruptcy

▸ Business and Corporate Law

Workers' Compensation

▸ Litigation

Class Action Lawsuit

Wills, Trusts and Estate Planning

Appeals

## Wills, Trusts and Estate Planning Attorneys

At Shindler, Anderson, Goplerud & Weese P.C., our attorneys have decades of experience guiding clients through the estate planning process. Clients appreciate our thoughtful and thorough approach, ensuring that their affairs are in order and will be handled smoothly, beneficiaries will be provided for in the most appropriate manner possible, and their estate will be maximized for the benefit of those they leave behind. Let us help you provide for what is most important to you.



In addition to estate planning, our attorneys can help you navigate Medicaid, plan for long term care, and protect elders who are being abused or taken advantage of. We also frequently represent executors, administrators, trustees, heirs, beneficiaries, and creditors in various issues that arise during the course of administration of trusts and estate, including probate litigation.

Our attorneys have extensive experience in all aspects of Wills, Trusts & Estates, including:

- Wills
- Revocable Trusts
- Irrevocable Trusts
- General Powers of Attorney
- Medical Powers of Attorney
- Living Wills
- Tax planning and gifting
- Guardianships and Conservatorships
- Elder law and Medicaid planning
- Nursing home and long term care
- Will contests
- Claims of creditors
- Elder Abuse



5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

| HOME | FIRM OVERVIEW | ATTORNEYS ▼ | PRACTICE AREAS ▼ | BLOG | CONTACT US |

• Medical Powers of Attorney
• Living Wills
• Tax planning and gifting
• Guardianships and Conservatorships
• Elder law and Medicaid planning
• Nursing home and long term care
• Will contests
• Claims of creditors
• Elder Abuse
• Mismanagement or misappropriation of assets by fiduciaries

## OUR ADDRESS

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567

Toll Free: 866-916-9127
Fax: 515-223-8887

## ABOUT THE FIRM

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong academic credentials and community ties.

## CONNECT WITH US



Map & Directions

We serve clients throughout the state of Iowa.

Privacy Policy | Legal Disclaimer | Sitemap

Disclaimer: The information you obtain at this site is not, nor is it intended to be, legal advice. You should consult an attorney for advice regarding your individual situation. Contacting us does not create an attorney-client relationship.

Copyright © 2016, Shindler, Anderson, Goplerud & Weese P.C., All rights reserved.
Website design and SEO by Amplimark

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

📞 515-223-4567

HOME     FIRM OVERVIEW     ATTORNEYS ▼     PRACTICE AREAS ▼     BLOG     CONTACT US

▸ Family Law

▸ Personal Injury

▸ Bankruptcy

▸ Business and Corporate Law

Workers' Compensation

▸ Litigation

Class Action Lawsuit

Wills, Trusts and Estate Planning

Appeals

## Civil and Criminal Appeals

Shindler, Anderson, Goplerud & Weese P.C., has a strong appeals practice that includes civil and criminal appeals. Attorney Andrew B. Howie handles the appeals at our firm. He handles a wide range of appeals including family law, property disputes, commercial litigation, criminal defense, personal injury, medical malpractice and much more.



Andrew Howie has represented hundreds of clients in appeals to the Iowa Supreme Court and Iowa Court of Appeals. Here is an example of cases he has WON for his clients:

### DIVORCE – CHILD CUSTODY

In re Marriage of Aronow, 2007 WL 2004709 (Iowa Ct. App., July 12, 2007) – won mother custody of her children after she lost at trial.

In re Marriage of Nelson, 2003 WL 1970399 (Iowa Ct. App., Apr. 30, 2003) – won father custody of his child after he lost at trial in a modification case.

In re Marriage of Amenell, 2007 WL 2257082 (Iowa Ct. App., Aug. 08, 2007) – won mother custody of her child after she lost at trial.

In re Marriage of Cordes, 2003 WL 21921263 (Iowa Ct. App., Aug. 13, 2003) – won father sole custody of his children after trial court ordered a shared physical care arrangement.

In re Marriage of Stoos, 2006 WL 3313954 (Iowa Ct. App., Nov. 16, 2006) – won mother custody of her child after she lost in a modification trial.

