IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02639-PAB-NYW

JOHN PAULSON, Individually and on Behalf of all Others Similarly Situated,

      Plaintiff,

v.

JOHN R. MCKOWEN,
WAYNE HARDING, and
TIMOTHY BEALL,

      Defendants.

---

**ORDER**

---

This matter is before the Court on the Revised Unopposed Motion of Plaintiff for Preliminary Approval of Settlement, Certification of Class, and Appointment of Class Representative and Class Counsel [Docket No. 157].

**I. BACKGROUND**

    **A.  Factual Background**

Plaintiff brings a securities class action against defendants.  Docket No. 56. Plaintiff's amended complaint alleges that McKowen, Harding, and Beall (collectively, the "individual defendants") were officers of defendant Two Rivers Water and Farming Company ("Two Rivers").  Docket No. 157 at 5.

Plaintiff alleges that Two Rivers and McKowen formed GrowCo, Inc. ("GrowCo")[1]

---

[1] GrowCo was in bankruptcy when this action was initiated and is not a party to this action.  Docket No. 157 at 5 n.3.  On July 6, 2021, the Bankruptcy Court granted the United States Trustee's and Debtor's Stipulated Motion for Entry of Order

to "capitalize on [the] burgeoning marijuana industry in Colorado."  Docket No. 56 at 5,
¶ 17.  To support their operations, defendants offered GrowCo securities to investors
(the "Offerings").  *Id.* at 6, ¶ 28.  With the Offerings, defendants provided "sales
presentations, memoranda of terms, exchange note purchase agreements, exchange
agreements, investor questionnaires, and other documents . . . which purported to
make material disclosures to investors about GrowCo and the Securities Offerings."  *Id.*,
¶ 27.  Plaintiff alleges that the Offering documents omitted material information about
McKowen, including a 1987 disciplinary action, fine, and suspension with the National
Association of Securities Dealers, a 1995 bankruptcy, and a 1992 default judgment in
connection with a complaint before the Indiana Securities division.  *Id.* at 7-8, ¶¶ 30–41.

### B.  Procedural Background

Defendants dispute these allegations and deny liability for the claims.  McKowen
moved to dismiss the complaint, Docket No. 73, on the basis that the information
underlying the allegations against him "concerned the distant past, was not required to
be disclosed, and was not material to investors' decisions to purchase GrowCo
securities."  Docket No. 157 at 6.  This motion was pending when the parties and
defendants' insurance carrier, Starstone Specialty Casualty Insurance Company
("Starstone"), agreed to engage in mediation before retired Denver District Court Judge
William Meyer.  *Id.* at 2-3.  The parties ultimately reached a settlement in August 2020,
*id.* at 7, and on October 9, 2020 plaintiff filed an unopposed motion for preliminary
approval of the settlement, approval of the notice to the class, preliminary certification

Dismissing Chapter 11 Case.  *In re GrowCo., Inc.*, No. 19-10512, Docket No. 263 (D.
Colo. Bankr.).

of the class for the purposes of settlement, appointment of class counsel, and the scheduling of a fairness hearing.   *See* Docket No. 131.

On January 25, 2021, the assigned magistrate judge granted a motion to withdraw by counsel for Two Rivers and issued an order to show cause why she should not impose sanctions against Two Rivers for failure to defend in the absence of legal representation.  Docket No. 137 at 6.  On February 24, 2021, the Court entered an order informing the parties that, because granting the motion for preliminary approval of the class action settlement would trigger proceedings that necessitated Two Rivers's participation, through counsel, the Court would not rule on the motion for preliminary approval until counsel entered an appearance on behalf of Two Rivers.  Docket No. 139.  On March 10, 2021, the Court entered an order notifying the parties that the Court would deny the motion for preliminary approval without prejudice if Two Rivers did not enter an appearance on or before March 16, 2021.  Docket No. 145.

