**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02639-PAB-NYW

JOHN PAULSON, an individual,

Plaintiff,

v.

TWO RIVERS WATER AND FARMING COMPANY, a Colorado corporation; JOHN R. MCKOWEN, an individual; WAYNE HARDING, an individual; and TIMOTHY BEALL, an individual,

Defendants.

---

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, INCENTIVE AWARD, AND REIMBURSEMENT OF LITIGATION EXPENSES**

---

Plaintiff and Class Representative, John Paulson ("Plaintiff") respectfully submits this Motion for Award of Attorney Fees, Incentive Award, and Reimbursement of Litigation Expenses (the "Fee Application"), seeking this Court's approval of his attorneys' legal fees and expenses incurred prosecuting this complex class action case (the "Action") against Defendants.

### I.     INTRODUCTION

After approximately four years of litigation, Steve A. Miller, P.C., Goldman Scarlato & Penny, P.C. (and its successor firm in this Action, Rosca & Scarlato LLC)[1], and Schindler Anderson Goplerud & Weese, P.C. (together, "Plaintiff's Counsel"), and the Settlement Class have successfully negotiated an excellent settlement of this class action securities fraud lawsuit (the

---

[1] The same lead lawyers who represented the putative class at Goldman Scarlato & Penny P.C. continued to represent the putative class upon starting Rosca & Scarlato L.L.C. There is no overlap or duplication of work between the two firms' representation of the class members.

"Action") against Two Rivers Water and Farming Company, John R. McKowen, Wayne Harding, and Timothy Beall ("Defendants") in the amount of $1,500,000 in cash (the "Settlement"). The proposed Settlement is a very favorable recovery for the Settlement Class, especially when viewed in light of the risks and costs attendant to further, protracted litigation as well as the significant collection risks. Accordingly, Plaintiff's Counsel hereby submits this Motion for Award of Attorney Fees, Incentive Award, and Reimbursement of Litigation Expenses (the "Fee Application"). Plaintiff's Counsel herein request: (i) an award of attorneys' fees in the amount of $495,959.12, which is one-third of the net Settlement; (ii) an incentive award in the amount of $5,000.00 for Plaintiff for his effort dedicated to this Action, and (iii) payment of litigation expenses incurred in prosecuting this Action in the amount of $7,122.65.

Plaintiff's Counsel obtained this Settlement through hard work and diligent effort: thoroughly researching and drafting two detailed complaints; extensively investigating the Class's claims through formal and informal discovery of Defendants and third parties; retaining experienced bankruptcy counsel and working with such counsel to (successfully) defend an adversary proceeding filed against Plaintiff by GrowCo, Inc. ("GrowCo"), a subsidiary of Two Rivers, seeking to stay this Action; researching and fully briefing the opposition to a motion to dismiss filed by Mr. McKowen; obtaining a clerk's default against Mr. Beall; preparing an extensive mediation statement and memoranda of law, along with supporting records, in connection with a 14-hour mediation session before Judge William Meyer (Ret.) of the Judicial Arbiter Group in July, 2020; continuing settlement negotiations with Judge Meyer's assistance over the course of several weeks; negotiating and drafting the Settlement Agreement and supporting documents; and moving to dismiss Two Rivers as a party without prejudice due to Two Rivers' failure to obtain substitute counsel after its most recent counsel withdrew from the case.

The proposed Settlement of $1,500,000.00 represents an excellent recovery for the Class. The Settlement is within the range of acceptable possible litigation outcomes when weighed against the risk that the Class could recover far less, or even nothing, if this litigation continues, particularly if the applicable insurance policy was exhausted through protracted litigation. *See* MANUEL FOR COMPLEX LITIGATION § 21.632. Importantly, at the time of the Settlement, Two Rivers was in precarious financial condition.  In a July 15, 2020 "Letter to Shareholders" attached to Two Rivers' July 17, 2020 8-K filed with the SEC, Two Rivers' CEO detailed a number of legal, accounting, and operational issues not properly disclosed that cast "substantial doubt" about Two Rivers' ability to continue.  If time-consuming litigation continued, even if it ultimately resulted in a favorable outcome for Plaintiff and the Class, there may have been nothing left from Two Rivers for Plaintiffs to collect.

Plaintiff's Counsel sent 85 notices to potential class members detailing the terms of the Settlement, the proposed plan for distributing Settlement funds, the fee award for Plaintiff's Counsel, and the incentive award for Plaintiff that Plaintiff's Counsel intended to request. To date Plaintiff's Counsel has not received any objections to the Settlement or its proposed fee and incentive awards.

Consistent with Tenth Circuit precedent, Plaintiff's Counsel seeks one-third of the net Settlement (net of expenses and Incentive Award), $495,959.12, and reimbursement of litigation expenses in the amount of $7,122.65. In the Tenth Circuit, "the typical fee award in complex cases is around one third of the common fund."  *In re Crocs, Inc. Sec. Litig.,* 2014 U.S. Dist. LEXIS 134396, at *10-11 (D. Colo. Sept. 18, 2014).  Further, a "33% fee award falls within the norm." *Diaz v. Lost Dog Plaza, LLC*, Civil Action No. 17-cv-2228-WJM-NYW, 2019 U.S. Dist. LEXIS 85375, at *12 (D. Colo. May 21, 2019); *see also In re Syngenta AG MR 162 Corn Litig.*, 357 F.

Supp. 3d 1094, 1114 (D. Kan. 2018) (a 33.3% fee award on a $1.51 billion settlement was reasonable; applying an arbitrary sliding fee percentage scale in large settlements "fails to provide the proper incentive for counsel and is fundamentally at odds with the percentage-of-the-fund approach favored by the Tenth Circuit.").

