IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 19-cv-02639-PAB-NYW

JOHN PAULSON, Individually and on Behalf of all Others Similarly Situated,

    Plaintiff,

v.

JOHN R. MCKOWEN,
WAYNE HARDING, and
TIMOTHY BEALL,

    Defendants.

---

# ORDER

---

This matter is before the Court on Plaintiff's Motion for Final Approval of the Settlement [Docket No. 169] and Plaintiffs' Motion for an Award of Attorneys' Fees, Incentive Award, and Reimbursement of Litigation Expenses [Docket No. 170].

## I. BACKGROUND

### A. Factual Background

Plaintiff brings a securities class action against defendants. Docket No. 56. Plaintiff's amended complaint alleges that John R. McKowen, Wayne Harding, and Timothy Beall (collectively, the "individual defendants") were officers of Two Rivers Water and Farming Company ("Two Rivers"). Docket No. 157 at 5.

Plaintiff alleges that Two Rivers and McKowen formed GrowCo, Inc. ("GrowCo")[1] to "capitalize on [the] burgeoning marijuana industry in Colorado." Docket No. 56 at 5, ¶ 17. To support their operations, defendants offered GrowCo securities to investors (the "Offerings"). *Id.* at 6, ¶ 28. With the Offerings, defendants provided "sales presentations, memoranda of terms, exchange note purchase agreements, exchange agreements, investor questionnaires, and other documents . . . which purported to make material disclosures to investors about GrowCo and the Securities Offerings." *Id.*, ¶ 27. Plaintiff alleges that the Offering documents omitted material information about McKowen, including a 1987 disciplinary action, fine, and suspension with the National Association of Securities Dealers, a 1995 bankruptcy, and a 1992 default judgment in connection with a complaint before the Indiana Securities division. *Id.* at 7-8, ¶¶ 30–41.

### B. Procedural Background

Defendants dispute these allegations and deny liability for the claims. McKowen moved to dismiss the complaint, Docket No. 73, on the basis that the information underlying the allegations against him "concerned the distant past, was not required to be disclosed, and was not material to investors' decisions to purchase GrowCo securities." Docket No. 157 at 6. This motion was pending when the parties and defendants' insurance carrier, Starstone Specialty Casualty Insurance Company ("Starstone"), agreed to engage in mediation before retired Denver District Court Judge

---

[1] GrowCo was in bankruptcy when this action was initiated and is not a party to this action. Docket No. 157 at 5 n.3. On July 6, 2021, the Bankruptcy Court granted the United States Trustee's and Debtor's Stipulated Motion for Entry of Order Dismissing Chapter 11 Case. *In re GrowCo., Inc.*, No. 19-10512, Docket No. 263 (D. Colo. Bankr.).

William Meyer. *Id.* at 2-3. The parties ultimately reached a settlement in August 2020, *id.* at 7, and on October 9, 2020 plaintiff filed an unopposed motion for preliminary approval of the settlement, approval of the notice to the class, preliminary certification of the class for the purposes of settlement, appointment of class counsel, and the scheduling of a fairness hearing. *See* Docket No. 131.

On January 25, 2021, the assigned magistrate judge granted a motion to withdraw by counsel for Two Rivers and issued an order to show cause why she should not impose sanctions against Two Rivers for failure to defend based on its failure to hire counsel to represent it. Docket No. 137 at 6. On February 24, 2021, the Court entered an order informing the parties that, because granting the motion for preliminary approval of the class action settlement would trigger proceedings that necessitated Two Rivers's participation, through counsel, the Court would not rule on the motion for preliminary approval until counsel entered an appearance on behalf of Two Rivers. Docket No. 139. On March 10, 2021, the Court entered an order notifying the parties that the Court would deny the motion for preliminary approval without prejudice if Two Rivers did not enter an appearance on or before March 16, 2021. Docket No. 145.

On April 6, 2021, plaintiff filed a motion to dismiss Two Rivers as a party. Docket No. 149. On June 29, 2021, the Court granted plaintiff's motion to dismiss Two Rivers without prejudice. Docket No. 153 at 11. The Court also granted plaintiff leave to file a revised motion for preliminary approval of the class action settlement in light of Two Rivers' dismissal, Docket No. 154, which plaintiff subsequently filed. Docket No. 157.