In re Marriage of Gray, 2014 WL 2431677 (Iowa Ct. App., May 29, 2014) – won mother custody of her children after she lost at her divorce trial.

In re Marriage of Duggan, 2014 WL 3511889 (Iowa Ct. App., July 16, 2014) – won father custody of his child after he lost at trial in a modification case.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME        FIRM OVERVIEW        ATTORNEYS ▼        PRACTICE AREAS ▼        BLOG        CONTACT US

### DIVORCE – PROPERTY DIVISION

In re Marriage of McReynolds, 2009 WL 4119700 (Iowa Ct. App., Nov. 25, 2009) – successfully reversed trial court's unfair property division to husband when applying prenuptial agreement.

In re Marriage of Hoakison, 2004 WL 2168430 (Iowa Ct. App., Sep. 29, 2004) – obtained more money for wife on appeal when trial entered unfair property division

In re Marriage of Sullins, 715 N.W.2d 242 (Iowa 2006) – successfully protected client's property award, trial attorney fee award, and denial of college expenses

### DIVORCE – ALIMONY

In re Marriage of Angier, 2009 WL 3337642 (Iowa Ct. App., Oct. 7, 2009) – reversed trial court's low alimony award and increased amount for client.

In re Marriage of Schactner, 2009 WL 2170240 (Iowa Ct. App., July 22, 2009) – won alimony for client on appeal when trial court denied all alimony.

In re Marriage of Powell, 2008 WL 4308223 (Iowa Ct. App., Sep. 17, 2008) – reversed trial court and substantially lowered alimony and child support obligation for client in a modification case

In re Marriage of Burgett, 2004 WL 1836116 (Iowa Ct. App., Aug. 11, 2004) – substantially lowered client's alimony obligation

In re Marriage of Davidson, 2002 WL 535321 (Iowa Ct. App., Apr. 10, 2002) – won alimony for client on appeal when trial court denied all alimony

In re Marriage of Sisson, 843 N.W.2d 866 (Iowa 2014) – lowered ex-husband's alimony obligation through the appeal

In re Marriage of ___, 20__ WL _____ (Iowa Ct. App. 20__) – increased ex-wife's alimony award from $60,000 to $300,000 through the appeal

### DIVORCE – ATTORNEY FEES

In re Marriage of Peck, 2005 WL 3147946 (Iowa Ct. App., Nov. 23, 2005) – reversed trial court's order for client to pay ex wife's attorney fees in contempt case

 5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

 SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

| HOME | FIRM OVERVIEW | ATTORNEYS ▼ | PRACTICE AREAS ▼ | BLOG | CONTACT US |

### DIVORCE – ATTORNEY FEES

In re Marriage of Peck, 2005 WL 3147946 (Iowa Ct. App., Nov. 23, 2005) – reversed trial court's order for client to pay ex-wife's attorney fees in contempt case

### MORTGAGE DISPUTE

Robinson v. First American Title Ins. Co., 2008 WL 2514019 (Iowa Ct. App., June 25, 2008) – reversed trial court's decision to extinguish mortgage holder's lien

### EASEMENT DISPUTE

Skow v. Goforth, 618 N.W.2d 275 (Iowa 2000) – successfully defended trial court's decision to allow client to build a fence in an easement dispute

### LAND CONDEMNATION

Kimberley v. Iowa Dept. of Transp., 2002 WL 1758260 (Iowa Ct. App., July 31, 2002) – reversed trial court's dismissal of landowner's case to stop land condemnation by State

### Contact a West Des Moines Appeals Lawyer

To contact Iowa appellate attorney Andrew B. Howie, call 866-916-9127 or 515-223-4567. You may also contact us by e-mail.

**OUR ADDRESS**

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Open: Monday-Friday 8:00am-5pm

Phone: 515-223-4567

**ABOUT THE FIRM**

Our firm is committed to providing you with professional, trustworthy, compassionate and effective services for a broad range of practice areas including family law, personal injury, bankruptcy, and business law. Our firm includes top-notch attorneys with more than 150 years of combined legal experience and have strong

**CONNECT WITH US**



Map & Directions

We serve clients throughout the state of Iowa.

5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265

SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.