On March 15, 2021, plaintiff filed a motion for a status conference regarding Two Rivers's failure to hire counsel and failure to respond to the order to show cause. Docket No. 146.  Plaintiff requested that the Court hold a status conference and, if the status conference could not be held before March 16, that the Court hold in abeyance a ruling on the motion for preliminary approval until the Court held a status conference. *Id.* at 5.  On April 6, 2021, plaintiff filed a motion to dismiss Two Rivers as a party. Docket No. 149.  On June 29, 2021, the Court granted plaintiff's motion to dismiss Two Rivers without prejudice.  Docket No. 153 at 11.  The Court also granted plaintiff leave to file a revised motion for preliminary approval in light of Two Rivers' dismissal, Docket No. 154, which plaintiff subsequently filed.  Docket No. 157.

## II. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.*"  See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the

Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso ("Shook I")*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 564 U.S. at 350-51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  In the typical case where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook I*, 386 F.3d at 968).  Here, plaintiff moves for certification for the purposes of settlement and the remaining defendants do not oppose the motion.  Docket No. 157 at 1.  Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *In re*

*Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).

A class action may be sustained if these requirements are satisfied and the class meets

the requirements of one of the categories of Rule 23(b).  Fed. R. Civ. P. 23(b).

Plaintiff asks the Court to certify a settlement class under Rule 23(b)(3).  Docket

No. 157 at 16, 19.  Under that provision, plaintiff must show that "questions of law or

fact common to class members predominate over any questions affecting only

individual members" and that a class action "is superior to other available methods for

fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In

determining predominance and superiority under Rule 23(b)(3), the Court considers the

following factors: (A) the class members' interests in individually controlling the

prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (C) the

desirability or undesirability of concentrating the litigation of the claims in the particular

forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P.

23(b)(3)(A)–(D).  To certify a settlement class, the Court need not inquire whether the

case, if tried, would present difficult management problems under Rule 23(b)(3)(D).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all of the other

Rule 23 requirements apply and demand heightened attention in the settlement context

because the Court generally lacks an opportunity to adjust the class as the case

unfolds.  *Id.*  If the proposed settlement class satisfies the requirements of Rules 23(a)

and (b), then the Court must separately evaluate whether the settlement agreement is

"fair, reasonable, and adequate" under Rule 23(e).[2]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiff meets the requirements for preliminary approval, the Court will direct notice to all class members who would be bound by the proposal and hold a fairness hearing to determine if

> it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (I) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Though the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the Court's preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

---

[2] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

7

### III.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENT

#### A.  Settlement Agreement

The motion for preliminary approval seeks certification of a settlement class

consisting of

> All persons or entities who currently hold claims based on Securities of
> GrowCo, and who purchased or otherwise acquired the securities through
> Offerings listed below, during the time period beginning October 2014
> through December 2017 (the "Class Period"), and suffered Alleged
> Losses.  For the avoidance of doubt, persons or entities who purchased or
> otherwise acquired the securities during the Class Period who have
> assigned the securities to VitaNova Partners, LLC are not excluded as
> Class Members by virtue of such assignment:

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $    3,349,151 | December 2014 - January 2015 |
| $4 Million Note | Debt | $    4,000,000 | March 2015 - September 2015 |
| GCP Super Units LLC | Equity | $    5,297,157 | July 2015 - October 2017 |
| $1.5 Million Note | Debt | $       100,000 | April 2016 |
| $6 Million Note | Debt | $    6,000,000 | March 2016 - July 2016 |
| $7 Million Note | Debt | $    2,977,000 | January 2016 - September 2017 |
| $2 Million Note | Debt | $    1,080,000 | February 2017 - September 2017 |
| $2 Million Note | Debt | $       440,000 | June 2017 |

Docket No. 157 at 3; *see also id.* at 31-32, 34, ¶¶ 1.i, 1.s.  There are no subclasses.