While not required in the Tenth Circuit, a lodestar cross-check further supports this Fee Application.  Here, the lodestar figure is $602,319.75, total expenses requested are $7,122.65, and the incentive award requested is $5,000.00. Therefore, the requested one-third percent fee equates to a .82 (negative) lodestar multiplier. ($1,500,000 - $7,122.65 - $5,000.00 = $1,487,877.35; $1,487,877.35 / 3 = $495,959.12; $495,959.12 / 602,319.75 = .82).   That is much lower than the norm in this Circuit. For example, in *In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, Civil Action No. 12-cv-2074-WJM-CBS, 2015 U.S. Dist. LEXIS 74372, at *15-16 (D. Colo. June 5, 2015), the court awarded a fee with a lodestar multiplier of 3, finding it "in line with the multipliers awarded in similar cases." *See also Crocs* at *12-13 (referencing cases approving multipliers from 2.5 to 4.6); *In re Qwest Communs. Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71267, at *22 (D. Colo. Sep. 28, 2006) ("counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least *two times the reasonable lodestar figure*, and in some cases reach as high as *five to ten times* the lodestar figure.") (*emphases added*); *Vaszlavik v. Storage Tech. Corp.*, 2000 U.S. Dist. LEXIS 21140, at *7-8 (D. Colo. Mar. 9, 2000) ("Courts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed.").

Plaintiff's Counsel also seeks an award of $5,000.00 for Plaintiff John Paulson, the Class Representative, to compensate him for his efforts to assist Plaintiff's Counsel with the litigation of the Action. As more fully detailed below, Plaintiff Paulson took an active role in the litigation and

has been fully committed to pursuing the class's claims from the beginning of this Action. *See* Paulson Dec., Exhibit 2 to the Motion for Final Approval filed contemporaneously with this Fee Application. Plaintiff Paulson's efforts required him to dedicate a significant amount of time to the Action that he would have otherwise devoted to his regular business. The requested award is based on Plaintiff Paulson's commitment to these activities. *Id*.

Lastly, Plaintiff's Counsel requests reimbursement of the expenses incurred for necessary and reasonable steps taken during the course of this litigation, including for filing fees, travel for court proceedings, expert witness fees, process servers, and a mediation fee.

For the foregoing reasons, set forth in more detail below, Plaintiff's Counsel respectfully requests this Court approve their Fee Application.

## II.    LEGAL STANDARD

The Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745 (1980); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104,133 S. Ct. 1537 (2013). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered, and to prevent unjust enrichment of persons benefiting from a lawsuit without bearing the cost. *See Boeing*, 444 U.S. at 487.

The Tenth Circuit has also adopted that reasoning. *See, e.g., Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2014 U.S. Dist. LEXIS 142673 (D. Colo. July 31, 2014). Thus, courts in the Tenth Circuit have "long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for

risk and rewarded for success, where, as here, the Class receives significant benefit." *See Cook v. Rockwell Int'l Corp.*, Civil Action No. 90-cv-00181-JLK, 2017 U.S. Dist. LEXIS 181814, at *10 (D. Colo. Apr. 28, 2017).

In addition to providing just compensation, courts recognize that awards of attorney fees from common funds "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Voulgaris v. Array Biopharma*, 2021 U.S. Dist. LEXIS 249646, at *35 (D. Colo. Dec. 3, 2021). Courts also recognize that, in addition to providing just compensation, awards of attorneys' fees from a common fund should "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *In re Flag Telecom Holdings*, 2010 U.S. Dist. LEXIS 119702, at *68 (S.D.N.Y. Nov. 5, 2010); *see also, Crocs* at *16 ("Federal securities class actions require Lead Counsel to expend substantial time and effort with no guarantee of success. In light of these difficulties, 'public policy supports granting attorneys' fees that are sufficient to encourage Lead Counsel to bring securities class actions that supplement the efforts of the SEC.'") (internal citations omitted). Finally, compensating Plaintiff's Counsel for the risks they take in bringing these actions furthers public policy and is important because "[s]uch actions could not be sustained if Lead Counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y 2008).

## II. PLAINTIFF'S COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE GIVEN THE RESULT OBTAINED AND UNANIMOUS LEGAL AUTHORITY

### A. Legal Authority from District Courts within the Tenth Circuit Supports Plaintiff's Counsel's Request for One-Third of the Settlement Fund.

For their efforts in creating a $1.5 million Settlement Fund, Plaintiff's Counsel seeks a fee award of one-third of the net Settlement after deducting expenses and an Incentive Award or $495,959.12. Tenth Circuit precedent squarely supports the request. In *Brown*, 838 F.2d at 454, the Tenth Circuit affirmed the propriety of awarding attorneys' fees on a percentage basis in a common fund case. *See also Gottlieb*, 43 F.3d at 483 ("In our circuit, following *Brown* and *Uselton*, either [the percentage or lodestar] method is permissible in common fund cases; however, *Uselton* implies a preference for the percentage of the fund method.") (citing *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993)); *Vaszlavik*, at *4 ("[w]hile enhanced lodestar cases remain instructive, the Tenth Circuit has expressed 'a preference for the percentage of the fund method'"). The percentage method also is consistent with arrangements in the private marketplace for contingency cases, in which individual clients typically agree to a fee based on the amount recovered. *See Blum v. Stenson*, 465 U.S. 886, 903 (1984). In *Brown*, 838 F.2d at 455 n.2, the Tenth Circuit recognized that a typical percentage award in a common fund case is around one-third of the recovery.

Plaintiff's Counsel's requested fee falls within the range of fee percentages awarded in securities class actions. *See Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 U.S. Dist. LEXIS 144366, at *13-14 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *see also Anderson v. Merit Energy Co.*, 2009 U.S. Dist. LEXIS 100681, at *6 (awarding 26% of recovery); *Lucas v. Kmart Corp.*, Civil Action No. 99-cv-01923-JLK-CBS, 2006 U.S. Dist. LEXIS 51420, at *18 (D. Colo. July 27, 2006) (a "customary fee award" is 30% of the fund under the percentage of the fund approach); *Vaszlavik* at *10 (the requested 30% fee is

well within the ordinary range of common fund awards). Plaintiff's Counsel's fee request of one-third of the Settlement is accordingly in line with fee awards granted in the Tenth Circuit.