On January 19, 2022, the Court granted plaintiff's motion for preliminary approval. Docket No. 162 at 25. On April 11, 2022, plaintiff filed a motion for final

approval and a motion for attorneys' fees. See Docket Nos. 169-170. On April 29, 2022, the Court held a fairness hearing. Docket No. 176.[2]

## II. FINAL APPROVAL OF CLASS ACTION CERTIFICATION

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); see, e.g., McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009).

District courts have broad discretion in granting or denying class certification. Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso ("Shook II"), 543 F.3d 597, 603 (10th Cir. 2008). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). Where the plaintiff applies for class

---

[2] The fairness hearing was conducted by United States District Judge Daniel D. Domenico.

certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 968 (10th Cir. 2004)).

### A.  Rule 23(a)

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative party are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In the order on the motion for preliminary approval, Docket No. 162 at 10-16, the Court found each of the requirements met and incorporates those findings herein. The requirements of Rule 23(a) are met.

### B.  Rule 23(b)(3)

The Court preliminarily certified the class under Rule 23(b)(3), *id.* at 16-18, which states that a class action may be maintained if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that final certification is appropriate for the same reasons it found preliminary approval was warranted. *See* Docket No. 162 at 16-18.

## III. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Overview of the Settlement Agreement

The settlement class consists of:

[A]ll persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses as defined above. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $ 3,349,151 | December 2014 - January 2015 |
| $4 Million Note | Debt | $ 4,000,000 | March 2015 - September 2015 |
| GCP Super Units LLC | Equity | $ 5,297,157 | July 2015 - October 2017 |
| $1.5 Million Note | Debt | $ 100,000 | April 2016 |
| $6 Million Note | Debt | $ 6,000,000 | March 2016 - July 2016 |
| $7 Million Note | Debt | $ 2,977,000 | January 2016 - September 2017 |
| $2 Million Note | Debt | $ 1,080,000 | February 2017 - September 2017 |
| $2 Million Note | Debt | $ 440,000 | June 2017 |

*See* Docket No. 157 at 31-32, 34, ¶¶ 1.i, 1.s. There are no subclasses.

In exchange for the release of all claims of the Settlement Class against all defendants, the Settlement Agreement provides that Starstone will pay $1.5 million for the benefit of the Class. *Id.* at 29-30, 36-37, ¶ 1.ll, 3. The parties agreed that this amount provides a "substantial and immediate benefit to the Class" and is appropriate

6

given that GrowCo has been in bankruptcy and Two Rivers's financial situation makes it unlikely that it would be able to satisfy a judgment. *Id.* at 8. The parties arrived at this amount after reviewing defendants' insurance policy, which covers claims up to $2 million minus the cost of the defense. *Id.* The $1.5 million figure "represents substantially all of the remaining insurance coverage net of defense costs to date." *Id.*

The Claims Administrator, selected by Class Counsel, will administer the process of receiving, reviewing, and denying claims under Class Counsel's supervision and will determine each claimant's pro rata share of the Settlement Amount upon a Class Member's showing of loss. *Id.* at 40, ¶¶ 12–14. The $1.5 million Settlement Fund will be used to pay, among other things, attorneys' fees and expenses, costs and expenses reasonably and actually incurred in connection with locating and providing notice to potential Class Members, assisting with filing claims, and administering and distributing the Settlement Fund. *Id.* at 40-41, ¶ 15.

### B.  Notice to the Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England*

*Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005). However, due process does not require that each Class Member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc*., 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar. *DeJulius*, 429 F.3d at 944.

      Class counsel received a list of 82 investors and their addresses from GrowCo's bankruptcy counsel. Docket No. 169 at 30, ¶ 43. The claim administrator mailed the notice to each of these persons by first class mail on February 2, 2022. *Id.* at 39, ¶ 3. Following this, the claim administrator received three additional names and addresses and mailed the notice to these addressed. *Id.*, ¶ 4. Eleven of the notices were returned undeliverable; the claim administrator took steps to find current addresses for each of these people. *Id.*, ¶ 5. On March 30, 2022, the claim administrator re-mailed a notice to 56 potential class members who had not filed a claim form. *Id.* at 40, ¶ 6. Additionally, on February 2, 2022, the claim administrator established a webpage containing the current status of this case, case deadlines, and important documents, including the notice. *Id.,* ¶ 8. The Court finds that this notice procedure satisfies Rule 23(c)(2)(B) and (e)(1).