515-223-4567

HOME          FIRM OVERVIEW          ATTORNEYS          PRACTICE AREAS          BLOG          CONTACT US



**ADDRESS**

Shindler, Anderson, Goplerud & Weese P.C.

5015 Grand Ridge Drive
Suite 100
West Des Moines, IA 50265

**PHONE/FAX**

Toll Free : 866-916-9127
Local : 515-223-4567
Fax: 515-223-8887

# EXHIBIT 6

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| **JOHN PAULSON,**<br>**Individually and on Behalf of all Others**<br>**Similarly Situated,**<br><br>              **Plaintiff**<br><br>   **v.**<br><br>**TWO RIVERS WATER AND**<br>**FARMING COMPANY, JOHN R.**<br>**MCKOWEN, WAYNE HARDING and**<br>**TIMOTHY BEALL,**<br><br>**Defendants** | **Civil Action No. 19-cv-02639-PAB-NYW** |

## NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED CLASS ACTION DETERMINATION, PROPOSED SETTLEMENT OF CLASS ACTION, FAIRNESS HEARING AND RIGHT TO APPEAR

**TO:** **ALL PERSONS OR ENTITIES THAT CURRENTLY HOLD CLAIMS BASED ON SECURITIES OF GROWCO, INC. ("GROWCO"), AND PURCHASED OR OTHERWISE ACQUIRED THE SECURITIES THROUGH THE OFFERINGS LISTED BELOW DURING THE TIME PERIOD BEGINNING OCTOBER 2014 THROUGH DECEMBER 2017 AND SUFFERED ALLEGED LOSSES:**

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |
| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. YOUR RIGHTS MAY BE AFFECTED BY THE LEGAL PROCEEDINGS IN THIS ACTION. IF THE COURT APPROVES THE PROPOSED SETTLEMENT, YOU WILL BE FOREVER BARRED FROM CONTESTING THE FAIRNESS, REASONABLENESS OR ADEQUACY OF THE PROPOSED SETTLEMENT OR PURSUING THE RELEASED CLAIMS AND UNKNOWN CLAIMS (AS DEFINED HEREIN).**

I.      <u>**THE PURPOSE OF THIS NOTICE**</u>

The purpose of this Notice is to inform you of the existence of the above-captioned class action (the "Class Action" or "Action") brought by Plaintiff John Paulson ("Plaintiff") against Two Rivers Water and Farming Company ("Two Rivers"), John R. McKowen ("McKowen"), Wayne Harding ("Harding") and Timothy Beall ("Beall") (collectively, "Defendants"), and its proposed settlement (the "Settlement").

This Notice also informs you of the Court's preliminary certification of a Class (as defined below in this Section) for purposes of the Settlement, and of your right to participate in a hearing (the "Fairness Hearing") to be held on _____ 2021 at ____ m. before the Honorable Philip Brimmer, Chief Judge of the U.S. District Court for the District of North Colorado, Courtroom A701, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294-3589 to: (a) determine whether the Settlement should be finally approved by the Court as fair, reasonable and adequate and in the best interests of Plaintiff and the Class; (b) determine whether a Final Order should be entered dismissing the Class Action with prejudice against the Defendants and effectuating the releases described below; (c) consider any request by Plaintiff's counsel for an award of attorneys' fees and out-of-pocket expenses ("Attorneys' Fees and Expenses Award"), and a service award to the Representative Plaintiff ("Service Award"); (d) hear and determine any objections to the Settlement or to the Attorneys' Fees and Expenses Award or Service Award; and (e) rule on such other matters as the Court may deem appropriate.

The Court has determined that the Class Action shall be preliminarily certified as a class action under Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, on behalf of all persons or entities who currently hold claims based on the GrowCo Securities and who purchased or otherwise acquired the securities through the Offerings identified above during the time period beginning on October 2014 through December 2017 and suffered Alleged Losses. This Notice describes the rights you may have under the Settlement and what steps you may, but are not required to, take in relation to the Settlement. If the Court approves the Settlement, Plaintiff and the Defendants in the Class Action (the "Parties") will ask the Court to enter a Final Order dismissing the Class Action with prejudice on the merits.