The following persons are excluded from the Class:

> (1) the Defendants; (2) the officers and directors of Two Rivers and
> GrowCo during the Class Period as set forth in Exhibit E to the Settlement
> Agreement for securities purchased at the time or after they were officers
> or directors; (3) any judge or judicial officer who may hear any aspect of
> this Action and his or her law clerks; and (4) except as provided in the
> Settlement Agreement, all persons or entities released in the Settlement.
> Also excluded from the Settlement Class are the persons and/or entities
> who validly request exclusion from the Settlement Class within the time
> period set by the Court in the Preliminary Approval Order.

*Id.* at 3-4.

In exchange for the release of all claims of the Settlement Class against all defendants, the Settlement Agreement provides that Starstone will pay $1.5 million for the benefit of the Class. *Id.* at 7. The parties agree that this amount provides a "substantial and immediate benefit to the Class" and is appropriate given that GrowCo is in bankruptcy and Two Rivers's financial situation makes it unlikely that it would be able to satisfy a judgment. *Id.* at 8. The parties arrived at this amount after reviewing defendants' insurance policy, which covers claims up to $2 million minus the cost of the defense. *Id.* The $1.5 million figure "represents substantially all of the remaining insurance coverage net of defense costs to date." *Id.* Plaintiff also considered that, if he persisted with litigation, "the amount of insurance coverage available to satisfy a judgment would be substantially less than the Settlement because as defense costs increase, available funds for settlement decrease." *Id.*

Class Members who wish to object to the fairness, reasonableness, or adequacy of the Settlement Agreement may do so up to fourteen days before the fairness hearing, and subject to the requirements set out in this Order. *Id.* at 38, ¶ 6. Class Members who fail to object shall be deemed to have waived any objections. *Id.* In addition, potential Class Members who wish to exclude themselves from the Class must submit a written statement requesting exclusion no later than twenty-one days after the date on the notice pursuant to the terms of the notice. *Id.* at 39, ¶ 8.

The Claims Administrator, selected by Class Counsel, will administer the process of receiving, reviewing, and denying claims under Class Counsel's supervision and will determine each claimant's pro rata share of the Settlement Amount upon a Class

Member's showing of loss.  *Id.* at 40, ¶¶ 12–14.  The $1.5 million Settlement Fund will be used to pay, among other things, attorneys' fees and expenses, costs and expenses reasonably and actually incurred in connection with locating and providing notice to potential Class Members, assisting with filing claims, and administering and distributing the Settlement Fund.  *Id.*, ¶ 15.

## B.  Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed after a certain number; however, the Tenth Circuit has never adopted a minimum presumption of numerosity.  *Trevizo v. Adams*, 455 F.3d 1155, 162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).

Here, the proposed Class Counsel has obtained a list of all known GrowCo investors in the Offerings from GrowCo's bankruptcy counsel.  Docket No. 157 at 17. This list "includes the names of over 80 investors," which the parties believe "easily satisfies numerosity."  *Id.*  Given *Trevizo*, the sheer number of Class Members does not create a presumption of numerosity; however, given that defendants do not object to this estimate and that the Tenth Circuit has found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."), the Court agrees that joinder of at least 80

10

investors would be impracticable and that the numerosity requirement is met.

**C. Commonality**

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist. *Devaughn*, 594 F.3d at 1195. Commonality requires that the plaintiff demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Even a single common question will satisfy commonality. *Dukes*, 564 U.S. at 359.

Here, there are many common questions of law and fact. The parties explain that plaintiff's claims concern common alleged omissions from GrowCo offering documents about Mr. McKowen's background and there are questions about whether the alleged omissions were material to GrowCo investors' decisions to invest. Docket No. 157 at 17. These issues of fact and law are common to all Class Members' claims. Thus, although the alleged omissions and misrepresentations may have impacted Class Members differently, whether these omissions and misrepresentations are material is a factual and legal question that is common to the entire class and is

11

capable of class-wide resolution.  *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  (citation omitted)).  The relief in this case will not require an examination of unique circumstances, apart from the standard Claims Administrator determination and calculation.  Accordingly, the Court finds that the proposed Class satisfies the commonality requirement.  Fed. R. Civ. P. 23(a)(2).