**B.      The *Johnson* Factors Support the Reasonableness of the Fee Application.**

To determine the appropriate percent of a settlement to award as attorneys' fees, federal courts, including the Tenth Circuit, rely heavily on the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Brown*, 838 F.2d at *454; *see also Usleton v. Commercial Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993) (affirming the relevance of the twelve *Johnson* factors).

The *Johnson* factors are: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of other employment by the attorney due to the acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at *717-19. Because "rarely are all of the *Johnson* factors applicable," *Brown*, 838 F.2d at *456, the *Johnson* factors are a "guide to [a] fee determination and … not all of [the *Johnson* factors] need be considered. *Gudenkauf v. Stauffer Communs.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

**1.      The amount involved and the results obtained support the reasonableness of the Fee Application.**

In a common fund case, the ninth *Johnson* factor, the amount involved and the results obtained may be given greater weight when the trial judge determines recovery is highly contingent and the efforts of counsel were instrumental in realizing recovery for the class. *Brown,* 828 F.2d at *456; *see also In re King Res. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976)

(While other factors are of substantial importance in determining reasonable attorney fees, the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client.").

Plaintiff's Counsel worked diligently to obtain a $1.5 million Settlement for the Class. As detailed in Plaintiff's Counsel's Motion for Final Approval and the Declaration of Paul J. Scarlato submitted as Exhibit 1 therewith, this Action involved, *inter alia*, complex issues that required extensive research, discovery, and the retention of experienced bankruptcy counsel to ensure this Action could proceed. Further, the proposed Settlement avoids the risks, and costs and delays, of continued litigation and possible appeals, as well as significant collection risks. Courts recognize that the risks associated with continued litigation are important factors in determining a fee award. *See, e.g.*, *In re Thornburg Mortg., Inc.*, 912 F. Supp. 22 1178, 1209 (D.N.M. 2012) (approving a fee application in "novel and difficult" litigation of "a class action securities case with numerous defendants, multiple securities offerings at issue, and a corporate defendants [sic] who went bankrupt."); *Voulgaris* at *40 (D. Colo. Dec. 3, 2021) ("numerous cases have recognized that the risks of litigation are important factors in determining a fee award."); *Swartz v. D-J Eng'g, Inc.*, 2016 U.S. Dist. LEXIS 20017, at *15 (D. Kan. Feb. 17, 2016) (approving fee award when the additional risk, time, and expense of trial outweighed the immediate recovery of $100,000.00).

The proposed Settlement is also a substantial percentage of the Class's estimated losses – 6.4% in line with median settlement values of approximately 7.6%. *See Crocs* at *11 (collecting multiple cases with attorney fee awards of approximately 30%); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 U.S. Dist. LEXIS 9450, at *33 (S.D.N.Y. Jan. 31, 2007) ("in 2005, the median settlement as a percentage of estimated damages was 3.1% in securities class actions where plaintiffs estimated damages between $501 million and $1 billion … recovery of

9

approximately 6.25% of estimated damages … is at the higher end of the range of reasonableness of recovery in class action securities litigations.").

## 2. The novelty and difficulty of the legal and factual issues support the reasonableness of the fee request.

The novelty and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *Diaz* at *5. "Despite years of litigation, the area of securities law has gained little predictability. There are few 'routine' or 'simple' securities actions." *Miller v. Woodmoor Corp.*, 1978 U.S. Dist. LEXIS 15234, at *12 (D. Colo. Sept. 28, 1978). "The very nature of a securities fraud case demands a difficult level of proof to establish liability." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009). "Elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish." *Id.* The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *15 (N.D. Cal. Feb. 2, 2009).

This litigation centers around allegations of material misrepresentations and omissions in Offering Documents provided to investors in the cannabis industry, as well as allegations of improper comingling of investors' funds, which comingling benefited Defendants. To prove his allegations, Plaintiff must rely on experts to opine as to whether the misrepresentations and omissions were material, whether the allegedly omitted material was required to be disclosed, and whether investor funds were improperly comingled. As detailed in the Motion for Final Approval, Defendants raised credible defenses, which, if proven, could result in a much smaller recovery, or, potentially, no recovery at all.

Accordingly, defeating Defendants' arguments at summary judgment, trial, and possibly on appeal would have been time-consuming and risky. *See In re Thornburg* at *1242 ("Damages in this case, as is common in securities class actions, would likely have been reduced to a 'battle

of the experts,' and it is virtually impossible to predict with any certainty which testimony would be credited.").

Second, further litigation is risky with respect to collectability. The source of the funds for this Settlement is an insurance policy that potentially covers the individual defendants as former directors and officers of Two Rivers.  See, Scarlato Decl. at ¶ 32. The policy is an exhausting policy; thus, the insurance proceeds may be depleted by the continuation of this litigation.  *Id.*  In addition, the corporate defendant, Two Rivers, that was eventually dismissed from the Action for failure to retain counsel, reported substantial financial difficulties at the time of Settlement that may have prevented it to continue to conduct its business. Specifically, in a Form 8-K filed with the Securities and Exchange Commission on July 17, 2020, Two Rivers disclosed that it had sent a July 15, 2020 "Letter to Shareholders" where it disclosed a number of legal, accounting, and operational issues that cast "substantial doubt" about its ability to continue.  Thus, even if resource-consuming litigation would ultimately be successful, by that time there may not be anything left of Two Rivers to satisfy a judgment.

Plaintiff's Counsel's ability to successfully navigate these and other complex legal and factual obstacles fully supports the requested fee award.