### C. Objections

Blue & Green, LLC ("Blue & Green"), a class member that holds two promissory notes executed by GrowCo, objects to final approval of the settlement. Docket No. 172. Blue & Green objects that the claims to be released by each class member are overbroad such that they could be construed to release the claims Blue & Green have against GrowCo based on the terms of the promissory notes. *Id.* at 3-4. The Settlement Agreement states:

> "Released Claims" means any and all Claims of or by the Releasors, as against the Releasees, and any and all Claims of or by the Defendants as against the Releasors, that were asserted, could have been asserted, or could in the future be asserted, arising from, based on, or relating to allegations in the Class Action. The term "Released Claims" does not include any claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation, including in the GrowCo Bankruptcy Action.

Docket No. 157 at 35, ¶ 1.cc. Blue & Green clarified at the fairness hearing that it does not disagree with the definition of released claims, but its concern is with paragraph 28 of the settlement agreement. This paragraph states:

> The Settling Parties agree and acknowledge that this Settlement Agreement is intended to resolve and satisfy any and all claims that the Releasors have made or could have made against any of the Releasees arising out of the issuance or sale of GrowCo securities. The Parties agree and acknowledge that they shall seek as part of the Final Order Approving Settlement an order prohibiting further lawsuits and claims against the Defendants arising out of the issuance and sale of GrowCo securities which the Parties intend to operate as a complete bar to any lawsuits or claims against the Defendants arising out of the issuance or sale of GrowCo securities (the "Complete Bar Order"). The Complete Bar Order will not bar claims for collection of any amounts due under the GrowCo securities pursuant to the terms of the securities, including claims in the event of a GrowCo liquidation including in the GrowCo Bankruptcy Action.

*Id.* at 45-46, ¶ 28. Blue & Green argued at the hearing that the release in paragraph 28 could be construed to be broader than the definition of released claims and the description of released claims in paragraph 27. Blue & Green argues that its anticipated recovery from the settlement proceeds in this case should not be a bar to its ability to collect under the terms of the promissory notes or the rights under the deeds of trust securing the notes. Docket No. 172 at 4. Blue & Green asks the Court to clarify in its order that the scope of the release would not prohibit Blue & Green from collecting on its notes and security interest. *Id.*

Plaintiff filed a response to the objection, arguing that the language in the settlement agreement is not overbroad. Docket No. 173. At the hearing, plaintiff again argued that the release language is clear. The Court agrees with plaintiff. The settlement agreement makes clear that it releases claims relating to the class action, which was based on the omission of material information in the offering documents. *See Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765 (10th Cir. 2020) (unpublished) ("a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint" (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221 (5th Cir. 1981)). The definition of released claim further clarifies that it does not apply to claims to collect on the terms of the securities. Accordingly, Blue & Green's objection is overruled and its request for the Court to add clarifying language is denied as unnecessary.

### D. Analysis of Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002). If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on

11

sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected). In addition, Fed. R. Civ. P. 23(e)(2) states that a court is to consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

"The goal of this amendment is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

      The Settlement Agreement was the product of arms-length negotiations between the parties. Docket No. 169 at 8-10. These negotiations took place after the parties had litigated various motions and were facilitated by a third-party mediator. *See id.* The Court finds that the negotiations were done fairly and honestly. The value of immediate recovery outweighs the mere possibility of future relief because further litigation would deplete the insurance fund that the class now will obtain recovery from and Two Rivers' financial situation made it unlikely it would be able to satisfy a judgment. The parties believe that the consent decree is fair and reasonable and was

negotiated at arms length by experienced counsel. *Id.* at 13-14. Plaintiff and class counsel have adequately represented the class, the relief provided to the class is adequate, and the proposal treats class members equitably. *See id.* at 7-16. The Court additionally notes that class counsel represented to the Court at the fairness hearing that no class members have opted out of the settlement. Accordingly, the Court finds that the settlement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and *Rutter*.