**THE FOLLOWING RECITATION DOES NOT CONSTITUTE FINDINGS OF THE COURT. IT IS BASED ON STATEMENTS OF THE PARTIES AND SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE**

MERITS OF ANY OF THE CLAIMS OR DEFENSES RAISED BY ANY OF THE PARTIES.

## II.   BACKGROUND OF THE ACTION

The Class Action was initiated by named Plaintiff John Paulson on August 13, 2019, with the filing of a class action complaint against Defendants Two Rivers, McKowen, Harding, and Beall, arising out of Paulson's purchase of securities in GrowCo, a Colorado corporation formed in 2014. GrowCo was in bankruptcy and was not named as a party to this Action. Plaintiff's Amended Complaint alleged that Defendants acted as control persons; sold and promoted GrowCo securities to Plaintiff and the class while omitting information that was material to investors about Defendant McKowen's background; and permitted Two Rivers' use of the proceeds of the sales. It asserted claims against Defendants under the Colorado Securities Act, 11-51-101 *et. seq.,* and Colorado common law arising out of the Defendants' conduct in connection with those sales and use of the proceeds. Defendants deny Plaintiff's allegations of wrongdoing and liability.

On June 29, 2021, Two Rivers was dismissed as a party to the Action without prejudice for the reasons explained below. The proposed Settlement was agreed to by the parties on August 7, 2020. On October 9, 2020, Plaintiff filed a motion requesting the Court's preliminary approve of the Settlement. On January 5, 2021, while that motion was still pending, Defendant Two Rivers' third lawyer in the Action moved the Court to withdraw as Two Rivers' counsel. On January 25, 2021, the Court issued an order approving the motion to withdraw and requiring Two Rivers to obtain new counsel no later than February 15, 2021, as extended to March 16, 2021. Two Rivers failed to meet the Court's deadlines. Since a corporation must appear in a lawsuit through counsel, Two Rivers' failure to obtain new counsel, thus stalled the preliminary approval proceedings in their tracks.

On April 6, 2021, Plaintiff moved to dismiss Two Rivers as a party to this litigation without prejudice to Plaintiff's right to bring Two Rivers back into the Action in order to allow the Settlement approval process to move forward. Plaintiff argued that the dismissal would not change or affect the terms of the Settlement and that Two Rivers' insurance carrier and the other defendants agreed to honor the Settlement terms even without Two Rivers as a party. On June 29, 2021, the Court entered an Order granting Plaintiff's motion and dismissing Two Rivers as a party. On July 7, 2021, the Court entered an Order permitting Plaintiff to file a revised motion for preliminary approval and a motion to withdraw on or before July 16, 2021.

## III.   SUMMARY OF SETTLEMENT TERMS

Defendants' insurer will pay $1.5 million in cash (the "Settlement Fund") to resolve the claims of Plaintiff and the Class. The Settlement Class and each member of the Class is limited solely to the Settlement Fund for the satisfaction of all Released Claims against all Released Parties (as provided more fully in the Settlement Agreement).

The Settlement Fund shall be applied as follows: (1) to pay counsel's Attorneys' Fees and Expenses Award, and the Service Award to the Representative Plaintiff to the extent allowed by the Court; (2) to pay the costs and expenses reasonably incurred in connection with providing Notice, locating Settlement Class Members, assisting with the filing of claims, administering and

distributing the Net Cash Settlement Amount to Authorized Claimants, processing claim forms, and paying escrow fees and costs, if any; (3) to pay any taxes and tax expense; and (4) to distribute the balance of the Settlement Fund (the "Net Cash Settlement Amount") to Authorized Claimants as allowed by the Plan of Allocation, or order of the Court.

Authorized Claimant means a Class Member whose claim for recovery of losses has been found to be timely and valid under the terms of the Settlement Agreement.

## IV.    **PLAN OF ALLOCATION**

Under a proposed Plan of Allocation, the Claims Administrator will first calculate each Authorized Claimant's Alleged Loss.

The Alleged Loss shall mean the principal amount each Authorized Claimant paid for the GrowCo securities.

The Claims Administrator will then calculate each Authorized Claimant's recovery under the Settlement by multiplying the Net Cash Settlement Amount by a fraction, (a) the numerator of which is the Class Member's Alleged Loss and (b) the denominator of which is the sum of each and every claiming Class Member's Alleged Loss.