### D.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The interests and claims of the lead plaintiff and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1199.

Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is

likely to become to become a major focus of the litigation.'" *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012).

The parties explain that there is no conflict of interest between plaintiff and the proposed Class. Plaintiff and the proposed Class Members "suffered losses in connection with their investments in GrowCo securities during the Class Period." Docket No. 157 at 17. Therefore, they share the same interest in maximizing their recovery from defendants. *Id.* (citing *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.")). Plaintiff also argues, "Plaintiff and Class Counsel have, and will continue to, vigorously protect the interests of the Class. Plaintiff and Class Counsel devoted significant time and resources to initiating, prosecuting, and negotiating an exceptional resolution to this Action." *Id.* at 18.

Typicality "limit[s] the class claims to those fairly encompassed by the named plaintiff's claims," *Gen. Tel. Co. of the N.W., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980), which allows self-interested litigation by the named plaintiffs to necessarily advance the interests of the class as a whole. 1 William B. Rubenstein, *Newberg on Class Actions* ("*Newberg*"), § 3:29. The named plaintiff has similar claims to other potential Class Members and is not subject to any "unique defense[s]," *see Marcus*, 687 F.3d at 599, and the pursuit of the requested relief for Mr. Paulson himself will advance the interests of the class as a whole. *See Newberg*, § 3:29. Therefore, the Court agrees that Mr. Paulson, as named plaintiff, brings claims that are typical of the

proposed class.

### E.  Adequacy of the Representation

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Id.* at 625.  To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Id*. at 625-26.  The Court has found that the named plaintiff brings claims typical of the proposed class and face the same potential harms.  *See* Section III.D, *supra*.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted).  Adequate representation depends on, among other factors, an absence of antagonism between

the representatives and absentees, and a sharing of interest between representatives and absentees. *Ellis*, 657 F.3d at 985.

With regard to the first adequacy factor, the Court finds that the interests of the Class are fairly and adequately protected by Mr. Paulson. As explained above, the parties state that there is no conflict of interest between plaintiff and the proposed Class, as plaintiff and the potential Class Members suffered the same sorts of losses due to their investments with GrowCo. Docket No. 157 at 17 (citing *In re Polaroid*, 240 F.R.D. at 77). Further, there is nothing in the record to show any conflict of interest between Mr. Paulson and the rest of the Class. Moreover, there is nothing in the Settlement Agreement that raises obvious concerns regarding interclass conflicts. *See Amchem*, 521 U.S. at 611–12 (noting interclass conflict between the exposure-only asbestos plaintiffs and those already afflicted with asbestos related disease). There is also no evidence that one set of potential Class Members is at risk of benefitting from the Settlement Agreement to the detriment of another set of Class Members. Accordingly, the Court finds at this preliminary stage that Mr. Paulson is able to control the litigation and to protect the interests of the Class as a whole. Class Members will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the parties explain that Mr. Paulson and the proposed Class Counsel – Goldman, Scarlato & Penny, P.C. and Schindler, Anderson, Goplerund & Weese, P.C. – "have, and will continue to, vigorously protect the interest of the Class." Docket No. 157 at 18. Mr. Paulson and the proposed Class Counsel have "devoted significant time and resources to initiating, prosecuting, and negotiating an exceptional resolution" to the litigation, and "Class Counsel has

15

extensive experience and expertise in prosecuting complex securities litigation and class action proceedings throughout the United States." *Id.* In addition, there are no questions regarding the competency of Class Counsel or Class Counsel's ability to prosecute this action and, to the extent any such questions do arise, they will be considered at the fairness hearing. Accordingly, because Mr. Paulson does not have a conflict of interest with the rest of the Class and Class Counsel have preliminarily shown that they can vigorously litigate on behalf of the Class, the Court finds that plaintiff has satisfied Rule 23(a)(4)'s requirements. *Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615. Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members. *Sullivan v.*

*DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.  While predominance may be difficult to demonstrate in mass tort cases in which the "individual stakes are high and disparities among class members great," it is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Id.* at 625.