> **3.    The skill requisite to perform the legal service properly and the experience, reputation and ability of counsel support the reasonableness of the fee request.**

The skill required and the experience, reputation, and ability of the attorneys, also support the reasonableness of this fee request. *Qwest* at *18-19.  The "prosecution and management of a complex national class action requires unique legal skills and abilities."  *Knight* at *16.  Here, the quality of Class Counsel's work on this case is reflected in the substantial recovery obtained. *See, e.g., Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988).

Class Counsel has extensive and significant experience in the highly specialized field of securities class action litigation. Class Counsel's firm resumes, which describe the firms' background and experience in conducting securities litigation, were attached as Exhibits to the Revised Motion for Preliminary Approval. See, Doc. 157, Exhibits 4 and 5. The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiff's Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (court recognized that "plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). The quality of opposing counsel is important in evaluating the quality of services rendered by Plaintiff's Counsel. *See, e.g., Qwest* at *18 (considering that counsel for defendants were also "represented by lawyers of similar expertise and experience"). Throughout the Litigation, Class Counsel faced formidable opposition from Defendants' law firms. In the face of knowledgeable and solid opposition, Class Counsel was able to develop a case that was sufficiently strong to encourage Defendants to settle the case on favorable terms for the Settlement Class. Class Counsel's diligent efforts should be rewarded.

### 4. The contingent nature of the fee supports the reasonableness of the fee request.

Paramount in the determination of a fair fee is consideration of the contingent nature of the fee and the significant risks of non-recovery. *See Vaszlavik* at *9-10 ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."); *Qwest* at *22 (a contingent fee "is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful").

Numerous cases recognize that the risk of continued litigation is an important factor in determining a fee award. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974), abrogated by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp*., 540 F.2d 102, 117 (3d Cir. 1976); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1048 (9th Cir. 2002) ("[r]isk is a relevant circumstance.").

The determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement: "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)).  In fact, contingent fees that may far exceed the typical non-contingent market value of the services are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs, who could not afford to pay on an hourly basis regardless of whether they win or lose.  *Id.*

While this case clearly has merit, facts almost always exist that make even the strongest cases risky. This case is no exception. Despite these risks, Plaintiff's Counsel prosecuted this matter on a wholly contingent basis, bearing all the risks of litigating. Plaintiff's Counsel has received no compensation for this litigation and incurred significant expenses for the benefit of the Class. Any fee award or expense payment to counsel has always been at risk and completely contingent on the result achieved. This, in part, is why Plaintiff supports his Counsel's Fee Application.

**5.    The time and labor expended by Plaintiff's Counsel support the reasonableness of the Fee Application.**

The time and labor Plaintiff's Counsel expended prosecuting this Action firmly support the requested fee. These efforts included an extensive and extremely comprehensive investigation, consultation with an expert, drafting a highly detailed Complaint and Amended Complaint, researching complex legal issues, fully briefing a robust opposition to Defendant's motion to dismiss, and conducting discovery. In addition, the extensive settlement negotiations were substantially time-consuming, and included detailed mediation statements and presentations over the course of the mediation that culminated in the Settlement. Plaintiff's Counsel also thoroughly reviewed discovery exchanged in advance of the mediation.

Further, while not required in the Tenth Circuit, a lodestar "cross check" analysis also supports this Fee Application. As a cross-check on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged by the professionals working on the case) with the fee request made under the percentage-of-the-recovery method. *See, e.g., Vizcaino* at 1050 ("[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award."); *see also Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002) (a benchmark fee percent can be adjusted up or down to account for any unusual circumstances involved in the case).

In total, Plaintiff's Counsel incurred $602,319.75 in lodestar. The requested fee of $495,959.12 equates to a ***negative multiplier*** of .82 – substantially lower than the range of multipliers routinely approved by courts in this District and the Tenth Circuit. *See e.g., Qwest* at *21 ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as

five to ten times the lodestar figure."); *Vaszlavik* at \*7-8 ("Courts in common fund cases regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed.").

While Plaintiff's Counsel's fee represents a negative multiplier to their lodestar, courts in this District have stated that positive multipliers are justified where plaintiff's counsel litigates on a contingent basis. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work."). Further, multipliers are appropriate in cases like this one when the "scope and nature of the work required by Plaintiff's counsel both in preparation for and during litigation" is of significant "complexity." *In re Davita Healthcare Partners, Inc. Derivative Litig.*, No. 12-cv-2074-WJM-CBS, 2015 U.S. Dist. LEXIS 74372, at \*15 (D. Colo. June 5, 2015) (awarding multiplier of 3x in shareholder derivative lawsuit); *see also Peace Officers' Annuity & Ben. Fund of GA v. Davita, Inc.*, Civil Action No. 17-cv-0304-WJM-NRN, 2021 U.S. Dist. LEXIS 131699, at \*3 (D. Colo. July 15, 2021); *Crocs* at \*4 (referencing District cases approving multipliers ranging from 2.5 to 4.6); *In Re Cement & Concrete Antitrust Litigation,* 1980–81 Trade Cases ¶ 63,798 (D.Ariz. 1980) (up to 2.85); *In re Arizona Escrow Fee Antitrust Litigation,* 1982–83 Trade Cases ¶ 65,1 98 (D.Ariz.1982) (up to 3.1); *Brewer v. S. Union Co.,* 607 F. Supp. 1511, 1533 (D. Colo. 1984) (collecting cases where multipliers of 1.5 to 4 were applied); *In re Arizona Dairy Prod. Litig.,*1984 WL 2928, at \*8 (D. Ariz. Jan. 16, 1984) (Court applied a multiplier of 2.7 and 2.8 to the lodestar amount requested by the law firms that represented Plaintiffs).

Plaintiff's Counsels' hourly rates range from $275.00 to $750.00 an hour, consistent with hourly rates approved in similar cases. *See, e.g., In re Molycorp Inc. Sec. Litig.*, Civil Action No.