## IV. ATTORNEYS' FEES AND COSTS

Plaintiff filed a motion for attorney fees, an incentive award, and reimbursement of litigation expenses. Docket No. 170 at 1. Class counsel requests an award of $495,959.12, which is one third of the net Settlement, a $5,000 incentive award for plaintiff, and $7,122.65 in litigation expenses for class counsel. *Id.* at 2. No class members have objected to the request for attorney fees. In a certified class action, the court may award reasonable attorney's fees that are authorized by the parties' agreement provided that (1) the claim for an award is made by motion under Rule 54(d)(2) and notice of the motion is directed to class members; (2) a class member or party from whom payment is sought may object; and (3) the Court finds facts and states its legal conclusions. Fed. R. Civ. P. 23(h). The notice provided to class members included that plaintiff would seek an award of attorneys' fees not to exceed 33.33% of the settlement, for costs not to exceed $10,000, and for an award of $5,000 to plaintiff. Docket No. 169 at 50.

### A. Attorney Fees

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis." *Uselton v. Commercial Lovelace Motor Freight, Inc*., 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiff's fee request is for a percentage of the common fund, the Court will consider the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id*. at 454-55 (citing *Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717 (5th Cir. 1974); *see also Gottlieb*, 43 F.3d at 483. "[R]arely are all of the Johnson factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455-56 ("The court here clearly considered all of the relevant Johnson factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each Johnson factor. *Gudenkauf v. Stauffer Commc'ns, Inc*., 158 F.3d 1074, 1083 (10th Cir. 1998).

Class counsel represents that, under the lodestar method, they would have incurred $602,319.75 in attorneys' fees. Docket No. 170 at 14. Under the common fund request here, class counsel will receive less than would have been warranted under the lodestar method. *Id.* at 14-15. This weighs in favor of the reasonableness of the award.

Class counsel have significant experience in class action cases, as reflected in their histories provided to the Court. *See* Docket No. 157 at 145-58. Class counsel additionally took this case on a contingency basis, Docket No. 170 at 13, adding to the risk class counsel incurred by bringing the case. *See In re Crocs, Inc. Secs. Litig*., No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2015) ("A contingent fee arrangement often weighs in favor of a greater fee because such a large investment of money and time places incredible burdens upon law practices." (internal alterations and quotation marks omitted)). A fee of one-third of the common fund is typical in complex cases. *See id.* at *3 (collecting cases). The recovery for the class is 6.4%, which plaintiff represents is in line with median settlement values of 7.6%.

Docket No. 170 at 9. Additionally, the value represents all of the remaining insurance policy, and there is substantial doubt about Two River's ability to satisfy a judgment. The Court finds that, under the *Johnson* factors, an award of $495,959.12 in attorney fees to class counsel is reasonable.

### B. Incentive Award

"Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 467 (10th Cir. 2017). Additionally, "courts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Id.* at 468. Plaintiff represents that he "assisted in Plaintiff's Counsel's investigation, preparation, and prosecution of this Action by providing documents to Plaintiff's Counsel in connection with his GrowCo investment; reviewed and approved pleadings and briefs filed in this Action; and consulted with Plaintiff's Counsel regarding significant events in the litigation." Docket No. 170 at 19. Additionally, GrowCo named plaintiff as a defendant in an action related to GrowCo's bankruptcy due to plaintiff's status in this litigation. *Id.* Plaintiff further filed a limited objection in the bankruptcy case to prevent McKowen from accessing the insurance policy that provides the settlement in this case. *Id.* The Court finds that an award of $5,000 is fair and reasonable based on plaintiff's involvement in this case.