The Plan is not a part of or a condition of approval of the Settlement. Under the Agreement, the Net Settlement Fund may be distributed in accordance with the proposed Plan or such other plan as the Court may approve.

## V.    **REASONS FOR THE SETTLEMENT**

This Action was aggressively litigated from the onset. Plaintiff filed his initial complaint in Colorado state court setting out detailed facts as to Defendants' alleged wrongdoing. The Action was later removed to this Court by Mr. McKowen. Thereafter, the Court held an initial scheduling conference during which it set a schedule for the Action. Mr. McKowen then moved the Court to stay the Class Action pending the outcome of GrowCo's bankruptcy proceedings, which the Court denied. Separately, GrowCo initiated an adversary proceeding against Mr. Paulson in the bankruptcy court and filed a motion for a temporary restraining order ("TRO") and preliminary injunction asking the bankruptcy court to stop the Class Action. Plaintiff successfully opposed the motion to stay in this Court and was required to appear in the bankruptcy court to oppose the adversary proceeding, and to appear at an evidentiary hearing on GrowCo's request for a TRO and injunction, upon which Paulson prevailed.

Plaintiff subsequently filed an amended complaint (the "Amended Complaint") alleging additional facts and legal claims. Mr. McKowen moved to dismiss the Complaint and Plaintiff opposed that motion. Mr. McKowen's motion to dismiss was fully briefed and pending before the Court when the Parties reached the proposed Settlement.

The Parties engaged in discovery, which included Plaintiff serving requests for production of documents, interrogatories, and requests for admissions on each of the Defendants, and

document subpoenas on numerous third parties. Plaintiff reviewed and analyzed numerous documents produced by Defendants McKowen and Beall, and from other sources. Plaintiff also obtained a clerk's default against Defendant Beall. Mr. Beall then moved to set aside the clerk's default against him and moved to dismiss the Amended Complaint. On March 16, 2021, the Court approved Defendant Beall's request to set aside the default and denied his motion to dismiss as moot.

Plaintiff's counsel has conducted a thorough investigation of the claims and allegations asserted in the Class Action before reaching an agreement in principle on a Settlement. In addition, the Settlement was the product of extensive arms-length negotiations conducted with the assistance of the Judge William Meyer of the Judicial Arbiter Group, Inc. serving as mediator. In evaluating the Settlement, Plaintiff and his counsel have considered: (a) the substantial benefits to the members of the Class from the Settlement; (b) the facts developed during Plaintiff's investigation and discovery; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the Class Action; (d) the probability of success on the merits; (e) the availability of sufficient assets to fund a Settlement; and (f) the conclusion of Plaintiff's counsel that the terms and conditions of the Settlement are fair, reasonable, adequate and in the best interests of Plaintiff and the Class.

Each of the Defendants has denied, and continues to deny, that he or it committed any violation of the securities laws or any other law, or engaged in any of the wrongful acts alleged in the Class Action, and expressly maintains that he or it is entering into the Settlement solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

Plaintiff has stated, and continues to state, that he brought his claims in good faith, that he believes that his claims had substantial merit at all relevant times, and that he is agreeing to the terms of the Settlement only because he believes that the Settlement provides a substantial benefit to the Class and has concluded that the terms of the Settlement are fair, reasonable and adequate and in the best interests of the Class.

The $1.5 million Settlement Fund provides a substantial and immediate benefit to the Class. Although Class Counsel believes it will likely be able to prove merit to the claims asserted in the case, there is a substantial risk that Class Members would not be able to recover anything at all if the case were not settled. Until July 6, 2021, GrowCo has been in bankruptcy and Two Rivers lacks substantial assets. Plaintiff would need to look to the personal assets of the individual Defendants for a recovery if the Settlement was not reached, making a substantial recovery directly from Two Rivers and/or its principals beyond any available insurance coverage questionable at best. To that end, Defendants have a single insurance policy that covers the claims asserted up to $2,000,000, which amount is reduced by the costs of defense. The $1,500,000 Settlement Fund represents substantially all of the remaining insurance coverage net of defense costs to date. In considering whether to settle, the Plaintiff considered the fact that if he persisted with the Action, the amount of insurance coverage available to satisfy a judgment would be substantially less than the Settlement Fund. In other words, as defense costs would continue to mount, each additional dollar spent on defending the Action would represent one less dollar available for a settlement. Finally, if the case were to continue to be litigated, the Class would still need to overcome various legal defenses in order to survive any dispositive motions or recover at trial.

## VI.   <u>RELEASES</u>

Under the terms of the Settlement, Plaintiff and the Class Members ("Releasors") agree to the complete discharge, dismissal with prejudice, settlement and release of the Releasees.

"Releasor" means each and every one of, and "Releasors" means all of (i) the Representative Plaintiff, (ii) all other Class Members, (iii) their respective past or present parents, predecessors, successors, current and former affiliates, divisions, business units, joint ventures, subsidiaries, assigns, any entities in which any Releasor has or had a controlling interest or that has or had a controlling interest in him, her, or it, and any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of Representative Plaintiff or any other Class Member and (iv) their respective past and present officers, directors, employees, officials, members, partners, and attorneys.

The "Releasees" include each and every one of (i) the Defendants and their attorneys in the Class Action; (ii) the following past and present officers, directors, managers, attorneys, and/or employees of Two Rivers and GrowCo for securities purchased at the time or after they were officers or directors: Gus Blass III, Christopher Bragg, Gregg Campbell, Dennis Channer, James Cochran, Wayne Harding, Michael Harnish, John McKowen, Samuel Morris, John Stroh II, Rockey Joe Wells, Bradley Walker and T. Keith Wiggins. GrowCo's officer and directors during the Class Period were: Timothy Beall (however, Mr. Beall contends he was not an officer or director of GrowCo), Kirsty Cameron, Wayne Harding, Chad Kirby, Jan McCaffrey, John R. McKowen, Joseph McKowen, Laura McKowen, I. Wistar Morris, Jeff Ploen and Aaron VanWingerden; and (iii) non-Defendants GrowCo, GrowCo Partners 1, LLC, GrowCo Partners 2, LLC, GCP Super Units, LLC, McGrow LLC, and TR Capital Partners, LLC.

"Released Claims" as defined in the Settlement Agreement means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term "Released Claims" does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in any GrowCo bankruptcy action.

If the Settlement is finally approved, Plaintiff and each Class Member on behalf of themselves and their other Releasors, for good and sufficient consideration, and all Releasors shall be deemed to have, and by operation of law and of the Order Approving Settlement shall have, fully, finally, and forever released, relinquished, settled, and discharged:

     a.    all Released Claims;

     b.    all Claims, damages, and liabilities  against each and every one of the Releasees to the extent that any such Claims, damages, or liability relate in any way to any or all acts, omissions, nondisclosures, facts, matters, transactions, occurrences, or oral or written statements or representations in connection with, or directly or indirectly relating to (i) the prosecution, defense, or Settlement of the Class Action, (ii) the Settlement Agreement, (iii) the Settlement terms and their implementation, (iv) the provision of Notice in connection with the

proposed Settlement, and/or (v) the resolution of any Claim Forms filed in connection with the Settlement; and

        c.    all Claims against any of the Releasees for attorneys' fees, costs, or disbursements incurred by Plaintiff's counsel, the settlement of the Class Action, or the administration of the Settlement, except as otherwise specified in the Settlement Agreement.

The Settlement Agreement further provides that:

- The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation including in the GrowCo Bankruptcy Action.

- The Releasors and each of them agree and covenant not to sue or prosecute, institute or cooperate in the institution, commencement, filing, or prosecution of any suit or proceeding in any forum based upon or related to any Released Claims against any Releasee.

## VII.   __CLASS ACTION DETERMINATION__

The Court has ordered that the Class Action shall be preliminarily certified as a class action for purposes of the Settlement only, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class:

All persons or entities who currently hold claims based on Securities of GrowCo, and who purchased or otherwise acquired the securities through offerings listed below (the "Offerings"), during the time period beginning October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment:

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $3,349,151 | December 2014-January 2015 |
| $4 Million Note | Debt | $4,000,000 | March 2015-September 2015 |

| GCP Super Units LLC | Equity | $5,297,157 | July 2015-October 2017 |
|---|---|---|---|
| $1.5 Million Note | Debt | $100,000 | April 2016 |
| $6 Million Note | Debt | $6,000,000 | March 2016-July 2016 |
| $7 Million Note | Debt | $2,977,000 | January 2016- January 2017 |
| $2 Million Note | Debt | $1,080,000 | February 2017-September 2017 |
| $2 Million Note | Debt | $440,000 | June 2017 |

Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in Exhibit E to the Settlement Agreement for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who validly request exclusion from the Settlement Class within the time period set forth herein.

At the Fairness Hearing, the Court will consider, among other things, whether the Class should be certified permanently.

## VIII.   <u>THE FAIRNESS HEARING</u>

The Court has scheduled the Fairness Hearing to be held _____ at the time identified in Section I above to determine: (a) whether the Court should finally approve the Settlement as fair, reasonable and adequate to the Class; (b) whether to enter an order dismissing the Class Action with prejudice and extinguishing and releasing the Released Claims; (c) whether the Class should be permanently certified pursuant to Rule 23 or the Federal Rules of Civil Procedure; (d) whether the Court should permanently certify Plaintiff as the Class Representative in the Class Action, and attorneys and law firms Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C. as Class Counsel, and Steve Miller of Steve A. Miller, P.C. as Additional Plaintiff's Counsel in the Class Action; (e) if the Court approves the Settlement, whether the Court should grant Plaintiff's application for an Attorneys' Fees and Expenses Award; (f) whether to grant Class Counsel's application for a Service Award for the Plaintiff and reimbursement of the Plaintiff's expenses, and (g) to consider such other matters as may properly come before the Court.

The Court may postpone, reschedule or adjourn the Fairness Hearing without further notice to the Class other than by filing a notice on the docket in the Class Action in advance of the Fairness Hearing, or by making an announcement at the Fairness Hearing or any adjournment thereof. The Court also has reserved the right to approve the Settlement at or after the Fairness Hearing with such modification(s) as may be consented to by the Parties and without further notice to the Class.

## IX.   <u>YOUR RIGHT TO APPEAR AND OBJECT</u>

Any Member of the Class who objects to any aspect of the Settlement, certification of the Class, entry of the Final Order, and/or Plaintiff's counsel's application for payment of attorneys'

fees and expenses, and for a Service Award, or who otherwise wishes to be heard, may appear in person by his, her or its attorney at the Fairness Hearing and present evidence or argument that may be proper and relevant; provided, however, that, except for good cause shown, no person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement, or, if approved, the order to be entered thereon, and no papers or briefs submitted by any member of the Class or any other person shall be received and considered by the Court, unless, not later than [14 days before Fairness Hearing]. Any such objections, and comments must be in writing and filed with the Clerk of the Court and served on the counsel at the addresses listed below no later than fourteen (14) days before the Final Fairness Hearing. Such objections must include the following: (a) proof that such person or entity currently holds claims based on the GrowCo Securities and purchased or otherwise acquired the securities through any of the Offerings during the Class Period of October 2014 through December 2017 and suffered Alleged Losses; (b) written notice of the person's intention to appear; (c) a detailed statement of the objections and the reasons for desiring to appear and to be heard; and (d) a detailed statement of all of the grounds for such objections, as well as all documents or writings which the person desires the Court to consider.

The foregoing information concerning any objections should be filed not later than [14 days before Fairness Hearing] with:

Clerk of the Court
United States District Court
Alfred A. Arraj United States Courthouse, Room A105,
901 19th Street, Denver, CO 80294-3589

Copies of such objections must be served not later than [14 days before Fairness Hearing] on:

Paul Scarlato
Alan Rosca
GOLDMAN SCARLATO & PENNY, P.C.
161 WASHINGTON STREET, SUITE 1025
CONSHOHOCKEN, PA 19428
EMAIL: ROSCA@LAWGSP.COM
         SCARLATO@LAWGSP.COM

J. Barton Goplerud
Brian Marty
SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 2223-8887
E-Mail: jbgoplerud@sagwlaw.com
         marty@sagwlaw.com

Any person or entity who fails to object in the manner provided above shall be deemed to have waived such objection (including the right to appeal), and absent good cause found by the Court shall forever be barred from making any such objection in the Class Action or any other action or proceeding or otherwise contesting any aspect of the Settlement, but shall otherwise be bound by the Final Order to be entered and the releases to be given.

## X.   YOUR RIGHT TO EXCLUDE YOURSELF FROM THE CLASS

Each Settlement Class Member will be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such person or entity mails or delivers a written request for exclusion from the Settlement Class, addressed to *Paulson v. Two Rivers Settlement*, EXCLUSIONS, c/o Strategic Claims Services, 600 N. Jackson St., Ste. 205, P.O. Box 230, Media, PA 19063, Fax: (610) 565-7985. The request for exclusion must be ***received*** no later than _____, 2021 (the "Exclusion Deadline"). You will not be able to exclude yourself from the Settlement Class after the Exclusion Deadline. Each Request for Exclusion must (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *Paulson v. Two Rivers Settlement*, Civil Action No. 19-cv-02639"; (c) identify and state each and every purchase of GrowCo securities in the Offerings during the period from October 2014 through December 2017, as well as the type of security and the investment amount. A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any of the Released Claims against any of the Releasees.

If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Cash Settlement Amount with respect to the Settlement Class.

Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiff and Defendants.

## XI.   FINAL ORDER OF THE COURT

If the Settlement is approved by the Court following the Fairness Hearing as fair, reasonable and adequate, the Parties will jointly request that the Court enter a Final Order which will, among other things: (a) certify the Class Action as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class; (b) determine that the requirements of the Federal Rules of Civil Procedure and due process have been satisfied in connection with the Notice provided to the Class; (c) certify Plaintiff as Class Representative and Class Counsel and Additional Plaintiff's Counsel in the Class Action; (d) approve the Settlement as fair, reasonable and adequate to the Class; (e) vacate the Clerk's default against Defendant Beall; and (f) dismiss the Class Action with prejudice on the merits, as against any and all Defendants, without costs

except as herein provided, (g) release Defendants and other Releasees from the Released Claims, and (h) enter a "Complete Bar Order" prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities.

## XII.    THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff intends to petition the Court at the Final Fairness Hearing for an award of attorneys' fees in an amount not to exceed $33^{1/3}$% of the Settlement Fund, and for reimbursement of costs and expenses advanced by Plaintiff's counsel not to exceed $10,000, and for a Service Award to the Representative Plaintiff in the amount of $5,000, and for reimbursement of his expenses not to exceed $100. Final resolution by the Court of the fee application shall not be a precondition to the dismissal of the Class Action in connection with any final approval of the Settlement, and the fee application may be considered separately from the terms of the proposed Settlement of the Class Action.

## XIII.    SCOPE OF THIS NOTICE

This Notice is not all-inclusive. The references in this Notice to the pleadings in the Class Action, the Settlement Agreement and all other papers or proceedings herein are only summaries and do not purport to be comprehensive. For the full details of the Class Action, the claims that have been asserted in the Class Action and the terms and conditions of the Settlement, including a complete copy of the Settlement Agreement and related Orders and proposed forms of Orders, you are referred to the Court file for the Class Action.

## XIV.    GENERAL INQUIRIES

General inquiries about the Settlement should be directed to the attention of Class Counsel as follows:

> Paul Scarlato
> Alan Rosca
> GOLDMAN SCARLATO & PENNY, P.C.
> 161 WASHINGTON STREET, SUITE 1025
> CONSHOHOCKEN, PA 19428
> EMAIL: ROSCA@LAWGSP.COM
>           SCARLATO@LAWGSP.COM
>
> J. Barton Goplerud
> Brian Marty
> SHINDLER, ANDERSON, GOPLERUD & WEESE, PC
> 5015 Grand Ridge Drive, Suite 100
> West Des Moines, Iowa 50265
> Telephone: (515) 223-4567
> Facsimile: (515) 2223-8887
> E-Mail: jbgoplerud@sagwlaw.com
>           marty@sagwlaw.com

**PLEASE DO NOT CALL OR WRITE THE COURT WITH GENERAL INQUIRIES.**