In this case, Mr. Paulson and the Class seek compensation for defendants' alleged material misrepresentations and omissions regarding GrowCo and Mr. McKowen.  Because the common questions of law and fact depend entirely upon the conduct of defendants, these questions predominate as they are unaffected by the particularized conduct of individual Class Members.  For example, the common legal questions necessary to establish liability in this case center around whether defendants made material misrepresentation or omissions in violation of securities laws.  Similarly, the common questions of fact involve whether defendants made the alleged material representations or omissions.  Thus, because the answers to questions regarding

defendants' alleged misconduct and the harm caused by such misconduct are common to all class members and inform the resolution of the litigation but for the Settlement, the Court finds that common issues of law and fact predominate in this case.  *Sullivan*, 667 F.3d at 300.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation, saving both plaintiff and defendants significant time and legal costs to adjudicate common legal and factual issues.  In addition, settlement is appropriate because individual recovery for these claims is likely too small to provide an incentive for individual Class Members to adjudicate individual claims.  There is no indication that similar litigation is currently pending in another forum related to the same time period that would undermine the class certification requested.  There are also no issues regarding interclass conflicts or disparate compensation methods as all Class Members will receive pro rata distribution of the Settlement Fund.  Thus, given that the Class Members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated persons.  Fed. R. Civ. P. 23(b)(3)(C); *Cordes*, 502 F.3d at 104.  Therefore, because the eighty-plus Class Members will receive the same type of relief, and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation.  *Amchem*, 521 U.S. at 623.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

It is unclear to what extent a court on a motion for preliminary approval of a proposed class settlement must delve into these factors.  However, based on the information available to the Court, the Court notes the following, which weighs in favor of preliminary approval.  The proposed Settlement Agreement is the product of significant negotiations and discussion between the parties.  The parties participated in a preliminary, one-day mediation session before Judge Meyer on July 21, 2020 and continued settlement discussions with Judge Meyer's assistance after the mediation. Docket No. 157 at 29.  These negotiations took place after the parties had vigorously litigated the matter.  *Id.* at 2–3, 5–7 (detailing the course of the litigation).  And there is no evidence that the Settlement Agreement was the result of a collusive agreement between the parties.  The Court finds that the negotiations were done fairly and honestly.

Plaintiff concedes that there is "no guarantee Plaintiff would prevail on the motions to dismiss, a motion to certify the class, motions for summary judgment, or at trial."  *Id.* at 15.  Further, defendants vigorously deny that they have "committed any violation of the securities laws or any other law or engaged in any of the wrongful acts alleged."  *Id.* at 8.  Nevertheless, given the "substantial risk that Class members would not be able to recovery anything at all if the Action were not settled" because GrowCo is in bankruptcy and Two Rivers's financial situation makes it "unlikely Two Rivers would be able to satisfy a judgment," *id.*, the Court finds that this factor weighs in favor of the proposed settlement.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief.  This factor clearly weighs in favor of the proposed settlement.  As explained, the longer negotiations and litigation take, the more defendants' insurance company has to pay out of the Settlement Fund to support the defense, and the less remains available for Class Members.  *Id.*  Given the uncertainty of Class Members' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery.  *See Strougo v. Bassini*, 258 F.Supp. 2d 254, 258 (S.D.N.Y. 2003) (noting that it is "beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members." (quotation marks omitted)).  Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.

With regard to the fourth factor, it is evident that the parties believe that the Settlement Agreement is fair and reasonable.  Plaintiff in this case is represented by experienced counsel who have extensive experience in litigating such matters.  Moreover, the settlement was the result of arms-length negotiations and was reached with the aid of an experienced mediator.

Certifying the Class will allow the Court to determine whether there are other members of the class that challenge the fairness of the parties' proposed Settlement Agreement.  Should any investor find the terms of the Settlement Agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the Settlement Agreement detailing why it is unfair

under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *cf. In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013) (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed partial Settlement Agreement.

## IV.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However, due process does not require that each Class Member receive actual notice to be bound by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given]

22

under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar.  *DeJulius*, 429 F.3d at 944.

The proposed notice in this case provides potential Class Members with information regarding the class action, the terms of the Settlement Agreement, the plan of allocation, attorneys' fees and expenses, the fairness hearing, how investors can opt-out of the Class or object to the terms of the Settlement Agreement.  Docket No. 157 at 20, 66–75; Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  Class Counsel have physical addresses for all Class Members, rendering direct mail the best notice practicable.  Docket No. 157 at 20.  Based on the foregoing, the Court is satisfied that the parties' proposed notice is reasonably calculated to apprise the absent Class Members of the action.  *In re Integra*, 262 F.3d at 1111.

## V.  CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P. 23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  The Settlement Agreement lists plaintiff's current attorneys –

Paul Scarlato and Alan Rosca of Goldman Scarlato & Penny, P.C., and J. Barton Goplerud and Brian Marty of Shindler, Anderson, Goplerud & Weese, P.C. – as Class Counsel and Steve Miller of Steve A. Miller, P.C. as "Additional Plaintiff's Counsel." Docket No. 157 at 32, ¶ 1.j.  Plaintiff's attorneys state that they have "extensive experience and expertise in prosecuting complex securities litigation and class action proceedings throughout the United States."  *Id.* at 18.  The Court finds counsel have sufficient experience in class actions and their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment.  Therefore, the Court finds that it is appropriate to appoint plaintiff's counsel as Class Counsel and Additional Plaintiff's Counsel.  *Cf. Torres-Vallejo v. Creativexteriors, Inc.*, 220 F. Supp. 3d. 1074, 1087 (D. Colo. 2016) (appointing one law firm lead counsel and three other law firms as additional class counsel).

## VI.  ADDITIONAL PROCEDURES

The Court will adopt the notice, fairness hearing, and opt-out schedule proposed by plaintiff, with the exception that the fairness hearing will not be set until a date in April 2022.  *See* Docket No. 157 at 21.  Accordingly, the following deadlines apply:

| Event | Time for Compliance |
| --- | --- |
| Deadline for mailing the Notice and Claim Form to the Settlement Class ("Notice Date") | Not later than fourteen (14) days after the date of entry of the Court's Preliminary Approval Order. |
| Deadline for Class Members to exclude themselves from the Class | Not later than 30 calendar days after the Notice Date. |

24

| Filing of papers in support of final approval of the Settlement, the Plan of Allocation, and Lead Counsel's fee and expense request | Not later than 21 calendar days prior to the Fairness Hearing. |
|---|---|
| Receipt deadline for objections and requests for exclusion from the Settlement Class | Not later than fourteen (14) calendar days prior to the Fairness Hearing. |
| Filing of reply papers in support of final approval of the Settlement, the Plan of Allocation, and Class Counsel's fee and expense request | Not later than seven (7) calendar days prior to the Fairness Hearing. |
| Deadline for submitting Claim Forms | Postmarked sixty (60) calendar days after the Notice Date (Class Counsel may, at its discretion, accept for processing late Claims). |

The parties shall contact the Court's chambers to set a date for the fairness hearing within seven days of the entry of this order.

## VI.  CONCLUSION

For the foregoing reasons, it is

Accordingly, it is

**ORDERED** that the Unopposed Motion of Plaintiff for Preliminary Approval of Settlement, Certification of Class, and Appointment of Class Representative and Class Counsel [Docket No. 157] is **GRANTED**.  It is further

**ORDERED** that the parties shall contact the Court's chambers within seven days of the entry of this order to set a date for the fairness hearing.


DATED January 19, 2022.

BY THE COURT:


PHILIP A. BRIMMER
Chief United States District Judge