1:12-cv-00292-RM-KMT, 2017 U.S. Dist. LEXIS 233751, at *9 (D. Colo. June 16, 2017) (approving 30% fee request in securities class action where attorney hourly rates ranged from $435 to $955 per hour); *Crocs* at *4 (awarding 30% fee where attorney hourly rates were up to $935 per hour and were "higher than the rates charged by attorneys of similar skill and experience in the Denver legal market"); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 U.S. Dist. LEXIS 14877, at *9 (C.D. Cal. Oct. 25, 2016) (approving rates of $750-$985 for partners and $300-$725 for associates).

### 6. The undesirability of the action supports the reasonableness of the fee request.

"Due to the degree of risk involved and the extensive time commitments associated [with] securities litigation, the court recognizes the undesirability of representing plaintiffs in such cases." *In re Storage Tech. Corp. Sec. Litig.*, No. 84-1981, 1990 U.S. Dist. LEXIS 18461, at *9 (D. Colo. Sept. 28, 1990). Despite the inherent risks Plaintiff's Counsel took on a risky, complex, and protracted litigation requiring them to expend extensive funds and resources against formidable opposition with no guarantee of success *See, e.g., Lucas* at *20 (class action was "not a desirable case to take" given the risk of no recovery and legal issues involved). This was a complex case that required comprehensive legal work in many areas of law. For example, from the beginning Plaintiff's Counsel recognized that GrowCo's pending bankruptcy would complicate this litigation. After commencing this case, GrowCo filed an adversary proceeding within its bankruptcy case , seeking injunctive relief to prevent this litigation from proceeding. Aware of the magnitude of the risk of losing the adversary proceeding, Plaintiff retained experienced bankruptcy counsel to (successfully) defend that adversary proceeding.

Thus, "[t]his [*Johnson*] factor carries significant weight and weighs in favor of a substantial fee award." *Qwest* at 1153; *see also In re United Telecomms., Sec. Litig.*, No. 90-2251, 1994 U.S.

Dist. LEXIS 9151, at *12 (D. Kan. June 1, 1994) ("A one-third fee award is also reasonable in light of the undesirability associated with the relatively high degree of risk involved").

<p style="text-align:center">**7.      The Settlement exceeds awards in similar cases.**</p>

The Settlement is an extremely beneficial outcome for the Class. The Settlement provides for a cash payment on behalf of Defendants of $1.5 million. The amount of the recovery strongly supports accepting the settlement.

Courts regularly find settlements to be fair, reasonable, and adequate and grant their approval when they meet or exceed the median settlement for similar cases. *See Crocs* at *672 n.20 (finding that the $10 million settlement, which represented a recovery of approximately 1.3 percent of the amount of damages that could be achieved, was in line with the median ratio of settlement size to investor losses); *Booth v. Strategic Realty Tr., Inc.*, 2015 U.S. Dist. LEXIS 140723, *17 (N.D. Cal. Oct. 15, 2015) (Settlement of $5 million represented approximately 20 percent recovery, which exceeded the 11.7 percent median settlements in securities class action cases between 2005 and 2014 involving estimated damages of less than $50 million); *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.,* 2017 U.S. Dist. LEXIS 91651, at *8 (D. Minn. June 14, 2017) (Settlement of $9.5 million, which represented a recovery of approximately 6.8% to 9.5% of the estimated maximum provable damages, exceeded the median settlement as a percentage of estimated damages in the Eighth Circuit from 2007 through 2016); *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2020 U.S. Dist. LEXIS 10482, at *12 (S.D.N.Y. June 16, 2020) (Court found that the $14.5 million settlement amount represented 6% to 12% of the best possible recovery).  Given the overall recovery at hand relative to previous settlement recoveries, Plaintiff's Counsel's work is deserving of the requested fee award.

<p style="text-align:center">**III.      AN INCENTIVE AWARD FOR LEAD PLAINTIFF IS WARRANTED**</p>

Plaintiff seeks a $5,000 award in recognition of his substantial involvement in all aspects of this litigation. *See* Ex. B. Plaintiff is the only GrowCo investor who stepped forward to prosecute the alleged harm to GrowCo investors arising from Defendants' conduct. Absent Plaintiff's initiative, time and effort, the results obtained through this proposed Settlement would not have occurred.

"Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken* at *16 (relying upon *In re U.S. Bancorp Litigation*, 291 F. 3d 1035, 1038 (8th Cir.), cert. denied, 537 U.S. 823, 123 S. Ct. 108, 154 L. Ed. 2d 32 (2002)) (approving incentive award of $10,000 for named plaintiff). The *Lucken* court cited *In re Mego Financial Corp. Sec. Litig.*, 213 F. 3d 454, 463 (9th Cir. 2000), where the court approved a $5,000 incentive award to each plaintiff where settlement was valued at $1.75 million, as an example of a "reasonable incentive." *Lucken* at *16.

When considering the appropriateness of an incentive award for a class representative, "the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation." *Ramos v. Health*, 2020 U.S. Dist. LEXIS 210056, at *10-11 (D. Colo. Nov. 10, 2020). Courts have approved awards on the basis of plaintiff's time and effort in situations where plaintiffs have: (i) reviewed pleadings and other case materials; (ii) responded to or assisted in the drafting of discovery; (iii) reviewed and consented to settlement; and (iv) maintained contact with counsel in an effort to monitor the litigation. *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999) (awards approved where plaintiffs attended court hearings and responded to discovery); *In re Corel Corp.*

*Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (awards approved where plaintiffs responded to discovery and were deposed); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *14 (C.D. Cal. June 10, 2005) (awards approved where plaintiffs reviewed case pleadings before filing, responded to discovery, and monitored the litigation.); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) (awards approved where plaintiffs conferred with counsel, responded to discovery and reviewed and consented to settlement).

Plaintiff's Counsel submits that a $5,000.00 award to Plaintiff is appropriate, reasonable, and within the range typically awarded by courts in this District and elsewhere, in view of the considerable time and effort he spent in connection with this matter. More specifically, and as detailed in his Declaration attached hereto as Ex. B, Plaintiff Paulson assisted in Plaintiff's Counsel's investigation, preparation, and prosecution of this Action by providing documents to Plaintiff's Counsel in connection with his GrowCo investment; reviewed and approved pleadings and briefs filed in this Action; and consulted with Plaintiff's Counsel regarding significant events in the litigation. In addition, as a result of filing this Action, Plaintiff was named as a defendant by GrowCo in an adversary proceeding in connection with GrowCo's bankruptcy, in an attempt to delay the resolution of this Action. Plaintiff Paulson later filed a limited objection in bankruptcy to Mr. McKowen's motion for relief from the automatic stay in the bankruptcy proceedings, in which Mr. McKowen sought access to the insurance policy that provided the settlement proceeds for this Action. In addition, Plaintiff was available during the mediation process and consulted with Plaintiff's Counsel in connection therewith. *See* Ex. B, attached.

Based on Plaintiff' extensive involvement, efforts, and expenditure of time in this Action, which resulted in a substantial benefit to the class, Plaintiff submits that his requested award of

$5,000.00 is fair and reasonable and, as shown above, in line with the incentive award referenced by the *Luken* court, of $5,000.00 for a comparable settlement of $1.75 million. *See Lucken* at *16.

## IV.   PLAINTIFF'S COUNSEL INCURRED REASONABLE AND NECESSARY OUT-OF- POCKET LITIGATION EXPENSES

"As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik* at *11. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (quotation marks and citations omitted). Courts regularly award litigation costs and expenses, "including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses – in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *72 (N.D. Cal. Feb. 11, 2016) (noting that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services)); *see also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F. 3d 722, 725-26 (10th Cir. 1993) (expenses properly awarded if the charges would normally be billed to client).

In addition to a reasonable attorneys' fee, Plaintiff's Counsel respectfully seeks $7,122.65 for expenses and charges reasonably and necessarily paid or incurred in connection with investigating, prosecuting, and resolving the claims against Defendants. These expenses are itemized in the Declarations of Plaintiff's Counsel attached hereto. Plaintiff's Counsel seeks payment for the types of expenses and charges necessarily incurred in litigation and routinely charged to clients who are billed by the hour. Therefore, these expenses and charges, such as expert witness fees, investigation, research, and filing fees, should be reimbursed.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff's Counsel respectfully requests that the Court award attorneys' fees in the amount of $495,959.12 (*i.e.*, one-third of the net Settlement), an incentive award of $5,000.00 to Plaintiff, and reimbursement of $7,122.65 in litigation expenses.

Dated: April 8, 2022

<div style="margin-left:40%">

*/s/ Steve A. Miller*
Steve A. Miller, No. 8758
STEVE A. MILLER, P.C.
162 Larimer St., Suite 2906
Denver, CO 80202
Telephone: (303) 892-9933
Fax: (303) 892-8925
Email: Sampc01@gmail.com
*Local Counsel for Plaintiff*

Paul J. Scarlato *(pro hac vice)*
ROSCA & SCARLATO LLC
161 Washington Street, Suite 1025
Conshohocken, PA 19428
Telephone: (216) 946-7070
E-mail: scarlato@lawgsp.com

Alan L. Rosca, Esq *(pro hac vice)*
ROSCA & SCARLATO LLC
23250 Chagrin Blvd. Suite 100
Beachwood, OH 44122
Telephone: (216) 946-7070
E-mail: rosca@lawgsp.com

J. Barton Goplerud (*pro hac vice*)
Brian O. Marty (*pro hac vice*)
SHINDLER ANDERSON GOPLERUD &
WEESE P.C.
5015 Grand Ridge Dr., Suite 100
West Des Moines, IA 50265
goplerud@sagwlaw.com
marty@sagwlaw.com
*Counsel for Plaintiff and the Putative Class*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of April, 2022, the foregoing **Plaintiff's Motion for an Award of Attorneys' Fees, Incentive Award, and Reimbursement of Litigation Expenses** was filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

<div align="right">

*/s/ Paul J. Scarlato*
Paul J. Scarlato

</div>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-02639-PAB-NYW

JOHN PAULSON, an individual,

Plaintiff,

v.

TWO RIVERS WATER AND FARMING COMPANY, a Colorado corporation; JOHN R. MCKOWEN, an individual; WAYNE HARDING, an individual; and TIMOTHY BEALL, an individual,

Defendants.

_____

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

_____

Having read and considered the papers filed and arguments made by counsel, and good cause appearing,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Court hereby awards Plaintiff's Counsel $495,959.12, which represents one-third of the net Settlement Fund for the class action Settlement;

2. The Court hereby awards Plaintiff John Paulson an Incentive Award in the amount of $5,000.00; and

3. The Court awards Plaintiff's Counsel reimbursement of expenses in the amount of $7,122.65 which shall be paid from the Settlement Fund.

SO ORDERED this _____ day of _____, 2022.

_____


_____
Philip A. Brimmer
Chief United States District Judge

# EXHIBIT 1

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

</div>

| | |
|---|---|
| **JOHN PAULSON,** | **) Civil Action No. 19-cv-02639-PAB-NYW** |
| **Individually and on Behalf of all Others** | **)** |
| **Similarly Situated,** | **)** |
| | **)** |
| **Plaintiff** | **)** |
| | **)** |
| **v.** | **)** |
| | **)** |
| **TWO RIVERS WATER AND** | **)** |
| **FARMING COMPANY, JOHN R.** | **)** |
| **MCKOWEN, WAYNE HARDING and** | **)** |
| **TIMOTHY BEALL,** | **)** |
| | **)** |
| **Defendants** | **)** |
| | **)** |

<div align="center">

**DECLARATION OF PAUL J. SCARLATO IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

</div>

1.      I, Paul J. Scarlato, declare as follows:

2.      I am a Partner of the law firm Goldman, Scarlato & Penny, P.C. and its successor firm in this Action, Rosca Scarlato, LLC (the "Firms"). I submit this Declaration in Support of Plaintiff's motion for attorneys' fees and expenses in connection with the services rendered, and costs and expenses incurred, the above-captioned action (the "Action"). I make this declaration based on my personal knowledge of the matters set forth herein and could competently testify thereto.

3.      I, along with my partner Alan Rosca, served as Court-appointed Class Counsel in this matter and played a meaningful role advancing the litigation handling all aspects of this Action from inception through Settlement on behalf of the firms' client and Class Representative, John Paulson.

4.      The chart below sets forth a summary of the Firms' total hours and lodestar, computed at current rates, for the period from inception of the case through April 8, 2022. The total number of hours spent by the Firms during this time-period was 801.07, with a corresponding current lodestar of $508,052.25.[1] This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by the firms. In connection with representing Plaintiff in the Action, my Firms did the following[2]: Drafted the initial class action complaint and amended complaint, opposed GrowCo's motion for a TRO and preliminary injunction in the bankruptcy court, opposed Mr. McKowen's motion to stay, opposed Mr. McKowen's motion to dismiss, sought a default judgment against Mr. Beall, propounded discovery against Defendants and third-parties, conducted a thorough review of the facts, conducted the mediation, and drafted two motions for preliminary approval of the Settlement and for final approval. The hourly rates for the attorneys and professional staff in the Firms reflected below are the usual and customary hourly rates charged by the Firms in similar complex litigation matters.

### GOLDMAN SCARLATO & PENNY, PC

| Timekeeper | Professional Status | Hours | Rate | Total Lodestar |
|---|---|---|---|---|
| Paul Scarlato | P | 218.20 | $725 | $158,195.00 |
| Alan Rosca | P | 282.20 | $700 | $197,540.00 |
| Christian Pfeiffer | A | 181.65 | $425 | $77,201.25 |
| Brendan McDonnell | A | 13.82 | $425 | $5,873.50 |
| Violet Bunici | PL | 16.70 | $200 | $3,340.00 |
| **Grand Total** | | **712.57** | | **$442,149.75** |

### ROSCA SCARLATO, LLC

| Timekeeper | Professional Status | Hours | Rate | Total Lodestar |
|---|---|---|---|---|

---

[1] Such time does not include any time expended in completing this Declaration.

[2] There was no overlap between the activities of each of the Firms, and no time was recorded by both Firms for the same activity.

| | | | | |
|---|---|---|---|---|
| Paul Scarlato | P | 69.6 | $750 | $52,200.00 |
| Alan Rosca | P | 18.90 | $725 | $13,702.50 |
| **Grand Total** | | **88.50** | | **$65,902.50** |

**Role Legend**

| | |
|---|---|
| P | Partner/Shareholder |
| OC | Of Counsel |
| A | Associate |
| LC | Law Clerk |
| PL | Paralegal |

5.      The 801.07 total hour figure does not include time spent on the Plaintiff's motion for attorneys' fees, and costs, or on further claims administration, time for which the Firms have not and will not seek reimbursement.

6.      The Firms has/will expend a total of $6,631.65 in unreimbursed costs and expenses in connection with the prosecution of the Action from inception of the case through and including as set forth in the chart below. These costs and expenses are reflected on the books and records of the Firms. They were incurred on behalf of Plaintiff by my Firms and have not been reimbursed.

### GOLDMAN, SCARLATO & PENNY, PC

| Costs and Expenses | Amount |
|---|---|
| Court fees (including filing fees) | $896.00 |
| Mediation Fee | $1,221.80 |
| Database fees (Westlaw, LEXIS, Bloomberg, etc.) | $545.06 |
| Expert witness fees/expenses (including non-testifying consultants) | $900.00 |
| Express and hand delivery (FedEx, couriers, etc.) | $697.67 |
| Photocopies (in-house) | $2.30 |
| Transcript | $106.25 |
| Postage | $1.00 |
| Travel | $761.87 |
| **Grand Total** | **$5,131.65** |

**ROSCA SCARLATO, LLC**

| Costs and Expenses | Amount |
|---|---|
| Travel | $1,500 |
| **Grand Total** | **$1,500** |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of April, 2022 at Conshohocken, PA.

_____

Paul J. Scarlato

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| JOHN PAULSON,<br>**Individually and on Behalf of all Others**<br>**Similarly Situated,**<br><br>                              **Plaintiff**<br><br>        **v.**<br><br>**TWO RIVERS WATER AND**<br>**FARMING COMPANY, JOHN R.**<br>**MCKOWEN, WAYNE HARDING and**<br>**TIMOTHY BEALL,**<br><br>**Defendants** | ) **Civil Action No. 19-cv-02639-PAB-NYW**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF J. BARTON GOPLERUD, IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

1.      I, J. Barton Goplerud, declare as follows:

2.      I am a Partner of the law firm Shindler, Anderson, Goplerud & Weese, P.C. I submit this Declaration in Support of Plaintiff's motion for attorneys' fees and expenses in connection with the services rendered, and costs and expenses incurred, the above-captioned action (the "Action"). I make this declaration based on my personal knowledge of the matters set forth herein and could competently testify thereto.

3.      My firm served as Court-appointed Class Counsel, in this matter and played a meaningful role advancing the litigation through various work assignments and projects related to the firm's client and Class Representative, John Paulson.

4.     The chart below sets forth a summary of my firm's total hours and lodestar, computed at current rates, for the period from inception of the case through April 7, 2022. The total number of hours spent by my firm during this time period was 132.40, with a corresponding current lodestar of $74,267.50.[1] This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. In connection with representing Plaintiff in the Action, my firm did the following: regularly worked with co-counsel advancing this case through litigation, we were also the primary contact for the class representative John Paulson. The hourly rates for the attorneys and professional staff in my firm reflected below are the usual and customary hourly rates charged by my firm in similar complex litigation matters.

| Timekeeper | Professional Status | Hours | Rate | Total Lodestar |
|---|---|---|---|---|
| J. Barton Goplerud | P | 109.50 | 625 | $68.437.50 |
| Brian O. Marty | P | 7.1 | 350 | $2,485.00 |
| Brandon Bohlman | A | 15.8 | 275 | $4,345.00 |
| | | | | |
| Grand Total | | 132.40 | | $74,267.50 |

**Role Legend**
P       Partner/Shareholder
OC     Of Counsel
A       Associate
LC     Law Clerk
PL     Paralegal

5.     Shindler, Anderson, Goplerud & Weese, P.C.'s total hours figure do not include time spent on the Plaintiff's motion for attorneys' fees, and costs, or on further claims administration, time for which Shindler, Anderson, Goplerud & Weese, P.C. has not and will not seek reimbursement. In addition, it does not include any legal assistant time that was utilized on this matter.

---

[1] Such time does not include any time expended in completing this declaration.

6.      My firm has expended a total of $19.00 in unreimbursed costs and expenses in connection with the prosecution of the Action from inception of the case through and including April 7, 2022 as set forth in the chart below. These costs and expenses are reflected on the books and records of my firm. They were incurred on behalf of Plaintiffs by my firm and have not been reimbursed.

| Costs and Expenses | Amount |
|---|---|
| Assessment fees | |
| Court fees (including filing fees) | |
| Database fees (Westlaw, LEXIS, Bloomberg, etc.) | |
| Document management (including Relativity) | |
| Expert witness fees/expenses (including non-testifying consultants) | |
| Express and hand delivery (FedEx, couriers, etc.) | |
| Photocopies (commercial) | |
| Photocopies (in-house) | |
| Postage | $19.00 |
| Travel: Airfare | |
| Travel: Ground transportation (trains, taxis, ride-sharing, rental cars) | |
| Travel: Hotel and lodging | |
| Travel: Meals | |
| **Grand Total** | **$19.00** |

I declare under penalty of perjury that the foregoing is true and correct.  Executed this __8__ day of _____April_____ 2022 in West Des Moines, Iowa.

J. Barton Goplerud

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| JOHN PAULSON, | ) Civil Action No. 19-cv-02639-PAB-NYW |
| **Individually and on Behalf of all Others** | ) |
| **Similarly Situated,** | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| **TWO RIVERS WATER AND** | ) |
| **FARMING COMPANY, JOHN R.** | ) |
| **MCKOWEN, WAYNE HARDING and** | ) |
| **TIMOTHY BEALL,** | ) |
| | ) |
| **Defendants** | ) |
| | ) |

**DECLARATION OF STEVE A. MILLER, IN SUPPORT OF PLAINTIFFS'**
**UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE**
**AWARD**

1.      I, Steve A. Miller, declare as follows:

2.      I am a Partner of the law firm of Steve A. Miller, P.C. I submit this Declaration in Support of Plaintiff's motion for attorneys' fees and expenses in connection with the services rendered, and costs and expenses incurred, in the above-captioned action (the "Action"). I make this declaration based on my personal knowledge of the matters set forth herein and could competently testify thereto.

3.      My firm served as Court-appointed Additional Plaintiff's Counsel in this matter and played a meaningful role advancing the litigation through various work assignments and projects related to the firm's client and Class Representative, John Paulson.

4.      The chart below sets forth a summary of my firm's total hours and lodestar, computed at current rates, for the period from inception of the case through 04/29/22. The total number of hours spent by my firm during this time period was 40, with a corresponding current lodestar of $20,000.[1] This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. In connection with representing Plaintiff in the Action, my firm did the following: Review materials, pleadings, motions, orders, documents, confer with and assist Class Counsel, attend court proceedings and mediation, and assist with filings. The hourly rates for the attorneys and professional staff in my firm reflected below are the usual and customary hourly rates charged by my firm in similar complex litigation matters.

| Timekeeper | Professional Status | Hours | Rate | Total Lodestar |
|---|---|---|---|---|
| Steve A. Miller | P | 40 | $500 | $20,000.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| Grand Total |  | 40 | $500 | $20,000.00 |

**Role Legend**
P        Partner/Shareholder
OC      Of Counsel
A        Associate
LC      Law Clerk
PL      Paralegal

5.      Steve A. Miller's total hours do not include time spent on the Plaintiff's motion for attorneys' fees, and costs, or on further claims administration, time for which Steve A. Miller, P.C. has not and will not seek reimbursement.

6.      My firm has expended a total of $0 in unreimbursed costs and expenses in connection with the prosecution of the Action from inception of the case through and including

---

[1] Such time does not include any time expended in completing this declaration.

04/29/22 as set forth in the chart below. These costs and expenses are reflected on the books and records of my firm. They were incurred on behalf of Plaintiffs by my firm and have not been reimbursed.

| Costs and Expenses | Amount |
|---|---|
| Assessment fees | |
| Court fees (including filing fees) | $472.00 |
| Database fees (Westlaw, LEXIS, Bloomberg, etc.) | |
| Document management (including Relativity) | |
| Expert witness fees/expenses (including non-testifying consultants) | |
| Express and hand delivery (FedEx, couriers, etc.) | |
| Photocopies (commercial) | |
| Photocopies (in-house) | |
| Postage | |
| Travel: Airfare | |
| Travel: Ground transportation (trains, taxis, ride-sharing, rental cars) | |
| Travel: Hotel and lodging | |
| Travel: Meals | |
| **Grand Total** | **$472.00** |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of April, 2022 at Denver, Colorado.


s/Steve A.Miller
Steve A. Miller