### C. Costs

Class counsel requests $7,122.65 in costs. *Id.* at 20. Class counsel provides a break-down of the costs. *Id.* at 27-28, 32, 35-36. However, the declaration of Steve

Miller contains an inconsistency regarding costs; Mr. Miller states both that "[m]y firm has expended a total of $0 in unreimbursed costs and expenses" and that his firm had a total of $472 in unreimbursed costs. *Id.* at 35-36. Because of this inconsistency, the Court will reduce the costs award by $472. Accordingly, class counsel is awarded $6,650.65 in costs.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Final Approval of the Settlement [Docket No. 169] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion for an Award of Attorneys' Fees, Incentive Award, and Reimbursement of Litigation Expenses [Docket No. 170] is **GRANTED**. It is further

**ORDERED** that, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of settlement only, the class is certified as follows:

> [A]ll persons or entities that currently hold claims based on securities in GrowCo, and purchased or otherwise acquired the securities through Offerings during the period of October 2014 through December 2017 (the "Class Period"), and suffered Alleged Losses as defined above. For the avoidance of doubt, persons or entities who purchased or otherwise acquired the securities during the Class Period and who have assigned the securities to VitaNova Partners, LLC are not excluded as Class Members by virtue of such assignment. Excluded from the Class are (1) the Defendants; (2) the officers and directors of Two Rivers and GrowCo during the Class Period as set forth in the attached Exhibit E for securities purchased at the time or after they were officers or directors; (3) any judge or judicial officer who may hear any aspect of this Class Action and his or her law clerks; and (4) except as provided in clause (2) of this paragraph above, all persons or entities released in the Settlement. Also excluded from the Settlement Class are the persons and/or entities who

request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

| Name | Type | Approximate Amount Raised | Date Range |
|---|---|---|---|
| GrowCo Partners 1, LLC | Equity | $ 3,349,151 | December 2014 - January 2015 |
| $4 Million Note | Debt | $ 4,000,000 | March 2015 - September 2015 |
| GCP Super Units LLC | Equity | $ 5,297,157 | July 2015 - October 2017 |
| $1.5 Million Note | Debt | $ 100,000 | April 2016 |
| $6 Million Note | Debt | $ 6,000,000 | March 2016 - July 2016 |
| $7 Million Note | Debt | $ 2,977,000 | January 2016 - September 2017 |
| $2 Million Note | Debt | $ 1,080,000 | February 2017 - September 2017 |
| $2 Million Note | Debt | $ 440,000 | June 2017 |

It is further

**ORDERED** that the Court finds, solely for the purposes of this settlement, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the settlement class are so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the named plaintiffs are typical of the claims of the class; (d) the named plaintiffs and plaintiffs' counsel have fairly and adequately represented and protected the interests of all of the class members; and (e) questions of law or fact predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  It is further

**ORDERED** that the Court finds that the notice given to members of the class was the best notice practicable under the circumstances, was reasonably calculated under the circumstances to apprise such members of the pendency of this action and to afford them an opportunity to object to, and meets the requirements of Rule 23

(c)(2)(B) and (e)(1).  Because the Court has afforded a full opportunity to all class members to be heard, and no class member has opted-out of the settlement, the Court further determines that all members of the class are bound by the Settlement Agreement.  It is further

**ORDERED** that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court finds that the Settlement Agreement is fair, reasonable, and adequate.  Accordingly, the Court gives final approval to the Settlement Agreement in all respects and authorizes and directs the parties to consummate the Settlement Agreement in accordance with its terms and provisions.  It is further

**ORDERED** that plaintiff shall file the Settlement Agreement as a separate docket entry within seven days of the entry of this ORDER.  It is further

**ORDERED** that the parties and their counsel shall fulfill their obligations and duties under the Settlement Agreement.  It is further

**ORDERED** that plaintiff and all class members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the claims released by the Settlement Agreement.  It is further

**ORDERED** that Class Counsel is awarded $495,959.12 from the Settlement Fund, which represents one third of the net Settlement Fund.  It is further

**ORDERED** that plaintiff John Paulson is awarded an incentive award of $5,000 from the Settlement Fund.  It is further

**ORDERED** that Class Counsel shall be reimbursed $6,650.65 in costs from the Settlement Fund.  It is further

**ORDERED** that neither this Order nor the Settlement Agreement is an admission or concession by defendants respecting any facts, liabilities, or wrongdoing. It is further

**ORDERED** that, without affecting the finality of this Order, this Court retains jurisdiction to consider all further matters arising out of or connected with the Settlement Agreement, including its implementation. It is further

**ORDERED** that judgment shall be entered dismissing this case with prejudice.

DATED March 15, 2023.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge